1                  **UNITED STATES DISTRICT COURT**
                    **SOUTHERN DISTRICT OF TEXAS**
2                        **HOUSTON DIVISION**

3
        CASEY NELSON, ET AL           *    4:17-CV-02171
4                                      *
        V.                             *    9:59 A.M. to 12:38 P.M.
5                                      *
        TEXAS SUGARS, INC., ET         *
6       AL                             *    JUNE 17, 2019

7                 **EXCERPT OF TRIAL - VOIR DIRE**
           **BEFORE THE HONORABLE ALFRED H. BENNETT**
8                    **VOLUME 1 OF 1 VOLUME**

9       **APPEARANCES**

10      **FOR THE PLAINTIFFS:**
        Mr. Warren A. Berlanga
11      Mr. Kelly E. Cook
        Wyly & Cook, PLLC
12      4101 Washington Avenue
        Houston, Texas 77007
13      713-236-8330

14      **FOR THE DEFENDANTS:**
        Mr. Casey Wallace
15      Mr. William Xander King
        Feldman & Feldman
16      3355 West Alabama Street
        Suite 1220
17      Houston, Texas 77098
        (713) 986-9471
18
        **ALSO IN ATTENDANCE:**
19      Ms. Maria Alvarez
        Ms. Marissa Reyna
20      Mr. Alex Khorshidpanah

21      Court Reporter:
        Laura Wells, RPR, RMR, CRR
22      515 Rusk Street, Suite 8004
        Houston, Texas 77002
23
        Proceedings recorded by mechanical stenography.
24      Transcript produced by computer-assisted transcription.

25

                        *Laura Wells, CRR, RDR*

1

**VOLUME 1**
**(Excerpt of Trial - Voir Dire)**

2
Page

June 17, 2019

3

Voir Dire by The Court...........................     3
4    Introductions..................................    14
Voir Dire by Mr. Berlanga......................    52
5    Voir Dire by Mr. Wallace.......................    71
Juror Challenges...............................    81
6    Jurors Seated..................................    96
Jurors Sworn...................................    99
7    Reporter's Certificate.........................   106

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          (Beginning of requested excerpt, parties present, no
 2    jury.)
 3                THE COURT:  The panel is here?
 4                CASE MANAGER:  Yes, sir.
 5                THE COURT:  Anything before the panel comes in,
 6    gentlemen?
 7                MR. BERLANGA:  No, Your Honor.
 8                MR. WALLACE:  We have 20 minutes, is that right,
 9    after you are done, per side?
10                THE COURT:  Yes.
11                MR. WALLACE:  Okay.
12                THE COURT:  That's if you need the full
13    20 minutes.
14                MR. WALLACE:  I hope I don't need to take it.
15                THE COURT:  Very well.
16                MR. KING:  Your Honor, opening statements
17    typically begin after lunch, right?
18                THE COURT:  Yes.
19                MR. WALLACE:  Judge, right before the panel comes
20    in -- it is only because of the courtroom configuration,
21    it's difficult sometimes to see on the other side of the
22    pillar -- if there is discussion, do you mind if
23    counsel --
24                THE COURT:  Oh, no.  You can move back and forth
25    to each side to see who is talking to you, yes.
```

09:59:33 (line 5)
09:59:41 (line 10)
09:59:50 (line 15)
10:00:05 (line 20)
10:00:15 (line 25)

*Laura Wells, CRR, RDR*

1           MR. WALLACE:  During your questioning though?

2           THE COURT:  You can stand up quietly and take a

3    look and see who is talking, yes.

4           MR. WALLACE:  Thank you.

5           THE COURT:  All rise for the panel.

6       (Prospective jurors entered courtroom at 10:00 a.m.)

7       (At the bench.)

8           THE COURT:  Who are those people?

9           CASE MANAGER:  Interns.

10          THE COURT:  They can take the jury box.

11      (Open court.)

12          THE COURT:  Thank you.  Please be seated.

13      Good morning, ladies and gentlemen of the jury panel.

14          PROSPECTIVE JURORS:  Good morning.

15          THE COURT:  Let's try it again.  I know it's a

16   rainy Monday.  Good morning, ladies and gentlemen of the

17   jury panel.

18          PROSPECTIVE JURORS:  Good morning.

19          THE COURT:  Much better.  Welcome to the United

20   States District Court for the Southern District of Texas.

21   My name is Alfred Bennett.  I am one of the judges here

22   for this court.  It is my pleasure to welcome you here for

23   your jury service today in the case of Casey Nelson, et al

24   v. Texas Sugars, et al.  This is a civil case, which is

25   numbered 4:17-CV-2171.

*Laura Wells, CRR, RDR*

5

1    In calling you here today for jury service, we are
2 mindful of the enormous inconvenience we are imposing on
3 you.  We know that, first and foremost, you have work
4 obligations.  You have family obligations.  We know that
5 the commute here was not easy.  We know that parking in
6 downtown is not easy, and it's expensive.  So it is our
7 plan we are going to endeavor to be as efficient as
8 possible to return you to your private lives.

9    However, we would not impose on your time and your
10 convenience except for the fact that we have very
11 important work here today, and some of you will assist us
12 in that work.  The parties here have a dispute, and they
13 have been unable to resolve it.  As a result, it has now
14 come to the point that we are going to try this case to a
15 jury who will determine certain facts which will then be
16 applied under the law such that this dispute can be
17 resolved.

18    We are asking you here to do this for a pretty simple
19 reason.  We believe that the American jury system is the
20 most powerful method yet devised to ascertain the truth.
21 The right to a trial by jury is the only one of our rights
22 mentioned in both the text of the United States
23 Constitution and the Bill of Rights, and the Declaration
24 of Independence also makes explicit reference to a jury
25 trial.

*Laura Wells, CRR, RDR*

1       And finally, many of you may think that jury trials

2  may not be as important as they once were and that perhaps

3  that I, as the judge, could settle this dispute and not

4  impose on your time.

10:04:50   5       I want to bring to your attention there was once a

6  study done among over 600 federal judges, and it was a

7  simple question posed to them.  If you were engaged in a

8  dispute, how would you want that resolved?  By the judge

9  or by a jury?  Over 90 percent of federal district court

10:05:11  10  judges, such as myself, chose a jury.  And the reason for

11  that is that having fresh, unbiased eyes on a problem

12  produces the best result, and that's what you are going to

13  be in this case.

14       You have common sense.  You are out there every day

10:05:32  15  raising your children, tending to your work duties,

16  visiting with your neighbors, moving through your day.

17  That common experience and common sense is what the

18  founders of this nation wanted us to draw upon in ensuring

19  that citizens such as yourselves with disputes could come

10:05:52  20  into a courtroom and get them resolved.

21       In addition, the young men and women that we are so

22  proud of in our country's uniform, they are out there

23  making this country safe around the world, here at home.

24  We take great pride in what they do.  We may not always

10:06:11  25  agree with every mission that they go on, but without

*Laura Wells, CRR, RDR*

1   question I think I can say with confidence that we all

2   take great pride in those young men and women who have

3   made the decision to serve their country.

4        Well, the democracy that they are protecting, this is

10:06:30   5   it in action.  This does not happen in countries around

6   the world.  This is an open courtroom.  Anyone can walk

7   through those doors and watch these proceedings from

8   beginning to end.  This unique component of our democracy

9   is what levels the playing field between the rich and the

10:06:53   10   poor, corporations and individuals, government versus

11   individual.  In this courtroom they are all equal and have

12   the opportunity to present their version, their side of a

13   case, and then it is decided by unbiased and impartial

14   jurors.  So you are doing your part in that regard.

10:07:15   15        Today we will be selecting a jury of eight persons to

16   hear this civil case.  This case is expected to last until

17   the close of business on Thursday.  In this courthouse we

18   have had cases that have lasted much longer, weeks if not

19   months.  I personally previously, not in this courthouse

10:07:39   20   but another courthouse, presided over a case that lasted

21   two -- a jury trial that lasted over two and a half

22   months.

23        So by way of the straw that you pull for your jury

24   service, to pull the straw for a four-day case is pretty

10:07:56   25   good, pretty remarkable for your stead.  So we are asking

1   you to do your part for this short jury trial, as jury

2   trials go, to make sure that we are able to continue to do

3   our part under our democracy and as to what is required

4   for this branch of government.

10:08:19   5        This case will be unlike any other trials that you

6   have seen on TV.  There won't be 90-second sound bites and

7   dramatic moments such as that.  You will see real lawyers

8   and a real judge at work with the assistance of a jury to

9   consider versions of the facts such that you can

10:08:42  10   ultimately decide what the facts are.

11        Again, I have given these lawyers certain time

12   constraints.  We have discussed extensively how long this

13   trial is going to take.  So we're going to be as efficient

14   as possible.  It won't be perfect.  Nothing run by humans

10:09:02  15   is.  So -- but we are going to be efficient to make sure

16   we can get you back to your private lives as soon as

17   possible.

18        This portion of the trial is called voir dire or voir

19   dire.  It is where we select the jury.  I expect this to

10:09:18  20   take approximately an hour and a half, such that we're

21   going to go up to approximately lunch, select a jury; and

22   those of you who have not been selected can be released.

23        Although we call this process jury selection, it is

24   actually one of deselection, and there are a couple of

10:09:39  25   ways a juror can be deselected.  Potential jurors can be

*Laura Wells, CRR, RDR*

excused for cause, meaning if they have strong beliefs or
feelings about the subject matter of this case or the
parties, then they could not reasonably be expected to be
fair and impartial.

10:09:57        Although, in most cases, individuals are able to set
aside their beliefs such that they can follow the law,
listen impartially to counsel, and then make a decision
without passion being a part of it.  In certain instances,
others are just -- their beliefs are too strongly held to
10:10:21 set aside those beliefs or feelings, and that person would
not be a good juror for this case.

        An example of that.  If this -- and it's not.  If this
was a child pornography case and you have children, you
may have such strong views about that that you just
10:10:43 couldn't fairly listen to the case.  If this was a case
involving injury to a child, you could just say, I can not
be fair.  We would understand that.  And the subject
matter of this case may be such that you have had previous
experience with the subject matter or have a particular
10:11:02 view of the parties or the subject matter of the case.
We're going to go into that.

        The lawyers -- the second way that a juror could be
deselected, the lawyers have a certain number of what are
called peremptory challenges.  That is that they can
10:11:20 strike a person for no reason whatsoever.

1    Once this portion of the trial again is selected, the

2    eight folks, the first eight folks who are remaining will

3    get the opportunity to take their seat in the jury box

4    such that we can proceed with the trial.

10:11:38    5    Voir dire or voir dire -- here in Texas we say it two

6    ways -- it's a French term meaning "to speak the truth."

7    So you have taken an oath to participate in this trial and

8    tell your -- have your answers to be truthful, a truthful

9    response to the questions that are posed to you.

10:12:03    10    I will tell you something about this case, the

11    parties, the lawyers, and the witnesses; and I ask that

12    all of your answers be truthful.  Even if we're just

13    asking you to raise your hand if the answer applies to

14    you, part of your oath is to raise your hand when the

10:12:21    15    answer applies to you.

16    What we are looking for and what the law requires is a

17    jury of impartial jurors who will decide the case based

18    solely on the evidence and the law.  If you were seated at

19    either table as either the plaintiff or the defendant, you

10:12:39    20    would want that.  You would want to be able to walk into a

21    courtroom and to have the case decided solely -- solely on

22    the facts of the case and the law, not any other unknown

23    reason or the motive of someone else involved.  And that's

24    what we are asking of you.  That's what these parties are

10:13:00    25    asking of you.  And that's what I, as the judge, will

1   require of you, such that we can follow the law.

2        The right to a trial by an impartial juror was

3   considered so fundamental, as I mentioned earlier, that we

4   have put it as the Seventh Amendment to our constitution.

10:13:18  5   Your presence here today and your participation in the

6   jury selection process preserves this fundamental right.

7        Very often you hear people talk about certain rights

8   in the Bill of Rights and how important that they are,

9   from freedom of religion, to freedom of speech, to freedom

10:13:39  10   of the press.  Well, this right sits alongside those

11   rights and is just as important and it requires your

12   participation to come to light.  That is why you are so

13   essential to our system and why all of us -- myself, the

14   lawyers, and the parties -- are grateful that you answered

10:13:59  15   your jury summons and that you are here today.

16        You will be the judges of the facts.  I'm the judge of

17   the law, but you will be the judges of the facts.  Your

18   job is to decide if the plaintiffs have proven their case

19   by a preponderance of the evidence when it comes to

10:14:17  20   questions of fact.  That is to decide whether the

21   plaintiffs have met their burden of proof, which I will

22   explain to you in detail a little later.

23        My function as the judge is to decide the law and

24   apply the law.  As jurors, you must be guided by the law

10:14:36  25   as I give it to you.  The things that the lawyers tell

1   you, their arguments and questions, are not evidence.  The

2   evidence that you will hear will come from witnesses that

3   have taken an oath and who will sit on the witness stand

4   and testify before you.  There may be documents which will

5   be introduced in evidence for your consideration.  Only

6   those things are evidence.

7        Now, I want to tell you who the parties are in this

8   case and give you a little bit about the case and then I'm

9   going to ask you questions and then the lawyers will have

10  a chance to follow-up as well.

11       We have juror forms for each of you.  So we know a

12  little bit about you.  If you need to respond to any

13  question, again, please raise your hand.  Some of you when

14  you -- we have microphones hanging down from the ceiling

15  that will be able to pick up your voice.  However, some of

16  you just may be soft talkers, and I may ask you to stand.

17       We have a court reporter who is sitting here who is

18  taking down everything that is being said, and she is

19  recording it.  And if you are a soft talker, she may not

20  be able to hear you.  So I may ask you to stand such that

21  I can hear you.  I'm not picking on you or trying to draw

22  attention to you, but it's important that she hears you

23  such that she can do her job.

24       Some of my questions may be or may be considered

25  embarrassing.  If such, my goal is not to embarrass

1    anyone.  If I ask a question and you have an answer that
2    you think may be of an embarrassing nature, raise your
3    hand and say, "Judge, I want to talk to you about that in
4    private" or "Can we talk about that later?"  I'll make a
10:16:23    5    note, and I'll give you the opportunity to come up without
6    35 of your new best friends sitting next to you listening
7    in.

8         Again, my goal is not to embarrass you, but we must
9    get the answers such that we know that the folks who are
10:16:41   10   sitting in the jury box are essentially fair and
11   impartial.

12        I keep pointing to the jury box, which is not empty.
13   Over the summer, the courts hire interns to come.  They
14   are law students who come and work for us during the
10:16:54   15   summer to give them experience.  So we have interns who
16   are in the jury box.  My interns are sitting over here.
17   And so they will come in and out.  So those are some of
18   the folks who are just coming in to observe.  Remember, I
19   said this is an open trial.  Anyone can come in and watch.
10:17:13   20   Obviously, for law students who are serving here over the
21   summer, it's a huge benefit for them to get to observe
22   legal proceedings such as this.

23        So the parties have prepared a brief summary of the
24   case, which I have approved, which I'm going to read to
10:17:33   25   you now.

1    In the United States District Court for the Southern

2  District of Texas, Houston Division, Casey Nelson, et al

3  v. Texas Sugars doing business as Moments, et al, in Civil

4  Action 4:17-CV-2171.

10:17:51  5    The plaintiffs in this case are Maylene Velasco, Casey

6  Nelson, Kristal Garcia, Presley Lange, and Veronica

7  Gonzalez.  They work as exotic dancers at a gentleman's

8  club named Moments located in Pasadena, Texas.  The

9  defendant, Texas Sugars, Inc., owns Moments.

10:18:16  10    This is a dispute over payment of wages.  Plaintiffs

11  sued Moments under the Fair Labor Standards Act or the

12  FLSA.  The FLSA is a federal law that governs the payment

13  of minimum wages and overtime compensation.  One of the

14  main disputes in this case is whether the plaintiffs are

10:18:36  15  considered employees under the FLSA.  Workers who are

16  employees are entitled to be paid minimum wage and

17  overtime.  Workers who are not employees under the FLSA,

18  such as independent contractors, are not entitled to be

19  paid minimum wage or overtime.

10:18:59  20    Now I want to introduce the parties to the case.  The

21  first thing that I'm going to do is I'm going to ask

22  plaintiffs' counsel to introduce himself, his co-counsel,

23  and I'm going to see if any of you know him.

24    So with that being said, Counsel.

10:19:17  25    MR. BERLANGA:  Good morning and good morning.

*Laura Wells, CRR, RDR*

1          PROSPECTIVE JURORS:  Good morning.

2          MR. BERLANGA:  My name is Warren Berlanga.  This

3    is my co-counsel, Kelly Cook and, also, Brad Wyly.

4          THE COURT:  Does anyone know counsel for the

10:19:28  5    plaintiffs?  If so, please raise your hand.

6          PROSPECTIVE JURORS: (No response.)

7          THE COURT:  Gentlemen, if you could walk down

8    here and let them get a better look at you.

9          MR. BERLANGA:  (Complying.)

10:19:40 10         THE COURT:  No one.  Very well.

11       Mr. Berlanga, would you call out the names of your

12   clients, please.

13         MR. BERLANGA:  Yes.  My clients are Casey Nelson,

14   Maylene Velasco, Kristal Garcia, Presley Lange, and

10:19:55 15   Veronica Gonzalez.

16         THE COURT:  Once again, Counsel.

17         MR. BERLANGA:  Casey Nelson, Presley Lange,

18   Kristal Garcia, Veronica Gonzalez, and Maylene Velasco.

19         THE COURT:  Anyone know the plaintiffs in the

10:20:09 20   case?  Do any of those names sound familiar?  If so,

21   please raise your hand.  I'm looking to my left.  I see no

22   hands.  I'm looking to my right, and I see no hands.

23       Counsel, do you have anyone else here with you?

24         MR. BERLANGA:  Yes, we do.  We have our paralegal

10:20:28 25   here, Your Honor.

*Laura Wells, CRR, RDR*

```
 1              THE COURT:  Would you introduce her.
 2              MR. BERLANGA:  Ladies and gentlemen, this is our
 3    paralegal Maria.  She is one of the best in the business.
 4              THE COURT:  Does anyone know counsel's paralegal?
 5              PROSPECTIVE JURORS: (No response.)
 6              THE COURT:  No.  Thank you, Counsel.
 7          Counsel for the defense.
 8              MR. WALLACE:  Thank you, Your Honor.
 9          My name is Casey Wallace.  I'm counsel for Texas
10    Sugars, Inc. doing business as Moments in Pasadena.  With
11    me is my colleague Will King, our paralegal Marissa Reyna,
12    and my client Alex Khorshidpanah.
13              THE COURT:  Counsel, if you'll walk down to my
14    left.
15          Does anyone know the defense legal team?  If so,
16    please raise your hand.  Anyone on my left?  If so, please
17    indicate by raising your hand.  I see no hands.  Very
18    well.
19          Counsel, to my right.
20          Does anyone know the defense legal team to my right?
21    If so, please raise your hand.
22              PROSPECTIVE JURORS: (No response.)
23              THE COURT:  I see no hands.
24              MR. WALLACE:  Thank you, Your Honor.
25              THE COURT:  Counsel, if you'll remain standing.
```

*Laura Wells, CRR, RDR*

1  No, not -- the defense counsel.  Defense counsel mentioned

2  the name of his corporate client.  So would you please

3  describe again the name of the establishment and where it

4  is located, sir.

10:21:57  5      MR. WALLACE:  Yes, Your Honor.  Thank you.

6      I represent Texas Sugars, Inc. doing business as

7  Moments.  It is located in Pasadena, Texas.  And my

8  corporate representative here today is the president or,

9  actually, the general manager, I should say, of Texas

10:22:09  10  Sugars, Inc., and it's Mr. Alex Khorshidpanah.

11      THE COURT:  Does anyone know Mr. Khorshidpanah?

12  He walked with counsel and no hands were raised.  So I

13  assume that remains the same.

14      More importantly, the name of the corporate defendant

10:22:25  15  is Texas Sugars, Inc.  It runs a gentleman's club by the

16  name of Moments located in Pasadena.  An uncomfortable

17  moment.  On my left, does anyone -- is anyone familiar

18  with the gentleman's club Moments located in Pasadena?  If

19  so, please raise your hand.

10:22:47  20      I know.  I'm sorry.  It is the day after Father's Day.

21      PROSPECTIVE JUROR:  I know where it is.  I just

22  haven't been.

23      THE COURT:  I'll let you say that on the record.

24      So, first of all, is anyone familiar -- has anyone

10:23:03  25  driven by Moments?  On my left, okay, Juror Number 3.

*Laura Wells, CRR, RDR*

1 Anyone else on my left?  No.  Anyone on my right?

2     PROSPECTIVE JUROR:  (Raised hand.)

3     THE COURT:  Juror Number 36.  All right.

4  So let me start with Juror Number 3.  Again, driven by

5 Moments.  You indicated, I think I heard you say, you have

6 driven by the place and you have seen it; is that correct?

7     PROSPECTIVE JUROR:  That is correct.

8     THE COURT:  Other than having seen this business

9 from your car, are you otherwise familiar with it?

10     PROSPECTIVE JUROR:  No.

11     THE COURT:  Very well.  Thank you, sir.

12  Juror Number 36, are you familiar with the club

13 Moments?

14     PROSPECTIVE JUROR:  Yes.

15     THE COURT:  Okay.  Do you want to talk to me in

16 private or can you tell me something further from the

17 audience?

18     PROSPECTIVE JUROR:  I can tell you now.

19     THE COURT:  Yes, sir.  Proceed.

20     PROSPECTIVE JUROR:  Did you ask me a question?

21     THE COURT:  Yes.  How are you familiar with

22 Moments?

23     PROSPECTIVE JUROR:  I have driven by it.

24     THE COURT:  You have driven by it.  Okay.  Other

25 than having driven by the establishment Moments, are you

*Laura Wells, CRR, RDR*

1    otherwise familiar with it?

2              PROSPECTIVE JUROR:  No, sir.

3              THE COURT:  Very well.  Thank you.  All right.

4    That was easier than I thought.  Thank you.  Please have a

10:24:16   5    seat.

6         Very well.  In addition -- I forgot to ask this one

7    time, and it was my mistake -- does anyone know me?

8    Again, my name is Judge Alfred Bennett.  Before coming to

9    the federal bench, I was on the state bench.  So does

10:24:34   10   anyone know me?

11             PROSPECTIVE JURORS:  (No response.)

12             THE COURT:  Anyone to my left?  I see no hands.

13   Anyone to my right?  I see no hands.

14        I'm going to have my court staff to stand and

10:24:45   15   introduce themselves.  My law clerk, who is present.

16             CASE MANAGER:  Poorav Rohatgi.

17             THE COURT:  Does anyone know my law clerk?

18             PROSPECTIVE JURORS:  (No response.)

19             THE COURT:  No hands to my left.  No hands to my

10:25:00   20   right.

21        Ms. Edwards.  This is Lisa Edwards, my case manager,

22   who if you are selected for the jury you'll get to know a

23   little bit more.  Anyone to my left?  No hands.  Anyone to

24   my right?  No hands.

10:25:14   25        And I'm not going to have her stand.  This is

1    Ms. Wells, the court reporter.  Does anyone know the court

2    reporter?  Anyone to my left?  No hands.  Anyone to my

3    right?  No hands.  Very well.  Thank you.

4         And, Mr. King, I forgot to ask.  Other than your

10:25:37    5    corporate representative, are there any other witnesses

6    you need to identify that may be called by the defense?

7              MR. KING:  Yes, Your Honor.  We may call Archie

8    Khorshidpanah.  He also goes by Mahmoud Khorshidpanah.  We

9    may call a gentleman named Jermaine.  His last name

10:25:59   10    escapes me at the moment.

11              MR. WALLACE:  Mr. Davis.

12              MR. KING:  Jermaine Davis.  Todd Moore, who is a

13    manager at Moments.

14              THE COURT:  Could you pull the microphone.  I

10:26:13   15    want you to repeat those names so that those on the left

16    can hear you.

17              MR. KING:  Absolutely.  Let me start over here.

18    We may call an individual named Christin Pichardo

19    Hernandez.

10:26:26   20              THE COURT:  Stop there.  Anyone on my left know

21    the gentleman?  No.  Anyone on my right?  No.

22              MR. KING:  We may call a witness named Felicia

23    Garcia.

24              THE COURT:  Anyone know Ms. Garcia to my left or

10:26:39   25    anyone to my right?  No hands.  Thank you.

```
 1            MR. KING:  We may call a witness named Marissa
 2   Villareal.
 3            THE COURT:  Anyone to my left?  No hands.  Anyone
 4   to my right?  No hands.
 5            PROSPECTIVE JUROR:  (Raised hand.)
 6            THE COURT:  Oh, sir.  Your juror number is 24.
 7            PROSPECTIVE JUROR:  All those names are very
 8   common.
 9            THE COURT:  Very familiar.  Okay.  So the last
10   name you've indicated that you may -- it sounded familiar?
11            PROSPECTIVE JUROR:  I mean, all the last names
12   that you've mentioned are very common.  So unless you see
13   a picture of the person --
14            THE COURT:  I appreciate that.
15            PROSPECTIVE JUROR:  -- you know.  I would be
16   lying if I say no.  Maybe I do.
17            THE COURT:  Okay.  But as you sit here today, do
18   any of those names trigger a person that you know
19   specifically?
20            PROSPECTIVE JUROR:  I'm a teacher.  So I have had
21   those names before.
22            THE COURT:  Okay.  Other than that, as you sit
23   here, that's your reaction to hearing those names?
24            PROSPECTIVE JUROR:  Yes.
25            THE COURT:  Thank you, sir.
```

10:26:50 — line 5
10:27:00 — line 10
10:27:13 — line 15
10:27:25 — line 20
10:27:35 — line 25

1   All right.  Mr. King, anything else?

2        MR. KING:  We may call a witness named Gloria

3   Grimaldo.  She also goes by Susie.

4        THE COURT:  Anyone to my left?  No hands.  Anyone

10:27:48   5   to my right?  No hands.

6        MR. KING:  As I mentioned, we may call Mahmoud

7   Archie Khorshidpanah.

8        THE COURT:  Anyone to my left?  No hands.  Anyone

9   to my right?  No hands.

10:28:01   10        MR. KING:  We may call Todd Moore, who is a

11   manager at Moments.

12        THE COURT:  Anyone know Mr. Moore to my left?  No

13   hands.  Anyone to my right?  No hands.

14        MR. KING:  We may call a manager named Tracey

10:28:16   15   Tremaine.

16        THE COURT:  Anyone to my left?  No hands.  Anyone

17   to my right?  No hands.  Very well.

18        MR. KING:  We may call an individual named Leslie

19   Davis, who is a man and he is a manager at Moments.

10:28:28   20        THE COURT:  Anyone to my left?  No hands.  Anyone

21   to my right?  No hands.

22        MR. KING:  And finally, we may call an individual

23   named Laura Torres to the stand.

24        THE COURT:  Anyone to my left?  No hands.  Anyone

10:28:43   25   to my right?  No hands.

1       Thank you, Mr. King.

2       Mr. Berlanga, you identified your clients.  Were there

3  any other names you needed to mention?

4           MR. BERLANGA:  No, Your Honor.

10:28:55   5           THE COURT:  Thank you, sir.

6       Well, let me turn my attention back to the case

7  itself.  Has anyone heard of this case?  It's styled,

8  again, Casey Nelson, et al vs. Texas Sugars, Inc.  Anyone

9  heard of the case?  Anyone to my left?  No hands.  Anyone

10:29:19  10  to my right?  No hands.

11       The other issue that I have mentioned was that this

12  was an FLSA case, a Fair Labor Standards Act case.  Does

13  anyone to my left have any knowledge of an FLSA, Fair

14  Labor Standards Act case to my left?  If so, please

10:29:44  15  indicate by raising your hand.

16           PROSPECTIVE JURORS: (No response.)

17           THE COURT:  Very well.  No hands.  To my right,

18  does anyone have any knowledge of an FLSA, a Fair Labor

19  Standards Act case or action?  To my right, if so, please

10:30:01  20  raise your hand.

21           PROSPECTIVE JUROR: (Raised hand.)

22           THE COURT:  Juror Number 36, yes, sir.  How do

23  you know of an FLSA case?

24           PROSPECTIVE JUROR:  I have read about one in

10:30:10  25  Pasadena about something like this now.

*Laura Wells, CRR, RDR*

```
 1            THE COURT:  Okay.  Other than having -- was it
 2   like in the press?
 3            PROSPECTIVE JUROR:  Yes, sir.
 4            THE COURT:  Other than having read a press
 5   account of an FLSA case, do you have any other knowledge
 6   of an FLSA case?
 7            PROSPECTIVE JUROR:  No, sir.
 8            THE COURT:  As a result of having read the press
 9   account about the FLSA case, does that create in you any
10   bias or prejudice such that you could not be fair and
11   impartial in the case?
12            PROSPECTIVE JUROR:  No, sir.
13            THE COURT:  Very well.  Thank you.  Juror
14   Number 20, yes, sir.
15            PROSPECTIVE JUROR:  Would that also involve a
16   right to work case?
17            THE COURT:  No.  That's a little bit different,
18   and we are going -- this case, the central fact is going
19   to be overtime wages and minimum wages.  That's going to
20   be the central issue here.  The right to work is a --
21   that's another coin.
22         Anyone else to my left?  Anyone else to my right?
23            PROSPECTIVE JUROR:  (Raised hand.)
24            THE COURT:  Juror Number 12, yes, ma'am.
25            PROSPECTIVE JUROR:  The same thing as the other
```

*Laura Wells, CRR, RDR*

25

1    juror.  I have read cases on it in the SHRM articles, but

2    that's it.

3         THE COURT:  Okay.  Other than having -- or having

4    read a press account about an FLSA case, has that created

10:31:29    5    in you a bias or prejudice such that you could not be fair

6    and impartial in this case?

7         PROSPECTIVE JUROR:  No, sir.

8         THE COURT:  Very well.  Anyone else?

9         PROSPECTIVE JURORS: (No response.)

10:31:38   10         THE COURT:  Very well.  The plaintiffs in this

11   case must prove their allegations by a preponderance of

12   the evidence.  If the plaintiffs fail to prove their

13   allegations by a preponderance of the evidence, the jury

14   cannot return a verdict for the plaintiffs.

10:32:00   15         Preponderance of the evidence means enough credible

16   evidence to tip an evenly balanced scale to one side.  So

17   if the scales of justice are evenly balanced, the

18   plaintiff must put more weight on their side, ever so

19   slightly, to tip the scales in their favor.  That's called

10:32:24   20   a preponderance of the evidence.  50.1, they have to go

21   that much more in their favor to prevail.  Does

22   everyone -- if the case ends at 50/50, the plaintiffs

23   lose.  They have to tip the scales in their favor.

24         So does everyone understand the definition of

10:32:47   25   preponderance of the evidence?  Does everyone -- let me

26

1   ask it another way.  Does anyone not understand the

2   definition?  If so, please raise your hand on my left.

3           PROSPECTIVE JURORS: (No response.)

4           THE COURT:  I see no hands.  Does anyone not

10:33:02   5   understand the definition on my right?  Please raise your

6   hand.

7           PROSPECTIVE JURORS: (No response.)

8           THE COURT:  I see no hands.

9       This is a different burden than the criminal burden of

10:33:13   10   beyond a reasonable doubt.  Some of you may have served on

11   juries where you were on a criminal jury.  That's a much

12   higher standard of proof.  That's not in effect here.

13       In a civil case, where only money damages are at

14   issue, then the law allows for this lesser burden of

10:33:33   15   proof, preponderance.

16       In a criminal trial, where someone's liberty may be at

17   stake, the law requires a higher burden of proof.  I'm

18   simply explaining that to say that this higher burden of

19   proof that you see in a criminal trial is not present and

10:33:50   20   will not be in use during this trial.

21       The weight and degree of credibility that a juror

22   gives to any piece of evidence, whether it is a witness's

23   testimony or a statement in a document, is up to the

24   juror, based on the juror's perception of the witness and

10:34:10   25   the witness's demeanor.  It is also up to the juror to

1    decide the meaning and importance of each document or

2    other piece of evidence.

3         At the end of the trial, each juror must decide if the

4    plaintiffs have proven one or more of their claims by a

10:34:27   5    preponderance of the evidence.  If so, you should find for

6    the plaintiffs on that claim.  If not, then you must find

7    for the defendants.

8         Does anyone believe that they cannot hold the

9    plaintiff to their standard of proving their case by a

10:34:47   10   preponderance of the evidence, meaning if the plaintiffs

11   fail to convince you that their allegations are true,

12   would all of you -- would all of you be willing to return

13   a verdict for the defendants?

14        Meaning if the defendants -- I'm sorry.  If the

10:35:05   15   plaintiffs fail to tip the scales in their favor, would

16   all of you be willing to apply the law as I have given it

17   to you and return a verdict for the defendant?  If so,

18   please indicate by raising your hand.  Meaning if the

19   plaintiffs fail to meet their burden of proof, can you

10:35:28   20   return a verdict for the defendant?  Raise your hand to my

21   left.

22             PROSPECTIVE JURORS:  (All hands.)

23             THE COURT:  I see all the hands are raised.

24   Thank you.

10:35:38   25        Now, to my right, I'm going to repeat the question and

get you to raise your hands again.  If the plaintiffs fail

to meet their burden of proof as I have explained to you,

can all of you return a verdict for the defendant?  If so,

please raise your hand.

10:35:59      If the plaintiffs fail to meet their burden of proof,

what they have to prove to you, can you return a verdict

for the defendants?  If so, please raise your hand.

              PROSPECTIVE JURORS:  (Several raised hands.)

              THE COURT:  All hands but Number 9.  You are

10:36:12  looking at me.

              PROSPECTIVE JUROR:  I don't understand the

question.  I'm sorry.

              THE COURT:  Perfectly fine.  The plaintiffs have

to, on the scales of justice, move the evidence in their

10:36:23  favor ever so slightly.  If the evidence remains at 50/50

or if the defendants have more weight in their favor, can

you return a verdict for the defense?

              PROSPECTIVE JUROR:  So if the plaintiff

fails to --

10:36:43              THE COURT:  To prove their case.

              PROSPECTIVE JUROR:  -- prove their case, then why

should I have a decision?

              THE COURT:  By saying that they didn't prove

their case, that's a verdict for the defense.

10:36:55              PROSPECTIVE JUROR:  Okay.

*Laura Wells, CRR, RDR*

                    1              THE COURT:  So with that explanation, can you do
                    2   so?
                    3              PROSPECTIVE JUROR:  Yes.
                    4              THE COURT:  Yes.  I want to make sure you
    10:37:03        5   understand.  If you don't understand --
                    6              PROSPECTIVE JUROR:  I'll have to think about it
                    7   here.
                    8              THE COURT:  Okay.  Let me make sure we're clear.
                    9   The plaintiffs come in here with the burden of proof.
    10:37:13       10   They have to prove their case to win.  If they cannot
                   11   prove their case, then you would be required under the law
                   12   to return a verdict for the defense.  Do you understand?
                   13              PROSPECTIVE JUROR:  Yes.  Yes.
                   14              THE COURT:  Is there something unclear about
    10:37:34       15   that?
                   16              PROSPECTIVE JUROR:  Well, I mean, is it that
                   17   black and white?
                   18              THE COURT:  Yes.
                   19              PROSPECTIVE JUROR:  Okay.
    10:37:41       20              THE COURT:  Either the plaintiff wins or the
                   21   defense wins.  If the plaintiffs fail to meet their burden
                   22   of proof, move the scales, the defense wins.
                   23              PROSPECTIVE JUROR:  Right.
                   24              THE COURT:  Right now, the defense is winning
    10:37:54       25   because the plaintiffs haven't offered any evidence

1   whatsoever.

2          PROSPECTIVE JUROR:  Well, they would lose -- they

3   would lose but they would not necessarily win.  The

4   defense wouldn't necessarily win because if there is

10:38:06   5   associated compensation and all that for a verdict, I

6   mean.

7          THE COURT:  I think you are going too far, and I

8   want to make sure we're clear because usually when I hear

9   one potential juror confused, another one may be confused.

10:38:23   10  That's why I'm taking the time to make sure you

11  understand, sir.

12      Walking into the courtroom, the plaintiffs have

13  alleged that the defendants did something wrong.  Do you

14  follow me?

10:38:35   15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Okay.  The plaintiffs have to prove

17  that allegation by a preponderance of the evidence,

18  meaning right now the scales of justice are evenly

19  balanced.  For the plaintiff to win, they have to add more

10:38:50   20  evidence to their side, to tip the scales in their favor.

21  Do you understand?

22         PROSPECTIVE JUROR:  Right.

23         THE COURT:  If the plaintiffs fail to do that,

24  the scales don't move; or if the defense in rebutting the

10:39:03   25  plaintiffs' case adds more evidence to their side, the

1    verdict would be in favor of the defense.

2        Do you understand?

3            PROSPECTIVE JUROR:  Correct.

4            THE COURT:  Okay.  If the plaintiffs failed to do

10:39:16  5    what they are required to do, the question is simply can

6    you return a verdict for the defense?

7            PROSPECTIVE JUROR:  And so -- yes.  The verdict

8    for the defense is the -- yeah.

9            THE COURT:  Well --

10:39:40  10           PROSPECTIVE JUROR:  The verdict being --

11           THE COURT:  Not for the plaintiff.

12           PROSPECTIVE JUROR:  Right.  Got it.  Yes.

13           THE COURT:  Are we clear now?  Okay.  Very well.

14       Now, the flip side of that, which I assume the answer

10:39:58  15   will be, if in fact the plaintiffs meet their burden of

16   proof, they tip the scales in their favor, they have

17   proven their allegations by a preponderance of the

18   evidence, can all of you agree that you will be able to

19   return a verdict for the plaintiffs?  If so, raise your

10:40:19  20   hand.

21           PROSPECTIVE JUROR:  (All hands.)

22           THE COURT:  I see all hands on my left raised.

23   To my right, the flip side of the question I have just

24   gone through, if the plaintiffs meet their burden of

10:40:34  25   proof, meaning they establish their allegations by a

1    preponderance of the evidence, can all of you commit to

2    returning a verdict for the plaintiffs?  If so, please

3    raise your hand.

4            PROSPECTIVE JUROR:  (All hands.)

10:40:52    5            THE COURT:  I see all hands.  All right.

6        Sir, are you an observer?

7            PROSPECTIVE JUROR:  Yes, Your Honor.

8            THE COURT:  Come forward and have a seat over

9    here, please.  I don't want to confuse myself or the

10:41:03    10   lawyers.

11            UNIDENTIFIED SPEAKER:  No problem.

12            THE COURT:  Thank you.  Very well.

13        Now we come to another part.  I have taken an oath as

14   a judge to uphold the law, even laws with which I may

10:41:20    15   personally disagree.  This is a country of laws, not of

16   men and women who are in power who can impose their

17   personal views on us.  We have a law.  You follow the law.

18   I don't get to change the law because I don't like it.

19        You have taken an oath to follow the law.  This case

10:41:43    20   involves a subject matter that some people may not like,

21   exotic dancers who are complaining that they were not paid

22   properly.  Someone may object to either their profession

23   or the fact that they're suing for what they believe to be

24   their just wage.

10:42:05    25        I am going to provide you with instructions and law on

*Laura Wells, CRR, RDR*

1    these issues such that you can properly consider the

2    evidence as it is presented to you.

3        I need a commitment that you can follow the law even

4    though you may have a distaste for the profession of the

10:42:23    5    plaintiffs or you may have a distaste that someone is

6    suing over their wages, whatever the case may be, or that

7    there are individuals on one side and a corporate

8    defendant on another.  None of that matters.  What matters

9    is your ability to follow the law and apply it as I give

10:42:46    10    it to you.

11        So having provided you with that explanation, on my

12    left, can all of you commit to following the law as I've

13    provide it to you, now having heard what this case is

14    about?  If you can follow the law based upon what you have

10:43:04    15    heard thus far, please so indicate by raising your hand.

16                PROSPECTIVE JURORS:   (Several raised hands.)

17                THE COURT:   Okay.  Juror Number 21, you did not

18    raise your hand.  Do you have an issue that you need to

19    apprise me of?

10:43:19    20                PROSPECTIVE JUROR:   Well, I personally don't have

21    respect for either side of this at all, simply by the fact

22    that I don't believe and condone someone who would have a

23    business like this or someone who would work in a business

24    like this.

10:43:33    25                THE COURT:   Okay.  Fair enough.  And that's --

*Laura Wells, CRR, RDR*

1    first of all, I appreciate your honesty because that's

2    very important to both sides.  So thank you.

3        Now, with your beliefs, do you believe that you could

4    set them aside and then at that point follow the law and

10:43:54   5    fairly and impartially hear the case?

6              PROSPECTIVE JUROR:  I don't believe so, no.

7              THE COURT:  Thank you, sir.

8        Anyone else to my left?

9              PROSPECTIVE JURORS: (No response.)

10:44:06   10              THE COURT:  And again, I appreciate Juror

11    Number 21's honesty.  That's exactly what you took an oath

12    to do.  He is doing exactly what he swore that he would

13    do.

14        So does anyone else on my left have similar feelings?

10:44:24   15              PROSPECTIVE JURORS:  (No response.)

16              THE COURT:  I see no additional hands.  Oh, Juror

17    Number 20, yes, sir.

18              PROSPECTIVE JUROR:  I agree with what he said.  I

19    find all of it distasteful as well.

10:44:34   20              THE COURT:  I appreciate that.  And so as

21    distasteful as it may be, we're not -- I'm not here to

22    judge that.  I'm here to provide a forum that's fair and

23    impartial for the enforcement of a federal law regarding

24    overtime wages, if any, that are due to the plaintiffs.

10:44:56   25    Just because of the nature of their work, that does not

*Laura Wells, CRR, RDR*

1    make the law go away.

2         So you would be sitting over here listening to the

3    evidence in this case, and you would have to fairly and

4    impartially do so.  Ultimately, you may have to decide

10:45:19  5    whether or not you are going to decide for the plaintiffs

6    or whether or not they didn't meet their burden and thus

7    find for the defendant.

8         So on the one hand, you would be finding that exotic

9    dancers are due overtime wages or you would be finding

10:45:35  10   that the owner of the club where they danced would be

11   entitled to a verdict in its favor.  Being placed in that

12   position, do you believe that you could be fair and

13   impartial?

14        PROSPECTIVE JUROR:  I just -- I am just kind

10:45:54  15   of -- I feel closed-minded about the whole thing.

16        THE COURT:  Say no more.  I understand, and

17   that's what I needed to hear.  Now, again, both gentlemen,

18   I appreciate your honesty.  It's very important that you

19   do exactly what you did.

10:46:08  20        Anyone else to my left with similarly-held beliefs?

21        PROSPECTIVE JURORS:  (No response.)

22        THE COURT:  I see no additional hands.  Thank

23   you, gentlemen.

24        Now, turning to my right, you have heard Juror Numbers

10:46:20  25   20 and 21 express beliefs regarding the subject matter of

*Laura Wells, CRR, RDR*

1   this case, which I inquired about.  This is important.

2   Because what the plaintiffs expect and what the defense

3   expects is for fair and impartial people to listen to the

4   facts and reach a result based upon that.

10:46:40  5      Based upon the subject matter of the case and when I

6   provide you the law of the case, will you be able to

7   follow the law setting aside the subject matter of the

8   case?  Meaning, the fact that there are exotic dancers on

9   one side and the establishment where they dance on the

10:46:57  10   other, will you -- so my question is:  Will you be able to

11   follow the law?  If so, please indicate by raising your

12   hand.

13         PROSPECTIVE JURORS:  (Several hands raised.)

14         THE COURT:  I see all hands raised.  Thank you.

10:47:14  15   Now, just as a --

16         MR. WALLACE:  Your Honor, there was one that did

17   not.

18         THE COURT:  I'm sorry.  I was going to do part

19   two anyway, which is we heard Juror Numbers 20 and 21

10:47:22  20   express some beliefs about the subject matter.

21   I missed a hand that was not raised.  That was Juror

22   Number 24.  So Juror Number 24, in regards to being able

23   to follow the law, you don't think you would be able to

24   follow the law?

10:47:37  25         PROSPECTIVE JUROR:  I'm not sure about if I

understood what you said about the law.  This is what I
understood.  Someone is not an employee, they don't have
to be paid even minimum wage?

THE COURT:  Someone who is an independent
contractor would not be subject to the requirements of the
Fair Labor Standards Act, which provides overtime wages.
So one of the questions in this case will be whether or
not the plaintiffs were employees of the club or were they
independent contractors of the club.

If they were employees, the Fair Labor Standards Act
will apply to them.  If they were independent contractors
at the club, then it does not apply to them.

Do you follow that?

PROSPECTIVE JUROR:  I follow that.

THE COURT:  Okay.  There will be an explanation
as to how you make that determination.  That will be part
of the law that I provide to you.  But the question
underpinning all of this is, once I provide that law to
you and how you make that determination, whether or not
you are going to be able to look at the law and then,
based upon the evidence, make a fair and impartial
decision or, like Juror Numbers 20 and 21, and I'm using
words that they didn't use, but you felt that the
plaintiffs' work is so distasteful or you found that the
running of this business is so distasteful that you would

1   just be offended and you couldn't follow the law.

2           PROSPECTIVE JUROR:  I just -- I just cannot

3   believe that law exists.  I mean it's -- I mean --

4           THE COURT:  It is part of my job.  I can assure

10:49:30   5   you it does.

6           PROSPECTIVE JUROR:  Well, you know, that is the

7   first time I have heard it.

8           THE COURT:  So that's the question.  And that's a

9   real point because people walk into this building as

10:49:42  10   potential jurors all the time.  And then, myself or one of

11  my colleagues instructs them, hey, this is what the law

12  says.  And people are, I'm shocked that the law says that,

13  but that's the law.

14      And the question is:  If I tell you what the law is,

10:50:01  15   whether or not you are shocked by it or not, can you

16  commit to following the law?  That's the question.  Can

17  you?

18           PROSPECTIVE JUROR:  I mean, I would like to say

19  yes, but I'm still shocked.

10:50:20  20           THE COURT:  Okay.  And you are Juror Number 24.

21  Thank you, sir.

22      All right.  Now this kind of goes back to perhaps the

23  subject matter of the case and lawsuits in general.  So

24  it's going to be a couple of questions or several

10:50:52  25   questions.

*Laura Wells, CRR, RDR*

1    Is anyone a member of an organization that has taken a

2 strong position on lawsuit reform?  And the reason that

3 that is important, this is a lawsuit seeking money

4 damages.  There are organizations out there, both pro and

10:51:16    5 con, that have taken positions on lawsuit reform or

6 lawsuits that seek money damages.  Is anyone on my left a

7 member of such an organization that has taken a strong

8 position on civil lawsuits that seek money damages?

9 Anyone on my left?  If so, raise your hand.

10:51:41   10         PROSPECTIVE JURORS: (No response.)

11         THE COURT:  No hands.  To my right?  You have

12 heard my explanation about organizations that have taken

13 positions both pro and con on civil lawsuits that seek

14 money damages.  Is anyone on my right a member of such an

10:52:00   15 organization?  If so, please raise your hand.  I see no

16 hands.  Thank you.

17    One of the questions, as you already know, is whether

18 or not these plaintiffs were employees of this business.

19 Is there anyone who is a member of an organization, such

10:52:28   20 as a union, which has taken a position on whether or not

21 someone who works at a business is an employee or an

22 independent contractor?  If so, please raise your hand.

23 Anyone on my left?

24         PROSPECTIVE JUROR: (Raised hand.)

10:52:46   25         THE COURT:  Juror Number 21.

*Laura Wells, CRR, RDR*

1          PROSPECTIVE JUROR:  Possibly.  It's not a union,

2    but it is a teachers' federation.

3          THE COURT:  A teachers' federation?

4          PROSPECTIVE JUROR:  Yes, sir.

10:52:55   5          THE COURT:  Okay.  So to your knowledge -- well,

6    what is the name of the teacher organization?

7          PROSPECTIVE JUROR:  ATPE.

8          THE COURT:  ATPE?

9          PROSPECTIVE JUROR:  Yes, sir.

10:53:04   10          THE COURT:  To your knowledge, has ATPE taken a

11    position on this question?

12          PROSPECTIVE JUROR:  To my knowledge, no.

13          THE COURT:  To your knowledge.  That's what I'm

14    more concerned with.  Very well.  Thank you, sir.

10:53:17   15      Anyone else on my left?

16          PROSPECTIVE JURORS: (No response.)

17          THE COURT:  Very well.  To my right, is anyone a

18    member of an organization, such as a union or a trade

19    organization, that has taken a position on the question of

10:53:31   20    whether or not someone who works at a business is an

21    employee or an independent contractor?  If so, raise your

22    hand to my right.

23          PROSPECTIVE JUROR:  (Raised hand.)

24          THE COURT:  Juror Number 23.

10:53:44   25          PROSPECTIVE JUROR:  I'm also a member of ATPE,

1    and to my knowledge, no, they have not done anything like

2    that.  But I am a member.

3              THE COURT:  Very well.  Juror Number 24.

4              PROSPECTIVE JUROR:  I'm also a member of ATPE.

10:53:56   5    As far as I know, they haven't said anything.

6              THE COURT:  What does that stand for again?

7              PROSPECTIVE JUROR:  American Teachers --

8              PROSPECTIVE JUROR:  -- Association of

9    Professional --

10:54:06   10             PROSPECTIVE JUROR:  -- Professional Educators.

11             THE COURT:  Very well.  Thank you.  I feel bad.

12   I should have known that.  My mom was a teacher.

13        Very well.  Anyone else on my right a member of such

14   an organization?  If so, please raise your hand.

10:54:24   15             PROSPECTIVE JURORS: (No response.)

16             THE COURT:  Very well.  Thank you.

17        Now, this kind of goes more to the subject matter of

18   the case, and Juror Numbers 20 and 21 have kind of given

19   me kind of their beliefs on the subject matter.

10:54:55   20        Is there an organization, be it a church, temple,

21   synagogue, a personal belief that you hold that you think

22   would impair your ability to be fair and impartial based

23   upon the fact that we're talking about exotic dancers

24   dancing at a gentleman's club?  Is there any organization

10:55:22   25   or belief that you have that would impact your ability to

*Laura Wells, CRR, RDR*

1    be fair and impartial in this business dispute between the

2    two of them?

3         If so, on my left, raise your hand.

4              PROSPECTIVE JUROR:  (Raised hand.)

10:55:34   5              THE COURT:  That's Juror Number 15?

6              PROSPECTIVE JUROR:  Yes, sir.

7              THE COURT:  Yes, ma'am.  Could you --

8              PROSPECTIVE JUROR:  I'm a Catholic.

9              THE COURT:  You are a Catholic?

10:55:46   10              PROSPECTIVE JUROR:  Yeah.

11              THE COURT:  As a result of being a Catholic, do

12    you believe that the subject matter of this case would

13    impair your ability to be fair and impartial to both

14    sides?

10:55:57   15              PROSPECTIVE JUROR:  Probably.

16              THE COURT:  I'll talk with you about that.  Thank

17    you.  Thank you, ma'am.

18         Anyone else on my left?

19              PROSPECTIVE JURORS: (No response.)

10:56:07   20              THE COURT:  I see no additional hands.

21         Turning to my right, is anyone to my right a member of

22    a church, synagogue, temple or another organization or

23    have another affiliation or have a closely-held belief

24    that would prevent you from being fair and impartial in

10:56:34   25    this case which involves exotic dancers dancing at a

*Laura Wells, CRR, RDR*

gentleman's club and engaged in this business dispute

about wages that just the subject matter alone, based upon

your closely-held beliefs, would prevent you from being

fair and impartial?  If so, please raise your hand.

10:56:55          PROSPECTIVE JURORS:  (Several hands.)

THE COURT:  Juror Number 22.

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  Okay.  And what is it that you want

to tell me about?

10:57:04          PROSPECTIVE JUROR:  I'm a Buddhist.

THE COURT:  You are what?

PROSPECTIVE JUROR:  Buddhist.  I went to Catholic

school.  I think I have a problem with it.

THE COURT:  Well, as a result of your religious

10:57:18  preference and your prior education --

PROSPECTIVE JUROR:  Yes.

THE COURT:  -- when you hear the plaintiffs come

to the stand and testify about what they do for a living

and when you hear the defense talk about the type of

10:57:30  business that he runs, would that prevent you from then

listening and being fair and impartial in this case, you

believe?

PROSPECTIVE JUROR:  I'm not so sure about that.

THE COURT:  Okay.  I'll talk with you a little

10:57:43  later.  I saw another hand, Juror Number 24.  I'm going to

*Laura Wells, CRR, RDR*

1    talk with you a little later as well, too.

2        Anyone else on my right?

3            PROSPECTIVE JURORS: (No response.)

4            THE COURT:  I see no additional hands.  Thank

10:57:59  5    you.

6        Another side of the coin that I just raised.  As you

7    know, the defendant is a corporation doing business as.

8    So on one side we have individuals.  On this side we have

9    a corporation.

10:58:13  10    Does the fact that this is individual versus

11    corporation give anyone pause such that they could not be

12    fair and impartial?  So on my left, that scenario alone,

13    individuals versus a corporation, does that give anyone

14    pause as to their ability to be fair and impartial?  If

10:58:37  15    so, please raise your hand on my left.  I see no hands.

16        Turning to my right, stripping away everything else --

17    bad choice of words.  Taking everything else away,

18    plaintiffs are individuals.  The defense is a corporation.

19    That fact alone, does that give anyone pause as to their

10:59:13  20    ability to be fair and impartial in the case?  If so,

21    please raise your hand on my right.  I see no hands.

22    Thank you.

23        On my left -- this is kind of a multi-tiered question

24    and you can respond to any portion of it.  Has anyone on

10:59:42  25    my left been involved in a wage dispute, your spouse or

*Laura Wells, CRR, RDR*

1  family member been involved in a wage dispute, or a close

2  friend or associate been involved in a wage dispute that

3  you discussed with them?

4      So on my left, has anyone personally or someone close

11:00:05  5  to you been involved in a wage dispute in any shape, form,

6  or fashion on my left?  If so, please raise your hand.

7          PROSPECTIVE JUROR:  (Raised hand.)

8          THE COURT:  Juror Number 19, yes, sir.

9          PROSPECTIVE JUROR:  By wage dispute, are you

11:00:17  10  saying that -- like how much they make or --

11         THE COURT:  Any way.  The amount that they make,

12  whether or not they were properly paid, be it commissions,

13  wages, bonus, whatever the case may be.  So has anyone

14  personally or someone close to you been involved in a wage

11:00:41  15  dispute?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Okay.  Who was it?

18         PROSPECTIVE JUROR:  Me.  I'm self-employed.

19         THE COURT:  Self-employed.  So you were hiring

11:00:47  20  yourself out, and you had a dispute with the client?

21         PROSPECTIVE JUROR:  Well, no.  We had a dispute

22  against us.

23         THE COURT:  Okay.  Could you explain the details,

24  sir.

11:00:56  25         PROSPECTIVE JUROR:  Well, we had a contractor

*Laura Wells, CRR, RDR*

1   working for us that decided that -- we decided to part

2   ways, and he filed for unemployment against us.  And we

3   ended up having to go and take that to -- well, we never

4   went to court, but we had to take it toward the employment

11:01:18   5   commission.

6          THE COURT:  Very well.  As a result of having

7   been -- were you the owner of the company that was --

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  You were the owner of the

11:01:26   10   company that the contractor filed against; is that

11   correct?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Okay.  As a result of having been

14   involved in that dispute, do you have any preconceived

11:01:40   15   notions about the case as I have described it thus far?

16          PROSPECTIVE JUROR:  No, sir.

17          THE COURT:  Very well.  Does that impact your

18   ability to be fair and impartial in this case?

19          PROSPECTIVE JUROR:  No, sir.

11:01:50   20          THE COURT:  Thank you, sir.

21       Anyone else to my left?  You've personally been

22   involved in a wage dispute or someone close to you.

23          PROSPECTIVE JURORS:  (No response.)

24          THE COURT:  I see no additional hands.

11:02:01   25       Turning to my right, have you personally or someone

*Laura Wells, CRR, RDR*

1    close to you been involved in a wage dispute?  If so,

2    please raise your hand.

3              PROSPECTIVE JUROR:  (Raised hand.)

4              THE COURT:  Juror Number 33, yes, ma'am.

11:02:16    5              PROSPECTIVE JUROR:  I have been.

6              THE COURT:  Personally?

7              PROSPECTIVE JUROR:  Personally.

8              THE COURT:  Could you briefly give me the

9    details?

11:02:22   10              PROSPECTIVE JUROR:  I worked for a company that

11   did not pay us the overtime, and we ended up suing the

12   company.

13              THE COURT:  Okay.  So you have been involved in a

14   lawsuit similar to this?

11:02:32   15              PROSPECTIVE JUROR:  Yes.

16              THE COURT:  Okay.  And as a result of having

17   previously sued a company for wages, overtime wages, as

18   you have said, does that create in you any bias or

19   prejudice, based upon what you have heard thus far?

11:02:48   20              PROSPECTIVE JUROR:  No.

21              THE COURT:  Okay.  As a result of having been

22   previously engaged in a dispute, as you have described it,

23   over wages/overtime, do you believe that you could hear

24   the facts of this case and be fair and impartial?

11:03:02   25              PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Very well.  Thank you.

2      Anyone else?  Juror Number 36.

3          PROSPECTIVE JUROR: (Raised hand.)

4          THE COURT:  Yes.

11:03:13   5          PROSPECTIVE JUROR:  My mother was involved in a

6  case against Dow Chemical because she thought she was

7  underpaid.

8          THE COURT:  Okay.  In general or because she was

9  a female or what?

11:03:25   10          PROSPECTIVE JUROR:  I think because she was a

11  female.

12          THE COURT:  Okay.  So a discrimination-type suit;

13  is that correct?

14          PROSPECTIVE JUROR:  Yes.

11:03:32   15          THE COURT:  Okay.  So as a result of your mother

16  having been engaged in a dispute against her employer for

17  wages, does that create in you any bias or prejudice such

18  that you could not be fair and impartial in this case?

19          PROSPECTIVE JUROR:  No.

11:03:50   20          THE COURT:  Okay.  Thank you, sir.

21      Before becoming a judge, I did what these lawyers do

22  and I frequently got to ask questions of the panel and I

23  would ask questions like I have asked thus far to try to

24  determine if everyone could be fair and impartial and I

11:04:26   25  would think that I had asked all the questions that would

1   give me the information to properly determine whether or

2   not someone could be fair and impartial, and sometimes I

3   had a big gaping blind spot because you are doing exactly

4   what I asked you to do.  You are answering questions.  You

11:04:47   5   are not volunteering information.  And there may be

6   something that I have said thus far that you are thinking

7   in your mind that if the judge asks me this question

8   specifically, I'm going to tell him this; but I haven't

9   asked the right question.

11:05:04   10      So this is my catchall question.  Based upon what I

11   have described about the case thus far, what you have

12   heard, is there anything that you believe that you need to

13   inform me of regarding your ability to be fair and

14   impartial in this case, be it the subject matter of the

11:05:32   15   case, the lawyers that you have met thus far, anything,

16   and I just haven't asked the right question that would

17   trigger you to raise your hand and tell me something that

18   I ought to know?  Anyone on my left?

19            PROSPECTIVE JURORS: (Several hands.)

11:05:49   20            THE COURT:  Okay.  Perfect.  Juror Number 27?

21            PROSPECTIVE JUROR:  I think that I would have a

22   biased towards just assuming that somebody is an employee

23   and then, therefore, they should have overtime wages.  I

24   don't really like the idea that somebody isn't paid what

11:06:10   25   they should be paid.  I think I would have a bias in

*Laura Wells, CRR, RDR*

1    general about that.

2         THE COURT:  So if -- well, let me ask you this:

3    If it is established that through facts in evidence that

4    the plaintiffs were, in fact, employees and they put on

11:06:30   5    proof of damages that is credible to you, as a result of

6    this bias, as you have called it, would you award them

7    more than what they are asking for or treat them special

8    as a result of the fact that they have been able to

9    establish that they are employees?

11:06:55   10         PROSPECTIVE JUROR:  I don't think that I would

11    award more than what they have established, no.

12         THE COURT:  Okay.  Part two.  Remember I said for

13    the preponderance of the evidence they start out equal.

14    And so if the facts come out, the evidence comes out and

11:07:12   15    it remains equal, meaning that the plaintiffs have not met

16    their burden of proof, have not done the preponderance of

17    the evidence but you have a biased because you believe

18    that employees should be properly paid, would you change,

19    in your mind, the presentation of the evidence such that

11:07:33   20    the plaintiffs would, in fact, meet their burden just

21    because you have a biased in favor of employees being

22    properly paid?

23         PROSPECTIVE JUROR:  I might.  I'm not sure but --

24    I'm not sure.

11:07:46   25         THE COURT:  Thank you.  Anyone else to my left?

*Laura Wells, CRR, RDR*

1          PROSPECTIVE JUROR:  (Raised hand.)

2          THE COURT:  Juror Number 20.  Yes, sir.

3          PROSPECTIVE JUROR:  I have an opinion that this

4   is a frivolous lawsuit.

11:07:54   5          THE COURT:  Okay.  I'm going to speak with you a

6   little bit later about that.  Thank you.

7      Anyone else to my left?

8          PROSPECTIVE JURORS: (No response.)

9          THE COURT:  No.  No additional hands.

11:08:04   10      So to my right, you have heard me explain that

11   sometimes I think I have all the questions asked but I

12   didn't ask the right one for you.  And a perfect example

13   was Juror Number 27, I believe, over in the corner who

14   mentioned about a biased -- a potential bias towards

11:08:20   15   employees.

16      So my question to you is:  Is there something that I

17   did not ask that would have triggered you to raise your

18   hand to tell me something that I need to know, either

19   involving the subject matter of the case, the parties to

11:08:33   20   the case, or anything that you have heard thus far?  If

21   so, please raise your hand.

22          PROSPECTIVE JURORS: (No response.)

23          THE COURT:  I see no hands.  Thank you.

24      Now, one other deal, and you don't have to mention

11:08:53   25   this now.  I had mentioned that we're going to be in trial

1    through close of business on Thursday.  Trial days are

2    9:00 to 5:00.  And so, if there is a conflict that I need

3    to know about, I'll tell you a little bit more about that

4    later.  I'll give you the opportunity to talk about that.

11:09:13   5    I'm not going to foreclose you from talking about that.

6    But know that that is going to come a little bit later.

7    So I'll explain the details surrounding that.

8         So what I am going to do at this time, I have given

9    the lawyers a limited amount of time to talk with you

11:09:32  10   about this case and they are going to ask certain

11   questions that perhaps I asked but as a follow-up to more

12   specific jurors or subject matters that they want to

13   cover.

14        They are not going to argue their case.  They are not

11:09:48  15   going to present any evidence in this case.  They are

16   simply trying to determine who could be the best fair and

17   impartial jurors or who shouldn't be on the jury because

18   of their bias or prejudice which exists.  So it will be

19   short for each side.

11:10:09  20        So with that being said, does plaintiffs' counsel wish

21   to voir dire the panel at this time?

22             MR. BERLANGA:  Yes, Your Honor.

23             THE COURT:  You may proceed, sir.

24             MR. BERLANGA:  Good morning, ladies and

11:10:17  25   gentlemen.

*Laura Wells, CRR, RDR*

1    PROSPECTIVE JURORS:  Good morning.

2    MR. BERLANGA:  I'm going to be walking between

3    the sides because the courtroom isn't ideally set up to

4    address you all at the same time.  If I'm on one side and

11:10:26   5    somebody can't hear me, would you please let me know.  Is

6    that fair?

7    PROSPECTIVE JURORS:  Yes.

8    MR. BERLANGA:  There are very few opportunities

9    in a trial that I get to address you directly.  I want to

11:10:36   10   introduce myself.  As I said, my name is Warren Berlanga.

11   I'm from Houston.  I was born here.  I was raised here.  I

12   did all my school here.  I haven't really found a reason

13   to leave yet.  I enjoy hanging out with my wife.  I was

14   married a little over a year ago.  If my mother-in-law and

11:10:54   15   my mother have their way, I'm going to have a new addition

16   to the family soon.  So I just wanted to give you a little

17   background on me.  I don't have much time.  So it's got to

18   be brief.

19       Now, I know that there are some engineers in the

11:11:08   20   crowd.

21   PROSPECTIVE JURORS:  (Several hands raised.)

22   MR. BERLANGA:  I see some hands.  All right.  You

23   are juror number?

24   PROSPECTIVE JUROR:  29.

11:11:14   25   MR. BERLANGA:  Guys, I can't see your numbers.

Laura Wells, CRR, RDR

1  My eyes are bad.  My wife has been on me about that and

2  getting glasses.  I'm going to ask you for the numbers.  I

3  see hands.

4      This is a question generally for engineers.  It's been

11:11:26  5  my experience that engineers generally like things to be

6  precise, right?  You like calculations.  You want things

7  to be exact.

8      The reason I ask this question is because the burden

9  of proof in this case, the preponderance of the evidence,

11:11:37  10  the scales, that's more of a concept, right?  That's not a

11  calculation.  That's not -- that's not math that you can

12  do.

13      Now, are there any engineers in the crowd that are

14  going to have a problem applying the burden of proof, the

11:11:51  15  tipping of the scales, because of the work they do?

16  Anybody going to want things exact and precise?  Because

17  you are not going to get the exact or precise measurements

18  in the case.

19          PROSPECTIVE JUROR:  To make a decision there has

11:12:04  20  to be -- I mean, it has to be laid out.  You have to have

21  the law.  But to be able to make the decision, you have to

22  have a clear-cut criteria to -- it's not just really I

23  feel this way.  That's not the way to do it.

24          MR. BERLANGA:  I appreciate that.  That's not

11:12:20  25  what is going to happen here.  You are going to get the

1    criteria.  It's just a little more etherial than engineers

2    seem to want in their work.

3        Are you going to be able to apply the concept of that

4    burden of proof, given your work?  Anybody feel like they

11:12:35   5    are going to have a problem with this, any engineer?

6                PROSPECTIVE JUROR:  (Raised hand.)

7                MR. BERLANGA:  Juror Number 8.

8                THE COURT:  Yes.

9                PROSPECTIVE JUROR:  I run a data analytics team

11:12:46  10    for 16 people.  It is fairly specific.  I can't say for

11    certain, but I just want to bring it up to you.

12                MR. BERLANGA:  Thank you very much.  Anybody over

13    here?

14                PROSPECTIVE JURORS: (No response.)

11:12:54  15                MR. BERLANGA:  Okay.  Anybody have employees on

16    your payroll?  Anybody in business with employees on a

17    payroll?

18                PROSPECTIVE JUROR:  (Raised hand.)

19                MR. BERLANGA:  You are juror number?

11:13:05  20                PROSPECTIVE JUROR:  Juror Number 28.

21                MR. BERLANGA:  Do I see any hands on the left

22    side?

23                PROSPECTIVE JUROR:  (Several hands raised.)

24                MR. BERLANGA:  Yes, sir.  You are Juror

11:13:12  25    Number 17.

1                PROSPECTIVE JUROR:   Number 17.

2                MR. BERLANGA:   Juror Number 8.

3                PROSPECTIVE JUROR:   Yeah.   I have employees and

4        some contractors that work in my group.

11:13:19    5                MR. BERLANGA:   And, ma'am, you are juror number?

6                PROSPECTIVE JUROR:   I am Juror 12.   I'm a human

7        resources manager.

8                MR. BERLANGA:   How many employees do you manage?

9                PROSPECTIVE JUROR:   About 650.

11:13:30   10                MR. BERLANGA:   650 employees?

11                PROSPECTIVE JUROR:   Yes.   We have eight different

12        states.

13                MR. BERLANGA:   Quite a few.   These employees, do

14        you pay them a wage?

11:13:37   15                PROSPECTIVE JUROR:   Yes.

16                MR. BERLANGA:   Do you consider any of those

17        employees on your -- do you consider anybody on -- let me

18        just scratch that question.   Do you ever work with

19        independent contractors?

11:13:47   20                PROSPECTIVE JUROR:   No.

21                PROSPECTIVE JUROR:   Sir.

22                MR. BERLANGA:   Yes, sir.

23                PROSPECTIVE JUROR:   I am Juror Number 10.   I work

24        with independent contractors in my business.

11:13:54   25                MR. BERLANGA:   You work with independent

*Laura Wells, CRR, RDR*

1    contractors in your business?

2              PROSPECTIVE JUROR:  Yes.

3              MR. BERLANGA:  What kind of business do you do?

4              PROSPECTIVE JUROR:  Construction.

11:14:01   5              PROSPECTIVE JUROR:  I guess I have two

6    contractors that work for me.

7              MR. BERLANGA:  Juror Number 8.  Okay.  Is there

8    anybody else over here who raised their hand?

9              PROSPECTIVE JUROR: (Raised hand.)

11:14:13  10              MR. BERLANGA:  Juror Number 19.  Anybody else?

11   I'm sorry.  My eyes.

12              PROSPECTIVE JUROR:  28.

13              MR. BERLANGA:  Number 28.

14       I know there are some teachers in the crowd.  I heard

11:14:23  15   a lot about the teachers.  I want to ask the teachers a

16   question.  Are the teachers employed by the school

17   district?

18              PROSPECTIVE JUROR:  Yes.

19              MR. BERLANGA:  Let's raise the hands of the

11:14:35  20   teachers in the audience.

21              PROSPECTIVE JURORS:  (Several hands.)

22              PROSPECTIVE JUROR:  I'm employed by the district.

23   I'm Number 23.  I'm paid out of the Title 1 federal funds.

24              MR. BERLANGA:  Okay.  That's Juror Number 23.

11:14:45  25              PROSPECTIVE JUROR:  I'm employed by the district.

1           MR. BERLANGA:  Anybody over here?

2           PROSPECTIVE JUROR:  I work at a community

3  college.

4           MR. BERLANGA:  Okay.  And what community college

11:14:54  5  is that?

6           PROSPECTIVE JUROR:  Houston Community College.

7           MR. BERLANGA:  You are Juror Number 14?

8           PROSPECTIVE JUROR:  Yes.

9           MR. BERLANGA:  Now, does the school district pay

11:15:04  10  the teachers?

11           PROSPECTIVE JUROR:  The community college pays

12  us.

13           THE COURT:  Speak up, sir.

14           PROSPECTIVE JUROR:  The community college pays

11:15:10  15  us.  We are paid through the community college.  I do not

16  work with a school district.  I work for the community

17  college.

18           MR. BERLANGA:  So you -- the community college

19  pays you for your work as a teacher?

11:15:19  20           PROSPECTIVE JUROR:  Yes, sir.

21           MR. BERLANGA:  Thank you very much.

22           PROSPECTIVE JUROR:  You are welcome.

23           MR. BERLANGA:  Did I see any teachers over here?

24           PROSPECTIVE JUROR:  Yes, sir.  I get paid by the

11:15:27  25  school district.

*Laura Wells, CRR, RDR*

1          MR. BERLANGA:  The school district.  Thank you.

2     Did anybody here ever research how to get out of jury

3     duty before coming here today?  I have got to ask.

4          PROSPECTIVE JURORS:  (Laughter.)

11:15:46    5          MR. BERLANGA:  I ask that question only because

6     we are here to get people that just want to look at the

7     facts and we need the right jury to decide the dispute.

8     That's why I asked that question.  If somebody doesn't

9     want to be here, they are probably not the right juror for

11:16:00   10     this job.

11          Now, let's see.  A couple of questions here.  The

12     judge, he did a pretty good job of explaining the burden

13     of proof, the preponderance of the evidence.  The scale

14     just has to be tipped ever so slightly in favor of the

11:16:24   15     evidentiary questions that are going to be asked.

16          I have heard other judges give a football analogy, for

17     those that like football.  So I'll give a football

18     analogy.  The ball just has to be moved past the 50-yard

19     line ever so slightly.

11:16:38   20          Does anybody -- does anybody -- does anybody still

21     have an issue with the burden of proof, applying the

22     burden of proof, the preponderance of the evidence?

23     Anybody have any questions about it?

24          PROSPECTIVE JUROR:  I do.  So how do you know you

11:16:54   25     get past the 50 percent mark?

*Laura Wells, CRR, RDR*

60

1          THE COURT:  That's Juror Number 9.

2          MR. BERLANGA:  Juror Number 9.  Well, that's for

3    the jurors to determine.

4          PROSPECTIVE JUROR:  Based off of?

11:17:04    5          MR. BERLANGA:  The evidence that's going to be

6    presented at the trial by both sides.  You are going to

7    look at the evidence, and you are going to weigh it.

8          PROSPECTIVE JUROR:  Against?  What are you going

9    to weigh that evidence against?

11:17:16   10          THE COURT:  Well, let me give you kind of another

11    example.  Are you a father?

12          MR. BERLANGA:  No.

13          THE COURT:  Okay.  Your son, if you had a son,

14    you walk into a room and there is something spilled on the

11:17:28   15    floor and you call your son in and you inquire as to

16    whether or not he did it.  You make a determination, based

17    upon what he is telling you where he was at when this

18    happened, either you believe him or you don't, right?

19          So that's the same scenario in that a witness will

11:17:45   20    come to the stand.  They will tell you something.  And you

21    are going to make an evaluation as to whether or not you

22    believe them or not, based upon the circumstances and

23    the -- that they have presented to you by other evidence.

24          So you'll have the opportunity to make that

11:18:00   25    evaluation, yes, that's a preponderance of the evidence

*Laura Wells, CRR, RDR*

1    or, no, it's not.

2            PROSPECTIVE JUROR:  Okay.

3            MR. BERLANGA:  Thank you, Your Honor.

4        Thank you Juror Number 9.

11:18:12    5            THE COURT:  Yes.

6            MR. BERLANGA:  Anybody in the audience here -- is

7    anybody an independent contractor themselves?  And I want

8    to see hands on both sides, please.

9            PROSPECTIVE JURORS:   (Several raised hands.)

11:18:21    10            MR. BERLANGA:  All right.  Juror Number 2, Juror

11   Number 19.

12            PROSPECTIVE JUROR:  Do you mean owning your own

13   business or working for the contractor?

14            MR. BERLANGA:  Do you own your own business?

11:18:32    15            PROSPECTIVE JUROR:  No.  Just asking you.

16            MR. BERLANGA:  Do you define yourself as an

17   independent contractor?

18            PROSPECTIVE JUROR:  Yes.  I don't own the

19   company.

11:18:39    20            MR. BERLANGA:  Thank you.  Juror Number 10, Juror

21   Number 25, and Juror Number --

22            PROSPECTIVE JUROR:  36.

23            MR. BERLANGA:  Juror Number 36.  Thank you very

24   much.

11:18:47    25        Now, the independent contractors on this side, let me

1 see who raised their hand.  I apologize.  Sir, Juror

2 Number 2, what do you do, sir?

3    PROSPECTIVE JUROR:  Consulting through a

4 contractor.  I have an LLC and --

11:19:02 5    MR. BERLANGA:  So you have your own business?

6    PROSPECTIVE JUROR:  I'm a single employee.  Just

7 one employee.

8    MR. BERLANGA:  You are a single employee but you

9 are an independent contractor and you are running your own

11:19:11 10 business?

11    PROSPECTIVE JUROR:  Yes.

12    MR. BERLANGA:  And you established an LLC?

13    PROSPECTIVE JUROR:  Yes.

14    MR. BERLANGA:  Do you keep business records?

11:19:18 15    PROSPECTIVE JUROR:  I file and pay taxes.

16    MR. BERLANGA:  Do you do statements of revenue,

17 profit and loss?

18    PROSPECTIVE JUROR:  I've been only doing it for

19 six or eight months.  I do.

11:19:27 20    MR. BERLANGA:  You keep books?

21    PROSPECTIVE JUROR:  Yes.

22    MR. BERLANGA:  Do you know or do you have any

23 idea what sort of makes an independent contractor as

24 opposed to an employee?

11:19:38 25    PROSPECTIVE JUROR:  Vaguely.  It seems like --

1    well, one is, you know, whether --

2              THE COURT:  Well, just a moment.  Just a moment.

3    I don't want to go into a description of the law because

4    that has the potential to not be correct.  I understand

11:19:51    5    that you don't know.  I don't want it to be misstated.

6    We'll get to that later.

7              PROSPECTIVE JUROR:  I can just tell you what I

8    do.  That's all I can tell you.

9              THE COURT:  Yes.

11:19:59   10              MR. BERLANGA:  Thank you for that.  Now, are

11    there any jurors in the audience that feel like there is a

12    question that I should have asked that I didn't ask?  That

13    is sort of my catchall.  I know that Your Honor has a

14    catchall.  I have a catchall, too.  I'm going to come over

11:20:20   15    on this side.  Does anybody on this side feel like they

16    have a question that I should have asked that I didn't

17    ask?

18              PROSPECTIVE JURORS: (No response.)

19              MR. BERLANGA:  Now, can I see the hands of people

11:20:33   20    that said that they had an issue with the work of exotic

21    dancing or the ownership of an exotic dancing club?  Can I

22    see anybody that had an issue with that?

23              PROSPECTIVE JUROR:  (Raised hand.)

24              MR. BERLANGA:  Ma'am, you are --

11:20:49   25              PROSPECTIVE JUROR:  Juror Number 15.

*Laura Wells, CRR, RDR*

64

1          MR. BERLANGA:  Your issue with exotic dancing --

2          THE COURT:  Counsel, we're going to speak with

3    those jurors privately.

4          MR. BERLANGA:  Thank you, Your Honor.

11:21:06    5      I think that may be all I have for you guys.  You are

6    lucky.  Is there anybody here that is not going to apply

7    the law 100 percent in this case?  Other than people that

8    Your Honor is going to talk to later on in private,

9    anybody feel like they can't apply the law that Your Honor

11:21:26   10    gives to you?  Anybody feel like they can't do that

11   100 percent because of any reason whatsoever?  And anybody

12   that's going to be speaking with the judge in private

13   later on, I don't need you to raise your hands.  Just

14   anybody else out there that feels like for any reason they

11:21:40   15    can't apply the law 100 percent in this case?

16          PROSPECTIVE JURORS: (No response.)

17          MR. BERLANGA:  Thank you.  I know that -- I have

18   seen the intake sheets.  And so I know that there are some

19   people out there that have been jurors before.  Can I see

11:21:59   20    the hands of people that have been jurors.

21          PROSPECTIVE JURORS:  (Several hands.)

22          MR. BERLANGA:  Juror Number 4, how was it serving

23   on a jury?

24          PROSPECTIVE JUROR:  I served on a criminal jury.

11:22:12   25    It was a little disappointing, I would say.

*Laura Wells, CRR, RDR*

65

1      MR. BERLANGA:  Why is it disappointing?

2      PROSPECTIVE JUROR:  Because we deliberated for

3  three days and could not come to a unified decision.

4      MR. BERLANGA:  You say it was disappointing.  Was

5  the experience rewarding at all, at the end of the day, to

6  go in and be a part of the process, even though you

7  weren't happy with the result?  Was the experience itself

8  rewarding?

9      PROSPECTIVE JUROR:  Not based on the end result,

10  no.

11      MR. BERLANGA:  And is there anything about that

12  experience that is going to make it hard for you to be

13  fair to the parties in this case?

14      PROSPECTIVE JUROR:  No.

15      MR. BERLANGA:  Anybody else?  Thank you for

16  sharing.

17    Yes, Juror Number 6.

18      PROSPECTIVE JUROR:  I served on a criminal jury

19  and I --

20      MR. WALLACE:  Judge, I can't hear.

21      THE COURT:  Ma'am, could you stand up and let the

22  microphone pick you up a little bit better.

23      PROSPECTIVE JUROR:  (Complying.)

24      THE COURT:  Thank you.

25      PROSPECTIVE JUROR:  I found it interesting and

*Laura Wells, CRR, RDR*

1    I -- I don't know.  I thought that the whole process was

2    interesting.

3              MR. BERLANGA:  So you were engaged, it felt good

4    to be part of that process?

11:23:20    5              PROSPECTIVE JUROR:  Yes.

6              MR. BERLANGA:  Did you say that was a criminal

7    jury?

8              PROSPECTIVE JUROR:  It was a DWI case.

9              MR. BERLANGA:  A DWI case.  Thank you very much

11:23:27   10    for sharing that.  I appreciate that.

11         Anybody else over here on this side?

12              PROSPECTIVE JUROR:  (Raised hand.)

13              MR. BERLANGA:  You are Juror Number 16?

14              PROSPECTIVE JUROR:  16, yes.  I have been on a

11:23:37   15    jury for both civil and criminal.  I found it very

16    rewarding that I was able to participate.

17              MR. BERLANGA:  On both sides?

18              PROSPECTIVE JUROR:  Both sides.

19              MR. BERLANGA:  On the criminal and the civil?

11:23:45   20              PROSPECTIVE JUROR:  Yes.

21              MR. BERLANGA:  Thank you very much.  I appreciate

22    you sharing, Juror Number 16.

23         Anybody over here ever served on a jury before?  Juror

24    Number 10, what kind of case was that?

11:23:56   25              PROSPECTIVE JUROR:  Criminal.

*Laura Wells, CRR, RDR*

1          MR. BERLANGA:  What was the charge?

2          PROSPECTIVE JUROR:  Domestic violence and

3  stalking.

4          MR. BERLANGA:  And did you hear the questions I

11:24:03  5  had for the jurors over there sort of about the

6  experience?  Can you tell me about it?  How was it?  Did

7  you feel good to take part in it?

8          PROSPECTIVE JUROR:  It was quick, rapid, got

9  selected, went to trial, wrapped up very quickly.

11:24:19  10          MR. BERLANGA:  How long did it last?

11          PROSPECTIVE JUROR:  For jury duty, we got picked

12  and went home that day.  So, same day.

13          MR. BERLANGA:  So that was pretty quick.  This

14  might take another day or two.  Are you going to have a

11:24:33  15  problem staying engaged if this is a little more lengthy

16  than the other one?

17          PROSPECTIVE JUROR:  I don't see a problem, no.

18          MR. BERLANGA:  Did you stay pretty engaged in the

19  first one?

11:24:42  20          PROSPECTIVE JUROR:  Yes.

21          MR. BERLANGA:  Anybody over here?

22          PROSPECTIVE JUROR:  (Raised hand.)

23          MR. BERLANGA:  Juror Number 11.

24          PROSPECTIVE JUROR:  Yes.  I served on a jury.

11:24:51  25          MR. BERLANGA:  How was your experience?  It's

1    okay.  You can tell me you didn't like it and you wanted

2    to go home the whole time.  I want to hear that.

3                PROSPECTIVE JUROR:  I did.

4                THE COURT:  Five minutes, Counselor.

5                MR. BERLANGA:  Thank you, Your Honor.

6         How long did that last?

7                PROSPECTIVE JUROR:  Just a couple of days.

8                MR. BERLANGA:  Were you able to stay engaged over

9    that couple of days?

10                PROSPECTIVE JUROR:  Yes.

11                MR. BERLANGA:  Did you take notes?

12                PROSPECTIVE JUROR:  No.

13                MR. BERLANGA:  Just wondering.  Thank you, Juror

14   Number 11.  Someone else?

15                PROSPECTIVE JUROR:  It was civil, about three

16   days.

17                MR. BERLANGA:  What kind of case was it?

18                PROSPECTIVE JUROR:  It was a bus company.  It was

19   a bus driver.  It was an accident.

20                MR. BERLANGA:  And how long did that last?

21                PROSPECTIVE JUROR:  It was three days.

22                MR. BERLANGA:  A three-day trial.  At the end,

23   did you reach a verdict?

24                PROSPECTIVE JUROR:  Yes, sir.

25                MR. BERLANGA:  At the end of the day, when

*Laura Wells, CRR, RDR*

1    everything was said and done, did you feel good about your

2    participation?

3                PROSPECTIVE JUROR:  Yes, sir.

4                MR. BERLANGA:  Did you find the experience

11:25:44   5    interesting?

6                PROSPECTIVE JUROR:  And rewarding.

7                MR. BERLANGA:  And rewarding.  Anyone else on the

8    front row?

9                PROSPECTIVE JUROR:  (Raised hand.)

11:25:47  10                MR. BERLANGA:  Juror Number 25.

11                PROSPECTIVE JUROR:  Yeah.  It was a criminal

12    case, but there was a mistrial by the end of the first

13    day.

14                MR. BERLANGA:  It didn't last very long?

11:25:59  15                PROSPECTIVE JUROR:  No.

16                MR. BERLANGA:  Now, the little taste that you got

17    of it, did you feel like you were engaged in the process?

18                PROSPECTIVE JUROR:  Yes.

19                MR. BERLANGA:  Thank you very much, Juror

11:26:07  20    Number 25.  Thank you.

21        Anybody else?

22                PROSPECTIVE JURORS:  (No response.)

23                MR. BERLANGA:  Let's see.  I think I spoke to the

24    folks on the second row.  Anybody on the second row here

11:26:16  25    get served to be on a jury?

1          PROSPECTIVE JUROR:  (Raised hand.)

2          MR. BERLANGA:  Juror Number 17.

3          PROSPECTIVE JUROR:  I have been both criminal and

4     civil.  It's an interesting experience.

11:26:25    5          MR. BERLANGA:  You thought it was rewarding

6     overall?

7          PROSPECTIVE JUROR:  Yeah.

8          MR. BERLANGA:  It is a very rewarding experience

9     definitely.

11:26:31   10          PROSPECTIVE JUROR:  Yeah.  I felt like I had done

11    what I should do.

12          MR. BERLANGA:  You did your part.  Thank you very

13    much, Juror Number 17.  I appreciate that.

14        Has anybody else on the second row done this?

11:26:41   15          PROSPECTIVE JUROR: (Raised hand.)

16          MR. BERLANGA:  I have spoken to you.  Anybody on

17    the back row there?

18          PROSPECTIVE JUROR:  (Raised hand.)

19          MR. BERLANGA:  Juror Number 28.

11:26:47   20          PROSPECTIVE JUROR:  I was on a civil case.

21          MR. BERLANGA:  How did you feel about that

22    experience?

23          PROSPECTIVE JUROR:  Indifferent.

24          MR. BERLANGA:  Thank you, Juror Number 28.

11:26:55   25        Again, guys, this is the last time or one of the last

*Laura Wells, CRR, RDR*

times I get to address you directly.  I just want to thank
you for staying involved and paying attention.  I look
forward to presenting my case to you, along with my
colleagues here, and it was a pleasure meeting you.  Those
of you that don't actually end up on the jury, I want to
thank you for being here and doing your part because, like
Your Honor said, your participation makes the system work,
and I really want to thank you for that.  Thank you.

THE COURT:  Thank you, Counselor.

Does counsel for the defense wish to voir dire the
panel at this time?

MR. WALLACE:  Yes, Your Honor.

THE COURT:  You may proceed.

MR. WALLACE:  My name is Casey Wallace.  I
introduced myself to you a few minutes ago.  Like
Mr. Berlanga, I am a native Houstonian.  I have practiced
my entire life in the city of Houston.  The first trial I
ever tried as a young lawyer was in this courtroom when
Judge Rosenthal had this courtroom.  It was that long ago.
So it's fun to be back in this courtroom.  I look forward
to working through the law and working through the facts
with all of you, but I do want to drill down on a few
questions that Judge Bennett asked you on some of the
topics.

A couple of jurors or a couple of the panel members

1    said that they had a little hesitancy or a little trouble

2    with the idea of someone not being an employee.  This is a

3    case about classification of independent contractors or

4    employees.  There is lots of independent contractors in

11:28:34    5    the country:  insurance agents, contractors, welders,

6    consultants, nurses that go from hospital to hospital,

7    beauticians and barbers who rent chairs and cut hair.  Not

8    everybody is an employee.

9          Does anybody have a problem with the fact that some

11:28:52   10    people in this country are not classified as employees,

11    don't make minimum wage, and earn their income in a

12    different kind of fashion than what you would typically be

13    accustomed to hearing?

14                PROSPECTIVE JUROR: (Raised hand.)

11:29:07   15                MR. WALLACE:  Yes, ma'am.  Juror Number 27.

16                PROSPECTIVE JUROR:  Number 27.  I very much

17    dislike that system.  So I have a big bias for it.

18                MR. WALLACE:  You have a bias that everyone

19    should be classified as an employee?

11:29:21   20                PROSPECTIVE JUROR:  Or paid minimum wage with

21    overtime and that kind of stuff, yeah.

22                MR. WALLACE:  Thank you for your candor.  That's

23    what we're looking for is candor.  There is nothing at all

24    wrong with the way you feel.

11:29:33   25          Does anybody else feel the same way that Juror

*Laura Wells, CRR, RDR*

Number 27 feels, that everyone should be classified as an
employee and make minimum wage and be subject to overtime
strictures and all that?

PROSPECTIVE JURORS: (No response.)

11:29:48     MR. WALLACE:  By a raising of hands, can I find
those people who are comfortable with the fact that there
are independent contractors who contract out their labor
and their services to make money in that fashion?

PROSPECTIVE JURORS:  (Several hands.)

11:30:02     MR. WALLACE:  Okay.  Thank you.  I want to talk a
little bit about bias and prejudice.  Those terms have
been used a lot in this courtroom.  During this panel, I'm
going to use it a lot, too.  No one likes to be accused of
being biased or prejudiced.  Every day we hear these terms
11:30:25     that so-and-so is prejudiced against a foreigner or
somebody is biased against somebody because they are short
or somebody has a problem with someone's skin or religion.
That's not the kind of bias and prejudice we're talking
about.  Okay.  Not at all.

11:30:40     I'm going to use my brother as a prime example.  He is
one of the finest men I know.  But he is biased and
prejudiced against police officers.  Why?  Because he is a
mad man when he gets behind the wheel.  He can't do
anything but speed, and he thinks every time he gets a
11:30:57     ticket that the police officer is wrong.  I don't know

*Laura Wells, CRR, RDR*

1   that he thinks the police officer is lying or making it up

2   but I have been with him and I'm traveling in the car when

3   he gets pulled over and I look at him like, well, why do

4   you think you shouldn't get this ticket?  You were

5   speeding like crazy.

6        I would not -- if I was representing a police officer,

7   I would not want him to be a juror because he would be

8   biased and/or prejudiced when he walked in the door when

9   he is judging that police officer if the police officer

10  were a civil defendant in the case.

11       Does that make sense to anybody?  Does that not make

12  sense to anybody that that is the kind of bias and

13  prejudice we're talking about here?  My brother isn't

14  biased or prejudiced against anybody for any reason that

15  is like the color of your skin or your religion or the

16  fact that you are female or anything like that, but he is

17  biased and prejudiced on the issue of police officers.

18       Do any of you all have that same bias and prejudice --

19  and it's okay -- about a topless club?  I represent a

20  topless club, ladies and gentlemen.  Okay.  I'm just going

21  to be candid with you.  I own that.  I represent a topless

22  club.  The topless club is the defendant in this lawsuit.

23  Do any of you have a preconceived bias or a preconceived

24  prejudice in your mind about topless clubs?

25            PROSPECTIVE JURORS:  (Several hands raised.)

*Laura Wells, CRR, RDR*

1        MR. WALLACE:  Okay.  Number 15 and Number 21, I

2  think, Judge, we're going to talk to them separately,

3  correct?

4        THE COURT:  That is correct.

11:32:24  5        MR. WALLACE:  Anyone else?  Number 9, yes, sir.

6        PROSPECTIVE JUROR:  As to the question we were

7  asked before in regard to making a decision on the law,

8  yes, I may have a bias towards topless clubs, but I can

9  still make a decision based on the law.

11:32:37  10        MR. WALLACE:  Okay.

11        PROSPECTIVE JUROR:  That's why I didn't come

12  forward before, but it was specifically asking about in

13  regards to the law.  You asked the more general question

14  as part -- and I think most people in here would probably

11:32:47  15  have some kind of bias.

16        MR. WALLACE:  That's what we're here to find out,

17  okay, because all we want are fair and impartial fact

18  finders.  That's all we want.  If you have a preconceived

19  bias or a preconceived prejudice against topless clubs,

11:33:03  20  then I would like to know.

21        PROSPECTIVE JUROR:  Yeah.

22        MR. WALLACE:  You would have one.

23     Do you want to do that separately?

24        THE COURT:  I have noted it.

11:33:12  25        MR. WALLACE:  Thank you.

*Laura Wells, CRR, RDR*

1          Thank you for your candor.  We really need that candor

2     and that kind of honesty.

3          Anybody else?  And it's okay to hold up your hand.  I

4     promise I won't yell at you.  Only the Judge can yell at

11:33:25   5     anybody in this courtroom.

6               PROSPECTIVE JURORS:  (No response.)

7               MR. WALLACE:  Okay.  Thank you.  I get to pick on

8     Juror Number 3 and ask you a question, if you don't mind.

9               PROSPECTIVE JUROR:  Go right ahead.

11:33:41  10               MR. WALLACE:  I have seen your data sheet.  You

11     said that you have driven by Moments.  Anything about you

12     driving by Moments or where you live cause you to have any

13     kind of opinion one way or the other on any subject at all

14     about my client?

11:34:00  15               PROSPECTIVE JUROR:  Not at all.

16               MR. WALLACE:  Okay.  And Number 36, I guess I'll

17     ask you that same question because you have driven by

18     Moments as well.  Anything about you driving by it or

19     anything about you knowing of its existence give you any

11:34:14  20     knowledge about Moments?

21               PROSPECTIVE JUROR:  No.

22               MR. WALLACE:  Thank you.  And, sorry, I've got to

23     come back to you, Number 36, as well.  You said you know

24     something about the FLSA from reading an article about a

11:34:32  25     case similar to this.

1                PROSPECTIVE JUROR:  Yes.

2                MR. WALLACE:  Was it an article dealing with

3    dancers and topless dancers and a gentleman's club?

4                PROSPECTIVE JUROR:  Yes.

11:34:44   5                MR. WALLACE:  What did you learn about that?

6                PROSPECTIVE JUROR:  I learned that dancers

7    actually have grievances towards not being paid minimum

8    wage.

9                MR. WALLACE:  When did you read that article, if

11:34:57   10   you remember, roughly?

11               PROSPECTIVE JUROR:  Four or five years ago.

12               MR. WALLACE:  Do you know what club it dealt

13   with?

14               PROSPECTIVE JUROR:  No.

11:35:05   15               MR. WALLACE:  Did you form any opinions after

16   reading that article one way or another, good, bad, or

17   indifferent?

18               PROSPECTIVE JUROR:  Yes.

19               MR. WALLACE:  Do you want to do that separately?

11:35:12   20               THE COURT:  Yes.

21               MR. WALLACE:  Thank you, again, for your candor.

22          Juror Number 12.

23               PROSPECTIVE JUROR:  Yes, sir.

24               MR. WALLACE:  I think you said you also read a

11:35:24   25   press account.

*Laura Wells, CRR, RDR*

1              PROSPECTIVE JUROR:  Yes.  It was just a

2    publication in SHRM.  I get a monthly SHRM newspaper, if

3    you will, and I read up on different articles, different

4    cases, and I just read one about the FLSA.  That's it.

11:35:42    5              MR. WALLACE:  Okay.

6              THE COURT:  Just a moment.  Do I hear an

7    electronic device?  No.  All right.

8              MR. WALLACE:  I'm not familiar with that.  What

9    is SHRM?

11:35:56   10              PROSPECTIVE JUROR:  It is Society for Health --

11    Human Resources Management.

12              MR. WALLACE:  Thank you.  What did you learn

13    about the FLSA, if anything?

14              PROSPECTIVE JUROR:  It was just a case.  It was

11:36:04   15    -- honestly, it was so many years ago that I read it, I

16    don't remember what it was about, to be honest with you.

17    They just give inserts and stuff and just talk about,

18    like, the case that happened.  Like I said, it was so many

19    years ago.  It was just a random article, obviously.

11:36:22   20              MR. WALLACE:  As I understand it, you are in

21    human resources; is that correct?

22              PROSPECTIVE JUROR:  Yes, sir.

23              MR. WALLACE:  You have 300 employees or so?

24              PROSPECTIVE JUROR:  650.

11:36:31   25              MR. WALLACE:  650.  I don't envy your job at all.

*Laura Wells, CRR, RDR*

1    Do you deal much with the Fair Labor Standards Act?

2            PROSPECTIVE JUROR:  Not really.

3            MR. WALLACE:  Do you ever even look at it?

4            PROSPECTIVE JUROR:  Maybe if something pops up,

11:36:42  5    but I have been in HR for 20 years.  So it's been very

6    rare, honestly.

7            MR. WALLACE:  Okay.  Number 24, you earlier, when

8    the judge was talking to you, Judge Bennett was talking to

9    you, you said -- I'm not going to quote you exactly.  But

11:37:22  10   something like you can't believe that this law exists.

11   What law?  The minimum wage law?

12           PROSPECTIVE JUROR:  Well, I just -- I have never

13   heard of people not getting paid minimum wage, even if

14   they are an employee or not an employee.  If you get paid,

11:37:38  15   you don't get paid a dollar an hour.  That's what I'm

16   talking about.  I didn't even know that could happen.  I

17   had no idea.

18           MR. WALLACE:  Okay.

19           PROSPECTIVE JUROR:  That's what I meant.

11:37:48  20           MR. WALLACE:  You are familiar, though, that

21   people contract their work out and are paid differently

22   than, for example, $7.25 an hour, correct?

23           PROSPECTIVE JUROR:  I know that -- as far as I

24   know -- this is what I know.  Minimum wage is the minimum

11:38:05  25   you can pay.  That's it.  I didn't know you could go lower

*Laura Wells, CRR, RDR*

1    than that.  That's why I was, like, shocked and surprised.

2    I was, like, wow.

3              MR. WALLACE:  But you are aware you can make more

4    than minimum wage, right?

11:38:18   5              PROSPECTIVE JUROR:  Oh, yeah.  That's why it's

6    called minimum wage.  My response is wow.  When I heard

7    that it's -- you know, it doesn't even have to be minimum

8    wage, I said, wow, to me, that they can be paid less than

9    that.  I was like, oh, no.  Maybe I'm still confused.

11:38:38  10    That's why I raised the concern.

11              MR. WALLACE:  That's fair.  Thank you.

12              PROSPECTIVE JUROR:  I still don't know what the

13    answer is.

14              MR. WALLACE:  Okay.  Juror Number 15, sorry to

11:38:54  15    pick on you but I understand that someone important in

16    your life is a lawyer and does dram shop work which deals

17    with bars, and my client is a bar.

18         Do you know what type of dram shop work?

19              PROSPECTIVE JUROR:  I thought it was insurance

11:39:15  20    defense.

21              MR. WALLACE:  He does insurance defense?

22              PROSPECTIVE JUROR:  Yes.

23              MR. WALLACE:  That answers my question.  Thank

24    you.  I know of your husband.  That's why I know that much

11:39:22  25    about it, but I didn't know what kind of work he did.

*Laura Wells, CRR, RDR*

1          PROSPECTIVE JUROR:  Okay.

2          MR. WALLACE:  Give me one moment, Your Honor, and

3     I'll try to cut this down.

4          THE COURT:  Very well.

11:40:04    5          MR. WALLACE:  Your Honor, I would like to tender

6     the panel back to you.  We are happy with all of these

7     jurors.

8          THE COURT:  Thank you, Counselor.

9        Now, ladies and gentlemen, let me tell you the

11:40:17   10     process.  I had mentioned earlier that we are going to be

11     in trial through the close of business on Thursday.  So

12     for today, we will take a lunch break; and for those who

13     have been selected, you'll come back.  We're not going to

14     take a lunch break now.  We're going to select the jury,

11:40:37   15     take a lunch break, and those that have been selected,

16     we'll go to 5:00 today.  You'll return.  And then

17     tomorrow, Tuesday; Wednesday; and Thursday, for purposing

18     of planning, you'll be here at the courthouse 9:00 to

19     5:00.

11:40:50   20        So I know it's the summer months.  If you have a minor

21     child, meaning 12 or less, who will be left unattended as

22     a result of you being here, I need to know that.

23        If there is an elderly person who is unable to care

24     for themselves, because you are their guardian or

11:41:11   25     caretaker, who will be left unattended as a result of your

jury service, I would need to know that.

    If you have a medical condition that would prevent you from being here 9:00 to 5:00 each day, I would need to know that.  If you have a medical appointment that it took you four months to set and you have been waiting for it and it's coming up this week and you would be forced to reschedule and have to wait another four months, something that unusual, I would need to know that.

    The fact that you are busy at work and there is a stack of paper waiting for you is not a sufficient reason for you to be excused from this panel.  If that was the case, it would be almost impossible to seat a jury.  Everyone is busy and I appreciate and respect that and that's why I try to be as efficient as possible.

    So, minor child left unattended, elderly person left unattended who is unable to care for themselves, medical condition, or you have my fourth category.  Again, it's the summer.  Some of you may be sending kids off to school -- and I'm doing the same a little bit later -- and you are scheduled to go off to university orientation with your child and, as a result, you are scheduled for this week or there is something -- you are leaving for your 40th wedding anniversary on Wednesday, something really truly unusual like that, I need to know.  Again, busy at work, you prefer to be somewhere else, that's not

 1    sufficient.

 2        We're going to excuse you out into the hallway.  So if

 3    you have one of those conditions that I just mentioned, a

 4    minor child, elderly person, medical condition, truly

11:43:11  5    unusual circumstance, the law clerk will be standing --

 6    stand up, please -- will be standing outside.  Approach

 7    him.  Give him your juror name and your reasoning and then

 8    I'll make a list and I'll call you back in -- thank you --

 9    and I can address that issue.  We're not going to do it

11:43:30 10    here as a whole.

11        There are some of you I'm going to want to follow up

12    with, based upon the questions that I asked and the

13    answers you provided.  So some of you will be called back

14    in.  So as a result of this, my plan is to go ahead and

11:43:47 15    work through this now, not break for lunch, and bring

16    everybody back.  This should take, hopefully, no more

17    than, you know, 45 minutes or an hour, at the most, if not

18    less than that.

19        If we can do that, then we'll select the jury, send

11:44:08 20    those of you who have not been selected home; and those of

21    you who have been selected, we will break for lunch at

22    that point and then commence the trial.

23        So as a result of working through this, do not leave

24    the floor because we may be looking for you to come back

11:44:27 25    in and to speak with me or it may be time to come back in

1    as a group.  If you are not here, everyone has to wait.

2    We cannot proceed unless everyone is present.

3         There are restrooms.  There are two sets of restrooms

4    on this floor on either side.  If you need a cigarette

11:44:48    5    break, you need to speak with the law clerk, who will tell

6    you how much time you have to do that, if you are able to

7    do it.  But is there anyone who has to eat right now as a

8    result of a medical condition?

9         PROSPECTIVE JURORS: (No response.)

11:45:02    10        THE COURT:  No hands.  Perfect.  All right.  So

11    that's the goal is to work through this and to move

12    through this as quickly as possible.  Any questions about

13    that process from the left?

14        PROSPECTIVE JURORS: (No response.)

11:45:16    15        MR. COOK:  Your Honor, may I step out?  I need to

16    wrangle with --

17        THE COURT:  Yes.  Any questions about that

18    process to the left?  Any questions about that process to

19    the right?

11:45:24    20        PROSPECTIVE JURORS:  (No response.)

21        THE COURT:  Okay.  So the lawyers and I are now

22    going to talk about you behind your backs while you are

23    out in the hallway.  So, please, again, do not leave the

24    floor unless you have informed the law clerk so that we

11:45:42    25    will be able to find everyone.

*Laura Wells, CRR, RDR*

1    So at this time, you are excused to the hallway.  All

2    stand for the panel.  You may go out into the hallway now,

3    panel.

4        (Prospective jurors exited courtroom at 11:45 a.m.)

11:46:35    5        THE COURT:  All right.  Counsel, we have been

6    going at it now for almost two hours.  I'm going to give

7    you a bio break.  As opposed to going out into the

8    hallway, unless you need to go to your attorney waiting

9    room -- thank you.  You all can be seated -- you can go

11:46:52    10   through these doors, this door.  When you walk through the

11   door, you are going to be in the hallway.  It will be a

12   left.  Follow the hallway.  As soon as you pop out of that

13   door and open the door, to the right will be the jury

14   room, my jury room.  You may use the facilities in the

11:47:07    15   jury room.  Men and women are located in there.  You can

16   use them.  And then, you can come back through the same

17   door and enter through this door and take your seat back

18   at counsel table.

19       My goal, again, is to try to work through this and

11:47:21    20   then send everyone away for lunch.  Now -- so the folks

21   that we need to talk to on my list, I have juror number --

22   I hope I can get this in order here -- Juror Numbers 15,

23   20, 21, I'm sorry, Juror Number 9, Number 22, Number 27,

24   and Number 36.  One, two, three, four, five, six -- those

11:48:47    25   seven jurors are the ones, based upon their answers, I

1    think may require some follow-up regarding potential cause

2    issues.  Were there any others?

3              MR. WALLACE:  Your Honor, I believe Number 24

4    raised their hand about being unable to be fair and

11:49:03  5    impartial.

6              THE COURT:  24.  You are right.  I am going to

7    add Number 24.  Any others that I missed?

8              MR. BERLANGA:  No, Your Honor.

9              THE COURT:  Okay.  Are there any others from the

11:49:16  10   plaintiff that you need to talk to?

11             MR. BERLANGA:  No, Your Honor.

12             THE COURT:  Any from the defense, other than what

13   I have outlined already?

14             MR. WALLACE:  I don't believe so.

11:49:26  15            THE COURT:  Perfect.  That's even better.  So

16   let's take a ten-minute bio break, and we'll resume at

17   noon.  I have to go cancel a dentist appointment.

18       (Recess from 11:49 a.m. to 11:59 a.m.)

19             THE COURT:  Counsel, in addition to the jurors

11:59:32  20   whom we've identified as 9, 15, 20, 21, 22, 24, 27 and 36,

21   three -- I'm sorry -- two additional jurors have

22   identified themselves as wanting to come in and speak to

23   me.  Juror Number 8 and 21 also identified himself and

24   Juror Number 29.

11:59:51  25        From the judge's list, my list, are there any that the

*Laura Wells, CRR, RDR*

1    parties want to agree to before we go through that

2    process?

3                MR. BERLANGA:  I believe we agree to all, Your

4    Honor.

12:00:01    5                MR. WALLACE:  I'm checking with my co-counsel on

6    one.  If you'll give us two minutes, I believe that --

7    we'll call it the judge's list -- 9, 15, 20, 21, 22, 24,

8    27, and 36 that the parties would agree they should be

9    struck for cause.

12:00:15   10                THE COURT:  Well, if there is a motion and there

11    is no objection, then we'll proceed in that fashion.

12                MR. WALLACE:  Defense would make a motion that

13    Juror Panel Numbers 9, 15, 20, 21, 22, 24, 27, and 37 --

14    36, pardon me, be struck for cause.

12:00:32   15                THE COURT:  Any objection?

16                MR. BERLANGA:  No objection, Your Honor.

17                THE COURT:  Juror -- hold on.  Let's see here --

18    9, 15, 20, 21, 22, 24, 27, and 36 are stricken for cause

19    on the motion of the defense to which the plaintiff does

12:01:27   20    not object; is that correct?

21                MR. WALLACE:  Yes, Your Honor.

22                THE COURT:  Very well.  I'll need to see Juror

23    Numbers 8 and 29.  Well, let's start with 8 and see where

24    we are at.  One other point -- go ahead -- before you come

12:01:55   25    back in.

*Laura Wells, CRR, RDR*

1    I have been informed that we may have some clean-up on

2  Juror Number 15.  That was the juror who has a husband who

3  is a lawyer.  I understand that she has had an emotional

4  reaction to being informed regarding her husband's

12:02:16   5  practice.  And so I'm going to bring her in to see if we

6  can address that.

7          MR. WALLACE:  Okay.

8          THE COURT:  I think you mentioned that he

9  represents bars.

12:02:34   10          MR. WALLACE:  He does dram shop litigation on the

11  insurance defense side.

12          THE COURT:  Right.  And I'm not sure what

13  happened, but maybe she took offense to that.  So we need

14  to address that.

12:02:43   15          MR. WALLACE:  Okay.  Thank you, Your Honor, for

16  letting me know.

17      (Prospective Juror Number 8 approached the bench.)

18          THE COURT:  Juror Number 8.  Sir, if you'll come

19  up to the podium.  Pull that mic towards you and tell me

12:02:59   20  your name and your juror number.

21          PROSPECTIVE JUROR:  Carlos Cantu, III, and I'm

22  Juror Number 8.

23          THE COURT:  Mr. Cantu, I understand you had an

24  issue you wanted to bring to my attention.

12:03:09   25          PROSPECTIVE JUROR:  Yes, Your Honor.  I have a

*Laura Wells, CRR, RDR*

1  6-year-old and a 4-year-old.  We live up in The Woodlands,

2  and my wife works in the evenings.  I have to be home at

3  4:00 after work on Tuesdays and Wednesdays.

4          THE COURT:  So if you were selected for this jury

12:03:22  5  and you had to serve to at least 5:00 on Tuesday and

6  Wednesday, would there be any childcare available for your

7  two minor children?

8          PROSPECTIVE JUROR:  I would have to work here the

9  next several hours to get that arranged for Tuesday and

12:03:38  10  Wednesday.  We typically don't have childcare.

11          THE COURT:  Okay.  Is it something that you can

12  do or you cannot do?  And let me rephrase it.  If it's

13  something that you can do, it's something I'm going to ask

14  you to do, to remain in the panel, the potentials.

12:03:56  15          PROSPECTIVE JUROR:  Sure.

16          THE COURT:  If it's something that you cannot do,

17  I'm not going to let your minor children go unattended.

18  So where are you on the ability to get this done?  And you

19  said you typically do not have childcare.  I'm not going

12:04:10  20  to require you to put your children in the care of

21  strangers if they -- if that's not something that you

22  normally do.  So if it's for date night, whatever the case

23  may be, if you have sitters that you use that you are

24  comfortable with, that's one thing, but I'm not going to

12:04:25  25  make you create a new relationship that did not previously

*Laura Wells, CRR, RDR*

1   exist.

2              PROSPECTIVE JUROR:  Yes, sir.  I just have to

3   make some phone calls to see if my sitters are available

4   tomorrow and the next day.  That's something I don't know

12:04:36   5   yet.

6              THE COURT:  Okay.

7              PROSPECTIVE JUROR:  I can make those phone calls.

8              THE COURT:  That's available to you?

9              PROSPECTIVE JUROR:  Yes, sir.

12:04:39   10             THE COURT:  Anything else, sir?

11             PROSPECTIVE JUROR:  No, sir.

12             THE COURT:  Thank you.  You may be excused to the

13   hallway.

14             PROSPECTIVE JUROR:  Okay.

12:04:52   15        (Prospective Juror Number 8 left the bench.)

16             THE COURT:  Number 29.

17             MR. WALLACE:  Can we even get to 29?

18             MR. WYLY:  We can't.

19             THE COURT:  We cannot.  I didn't do the math.

12:05:02   20             MR. WYLY:  If we excuse Number 8, we get to

21   Number 17.

22             THE COURT:  Oh, I didn't do the math.  Just a

23   moment.  We don't need to see him right now.

24        Juror Number 15.  This is some clean-up.  You may have

12:05:25   25   gotten someone in the dog house.

1          MR. WALLACE:  I sure hope not.

2       (Prospective Juror Number 15 approached the bench.)

3          THE COURT:  Come on up, ma'am, to the podium.  If

4   you will state your name and juror number, please.

12:06:27   5          PROSPECTIVE JUROR:  XXXXXXXXXXXXXXXNumber 15.

6          THE COURT:  Yes, ma'am.  I was made aware that

7   you were potentially upset.

8          PROSPECTIVE JUROR:  Yes.  I didn't know my

9   husband represented strip clubs or anything like that, you

12:06:40   10   know.

11          THE COURT:  I understand.  I think you may have

12   misunderstood.  I think -- I don't know your husband

13   personally; and from what I understood, your husband does

14   dram shop litigation.

12:06:57   15          PROSPECTIVE JUROR:  I'm not sure what that is.  I

16   know it's insurance defense.

17          THE COURT:  Right.  He represents -- if someone

18   is sued for selling liquor illegally or if someone had too

19   much to drink or if they are trying to get a liquor

12:07:14   20   license, that type, that's what "dram shop" means.  It has

21   nothing to do with strip clubs or topless bars or anything

22   along those lines.  So I just wanted to make sure that you

23   understood that.  So if that was your understanding, it

24   was misplaced.  "Dram shop" is a term of art that lawyers

12:07:37   25   use in regards to establishments like bars that sell

1  liquor.  It could be a country club that sells liquor.  So

2  it's any place that sells liquor --

3          PROSPECTIVE JUROR:  Okay.

4          THE COURT:  -- and serves liquor.  So I hope that

12:07:54  5  that kind of clarifies it.

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  It was not a reference that dram shop

8  means strip club.  No.  Nothing like that.  So I wanted to

9  make sure you understood that.

12:08:04  10         PROSPECTIVE JUROR:  Okay.

11         THE COURT:  Does that make you feel better?

12         PROSPECTIVE JUROR:  Yeah.  Because he would make

13  -- he would be happy that you explained it to me.

14         THE COURT:  Tell him and make it clear to him

12:08:15  15  that he owes me one.  That's the explanation as to what

16  dram shop means, ma'am.  Okay.  Do you feel better?

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Thank you.  I just wanted to make

19  sure you understood that, and we were not casting

12:08:31  20  aspersions on your husband or his practice.

21         PROSPECTIVE JUROR:  Okay.

22         THE COURT:  Thank you.

23         PROSPECTIVE JUROR:  Thank you.

24     (Prospective Juror 15 left the bench.)

12:08:48  25         THE COURT:  Very well.

*Laura Wells, CRR, RDR*

```
 1              MR. WALLACE:  Your Honor, I would move that
 2    Juror 15 be excluded for cause.
 3              THE COURT:  She has been excluded.
 4              MR. WALLACE:  Oh, she has.
 5              THE COURT:  Yes.  That was part of your agreement
 6    but --
 7              MR. WALLACE:  I missed it.
 8              THE COURT:  -- for a fellow practitioner, I
 9    wanted to save his butt before he got home.
10              MR. WALLACE:  Very well.
11              THE CLERK:  Judge, Juror Number 29.
12              THE COURT:  I don't think we're going to -- let
13    me do my math real quick.  On my one, two, three, four,
14    five, six, seven, eight -- we have eight who have been
15    stricken for cause.  We are going to select eight.  There
16    are three strikes apiece for a total of, let's see, 14.
17    We're at about 24; is that right?  Did I miss it?  No.
18    Sixteen --
19              MR. WALLACE:  Eight and eight, it would be 22.
20              THE COURT:  Eight, eight and six.
21              MR. WALLACE:  Correct.
22              THE COURT:  Is that right?
23              MR. COOK:  More importantly, we would pick from
24    the front, and most of the strikes are in the back.
25              THE COURT:  We'll start with one.  What I'm
```

1    saying is that so even with eight strikes --

2            MR. COOK:  Six strikes, Your Honor.

3            THE COURT:  No.  No.  Eight strikes for cause,

4    eight members, and then six strikes for preemptories, plus

12:10:29    5    eight selected, that only takes us through Juror

6    Number 22; is that correct?

7            MR. WALLACE:  No, Your Honor.

8            THE COURT:  Okay.  Tell me where I'm missing it.

9            MR. WALLACE:  Because we have struck --

12:10:40   10            THE COURT:  I'm saying we're not even going to

11    reach 29.

12            MR. WALLACE:  We are not even going to reach 20,

13    as I understand the math.

14            THE COURT:  So your strike field is 20 or less.

12:10:52   15            MR. COOK:  Right.  Depending if Your Honor is

16    going to cut eight loose or not -- and it sounds like we

17    are not -- we're down to 16.

18            THE COURT:  Now, as to Juror Number 8, he has not

19    indicated a reason on the record to be stricken for cause.

12:11:15   20            MR. COOK:  I am happy to cut him loose.  I agree

21    he has not struck himself.

22            THE COURT:  Well, is there a motion?

23            MR. COOK:  We move that he be excused.

24            THE COURT:  For?

12:11:24   25            MR. COOK:  Due to his conflict of leaving his

*Laura Wells, CRR, RDR*

1   minor children unattended or potentially unattended.

2         THE COURT:  Do you perceive that as cause from

3   the plaintiffs' table?

4         MR. COOK:  Not from the legal standpoint, no,

12:11:38  5   Your Honor, I agree.

6         THE COURT:  Just cause?

7         MR. COOK:  Yes.

8         THE COURT:  Okay.  Is there any objection?

9         MR. WALLACE:  I'm sorry, Your Honor.

12:11:45  10         THE COURT:  As to -- the plaintiffs have moved to

11   strike Juror Number 8.  Do you object?

12         MR. WALLACE:  I do, Your Honor.

13         THE COURT:  Okay.  Very well.  Then that motion

14   is denied.  That being said, your three strikes -- let me

12:11:59  15   go back and clarify it.  So we are through Juror Number 16

16   to get our eight; is that correct?

17         MR. COOK:  That's plaintiffs' understanding.

18         MR. WALLACE:  I believe that is correct.  Math is

19   not my forte.

12:12:42  20         THE COURT:  I counted 14 open slots, and that got

21   me to Juror Number 16 because the only two strikes within

22   that field are Juror Numbers 9 and 15.

23         MR. WALLACE:  Correct.

24         THE COURT:  And so your strikes are three apiece.

12:13:01  25   How long do you need?

1          MR. WYLY:  Five minutes.

2          THE COURT:  Five minutes.  Perfect.  You can go

3  to your attorney room or someone can use the jury room, if

4  you like.

12:13:11   5      (Recess from 12:13 p.m. to 12:25 p.m.)

6          THE COURT:  Counselor, your jurors are Numbers 2,

7  3, 4, 8, 10, 12, 14, 16.  All right.  Bring them in.

8          (Prospective jurors entered courtroom at 12:24 p.m.)

9          THE COURT:  All right.  Does everybody have their

12:25:05  10  neighbor back?

11          PROSPECTIVE JURORS:  Yes.

12          THE COURT:  Very well.  Please have a seat.

13      Thank you.  I am now going to have the clerk of the

14  court to read out the names of the jurors who have been

12:25:28  15  selected.  When you hear your name called, please come

16  through the center gate here and take a seat in the jury

17  box.

18      Madam clerk.

19          CASE MANAGER:   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

12:25:39  20  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

21  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.

22          THE COURT:  Please have a seat, sir.  Sir, you

23  were selected.  Yes.  Come on up.

24          JUROR:  Does it matter where?  They have

12:26:19  25  different numbers.

1          THE COURT:  Yeah.  Just sit down.  If you see a

2     place, you can have a seat with the materials that are

3     placed there.  Thank you.

4          Counsel for the plaintiff, are there any objections to

12:26:40  5     the jury as seated?

6          MR. BERLANGA:  No, Your Honor.

7          THE COURT:  Counsel for the defense, are there

8     any objections to the jury as seated?

9          MR. WALLACE:  No, Your Honor.

12:26:50  10          THE COURT:  Very well.  Ladies and gentlemen of

11     the jury panel, I want to thank you for your service.  It

12     is very important for our democracy to have citizens such

13     as yourselves to come down here and to answer their call

14     to service.

12:27:08  15          In this country, citizenship is a wonderful thing.  It

16     comes with lots of privileges, but occasionally it comes

17     with some duties.  And this is one of those duties where

18     you have to step up and provide a service.  Obviously, the

19     greatest service that a citizen can render to this country

12:27:28  20     is service in the armed forces to where they go out and

21     put their lives on the line to make -- leave their

22     families to make sure that our democracy is safe.  But

23     just as important to our democracy are citizens who are

24     willing to step into a voting booth and decide who should

12:27:45  25     lead us down at city hall, down in Austin, or up in

1    Washington, D.C., or on the various school boards or

2    wherever we are electing our leadership.

3        Just as important is jurors such as yourself who come

4    down here and answer their jury summons and allow the

12:28:02   5    judicial branch of our government to operate by having

6    jurors who can come and be fair and impartial deciders of

7    disputes between their fellow citizens.  I want to thank

8    you for your service.

9        With this, I want to make sure that we did this the

12:28:21   10   correct way.  And by you coming down here, it is my goal

11   to make sure that the facilities that we afford you, the

12   way that we treated you were appropriate.  So since your

13   arrival this morning, have you been treated with courtesy

14   and respect?

12:28:39   15           PROSPECTIVE JURORS:  Yes.

16           THE COURT:  Were there any issues in that

17   pipeline that I should be made aware of, such that the

18   next group will not have to encounter a problem?

19           PROSPECTIVE JURORS:  No.

12:28:49   20           THE COURT:  No.  Were the restrooms clean?

21           PROSPECTIVE JURORS:  Yes.

22           THE COURT:  Good.  And people always laugh when I

23   ask that, but that's important to me.  When you come down

24   to a facility that is paid for by your tax dollars, I want

12:29:02   25   you to be treated with courtesy and respect.  I want to

*Laura Wells, CRR, RDR*

1    make sure that the facilities that we provide to you are

2    clean such that your comfort is important to me while you

3    are here.  So again, I want to thank you for your service.

4         Ms. Edwards, are they done or do they have to be

12:29:20   5    called in?

6              CASE MANAGER:  They must call the number.

7              THE COURT:  There is a number you have been

8    provided.  They will dictate to you whether or not your

9    service has been completed.  But as far as your service

12:29:29  10    for this particular cause of action, it has reached the

11    end.  So on behalf of the judges of the Southern District

12    of Texas, on behalf of the clerk's office and my staff,

13    thank you.  Best wishes.  And to the fathers who are out

14    there, belated happy Father's Day.  You are excused.

12:29:52  15         All rise for the panel.

16         (Prospective jurors exited courtroom at 12:29 p.m.)

17              THE COURT:  You can take a seat out there, if you

18    would like.

19         Ladies and gentlemen of the jury panel, will you

12:30:35  20    please stand and raise your right hand while the clerk of

21    the court administers the oath.

22              CASE MANAGER:  Do each of you solemnly swear that

23    in the case now before the Court you will a true verdict

24    render according to the law as it may be given to you and

12:30:51  25    charged by the Court and to the evidence submitted to you

*Laura Wells, CRR, RDR*

1    under the rulings of the Court so help you God?

2              JURORS:  I do.

3              THE COURT:  Thank you.  Please be seated.

4         Ladies and gentlemen of the jury, I have many

12:31:05    5    instructions for you that will wait until after lunch.

6    But let me give you a few.  First, you may remove the

7    numbers that you have on your shirts or blouse.  There was

8    a juror badge on the booklet.  You can place that on your

9    shirt or blouse now.

12:31:22   10         That badge identifies you as a juror in this case.  It

11   is extremely important that you wear that here at the

12   courthouse.  As you now have heard, there are going to be

13   multiple witnesses who are going to be coming in and out

14   of the courtroom, catching the elevators, walking through

12:31:39   15   the security line.  When they see that badge, these

16   lawyers have instructed those witnesses that, hey, there

17   are jurors in the case that wear juror badges.  Don't talk

18   in the elevator or security line around those guys.  And

19   so when they see that, they will know not to talk about

12:31:55   20   the case, you know, that they are coming to testify, just

21   in passing to someone or each other in your presence.

22         Now, it is extremely important that you not discuss

23   this case with anyone.  You have not heard any evidence in

24   this case.  You may tell your employer, your spouse, or

12:32:13   25   whomever you need to tell, I got selected and I'm going to

1  be here through close of business on Thursday.  Do not

2  tell them the type of case.  Do not tell them the parties

3  involved.  Because if you do that, if you tell them, oh,

4  I'm on a FLSA case, someone may blurt something out to

12:32:30  5  you, oh, I had those cases and that case is or I have been

6  there or whatever the case may be and they may blurt

7  something out that is not true evidence.  And so it may

8  taint your view of the facts that you are going to hear in

9  this case.

12:32:47  10  So again, do not discuss the case with anyone.  You

11  can't even discuss it amongst yourselves until such time

12  as I instruct you to do so.  I have some other

13  instructions -- oh, part of that.  Do not do any research.

14  Everyone has a smart phone or a laptop.  Don't get on your

12:33:05  15  laptop or smart phone and start doing research about the

16  subject matter of this case or the names that you've heard

17  or anything because, again, you may be exposed to

18  something that is not for your consideration.

19  Now, I have other instructions.  I'm going to wait

12:33:21  20  until after lunch.  Let me give you your lunch options.

21  There are several options within walking distance so you

22  don't have to re-park.  On the ground floor, the first

23  floor of this building, there is a deli.  You don't even

24  have to walk out of security.  Walk -- exit the elevators,

12:33:39  25  walk towards security, go to your left, and there is a

1    little place over there that sells hot sandwiches, cold

2    sandwiches, and soups and salads.

3         Another option is to walk outside of the building.  As

4    soon as you walk out, with security at your back, you walk

12:33:54   5    out of the building.  To your left, across the street, is

6    the Bank of America building.  It's kind of reddish.  Walk

7    across the street.  Once you walk across the street and

8    now you are at the corner of the building, you can enter

9    that building one or two ways.  You can walk and make a

12:34:09  10    left and go down the sidewalk and enter or you can

11    continue down the street and there is another entrance

12    right there.  You have two ways to get into the building.

13    Once you walk inside the building, walk towards the center

14    of the building, there will be an escalator down to the

12:34:25  15    basement level, what we call the tunnel level.

16         Once you get down to that level, there are multiple

17    options.  Directly behind the escalator, there is another

18    sandwich shop, hot sandwiches and cold sandwiches

19    made-to-order.

12:34:39  20         If you get off the escalator, you will see a hallway,

21    a tunnel, to your left.  Walk down that hallway, and it

22    opens up into a food court.  And in that food court, just

23    off memory, there is an Otto's Barbecue.  There is a

24    Chick-Fil-A.  Treebeards is there.  There is a sandwich

12:35:01  25    shop.  There is a salad shop.  Lots of places to eat just

1    in that general area.

2         So again, your dining options over the lunch hour.

3    You can go downstairs to the ground floor here without

4    leaving the building.  If you leave the building, walk out

12:35:16   5    of the front of the building, make a left, cross the

6    street to the Bank of America building, go to the center

7    of that building, take the escalator down.  There is a

8    sandwich shop behind you or you could make a left, veer

9    left into the tunnel system, and you'll be in a food

12:35:33   10    court.  There is a Sonic, all different kinds of options

11    down there or a couple of convenience stores that you can

12    buy things as well, too.

13         When you come back from lunch, do not come into the

14    courtroom.  Go to the jury room.  Ms. Edwards is going to

12:35:50   15    take you to the jury room and show you how to access the

16    jury room.  That's a room for you.  It has a refrigerator

17    in it, a microwave.  There is water back there as well.

18    You can bring your lunch back or you can eat your lunch

19    wherever you are at and then come back after lunch.

12:36:08   20    Whatever you decide to do.  But that jury room is your

21    home away from home.  I don't even go into the jury room.

22    The only people that are allowed in there are you and

23    Ms. Edwards, who will come in and out and tell you when

24    you need to report into the courtroom.

12:36:23   25         So any questions about your lunch dining options?

1          JURORS:  No, sir.

2          THE COURT:  No.  All right.  Let's report back

3   here at 2:00.  That gives you a little bit over an hour

4   and a half, since this is your first time leaving.  Most

12:36:51   5   lunch hours are going to be an hour, but since this is --

6   I know you probably have some phone calls to make since

7   you got selected and have some business to tend to in that

8   regard, and that gives you a chance to go out and make

9   your lunch -- get your lunch.

12:37:06   10      At 2:00 we'll start up with the trial.  When you come

11  back, I will give you the remaining instructions that

12  you -- that I need to provide to you, and we will go to

13  approximately 5:00 today.

14      Any questions?

12:37:20   15          JUROR:  (Raised hand.)

16          THE COURT:  Yes, sir.

17          JUROR:  I'm assuming we're going to be allowed to

18  take notes.

19          THE COURT:  Yes.  That's part of my instructions

12:37:27   20  after lunch, and I'll explain all of that to you

21  afterwards.  I figure your stomachs are empty.  And so

22  I'll wait.  Yes, you are going to be allowed to take

23  notes.  I'll explain that in detail when you return.

24      Any other questions?

12:37:40   25          JURORS:  (Shaking head negatively.)

*Laura Wells, CRR, RDR*

1          THE COURT:  Very well.  If you'll step down, you

2     may follow Ms. Edwards into the jury room.

3          All rise for the jury.

4          (Jury exited courtroom at 12:37 p.m.)

12:38:03    5          THE COURT:  Very well.  Counsel for the

6     plaintiff, any additional items we need to take care of

7     outside the presence of the jury before we resume this

8     after the break?

9          MR. BERLANGA:  Your Honor, we have two witnesses,

12:38:14   10     plaintiffs, that have to go today, I believe, no matter

11     what.  I'm going to confirm that when we step outside.

12     The order may switch up what we initially represented to

13     the Court.

14          THE COURT:  Make sure that the first person that

12:38:25   15     knows is defense counsel as to what those plans are and do

16     it as quickly as possible.  Understood?

17          MR. BERLANGA:  Yes, Your Honor.

18          THE COURT:  Anything else?

19          MR. BERLANGA:  No, Your Honor.

12:38:35   20          THE COURT:  Anything from the defense counsel

21     that we can take care of outside the presence of the jury

22     before resuming for lunch?

23          MR. WALLACE:  No, Your Honor.

24          THE COURT:  We will resume at, as I said, 2:00,

12:38:46   25     correct?

*Laura Wells, CRR, RDR*

1           MR. WALLACE:  Yes, Your Honor.

2           THE COURT:  Enjoy your lunch.  See you back then.

3        (End of requested excerpt at 12:38 p.m.)

4   *Date: August 12, 2019*

5               ***COURT REPORTER'S CERTIFICATE***

6       *I, Laura Wells, certify that the foregoing is a*

7   *correct transcript from the record of proceedings in the*

8   *above-entitled matter.*

9

10                      *____/s/ Laura Wells_____*

11                    *Laura Wells, CRR, RMR*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Concordance

**$**

$7.25 [1] - 79:22

**/**

/s [1] - 106:10

**1**

1 [4] - 1:8, 2:1, 57:23
10 [4] - 56:23, 61:20, 66:24, 96:7
100 [3] - 64:7, 64:11, 64:15
106 [1] - 2:7
10:00 [1] - 4:6
11 [2] - 67:23, 68:14
11:45 [1] - 85:4
11:49 [1] - 86:18
11:59 [1] - 86:18
12 [6] - 24:24, 56:6, 77:22, 81:21, 96:7, 106:4
1220 [1] - 1:16
12:13 [1] - 96:5
12:24 [1] - 96:8
12:25 [1] - 96:5
12:29 [1] - 99:16
12:37 [1] - 105:4
12:38 [2] - 1:4, 106:3
14 [5] - 2:4, 58:7, 93:16, 95:20, 96:7
15 [16] - 42:5, 63:25, 75:1, 80:14, 85:22, 86:20, 87:7, 87:13, 87:18, 88:2, 90:24, 91:2, 91:5, 92:24, 93:2, 95:22
16 [8] - 55:10, 66:13, 66:14, 66:22, 94:17, 95:15, 95:21, 96:7
17 [7] - 1:6, 2:2, 55:25, 56:1, 70:2, 70:13, 90:21
19 [3] - 45:8, 57:10, 61:11

**2**

2 [3] - 61:10, 62:2, 96:6

20 [17] - 3:8, 3:13, 24:14, 34:17, 35:25, 36:19, 37:22, 41:18, 51:2, 79:5, 85:23, 86:20, 87:7, 87:13, 87:18, 94:12, 94:14
2019 [3] - 1:6, 2:2, 106:4
21 [13] - 33:17, 35:25, 36:19, 37:22, 39:25, 41:18, 75:1, 85:23, 86:20, 86:23, 87:7, 87:13, 87:18
21's [1] - 34:11
22 [8] - 43:6, 85:23, 86:20, 87:7, 87:13, 87:18, 93:19, 94:6
23 [3] - 40:24, 57:23, 57:24
24 [15] - 21:6, 36:22, 38:20, 41:3, 43:25, 79:7, 86:3, 86:6, 86:7, 86:20, 87:7, 87:13, 87:18, 93:17
25 [3] - 61:21, 69:10, 69:20
27 [10] - 49:20, 51:13, 72:15, 72:16, 73:1, 85:23, 86:20, 87:8, 87:13, 87:18
28 [5] - 55:20, 57:12, 57:13, 70:19, 70:24
29 [7] - 53:24, 86:24, 87:23, 90:16, 90:17, 93:11, 94:11
2:00 [3] - 104:3, 104:10, 105:24

**3**

3 [5] - 2:3, 17:25, 18:4, 76:8, 96:7
300 [1] - 78:23
33 [1] - 47:4
3355 [1] - 1:16
35 [1] - 13:6
36 [13] - 18:3, 18:12, 23:22, 48:2, 61:22, 61:23, 76:16, 76:23, 85:24, 86:20, 87:8, 87:14, 87:18
37 [1] - 87:13

**4**

4 [2] - 64:22, 96:7
4-year-old [1] - 89:1
40th [1] - 82:23
4101 [1] - 1:12
45 [1] - 83:17
4:00 [1] - 89:3
4:17-CV-02171 [1] - 1:3
4:17-CV-2171 [2] - 4:25, 14:4

**5**

50 [1] - 59:25
50-yard [1] - 59:18
50.1 [1] - 25:20
50/50 [2] - 25:22, 28:15
515 [1] - 1:22
52 [1] - 2:4
5:00 [6] - 52:2, 81:16, 81:19, 82:3, 89:5, 104:13

**6**

6 [1] - 65:17
6-year-old [1] - 89:1
600 [1] - 6:6
650 [4] - 56:9, 56:10, 78:24, 78:25

**7**

71 [1] - 2:5
713 [1] - 1:17
713-236-8330 [1] - 1:13
77002 [1] - 1:22
77007 [1] - 1:12
77098 [1] - 1:17

**8**

8 [14] - 55:7, 56:2, 57:7, 86:23, 87:23, 88:17, 88:18, 88:22, 90:15, 90:20, 94:18, 95:11, 96:7
8004 [1] - 1:22

81 [1] - 2:5

**9**

9 [11] - 28:9, 60:1, 60:2, 61:4, 75:5, 85:23, 86:20, 87:7, 87:13, 87:18, 95:22
90 [1] - 6:9
90-second [1] - 8:6
96 [1] - 2:6
986-9471 [1] - 1:17
99 [1] - 2:6
9:00 [3] - 52:2, 81:18, 82:3
9:59 [1] - 1:4

**A**

a.m [4] - 4:6, 85:4, 86:18
A.M [1] - 1:4
ability [9] - 33:9, 41:22, 41:25, 42:13, 44:14, 44:20, 46:18, 49:13, 89:18
able [18] - 8:2, 9:5, 10:20, 12:15, 12:20, 31:18, 36:6, 36:10, 36:22, 36:23, 37:20, 50:8, 54:21, 55:3, 66:16, 68:8, 84:6, 84:25
above-entitled [1] - 106:8
absolutely [1] - 20:17
access [1] - 103:15
accident [1] - 68:19
according [1] - 99:24
account [4] - 24:5, 24:9, 25:4, 77:25
accused [1] - 73:13
accustomed [1] - 72:13
Act [7] - 14:11, 23:12, 23:14, 23:19, 37:6, 37:10, 79:1
action [3] - 7:5, 23:19, 99:10
Action [1] - 14:4
add [2] - 30:19, 86:7
addition [4] - 6:21,

Concordance

19:6, 53:15, 86:19
**additional**[8] - 34:16, 35:22, 42:20, 44:4, 46:24, 51:9, 86:21, 105:6
**address**[6] - 53:4, 53:9, 71:1, 83:9, 88:6, 88:14
**adds**[1] - 30:25
**administers**[1] - 99:21
**affiliation**[1] - 42:23
**afford**[1] - 98:11
**afterwards**[1] - 104:21
**agents**[1] - 72:5
**ago**[6] - 53:14, 71:15, 71:19, 77:11, 78:15, 78:19
**agree**[8] - 6:25, 31:18, 34:18, 87:1, 87:3, 87:8, 94:20, 95:5
**agreement**[1] - 93:5
**ahead**[3] - 76:9, 83:14, 87:24
**AL**[2] - 1:3, 1:6
**al**[5] - 4:23, 4:24, 14:2, 14:3, 23:8
**Alabama**[1] - 1:16
**Alex**[3] - 1:20, 16:12, 17:10
**ALFRED**[1] - 1:7
**Alfred**[2] - 4:21, 19:8
**allegation**[1] - 30:17
**allegations**[5] - 25:11, 25:13, 27:11, 31:17, 31:25
**alleged**[1] - 30:13
**allow**[1] - 98:4
**allowed**[3] - 103:22, 104:17, 104:22
**allows**[1] - 26:14
**almost**[2] - 82:12, 85:6
**alone**[3] - 43:2, 44:12, 44:19
**alongside**[1] - 11:10
**ALSO**[1] - 1:18
**Alvarez**[1] - 1:19
**Amendment**[1] - 11:4
**America**[2] - 102:6,

103:6
**American**[2] - 5:19, 41:7
**amount**[2] - 45:11, 52:9
**analogy**[2] - 59:16, 59:18
**analytics**[1] - 55:9
**anniversary**[1] - 82:23
**answer**[7] - 10:13, 10:15, 13:1, 31:14, 80:13, 97:13, 98:4
**answered**[1] - 11:14
**answering**[1] - 49:4
**answers**[6] - 10:8, 10:12, 13:9, 80:23, 83:13, 85:25
**anyway**[1] - 36:19
**apiece**[2] - 93:16, 95:24
**apologize**[1] - 62:1
**APPEARANCES**[1] - 1:9
**applied**[1] - 5:16
**applies**[2] - 10:13, 10:15
**apply**[9] - 11:24, 27:16, 33:9, 37:11, 37:12, 55:3, 64:6, 64:9, 64:15
**applying**[2] - 54:14, 59:21
**appointment**[2] - 82:4, 86:17
**appreciate**[10] - 21:14, 34:1, 34:10, 34:20, 35:18, 54:24, 66:10, 66:21, 70:13, 82:13
**apprise**[1] - 33:19
**approach**[1] - 83:6
**approached**[2] - 88:17, 91:2
**appropriate**[1] - 98:12
**approved**[1] - 13:24
**Archie**[2] - 20:7, 22:7
**area**[1] - 103:1
**argue**[1] - 52:14
**arguments**[1] - 12:1
**armed**[1] - 97:20

**arranged**[1] - 89:9
**arrival**[1] - 98:13
**art**[1] - 91:24
**article**[5] - 76:24, 77:2, 77:9, 77:16, 78:19
**articles**[2] - 25:1, 78:3
**ascertain**[1] - 5:20
**aside**[4] - 9:6, 9:10, 34:4, 36:7
**aspersions**[1] - 92:20
**assist**[1] - 5:11
**assistance**[1] - 8:8
**assisted**[1] - 1:24
**associate**[1] - 45:2
**associated**[1] - 30:5
**Association**[1] - 41:8
**assume**[2] - 17:13, 31:14
**assuming**[2] - 49:22, 104:17
**assure**[1] - 38:4
**ATPE**[5] - 40:7, 40:8, 40:10, 40:25, 41:4
**ATTENDANCE**[1] - 1:18
**attention**[5] - 6:5, 12:22, 23:6, 71:2, 88:24
**attorney**[2] - 85:8, 96:3
**audience**[4] - 18:17, 57:20, 61:6, 63:11
**August**[1] - 106:4
**Austin**[1] - 97:25
**available**[3] - 89:6, 90:3, 90:8
**Avenue**[1] - 1:12
**award**[2] - 50:6, 50:11
**aware**[3] - 80:3, 91:6, 98:17**

**B**

**background**[1] - 53:17
**backs**[1] - 84:22
**bad**[4] - 41:11, 44:17, 54:1, 77:16
**badge**[3] - 100:8, 100:10, 100:15

**badges**[1] - 100:17
**balanced**[3] - 25:16, 25:17, 30:19
**ball**[1] - 59:18
**Bank**[2] - 102:6, 103:6
**bar**[1] - 80:17
**Barbecue**[1] - 102:23
**barbers**[1] - 72:7
**bars**[4] - 80:17, 88:9, 91:21, 91:25
**based**[17] - 10:17, 26:24, 33:14, 36:4, 36:5, 37:21, 41:22, 43:2, 47:19, 49:10, 60:4, 60:16, 60:22, 65:9, 75:9, 83:12, 85:25
**basement**[1] - 102:15
**beauticians**[1] - 72:7
**becoming**[1] - 48:21
**BEFORE**[1] - 1:7
**begin**[1] - 3:17
**Beginning**[1] - 3:1
**beginning**[1] - 7:8
**behalf**[2] - 99:11, 99:12
**behind**[4] - 73:23, 84:22, 102:17, 103:8
**belated**[1] - 99:14
**belief**[3] - 41:21, 41:25, 42:23
**beliefs**[10] - 9:1, 9:6, 9:9, 9:10, 34:3, 35:20, 35:25, 36:20, 41:19, 43:3
**bench**[7] - 4:7, 19:9, 88:17, 90:15, 91:2, 92:24
**benefit**[1] - 13:21
**BENNETT**[1] - 1:7
**Bennett**[4] - 4:21, 19:8, 71:23, 79:8
**Berlanga**[6] - 1:10, 15:2, 15:11, 23:2, 53:10, 71:16
**BERLANGA**[119] - 3:7, 14:25, 15:2, 15:9, 15:13, 15:17, 15:24, 16:2, 23:4, 52:22, 52:24, 53:2, 53:8, 53:22, 53:25, 54:24, 55:7, 55:12, 55:15,

*55:19, 55:21, 55:24, 56:2, 56:5, 56:8, 56:10, 56:13, 56:16, 56:22, 56:25, 57:3, 57:7, 57:10, 57:13, 57:19, 57:24, 58:1, 58:4, 58:7, 58:9, 58:18, 58:21, 58:23, 59:1, 59:5, 60:2, 60:5, 60:12, 61:3, 61:6, 61:10, 61:14, 61:16, 61:20, 61:23, 62:5, 62:8, 62:12, 62:14, 62:16, 62:20, 62:22, 63:10, 63:19, 63:24, 64:1, 64:4, 64:17, 64:22, 65:1, 65:4, 65:11, 65:15, 66:3, 66:6, 66:9, 66:13, 66:17, 66:19, 66:21, 67:1, 67:4, 67:10, 67:13, 67:18, 67:21, 67:23, 67:25, 68:5, 68:8, 68:11, 68:13, 68:17, 68:20, 68:22, 68:25, 69:4, 69:7, 69:10, 69:14, 69:16, 69:19, 69:23, 70:2, 70:5, 70:8, 70:12, 70:16, 70:19, 70:21, 70:24, 86:8, 86:11, 87:3, 87:16, 97:6, 105:9, 105:17, 105:19*

*Berlanga..............
........ [1] - 2:4*

*best [5] - 6:12, 13:6, 16:3, 52:16, 99:13*

*better [6] - 4:19, 15:8, 65:22, 86:15, 92:11, 92:16*

*between [4] - 7:9, 42:1, 53:2, 98:7*

*beyond [1] - 26:10*

*bias [18] - 24:10, 25:5, 47:18, 48:17, 49:25, 50:6, 51:14, 52:18, 72:17, 72:18, 73:11, 73:18, 74:12, 74:18, 74:23, 75:8, 75:15, 75:19*

*biased [10] - 49:22, 50:17, 50:21, 51:14, 73:14, 73:16, 73:21, 74:8, 74:14, 74:17*

*big [2] - 49:3, 72:17*

*Bill [2] - 5:23, 11:8*

*bio [2] - 85:7, 86:16*

*bit [1] - 12:8, 12:12, 19:23, 24:17, 51:6, 52:3, 52:6, 65:22, 73:11, 82:19, 104:3*

*bites [1] - 8:6*

*black [1] - 29:17*

*blind [1] - 49:3*

*blouse [2] - 100:7, 100:9*

*blurt [2] - 101:4, 101:6*

*boards [1] - 98:1*

*bonus [1] - 45:13*

*booklet [1] - 100:8*

*books [1] - 62:20*

*booth [1] - 97:24*

*born [1] - 53:11*

*box [6] - 4:10, 10:3, 13:10, 13:12, 13:16, 96:17*

*Brad [1] - 15:3*

*branch [2] - 8:4, 98:5*

*break [9] - 81:12, 81:14, 81:15, 83:15, 83:21, 84:5, 85:7, 86:16, 105:8*

*brief [2] - 13:23, 53:18*

*briefly [1] - 47:8*

*bring [7] - 6:5, 55:11, 83:15, 88:5, 88:24, 96:7, 103:18*

*brother [2] - 73:20, 74:13*

*Buddhist [2] - 43:10, 43:12*

*building [15] - 38:9, 101:23, 102:3, 102:5, 102:6, 102:8, 102:9, 102:12, 102:13, 102:14, 103:4, 103:5, 103:6, 103:7*

*burden [22] - 11:21, 26:9, 26:14, 26:17, 26:18, 27:19, 28:2, 28:5, 29:9, 29:21, 31:15, 31:24, 35:6, 50:16, 50:20, 54:8, 54:14, 55:4, 59:12, 59:21, 59:22*

*bus [2] - 68:18, 68:19*

*business [29] - 7:17, 14:3, 16:3, 16:10, 17:6, 18:8, 33:23,*

*37:25, 39:18, 39:21, 40:20, 42:1, 43:1, 43:20, 44:7, 52:1, 55:16, 56:24, 57:1, 57:3, 61:13, 61:14, 62:5, 62:10, 62:14, 81:11, 101:1, 104:7*

*busy [3] - 82:9, 82:13, 82:24*

*butt [1] - 93:9*

*buy [1] - 103:12*

**C**

*calculation [1] - 54:11*

*calculations [1] - 54:6*

*cancel [1] - 86:17*

*candid [1] - 74:21*

*candor [5] - 72:22, 72:23, 76:1, 77:21*

*cannot [8] - 25:14, 27:8, 29:10, 38:2, 84:2, 89:12, 89:16, 90:19*

*Cantu [2] - 88:21, 88:23*

*car [2] - 18:9, 74:2*

*care [5] - 81:23, 82:16, 89:20, 105:6, 105:21*

*caretaker [1] - 81:25*

*Carlos [1] - 88:21*

*CASE [6] - 3:4, 4:9, 19:16, 96:19, 99:6, 99:22*

*case [118] - 4:23, 4:24, 5:14, 6:13, 7:13, 7:16, 7:20, 7:24, 8:5, 9:2, 9:11, 9:13, 9:15, 9:18, 9:20, 10:10, 10:17, 10:21, 10:22, 11:18, 12:8, 13:24, 14:5, 14:14, 14:20, 15:20, 19:21, 23:6, 23:7, 23:9, 23:12, 23:14, 23:19, 23:23, 24:5, 24:6, 24:9, 24:11, 24:16, 24:18, 25:4, 25:6, 25:11, 25:22, 26:13, 27:9, 28:20, 28:21, 28:24, 29:10, 29:11, 30:25, 32:19, 33:6, 33:13, 34:5, 35:3, 36:1, 36:5, 36:6, 36:8, 37:7, 38:23, 41:18, 42:12, 42:25, 43:21, 44:20, 45:13, 46:15, 46:18, 47:24,*

*48:6, 48:18, 49:11, 49:14, 49:15, 51:19, 51:20, 52:10, 52:14, 52:15, 54:9, 54:18, 64:7, 64:15, 65:13, 66:8, 66:9, 66:24, 68:17, 69:12, 70:20, 71:3, 72:3, 74:10, 76:25, 78:14, 78:18, 82:12, 89:22, 99:23, 100:10, 100:17, 100:20, 100:23, 100:24, 101:2, 101:4, 101:5, 101:6, 101:9, 101:10, 101:16*

*cases [5] - 7:18, 9:5, 25:1, 78:4, 101:5*

*CASEY [1] - 1:3*

*Casey [9] - 1:14, 4:23, 14:2, 14:5, 15:13, 15:17, 16:9, 23:8, 71:14*

*casting [1] - 92:19*

*catchall [1] - 49:10, 63:13, 63:14*

*catching [1] - 100:14*

*category [1] - 82:17*

*Catholic [4] - 42:8, 42:9, 42:11, 43:12*

*ceiling [1] - 12:14*

*center [3] - 96:16, 102:13, 103:6*

*central [1] - 24:18, 24:20*

*certain [7] - 5:15, 8:11, 9:8, 9:23, 11:7, 52:10, 55:11*

*CERTIFICATE [1] - 106:5*

*Certificate............
............ [1] - 2:7*

*certify [1] - 106:6*

*chairs [1] - 72:7*

*challenges [1] - 9:24*

*Challenges...........
.................. [1] - 2:5*

*chance [2] - 12:10, 104:8*

*change [2] - 32:18, 50:18*

*charge [1] - 67:1*

Concordance

charged[1] - 99:25
checking[1] - 87:5
Chemical[1] - 48:6
Chick[1] - 102:24
Chick-Fil-A[1] - 102:24
child[6] - 9:13, 9:16, 81:21, 82:15, 82:21, 83:4
childcare[3] - 89:6, 89:10, 89:19
children[6] - 6:15, 9:13, 89:7, 89:17, 89:20, 95:1
choice[1] - 44:17
chose[1] - 6:10
Christin[1] - 20:18
church[2] - 41:20, 42:22
cigarette[1] - 84:4
circumstance[1] - 83:5
circumstances[1] - 60:22
citizen[1] - 97:19
citizens[4] - 6:19, 97:12, 97:23, 98:7
citizenship[1] - 97:15
city[2] - 71:17, 97:25
Civil[1] - 14:3
civil[11] - 4:24, 7:16, 26:13, 39:8, 39:13, 66:15, 66:19, 68:15, 70:4, 70:20, 74:10
claim[1] - 27:6
claims[1] - 27:4
clarifies[1] - 92:5
clarify[1] - 95:15
classification[1] - 72:3
classified[3] - 72:10, 72:19, 73:1
clean[4] - 88:1, 90:24, 98:20, 99:2
clean-up[2] - 88:1, 90:24
clear[5] - 29:8, 30:8, 31:13, 54:22, 92:14
clear-cut[1] - 54:22

clerk[8] - 19:15, 19:17, 83:5, 84:5, 84:24, 96:13, 96:18, 99:20
CLERK[1] - 93:11
clerk's[1] - 99:12
client[5] - 16:12, 17:2, 45:20, 76:14, 80:17
clients[3] - 15:12, 15:13, 23:2
close[9] - 7:17, 45:1, 45:4, 45:14, 46:22, 47:1, 52:1, 81:11, 101:1
closed[1] - 35:15
closed-minded[1] - 35:15
closely[2] - 42:23, 43:3
closely-held[2] - 42:23, 43:3
club[19] - 14:8, 17:15, 17:18, 18:12, 35:10, 37:8, 37:9, 37:12, 41:24, 43:1, 63:21, 74:19, 74:20, 74:22, 77:3, 77:12, 92:1, 92:8
clubs[5] - 74:24, 75:8, 75:19, 91:9, 91:21
co[3] - 14:22, 15:3, 87:5
co-counsel[3] - 14:22, 15:3, 87:5
coin[1] - 24:21, 44:6
cold[2] - 102:1, 102:18
colleague[1] - 16:11
colleagues[2] - 38:11, 71:4
college[7] - 58:3, 58:4, 58:11, 58:14, 58:15, 58:17, 58:18
College[1] - 58:6
color[1] - 74:15
comfort[1] - 99:2
comfortable[2] - 73:6, 89:24
coming[7] - 13:18, 19:8, 59:3, 82:6, 98:10, 100:13, 100:20
commence[1] - 83:22
commission[1] - 46:5
commissions[1] - 45:12

commit[3] - 32:1, 33:12, 38:16
commitment[1] - 33:3
common[5] - 6:14, 6:17, 21:8, 21:12
community[7] - 58:2, 58:4, 58:11, 58:14, 58:15, 58:16, 58:18
Community[1] - 58:6
commute[1] - 5:5
company[7] - 46:7, 46:10, 47:10, 47:12, 47:17, 61:19, 68:18
compensation[2] - 14:13, 30:5
complaining[1] - 32:21
completed[1] - 99:9
Complying[2] - 15:9, 65:23
component[1] - 7:8
computer[1] - 1:24
computer-assisted[1] - 1:24
con[2] - 39:5, 39:13
concept[2] - 54:10, 55:3
concern[1] - 80:10
concerned[1] - 40:14
condition[4] - 82:2, 82:17, 83:4, 84:8
conditions[1] - 83:3
condone[1] - 33:22
confidence[1] - 7:1
configuration[1] - 3:20
confirm[1] - 105:11
conflict[2] - 52:2, 94:25
confuse[1] - 32:9
confused[3] - 30:9, 80:9
consider[4] - 8:9, 33:1, 56:16, 56:17
consideration[2] - 12:5, 101:18
considered[3] - 11:3, 12:24, 14:15
Constitution[1] - 5:23
constitution[1] - 11:4

constraints[1] - 8:12
construction[1] - 57:4
consultants[1] - 72:6
consulting[1] - 62:3
continue[2] - 8:2, 102:11
contract[2] - 73:7, 79:21
contractor[11] - 37:5, 39:22, 40:21, 45:25, 46:10, 61:7, 61:13, 61:17, 62:4, 62:9, 62:23
contractors[13] - 14:18, 37:9, 37:11, 56:4, 56:19, 56:24, 57:1, 57:6, 61:25, 72:3, 72:4, 72:5, 73:7
convenience[2] - 5:10, 103:11
convince[1] - 27:11
Cook[3] - 1:11, 1:11, 15:3
COOK[10] - 84:15, 93:23, 94:2, 94:15, 94:20, 94:23, 94:25, 95:4, 95:7, 95:17
corner[2] - 51:13, 102:8
corporate[5] - 17:2, 17:8, 17:14, 20:5, 33:7
corporation[5] - 44:7, 44:9, 44:11, 44:13, 44:18
corporations[1] - 7:10
correct[19] - 18:6, 18:7, 31:3, 46:11, 48:13, 63:4, 75:3, 75:4, 78:21, 79:22, 87:20, 93:21, 94:6, 95:16, 95:18, 95:23, 98:10, 105:25, 106:7
counsel[27] - 3:23, 9:7, 14:22, 15:3, 15:4, 15:23, 16:7, 16:9, 16:13, 16:19, 16:25, 17:1, 17:12, 52:20, 64:2, 71:10, 85:5, 85:18, 86:19, 87:5, 97:4, 97:7, 105:5, 105:15, 105:20
Counsel[3] - 14:24, 15:16, 16:6
counsel's[1] - 16:4

Concordance

*Counselor*[3] - 68:4, 71:9, 81:8
*counselor*[1] - 96:6
*counted*[1] - 95:20
*countries*[1] - 7:5
*country*[8] - 6:23, 7:3, 32:15, 72:5, 72:10, 92:1, 97:15, 97:19
*country's*[1] - 6:22
*couple*[8] - 8:24, 38:24, 59:11, 68:7, 68:9, 71:25, 103:11
*court*[13] - 4:11, 4:22, 6:9, 12:17, 19:14, 20:1, 46:4, 96:14, 99:21, 102:22, 103:10
*Court*[7] - 1:21, 4:20, 14:1, 99:23, 99:25, 100:1, 105:13
*COURT*[270] - 1:1, 3:3, 3:5, 3:10, 3:12, 3:15, 3:18, 3:24, 4:2, 4:5, 4:8, 4:10, 4:12, 4:15, 4:19, 15:4, 15:7, 15:10, 15:16, 15:19, 16:1, 16:4, 16:6, 16:13, 16:23, 16:25, 17:11, 17:23, 18:3, 18:8, 18:11, 18:15, 18:19, 18:21, 18:24, 19:3, 19:12, 19:17, 19:19, 20:14, 20:20, 20:24, 21:3, 21:6, 21:9, 21:14, 21:17, 21:22, 21:25, 22:4, 22:8, 22:12, 22:16, 22:20, 22:24, 23:1, 23:5, 23:17, 23:22, 24:1, 24:4, 24:8, 24:13, 24:17, 24:24, 25:3, 25:8, 25:10, 26:4, 26:8, 27:23, 28:9, 28:13, 28:20, 28:23, 29:1, 29:4, 29:8, 29:14, 29:18, 29:20, 29:24, 30:7, 30:16, 30:23, 31:4, 31:9, 31:11, 31:13, 31:22, 32:5, 32:8, 32:12, 33:17, 33:25, 34:7, 34:10, 34:16, 34:20, 35:16, 35:22, 36:14, 36:18, 37:4, 37:15, 38:4, 38:8, 38:20, 39:11, 39:25, 40:3, 40:5, 40:8, 40:10, 40:13, 40:17,

40:24, 41:3, 41:6, 41:11, 41:16, 42:5, 42:7, 42:9, 42:11, 42:16, 42:20, 43:6, 43:8, 43:11, 43:14, 43:17, 43:24, 44:4, 45:8, 45:11, 45:17, 45:19, 45:23, 46:6, 46:9, 46:13, 46:17, 46:20, 46:24, 47:4, 47:6, 47:8, 47:13, 47:16, 47:21, 48:1, 48:4, 48:8, 48:12, 48:15, 48:20, 49:20, 50:2, 50:12, 50:25, 51:2, 51:5, 51:9, 51:23, 52:23, 55:8, 58:13, 60:1, 60:10, 60:13, 61:5, 63:2, 63:9, 64:2, 65:21, 65:24, 68:4, 71:9, 71:13, 75:4, 75:24, 77:20, 78:6, 81:4, 81:8, 84:10, 84:17, 84:21, 85:5, 86:6, 86:9, 86:12, 86:15, 86:19, 87:10, 87:15, 87:17, 87:22, 88:8, 88:12, 88:18, 88:23, 89:4, 89:11, 89:16, 90:6, 90:8, 90:10, 90:12, 90:16, 90:19, 90:22, 91:3, 91:6, 91:11, 91:17, 92:4, 92:7, 92:11, 92:14, 92:18, 92:22, 92:25, 93:3, 93:5, 93:8, 93:12, 93:20, 93:22, 93:25, 94:3, 94:8, 94:10, 94:14, 94:18, 94:22, 94:24, 95:2, 95:6, 95:8, 95:10, 95:13, 95:20, 95:24, 96:2, 96:6, 96:9, 96:12, 96:22, 97:1, 97:7, 97:10, 98:16, 98:20, 98:22, 99:7, 99:17, 100:3, 104:2, 104:16, 104:19, 105:1, 105:5, 105:14, 105:18, 105:20, 105:24, 106:2, 106:5
*Court.....................* [1] - 2:3
*courtesy*[2] - 98:13, 98:25
*courthouse*[5] - 7:17, 7:19, 7:20, 81:18, 100:12

*courtroom*[20] - 3:20, 4:6, 6:20, 7:6, 7:11, 10:21, 30:12, 53:3, 71:18, 71:19, 71:20, 73:12, 76:5, 85:4, 96:8, 99:16, 100:14, 103:14, 103:24, 105:4
*courts*[1] - 13:13
*cover*[1] - 52:13
*crazy*[1] - 74:5
*create*[4] - 24:9, 47:18, 48:17, 89:25
*created*[1] - 25:4
*credibility*[1] - 26:21
*credible* - 25:15, 50:5
*criminal*[12] - 26:9, 26:11, 26:16, 26:19, 64:24, 65:18, 66:6, 66:15, 66:19, 66:25, 69:11, 70:3
*criteria*[2] - 54:22, 55:1
*cross*[1] - 103:5
*crowd*[3] - 53:20, 54:13, 57:14
*CRR*[2] - 1:21, 106:11
*cut*[5] - 54:22, 72:7, 81:3, 94:16, 94:20

**D**

*D.C*[1] - 98:1
*damages*[6] - 26:13, 39:4, 39:6, 39:8, 39:14, 50:5
*dance*[1] - 36:9
*danced*[1] - 35:10
*dancers*[9] - 14:7, 32:21, 35:9, 36:8, 41:23, 42:25, 77:3, 77:6
*dancing*[5] - 41:24, 42:25, 63:21, 64:1
*data*[2] - 55:9, 76:10
*date*[1] - 89:22
*Date*[1] - 106:4
*Davis*[3] - 20:11, 20:12, 22:19
*days*[6] - 52:1, 65:3, 68:7, 68:9, 68:16, 68:21

*deal*[2] - 51:24, 79:1
*dealing*[1] - 77:2
*deals*[1] - 80:16
*dealt*[1] - 77:12
*decide*[12] - 8:10, 10:17, 11:18, 11:20, 11:23, 27:1, 27:3, 35:4, 35:5, 59:7, 97:24, 103:20
*decided*[4] - 7:13, 10:21, 46:1
*deciders*[1] - 98:6
*decision*[9] - 7:3, 9:7, 28:22, 37:22, 54:19, 54:21, 65:3, 75:7, 75:9
*Declaration*[1] - 5:23
*defendant*[11] - 10:19, 14:9, 17:14, 27:17, 27:20, 28:3, 33:8, 35:7, 44:7, 74:10, 74:22
*DEFENDANTS*[1] - 1:14
*defendants*[6] - 27:7, 27:13, 27:14, 28:7, 28:16, 30:13
*defense*[31] - 16:7, 16:15, 16:20, 17:1, 20:6, 28:17, 28:24, 29:12, 29:21, 29:22, 29:24, 30:4, 30:24, 31:1, 31:6, 31:8, 36:2, 43:19, 44:18, 71:10, 80:20, 80:21, 86:12, 87:12, 87:19, 88:11, 91:16, 97:7, 105:15, 105:20
*define*[1] - 61:16
*definitely*[1] - 70:9
*definition*[3] - 25:24, 26:2, 26:5
*degree*[1] - 26:21
*deli*[1] - 101:23
*deliberated*[1] - 65:2
*demeanor*[1] - 26:25
*democracy*[6] - 7:4, 7:8, 8:3, 97:12, 97:22, 97:23
*denied*[1] - 95:14
*dentist*[1] - 86:17
*describe*[1] - 17:3
*described*[3] - 46:15,

Concordance

47:22, 49:11
description[1] - 63:3
deselected[2] - 8:25, 9:23
deselection[1] - 8:24
detail[2] - 11:22, 104:23
details[3] - 45:23, 47:9, 52:7
determination[3] - 37:16, 37:19, 60:16
determine[5] - 5:15, 48:24, 49:1, 52:16, 60:3
device[1] - 78:7
devised[1] - 5:20
dictate[1] - 99:8
different[8] - 24:17, 26:9, 56:11, 72:12, 78:3, 96:25, 103:10
differently[1] - 79:21
difficult[1] - 3:21
dining[2] - 103:2, 103:25
dire[6] - 8:18, 8:19, 10:5, 52:21, 71:10
Dire[4] - 2:1, 2:3, 2:4, 2:5
DIRE[1] - 1:7
directly[3] - 53:9, 71:1, 102:17
disagree[1] - 32:15
disappointing[3] - 64:25, 65:1, 65:4
discrimination[1] - 48:12
discrimination-type[1] - 48:12
discuss[3] - 100:22, 101:10, 101:11
discussed[2] - 8:12, 45:3
discussion[1] - 3:22
dislike[1] - 72:17
dispute[21] - 5:12, 5:16, 6:3, 6:8, 14:10, 42:1, 43:1, 44:25, 45:1, 45:2, 45:5, 45:9, 45:15, 45:20, 45:21, 46:14, 46:22, 47:1, 47:22, 48:16, 59:7

disputes[3] - 6:19, 14:14, 98:7
distance[1] - 101:21
distaste[2] - 33:4, 33:5
distasteful[4] - 34:19, 34:21, 37:24, 37:25
District[5] - 4:20, 14:1, 14:2, 99:11
DISTRICT[2] - 1:1, 1:1
district[8] - 6:9, 57:17, 57:22, 57:25, 58:9, 58:16, 58:25, 59:1
Division[1] - 14:2
DIVISION[1] - 1:2
document[2] - 26:23, 27:1
documents[1] - 12:4
dog[1] - 90:25
dollar[1] - 79:15
dollars[1] - 98:24
domestic[1] - 67:2
done[9] - 3:9, 6:6, 41:1, 50:16, 69:1, 70:10, 70:14, 89:18, 99:4
door[7] - 74:8, 85:10, 85:11, 85:13, 85:17
doors[2] - 7:7, 85:10
doubt[1] - 26:10
Dow[1] - 48:6
down[22] - 12:14, 12:18, 15:7, 16:13, 71:22, 81:3, 94:17, 97:1, 97:13, 97:25, 98:4, 98:10, 98:23, 102:10, 102:11, 102:14, 102:16, 102:21, 103:7, 103:11, 105:1
downstairs[1] - 103:3
downtown[1] - 5:6
dram[8] - 80:16, 80:18, 88:10, 91:14, 91:20, 91:24, 92:7, 92:16
dramatic[1] - 8:7
draw[2] - 6:18, 12:21
drill[1] - 71:22
drink[1] - 91:19
driven[8] - 17:25, 18:4, 18:6, 18:23, 18:24,

18:25, 76:11, 76:17
driver[1] - 68:19
driving[2] - 76:12, 76:18
due[3] - 34:24, 35:9, 94:25
during[4] - 4:1, 13:14, 26:20, 73:12
duties[3] - 6:15, 97:17
duty[2] - 59:3, 67:11
DWI[2] - 66:8, 66:9

E

earn[1] - 72:11
easier[1] - 19:4
easy[2] - 5:5, 5:6
eat[3] - 84:7, 102:25, 103:18
education[1] - 43:15
Educators[1] - 41:10
Edwards[6] - 19:21, 99:4, 103:14, 103:23, 105:2
effect[1] - 26:12
efficient[4] - 5:7, 8:13, 8:15, 82:14
eight[18] - 7:15, 10:2, 56:11, 62:19, 93:14, 93:15, 93:19, 93:20, 94:1, 94:3, 94:4, 94:5, 94:16, 95:16
either[8] - 10:19, 29:20, 32:22, 33:21, 51:18, 60:18, 84:4
elderly[1] - 81:23, 82:15, 83:4
electing[1] - 98:2
electronic[1] - 78:7
elevator[1] - 100:18
elevators[2] - 100:14, 101:24
embarrass[2] - 12:25, 13:8
embarrassing[2] - 12:25, 13:2
emotional[1] - 88:3
employed[5] - 45:18, 45:19, 57:16, 57:22, 57:25
employee[14] - 37:2,

39:21, 40:21, 49:22, 62:6, 62:7, 62:8, 62:24, 72:2, 72:8, 72:19, 73:2, 79:14
employees[21] - 14:15, 14:16, 14:17, 37:8, 37:10, 39:18, 50:4, 50:9, 50:18, 50:21, 51:15, 55:15, 55:16, 56:3, 56:8, 56:10, 56:13, 56:17, 72:4, 72:10, 78:23
employer[2] - 48:16, 100:24
employment[1] - 46:4
emptories[1] - 94:4
empty[2] - 13:12, 104:21
encounter[1] - 98:18
End[1] - 106:3
end[9] - 7:8, 27:3, 65:5, 65:9, 68:22, 68:25, 69:12, 71:5, 99:11
endeavor[1] - 5:7
ended[2] - 46:3, 47:11
ends[1] - 25:22
enforcement[1] - 34:23
engaged[9] - 6:7, 43:1, 47:22, 48:16, 66:3, 67:15, 67:18, 68:8, 69:17
engineer[1] - 55:5
engineers[5] - 53:19, 54:4, 54:5, 54:13, 55:1
enjoy[2] - 53:13, 106:2
enormous[1] - 5:2
ensuring[1] - 6:18
enter[3] - 85:17, 102:8, 102:10
entered[2] - 4:6, 96:8
entire[1] - 71:17
entitled[4] - 14:16, 14:18, 35:11, 106:8
entrance[1] - 102:11
envy[1] - 78:25
equal[3] - 7:11, 50:13, 50:15
escalator[4] - 102:14, 102:17, 102:20, 103:7
escapes[1] - 20:10

*essential*[1] - 11:13
*essentially*[1] - 13:10
*establish*[2] - 31:25, 50:9
*established*[3] - 50:3, 50:11, 62:12
*establishment*[3] - 17:3, 18:25, 36:9
*establishments*[1] - 91:25
*ET*[2] - 1:3, 1:5
*et*[5] - 4:23, 4:24, 14:2, 14:3, 23:8
*etherial*[1] - 55:1
*evaluation*[2] - 60:21, 60:25
*evenings*[1] - 89:2
*evenly*[3] - 25:16, 25:17, 30:18
*evidence*[44] - 10:18, 11:19, 12:1, 12:2, 12:5, 12:6, 25:12, 25:13, 25:15, 25:16, 25:20, 25:25, 26:22, 27:2, 27:5, 27:10, 28:14, 28:15, 29:25, 30:17, 30:20, 30:25, 31:18, 32:1, 33:2, 35:3, 37:21, 50:3, 50:13, 50:14, 50:17, 50:19, 52:15, 54:9, 59:13, 59:22, 60:5, 60:7, 60:9, 60:23, 60:25, 99:25, 100:23, 101:7
*evidentiary*[1] - 59:15
*exact*[3] - 54:7, 54:16, 54:17
*exactly*[5] - 34:11, 34:12, 35:19, 49:3, 79:9
*example*[5] - 9:12, 51:12, 60:11, 73:20, 79:22
*except*[1] - 5:10
*EXCERPT*[1] - 1:7
*Excerpt*[1] - 2:1
*excerpt*[2] - 3:1, 106:3
*excluded*[2] - 93:2, 93:3
*excuse*[2] - 83:2, 90:20
*excused*[6] - 9:1,

82:11, 85:1, 90:12, 94:23, 99:14
*exist*[1] - 90:1
*existence*[1] - 76:19
*exists*[3] - 38:3, 52:18, 79:10
*exit*[1] - 101:24
*exited*[2] - 85:4, 99:16, 105:4
*exotic*[9] - 14:7, 32:21, 35:8, 36:8, 41:23, 42:25, 63:20, 63:21, 64:1
*expect*[2] - 8:19, 36:2
*expected*[2] - 7:16, 9:3
*expects*[1] - 36:3
*expensive*[1] - 5:6
*experience*[13] - 6:17, 9:19, 13:15, 54:5, 65:5, 65:7, 65:12, 67:6, 67:25, 69:4, 70:4, 70:8, 70:22
*explain*[6] - 11:22, 45:23, 51:10, 52:7, 104:20, 104:23
*explained*[2] - 28:2, 92:13
*explaining*[2] - 26:18, 59:12
*explanation*[5] - 29:1, 33:11, 37:15, 39:12, 92:15
*explicit*[1] - 5:24
*exposed*[1] - 101:17
*express*[2] - 35:25, 36:20
*extensively*[1] - 8:12
*extremely*[2] - 100:11, 100:22
*eyes*[3] - 6:11, 54:1, 57:11

**F**

*facilities*[3] - 85:14, 98:11, 99:1
*facility*[1] - 98:24
*fact*[18] - 5:10, 11:20, 24:18, 31:15, 32:23, 33:21, 36:8, 41:23, 44:10, 44:19, 50:4, 50:8, 50:20, 72:9,

73:6, 74:16, 75:17, 82:9
*facts*[13] - 5:15, 8:9, 8:10, 10:22, 11:16, 11:17, 36:4, 47:24, 50:3, 50:14, 59:7, 71:21, 101:8
*fail*[8] - 25:12, 27:11, 27:15, 27:19, 28:1, 28:5, 29:21, 30:23
*failed*[1] - 31:4
*fails*[1] - 28:19
*Fair*[7] - 14:11, 23:12, 23:13, 23:18, 37:6, 37:10, 79:1
*fair*[32] - 9:4, 9:17, 13:10, 24:10, 25:5, 33:25, 34:22, 35:12, 36:3, 37:21, 41:22, 42:1, 42:13, 42:24, 43:4, 43:21, 44:12, 44:14, 44:20, 46:18, 47:24, 48:18, 48:24, 49:2, 49:13, 52:16, 53:6, 65:13, 75:17, 80:11, 86:4, 98:6
*fairly*[4] - 9:15, 34:5, 35:3, 55:10
*familiar*[11] - 15:20, 17:17, 17:24, 18:9, 18:12, 18:21, 19:1, 21:9, 21:10, 78:8, 79:20
*families*[1] - 97:22
*family*[3] - 5:4, 45:1, 53:16
*far*[12] - 30:7, 33:15, 41:5, 46:15, 47:19, 48:23, 49:6, 49:11, 49:15, 51:20, 79:23, 99:9
*fashion*[4] - 45:6, 72:12, 73:8, 87:11
*father*[1] - 60:11
*Father's*[2] - 17:20, 99:14
*fathers*[1] - 99:13
*favor*[12] - 25:19, 25:21, 25:23, 27:15, 28:15, 28:16, 30:20, 31:1, 31:16, 35:11, 50:21, 59:14
*federal*[6] - 6:6, 6:9, 14:12, 19:9, 34:23,

57:23
*federation*[2] - 40:2, 40:3
*feelings*[3] - 9:2, 9:10, 34:14
*Feldman*[2] - 1:15
*Felicia*[1] - 20:22
*fellow*[2] - 93:8, 98:7
*felt*[3] - 37:23, 66:3, 70:10
*female*[3] - 48:9, 48:11, 74:16
*few*[5] - 53:8, 56:13, 71:15, 71:22, 100:6
*field*[3] - 7:9, 94:14, 95:22
*figure*[1] - 104:21
*Fil*[1] - 102:24
*file*[1] - 62:15
*filed*[2] - 46:2, 46:10
*finally*[2] - 6:1, 22:22
*finders*[1] - 75:18
*fine*[1] - 28:13
*finest*[1] - 73:21
*first*[13] - 5:3, 10:2, 14:21, 17:24, 34:1, 38:7, 67:19, 69:12, 71:17, 100:6, 101:22, 104:4, 105:14
*five*[6] - 68:4, 77:11, 85:24, 93:14, 96:1, 96:2
*flip*[2] - 31:14, 31:23
*floor*[7] - 60:15, 83:24, 84:4, 84:24, 101:22, 101:23, 103:3
*FLSA*[16] - 14:12, 14:15, 14:17, 23:12, 23:13, 23:18, 23:23, 24:5, 24:6, 24:9, 25:4, 76:24, 78:4, 78:13, 101:4
*folks*[6] - 10:2, 13:9, 13:18, 69:24, 85:20
*follow*[22] - 9:6, 11:1, 12:10, 30:14, 32:17, 32:19, 33:3, 33:9, 33:14, 34:4, 36:7, 36:11, 36:23, 36:24, 37:13, 37:14, 38:1, 52:11, 83:11, 85:12, 86:1, 105:2

Concordance

follow-up [3] - 12:10, 52:11, 86:1
following [2] - 33:12, 38:16
food [3] - 102:22, 103:9
football [3] - 59:16, 59:17
FOR [2] - 1:10, 1:14
forced [1] - 82:6
forces [1] - 97:20
foreclose [1] - 52:5
foregoing [1] - 106:6
foreigner [1] - 73:15
foremost [1] - 5:3
forgot [2] - 19:6, 20:4
form [2] - 45:5, 77:15
forms [1] - 12:11
forte [1] - 95:19
forth [1] - 3:24
forum [1] - 34:22
forward [4] - 32:8, 71:3, 71:20, 75:12
founders [1] - 6:18
four [6] - 7:24, 77:11, 82:5, 82:7, 85:24, 93:13
four-day [1] - 7:24
fourth [1] - 82:17
freedom [3] - 11:9
French [1] - 10:6
frequently [1] - 48:22
fresh [1] - 6:11
friend [1] - 45:2
friends [1] - 13:6
frivolous [1] - 51:4
front [3] - 69:8, 93:24, 103:5
full [1] - 3:12
fun [1] - 71:20
function [1] - 11:23
fundamental [2] - 11:3, 11:6
funds [1] - 57:23

G

gaping [1] - 49:3

Garcia [5] - 14:6, 15:14, 15:18, 20:23, 20:24
gate [1] - 96:16
general [6] - 17:9, 38:23, 48:8, 50:1, 75:13, 103:1
generally [2] - 54:4, 54:5
gentleman [2] - 20:9, 20:21
gentleman's [6] - 14:7, 17:15, 17:18, 41:24, 43:1, 77:3
gentlemen [13] - 3:6, 4:13, 4:16, 15:7, 16:2, 35:17, 35:23, 52:25, 74:20, 81:9, 97:10, 99:19, 100:4
given [6] - 8:11, 27:16, 41:18, 52:8, 55:4, 99:24
glasses [1] - 54:2
Gloria [1] - 22:2
goal [5] - 12:25, 13:8, 84:11, 85:19, 98:10
God [1] - 100:1
Gonzalez [3] - 14:7, 15:15, 15:18
government [3] - 7:10, 8:4, 98:5
governs [1] - 14:12
grateful [1] - 11:14
great [2] - 6:24, 7:2
greatest [1] - 97:19
grievances [1] - 77:7
Grimaldo [1] - 22:3
ground [2] - 101:22, 103:3
group [2] - 56:4, 84:1, 98:18
guardian [1] - 81:24
guess [2] - 57:5, 76:16
guided [1] - 11:24
guys [4] - 53:25, 64:5, 70:25, 100:18

H

hair [1] - 72:7
half [3] - 7:21, 8:20, 104:4

hall [1] - 97:25
hallway [10] - 83:2, 84:23, 85:1, 85:2, 85:8, 85:11, 85:12, 90:13, 102:20, 102:21
hand [68] - 10:13, 10:14, 12:13, 13:3, 15:5, 15:21, 16:16, 16:17, 16:21, 17:19, 18:2, 21:5, 23:15, 23:20, 23:21, 24:23, 26:2, 26:6, 27:18, 27:20, 28:4, 28:7, 31:20, 32:3, 33:15, 33:18, 35:8, 36:12, 36:21, 39:9, 39:15, 39:22, 39:24, 40:22, 40:23, 41:14, 42:3, 42:4, 43:4, 43:25, 44:15, 44:21, 45:6, 45:7, 47:2, 47:3, 48:3, 49:17, 51:1, 51:18, 51:21, 55:6, 55:18, 57:8, 57:9, 62:1, 63:23, 66:12, 67:22, 69:9, 70:1, 70:15, 70:18, 72:14, 76:3, 86:4, 99:20, 104:15
hands [75] - 15:22, 16:17, 16:23, 17:12, 19:12, 19:13, 19:19, 19:23, 19:24, 20:2, 20:3, 20:25, 21:3, 21:4, 22:4, 22:5, 22:8, 22:9, 22:13, 22:16, 22:17, 22:20, 22:21, 22:24, 22:25, 23:9, 23:10, 23:17, 26:4, 26:8, 27:22, 27:23, 28:1, 28:8, 28:9, 31:21, 31:22, 32:4, 32:5, 33:16, 34:16, 35:22, 36:13, 36:14, 39:11, 39:16, 42:20, 43:5, 44:4, 44:15, 44:21, 46:24, 49:19, 51:9, 51:23, 53:21, 53:22, 54:3, 55:21, 55:23, 57:19, 57:21, 61:8, 61:9, 63:19, 64:13, 64:20, 64:21, 73:5, 73:9, 74:25, 84:10
hanging [2] - 12:14, 53:13
happy [5] - 65:7, 81:6, 92:13, 94:20, 99:14
hard [1] - 65:12

head [1] - 104:25
Health [1] - 78:10
hear [20] - 7:16, 11:7, 12:2, 12:20, 12:21, 20:16, 30:8, 34:5, 35:17, 43:17, 43:19, 47:23, 53:5, 65:20, 67:4, 68:2, 73:14, 78:6, 96:15, 101:8
heard [20] - 18:5, 23:7, 23:9, 33:13, 33:15, 35:24, 36:19, 38:7, 39:12, 47:19, 49:12, 51:10, 51:20, 57:14, 59:16, 79:13, 80:6, 100:12, 100:23, 101:16
hearing [2] - 21:23, 72:13
hears [1] - 12:22
held [4] - 9:9, 35:20, 42:23, 43:3
help [1] - 100:1
Hernandez [1] - 20:19
hesitancy [1] - 72:1
higher [3] - 26:12, 26:17, 26:18
himself [3] - 14:22, 86:23, 94:21
hire [1] - 13:13
hiring [1] - 45:19
hold [4] - 27:8, 41:21, 76:3, 87:17
home [8] - 6:23, 67:12, 68:2, 83:20, 89:2, 93:9, 103:21
honest [1] - 78:16
honestly [2] - 78:15, 79:6
honesty [4] - 34:1, 34:11, 35:18, 76:2
Honor [44] - 3:7, 3:16, 15:25, 16:8, 16:24, 17:5, 20:7, 23:4, 32:7, 36:16, 52:22, 61:3, 63:13, 64:4, 64:8, 64:9, 68:5, 71:7, 71:12, 81:2, 81:5, 84:15, 86:3, 86:8, 86:11, 87:4, 87:16, 87:21, 88:15, 88:25, 93:1, 94:2, 94:7, 94:15, 95:5, 95:9,

Concordance

95:12, 97:6, 97:9, 105:9, 105:17, 105:19, 105:23, 106:1

HONORABLE [1] - 1:7

hope [4] - 3:14, 85:22, 91:1, 92:4

hopefully [1] - 83:16

hospital [2] - 72:6

hot [2] - 102:1, 102:18

hour [7] - 8:20, 79:15, 79:22, 83:17, 103:2, 104:3, 104:5

hours [3] - 85:6, 89:9, 104:5

house [1] - 90:25

HOUSTON [1] - 1:2

Houston [7] - 1:12, 1:17, 1:22, 14:2, 53:11, 58:6, 71:17

Houstonian [1] - 71:16

HR [1] - 79:5

huge [1] - 13:21

human [2] - 56:6, 78:21

Human [1] - 78:11

humans [1] - 8:14

husband [6] - 80:24, 88:2, 91:9, 91:12, 91:13, 92:20

husband's [1] - 88:4

## I

idea [4] - 49:24, 62:23, 72:2, 79:17

ideally [1] - 53:3

identified [4] - 23:2, 86:20, 86:22, 86:23

identifies [1] - 100:10

identify [1] - 20:6

III [1] - 88:21

illegally [1] - 91:18

impact [2] - 41:25, 46:17

impair [2] - 41:22, 42:13

impartial [30] - 7:13, 9:4, 10:17, 11:2, 13:11, 24:11, 25:6, 34:23, 35:13, 36:3, 37:21, 41:22, 42:1, 42:13, 42:24, 43:4,

43:21, 44:12, 44:14, 44:20, 46:18, 47:24, 48:18, 48:24, 49:2, 49:14, 52:17, 75:17, 86:5, 98:6

impartially [3] - 9:7, 34:5, 35:4

importance [1] - 27:1

important [17] - 5:11, 6:2, 11:8, 11:11, 12:22, 34:2, 35:18, 36:1, 39:3, 80:15, 97:12, 97:23, 98:3, 98:23, 99:2, 100:11, 100:22

importantly [2] - 17:14, 93:23

impose [3] - 5:9, 6:4, 32:16

imposing [1] - 5:2

impossible [1] - 82:12

IN [1] - 1:18

Inc [6] - 14:9, 16:10, 17:6, 17:10, 17:15, 23:8

INC [1] - 1:5

income [1] - 72:11

inconvenience [1] - 5:2

Independence [1] - 5:24

independent [17] - 14:18, 37:4, 37:9, 37:11, 39:22, 40:21, 56:19, 56:24, 56:25, 61:7, 61:17, 61:25, 62:9, 62:23, 72:3, 72:4, 73:7

indicate [5] - 16:17, 23:15, 27:18, 33:15, 36:11

indicated [3] - 18:5, 21:10, 94:19

indifferent [2] - 70:23, 77:17

individual [5] - 7:11, 20:18, 22:18, 22:22, 44:10

individuals [6] - 7:10, 9:5, 33:7, 44:8, 44:13, 44:18

inform [1] - 49:13

information [2] - 49:1,

49:5

informed [3] - 84:24, 88:1, 88:4

injury [1] - 9:16

inquire [1] - 60:15

inquired [1] - 36:1

inserts [1] - 78:17

inside [1] - 102:13

instances [1] - 9:8

instruct [1] - 101:12

instructed [1] - 100:16

instructions [6] - 32:25, 100:5, 101:13, 101:19, 104:11, 104:19

instructs [1] - 38:11

insurance [5] - 72:5, 80:19, 80:21, 88:11, 91:16

intake [1] - 64:18

interesting [4] - 65:25, 66:2, 69:5, 70:4

interns [4] - 4:9, 13:13, 13:15, 13:16

introduce [5] - 14:20, 14:22, 16:1, 19:15, 53:10

introduced [2] - 12:5, 71:15

Introductions.........
..........................
[1] - 2:4

involve [1] - 24:15

involved [13] - 10:23, 44:25, 45:1, 45:2, 45:5, 45:14, 46:14, 46:22, 47:1, 47:13, 48:5, 71:2, 101:3

involves [2] - 32:20, 42:25

involving [2] - 9:16, 51:19

issue [11] - 23:11, 24:20, 26:14, 33:18, 59:21, 63:20, 63:22, 64:1, 74:17, 83:9, 88:24

issues [3] - 33:1, 86:2, 98:16

items [1] - 105:6

itself [2] - 23:7, 65:7

## J

Jermaine [2] - 20:9, 20:12

job [6] - 11:18, 12:23, 38:4, 59:10, 59:12, 78:25

Judge [10] - 3:19, 13:3, 19:8, 65:20, 71:19, 71:23, 75:2, 76:4, 79:8, 93:11

judge [13] - 6:3, 6:8, 8:8, 10:25, 11:16, 11:23, 32:14, 34:22, 48:21, 49:7, 59:12, 64:12, 79:8

judge's [2] - 86:25, 87:7

judges [7] - 4:21, 6:6, 6:10, 11:16, 11:17, 59:16, 99:11

judging [1] - 74:9

judicial [1] - 98:5

JUNE [1] - 1:6

June [1] - 2:2

juries [1] - 26:11

JUROR [249] - 17:21, 18:2, 18:7, 18:10, 18:14, 18:18, 18:20, 18:23, 19:2, 21:5, 21:7, 21:11, 21:15, 21:20, 21:24, 23:21, 23:24, 24:3, 24:7, 24:12, 24:15, 24:23, 24:25, 25:7, 28:11, 28:18, 28:21, 28:25, 29:3, 29:6, 29:13, 29:16, 29:19, 29:23, 30:2, 30:15, 30:22, 31:3, 31:7, 31:10, 31:12, 31:21, 32:4, 32:7, 33:20, 34:6, 34:18, 35:14, 36:25, 37:14, 38:2, 38:6, 38:18, 39:24, 40:1, 40:4, 40:7, 40:9, 40:12, 40:23, 40:25, 41:4, 41:7, 41:8, 41:10, 42:4, 42:6, 42:8, 42:10, 42:15, 43:7, 43:10, 43:12, 43:16, 43:23, 45:7, 45:9, 45:16, 45:18, 45:21, 45:25, 46:8, 46:12, 46:16, 46:19, 47:3, 47:5, 47:7, 47:10, 47:15, 47:20,

*47:25, 48:3, 48:5, 48:10, 48:14, 48:19, 49:21, 50:10, 50:23, 51:1, 51:3, 53:24, 54:19, 55:6, 55:9, 55:18, 55:20, 55:23, 56:1, 56:3, 56:6, 56:9, 56:11, 56:15, 56:20, 56:21, 56:23, 57:2, 57:4, 57:5, 57:9, 57:12, 57:18, 57:22, 57:25, 58:2, 58:6, 58:8, 58:11, 58:14, 58:20, 58:22, 58:24, 59:24, 60:4, 60:8, 61:2, 61:12, 61:15, 61:18, 61:22, 62:3, 62:6, 62:11, 62:13, 62:15, 62:18, 62:21, 62:25, 63:7, 63:23, 63:25, 64:24, 65:2, 65:9, 65:14, 65:18, 65:23, 65:25, 66:5, 66:8, 66:12, 66:14, 66:18, 66:20, 66:25, 67:2, 67:8, 67:11, 67:17, 67:20, 67:22, 67:24, 68:3, 68:7, 68:10, 68:12, 68:15, 68:18, 68:21, 68:24, 69:3, 69:6, 69:9, 69:11, 69:15, 69:18, 70:1, 70:3, 70:7, 70:10, 70:15, 70:18, 70:20, 70:23, 72:14, 72:16, 72:20, 75:6, 75:11, 75:21, 76:9, 76:15, 76:21, 77:1, 77:4, 77:6, 77:11, 77:14, 77:18, 77:23, 78:1, 78:10, 78:14, 78:22, 78:24, 79:2, 79:4, 79:12, 79:19, 79:23, 80:5, 80:12, 80:19, 80:22, 81:1, 88:21, 88:25, 89:8, 89:15, 90:2, 90:7, 90:9, 90:11, 90:14, 91:5, 91:8, 91:15, 92:3, 92:6, 92:10, 92:12, 92:17, 92:21, 92:23, 96:24, 104:15, 104:17*

**Juror** [90] - 2:5, 17:25, 18:3, 18:4, 18:12, 23:22, 24:13, 24:24, 33:17, 34:10, 34:16, 35:24, 36:19, 36:21, 36:22, 37:22, 38:20, 39:25, 40:24, 41:3,

*41:18, 42:5, 43:6, 43:25, 45:8, 47:4, 48:2, 49:20, 51:2, 51:13, 55:7, 55:20, 55:24, 56:2, 56:6, 56:23, 57:7, 57:10, 57:24, 58:7, 60:1, 60:2, 61:4, 61:10, 61:20, 61:21, 61:23, 62:1, 63:25, 64:22, 65:17, 66:13, 66:22, 66:23, 67:23, 68:13, 69:10, 69:19, 70:2, 70:13, 70:19, 70:24, 72:15, 72:25, 76:8, 77:22, 80:14, 85:22, 85:23, 86:24, 87:13, 87:22, 88:2, 88:17, 88:18, 88:22, 90:15, 90:24, 91:2, 92:24, 93:2, 93:11, 94:5, 94:18, 95:11, 95:15, 95:21, 95:22*

**juror** [27] - 8:25, 9:11, 9:22, 11:2, 12:11, 21:6, 25:1, 26:21, 26:24, 26:25, 27:3, 30:9, 53:23, 55:19, 56:5, 59:9, 74:7, 83:7, 85:21, 86:23, 87:17, 88:2, 88:20, 91:4, 100:8, 100:10, 100:17

**juror's** [1] - 26:24

**jurors** [27] - 4:6, 7:14, 8:25, 10:17, 11:24, 38:10, 52:12, 52:17, 60:3, 63:11, 64:3, 64:19, 64:20, 67:5, 71:25, 81:7, 85:4, 85:25, 86:19, 86:21, 96:6, 96:8, 96:14, 98:3, 98:6, 99:16, 100:17

**Jurors** [2] - 2:6, 2:6

**JURORS** [54] - 4:14, 4:18, 15:1, 15:6, 16:5, 16:22, 19:11, 19:18, 23:16, 25:9, 26:3, 26:7, 27:22, 28:8, 33:16, 34:9, 34:15, 35:21, 36:13, 39:10, 40:16, 41:15, 42:19, 43:5, 44:3, 46:23, 49:19, 51:8, 51:22, 53:1, 53:7, 53:21, 55:14, 57:21, 59:4, 61:9, 63:18, 64:16, 64:21, 69:22, 73:4, 73:9, 74:25, 76:6,

*84:9, 84:14, 84:20, 96:11, 98:15, 98:19, 98:21, 100:2, 104:1, 104:25*

**Jury** [1] - 105:4

**jury** [70] - 3:2, 4:10, 4:13, 4:17, 4:23, 5:1, 5:15, 5:19, 5:21, 5:24, 6:1, 6:9, 6:10, 7:15, 7:21, 7:23, 8:1, 8:8, 8:19, 8:21, 8:23, 10:3, 10:17, 11:6, 11:15, 13:10, 13:12, 13:16, 19:22, 25:13, 26:11, 52:17, 59:2, 59:7, 64:23, 64:24, 65:18, 66:7, 66:15, 66:23, 67:11, 67:24, 69:25, 71:5, 81:14, 82:1, 82:12, 83:19, 85:13, 85:14, 85:15, 89:4, 96:3, 96:16, 97:5, 97:8, 97:11, 98:4, 99:19, 100:4, 103:14, 103:15, 103:16, 103:20, 103:21, 105:2, 105:3, 105:7, 105:21

**justice** [3] - 25:17, 28:14, 30:18

## K

**keep** [3] - 13:12, 62:14, 62:20

**Kelly** [2] - 1:11, 15:3

**Khorshidpanah** [7] - 1:20, 16:12, 17:10, 17:11, 20:8, 22:7

**kids** [1] - 82:18

**kind** [20] - 35:14, 38:22, 41:17, 41:18, 41:19, 44:23, 57:3, 60:10, 66:24, 68:17, 72:12, 72:21, 73:18, 74:12, 75:15, 76:2, 76:13, 80:25, 92:5, 102:6

**kinds** [1] - 103:10

**KING** [12] - 3:16, 20:7, 20:12, 20:17, 20:22, 21:1, 22:2, 22:6, 22:10, 22:14, 22:18, 22:22

**King** [5] - 1:15, 16:11, 20:4, 22:1, 23:1

**knowing** [1] - 76:19

**knowledge** [9] - 23:13,

*23:18, 24:5, 40:5, 40:10, 40:12, 40:13, 41:1, 76:20*

**known** [1] - 41:12

**knows** [1] - 105:15

**Kristal** [3] - 14:6, 15:14, 15:18

## L

**labor** [1] - 73:7

**Labor** [7] - 14:11, 23:12, 23:14, 23:18, 37:6, 37:10, 79:1

**ladies** [9] - 4:13, 4:16, 16:2, 52:24, 74:20, 81:9, 97:10, 99:19, 100:4

**laid** [1] - 54:20

**Lange** [3] - 14:6, 15:14, 15:17

**laptop** [2] - 101:14, 101:15

**last** [10] - 7:16, 20:9, 21:9, 21:11, 67:10, 68:6, 68:20, 69:14, 70:25

**lasted** [3] - 7:18, 7:20, 7:21

**laugh** [1] - 98:22

**laughter** [1] - 59:4

**Laura** [5] - 1:21, 22:23, 106:6, 106:10, 106:11

**law** [65] - 5:16, 9:6, 10:16, 10:18, 10:22, 11:1, 11:17, 11:23, 11:24, 13:14, 13:20, 14:12, 19:15, 19:17, 26:14, 26:17, 27:16, 29:11, 32:14, 32:17, 32:18, 32:19, 32:25, 33:3, 33:9, 33:12, 33:14, 34:4, 34:23, 35:1, 36:6, 36:7, 36:11, 36:23, 36:24, 37:1, 37:17, 37:18, 37:20, 38:1, 38:3, 38:11, 38:12, 38:13, 38:14, 38:16, 53:14, 54:21, 63:3, 64:7, 64:9, 64:15, 71:21, 75:7, 75:9, 75:13, 79:10, 79:11, 83:5, 84:5, 84:24, 99:24

**laws** [2] - 32:14, 32:15

Concordance

117

lawsuit[6] - 39:2, 39:3, 39:5, 47:14, 51:4, 74:22
lawsuits[4] - 38:23, 39:6, 39:8, 39:13
lawyer[3] - 71:18, 80:16, 88:3
lawyers[15] - 8:7, 8:11, 9:22, 9:23, 10:11, 11:14, 11:25, 12:9, 32:10, 48:21, 49:15, 52:9, 84:21, 91:24, 100:16
lead[1] - 97:25
leadership[1] - 98:2
learn[2] - 77:5, 78:12
learned[1] - 77:6
least[1] - 89:5
leave[5] - 53:13, 83:23, 84:23, 97:21, 103:4
leaving[4] - 82:22, 94:25, 103:4, 104:4
left[64] - 15:21, 16:14, 16:16, 17:17, 17:25, 18:1, 19:12, 19:19, 19:23, 20:2, 20:15, 20:20, 20:24, 21:3, 22:4, 22:8, 22:12, 22:16, 22:20, 22:24, 23:9, 23:13, 23:14, 24:22, 26:2, 27:21, 31:22, 33:12, 34:8, 34:14, 35:20, 39:6, 39:9, 39:23, 40:15, 42:3, 42:18, 44:12, 44:15, 44:23, 44:25, 45:4, 45:6, 46:21, 49:18, 50:25, 51:7, 55:21, 81:21, 81:25, 82:15, 84:13, 84:18, 85:12, 90:15, 92:24, 101:25, 102:5, 102:10, 102:21, 103:5, 103:8, 103:9
legal[4] - 13:22, 16:15, 16:20, 95:4
lengthy[1] - 67:15
Leslie[1] - 22:18
less[4] - 80:8, 81:21, 83:18, 94:14
lesser[1] - 26:14
letting[1] - 88:16
level[3] - 102:15, 102:16

levels[1] - 7:9
liberty[1] - 26:16
license[1] - 91:20
life[2] - 71:17, 80:16
light[1] - 11:12
limited[1] - 52:9
line[4] - 59:19, 97:21, 100:15, 100:18
lines[1] - 91:22
liquor[6] - 91:18, 91:19, 92:1, 92:2, 92:4
Lisa[1] - 19:21
list[5] - 83:8, 85:21, 86:25, 87:7
listen[3] - 9:7, 9:15, 36:3
listening[3] - 13:6, 35:2, 43:21
litigation[2] - 88:10, 91:14
live[2] - 76:12, 89:1
lives[3] - 5:8, 8:16, 97:21
living[1] - 43:18
LLC[2] - 62:4, 62:12
located[6] - 14:8, 17:4, 17:7, 17:16, 17:18, 85:15
look[9] - 4:3, 15:8, 37:20, 59:6, 60:7, 71:2, 71:20, 74:3, 79:3
looking[6] - 10:16, 15:21, 15:22, 28:10, 72:23, 83:24
loose[2] - 94:16, 94:20
lose[3] - 25:23, 30:2, 30:3
loss[1] - 62:17
lower[1] - 79:25
lucky[1] - 64:6
lunch[23] - 3:17, 8:21, 81:12, 81:14, 81:15, 83:15, 83:21, 85:20, 100:5, 101:20, 103:2, 103:13, 103:18, 103:19, 103:25, 104:5, 104:9, 104:20, 105:22, 106:2
lying[2] - 21:16, 74:1

**M**

ma'am[11] - 24:24, 42:7, 42:17, 47:4, 56:5, 63:24, 65:21, 72:15, 91:3, 91:6, 92:16
mad[1] - 73:23
madam[1] - 96:18
made-to-order[1] - 102:19
Mahmoud[2] - 20:8, 22:6
main[1] - 14:14
man[2] - 22:19, 73:23
manage[1] - 56:8
Management[1] - 78:11
manager[7] - 17:9, 19:21, 20:13, 22:11, 22:14, 22:19, 56:7
MANAGER[6] - 3:4, 4:9, 19:16, 96:19, 99:6, 99:22
Maria[2] - 1:19, 16:3
Marissa[3] - 1:19, 16:11, 21:1
mark[1] - 59:25
married[1] - 53:14
materials[1] - 97:2
math[6] - 54:11, 90:19, 90:22, 93:13, 94:13, 95:18
matter[20] - 9:2, 9:18, 9:19, 9:20, 32:20, 35:25, 36:5, 36:7, 36:20, 38:23, 41:17, 41:19, 42:12, 43:2, 49:14, 51:19, 96:24, 101:16, 105:10, 106:8
matters[3] - 33:8, 52:12
Maylene[3] - 14:5, 15:14, 15:18
mean[8] - 21:11, 29:16, 30:6, 38:3, 38:18, 54:20, 61:12
meaning[11] - 9:1, 10:6, 27:1, 27:10, 27:14, 27:18, 30:18, 31:25, 36:8, 50:15, 81:21

means[4] - 25:15, 91:20, 92:8, 92:16
meant[1] - 79:19
measurements[1] - 54:17
mechanical[1] - 1:23
medical[5] - 82:2, 82:4, 82:16, 83:4, 84:8
meet[8] - 27:19, 28:2, 28:5, 29:21, 31:15, 31:24, 35:6, 50:20
meeting[1] - 71:4
member[11] - 39:1, 39:7, 39:14, 39:19, 40:18, 40:25, 41:2, 41:4, 41:13, 42:21, 45:1
members[2] - 71:25, 94:4
memory[1] - 102:23
men[5] - 6:21, 7:2, 32:16, 73:21, 85:15
mention[2] - 23:3, 51:24
mentioned[11] - 5:22, 11:3, 17:1, 21:12, 22:6, 23:11, 51:14, 51:25, 81:10, 83:3, 88:8
met[3] - 11:21, 49:15, 50:15
method[1] - 5:20
mic[1] - 88:19
microphone[2] - 20:14, 65:22
microphones[1] - 12:14
microwave[1] - 103:17
might[2] - 50:23, 67:14
mind[5] - 3:22, 49:7, 50:19, 74:24, 76:8
minded[1] - 35:15
mindful[1] - 5:2
minimum[16] - 14:13, 14:16, 14:19, 24:19, 37:3, 72:11, 72:20, 73:2, 77:7, 79:11, 79:13, 79:24, 80:4, 80:6, 80:7
minor[6] - 81:20, 82:15, 83:4, 89:7, 89:17, 95:1

Concordance

minute[1] - 86:16

minutes[8] - 3:8, 3:13, 68:4, 71:15, 83:17, 87:6, 96:1, 96:2

misplaced[1] - 91:24

miss[1] - 93:17

missed[3] - 36:21, 86:7, 93:7

missing[1] - 94:8

mission[1] - 6:25

misstated[1] - 63:5

mistake[1] - 19:7

mistrial[1] - 69:12

misunderstood[1] - 91:12

mom[1] - 41:12

moment[7] - 17:17, 20:10, 63:2, 78:6, 81:2, 90:23

Moments[20] - 14:3, 14:8, 14:9, 14:11, 16:10, 17:7, 17:16, 17:18, 17:25, 18:5, 18:13, 18:22, 18:25, 20:13, 22:11, 22:19, 76:11, 76:12, 76:18, 76:20

moments[1] - 8:7

Monday[1] - 4:16

money[6] - 26:13, 39:3, 39:6, 39:8, 39:14, 73:8

monthly[1] - 78:2

months[6] - 7:19, 7:22, 62:19, 81:20, 82:5, 82:7

Moore[3] - 20:12, 22:10, 22:12

morning[10] - 4:13, 4:14, 4:16, 4:18, 14:25, 15:1, 52:24, 53:1, 98:13

most[6] - 5:20, 9:5, 75:14, 83:17, 93:24, 104:4

mother[4] - 48:5, 48:15, 53:14, 53:15

mother-in-law[1] - 53:14

motion[5] - 87:10, 87:12, 87:19, 94:22, 95:13

motive[1] - 10:23

move[7] - 3:24, 28:14, 29:22, 30:24, 84:11, 93:1, 94:23

moved[2] - 59:18, 95:10

moving[1] - 6:16

MR[224] - 3:7, 3:8, 3:11, 3:14, 3:16, 3:19, 4:1, 4:4, 14:25, 15:2, 15:9, 15:13, 15:17, 15:24, 16:2, 16:8, 16:24, 17:5, 20:7, 20:11, 20:12, 20:17, 20:22, 21:1, 22:2, 22:6, 22:10, 22:14, 22:18, 22:22, 23:4, 36:16, 52:22, 52:24, 53:2, 53:8, 53:22, 53:25, 54:24, 55:7, 55:12, 55:15, 55:19, 55:21, 55:24, 56:2, 56:5, 56:8, 56:10, 56:13, 56:16, 56:22, 56:25, 57:3, 57:7, 57:10, 57:13, 57:19, 57:24, 58:1, 58:4, 58:7, 58:9, 58:18, 58:21, 58:23, 59:1, 59:5, 60:2, 60:5, 60:12, 61:3, 61:6, 61:10, 61:14, 61:16, 61:20, 61:23, 62:5, 62:8, 62:12, 62:14, 62:16, 62:20, 62:22, 63:10, 63:19, 63:24, 64:1, 64:4, 64:17, 64:22, 65:1, 65:4, 65:11, 65:15, 65:20, 66:3, 66:6, 66:9, 66:13, 66:17, 66:19, 66:21, 67:1, 67:4, 67:10, 67:13, 67:18, 67:21, 67:23, 67:25, 68:5, 68:8, 68:11, 68:13, 68:17, 68:20, 68:22, 68:25, 69:4, 69:7, 69:10, 69:14, 69:16, 69:19, 69:23, 70:2, 70:5, 70:8, 70:12, 70:16, 70:19, 70:21, 70:24, 71:12, 71:14, 72:15, 72:18, 72:22, 73:5, 73:10, 75:1, 75:5, 75:10, 75:16, 75:22, 75:25, 76:7, 76:10, 76:16, 76:22, 77:2, 77:5, 77:9, 77:12, 77:15, 77:19, 77:21, 77:24,

78:5, 78:8, 78:12, 78:20, 78:23, 78:25, 79:3, 79:7, 79:18, 79:20, 80:3, 80:11, 80:14, 80:21, 80:23, 81:2, 81:5, 84:15, 86:3, 86:8, 86:11, 86:14, 87:3, 87:5, 87:12, 87:16, 87:21, 88:7, 88:10, 88:15, 90:17, 90:18, 90:20, 91:1, 93:1, 93:4, 93:7, 93:10, 93:19, 93:21, 93:23, 94:2, 94:7, 94:9, 94:12, 94:15, 94:20, 94:23, 94:25, 95:4, 95:7, 95:9, 95:12, 95:17, 95:18, 95:23, 96:1, 97:6, 97:9, 105:9, 105:17, 105:19, 105:23, 106:1

multi[1] - 44:23

multi-tiered[1] - 44:23

multiple[2] - 100:13, 102:16

must[7] - 11:24, 13:8, 25:11, 25:18, 27:3, 27:6, 99:6

## N

name[17] - 4:21, 15:2, 16:9, 17:2, 17:3, 17:14, 17:16, 19:8, 20:9, 21:10, 40:6, 53:10, 71:14, 83:7, 88:20, 91:4, 96:15

named[9] - 14:8, 20:9, 20:18, 20:22, 21:1, 22:2, 22:14, 22:18, 22:23

names[11] - 15:11, 15:20, 20:15, 21:7, 21:11, 21:18, 21:21, 21:23, 23:3, 96:14, 101:16

nation[1] - 6:18

native[1] - 71:16

nature[2] - 13:2, 34:25

necessarily[2] - 30:3, 30:4

need[31] - 3:12, 3:14, 12:12, 20:6, 33:3, 33:18, 49:12, 51:18, 52:2, 59:7, 64:13, 76:1, 81:22, 82:1,

82:3, 82:8, 82:24, 84:4, 84:5, 84:15, 85:8, 85:21, 86:10, 87:22, 88:13, 90:23, 95:25, 100:25, 103:24, 104:12, 105:6

needed[2] - 23:3, 35:17

negatively[1] - 104:25

neighbor[1] - 96:10

neighbors[1] - 6:16

NELSON[1] - 1:3

Nelson[6] - 4:23, 14:2, 14:6, 15:13, 15:17, 23:8

never[2] - 46:3, 79:12

new[3] - 13:6, 53:15, 89:25

newspaper[1] - 78:2

next[4] - 13:6, 89:9, 90:4, 98:18

night[1] - 89:22

none[1] - 33:8

noon[1] - 86:17

normally[1] - 89:22

note[1] - 13:5

noted[1] - 75:24

notes[3] - 68:11, 104:18, 104:23

nothing[4] - 8:14, 72:23, 91:21, 92:8

notions[1] - 46:15

number[10] - 9:23, 21:6, 53:23, 55:19, 56:5, 85:21, 88:20, 91:4, 99:6, 99:7

Number[98] - 17:25, 18:3, 18:4, 18:12, 23:22, 24:14, 24:24, 28:9, 33:17, 34:11, 34:17, 36:22, 38:20, 39:25, 40:24, 41:3, 42:5, 43:6, 43:25, 45:8, 47:4, 48:2, 49:20, 51:2, 51:13, 55:7, 55:20, 55:25, 56:1, 56:2, 56:23, 57:7, 57:10, 57:13, 57:23, 57:24, 58:7, 60:1, 60:2, 61:4, 61:10, 61:11, 61:20, 61:21, 61:23, 62:2, 63:25, 64:22, 65:17,

66:13, 66:22, 66:24, 67:23, 68:14, 69:10, 69:20, 70:2, 70:13, 70:19, 70:24, 72:15, 72:16, 73:1, 75:1, 75:5, 76:8, 76:16, 76:23, 77:22, 79:7, 80:14, 85:23, 85:24, 86:3, 86:7, 86:23, 86:24, 88:2, 88:17, 88:18, 88:22, 90:15, 90:16, 90:20, 90:21, 90:24, 91:2, 93:11, 94:6, 94:18, 95:11, 95:15, 95:21

numbered[1] - 4:25

Numbers[9] - 35:24, 36:19, 37:22, 41:18, 85:22, 87:13, 87:23, 95:22, 96:6

numbers[4] - 53:25, 54:2, 96:25, 100:7

nurses[1] - 72:6

## O

oath[7] - 10:7, 10:14, 12:3, 32:13, 32:19, 34:11, 99:21

object[3] - 32:22, 87:20, 95:11

objection[4] - 87:11, 87:15, 87:16, 95:8

objections[2] - 97:4, 97:8

obligations[2] - 5:4

observe[2] - 13:18, 13:21

observer[1] - 32:6

obviously[3] - 13:20, 78:19, 97:18

occasionally[1] - 97:16

OF[3] - 1:1, 1:7, 1:8

offended[1] - 38:1

offense[1] - 88:13

offered[1] - 29:25

office[1] - 99:12

officer[5] - 73:25, 74:1, 74:6, 74:9

officers[2] - 73:22, 74:17

often[1] - 11:7

once[8] - 6:2, 6:5, 10:1, 15:16, 37:18, 102:7, 102:13, 102:16

one[45] - 4:21, 5:21, 8:24, 14:13, 15:10, 16:3, 19:6, 23:24, 25:16, 27:4, 30:9, 33:7, 35:8, 36:9, 36:16, 37:7, 38:10, 39:17, 44:8, 51:12, 51:24, 53:4, 62:7, 63:1, 67:16, 67:19, 70:25, 73:13, 73:21, 75:22, 76:13, 77:16, 78:4, 81:2, 83:3, 85:24, 87:6, 87:24, 89:24, 92:15, 93:13, 93:25, 97:17, 102:9

ones[1] - 85:25

Open[1] - 4:11

open[4] - 7:6, 13:19, 85:13, 95:20

opening[1] - 3:16

opens[1] - 102:22

operate[1] - 98:5

opinion[2] - 51:3, 76:13

opinions[1] - 77:15

opportunities[1] - 53:8

opportunity[5] - 7:12, 10:3, 13:5, 52:4, 60:24

opposed[2] - 62:24, 85:7

option[1] - 102:3

options[6] - 101:20, 101:21, 102:17, 103:2, 103:10, 103:25

order[3] - 85:22, 102:19, 105:12

organization[11] - 39:1, 39:7, 39:15, 39:19, 40:6, 40:18, 40:19, 41:14, 41:20, 41:24, 42:22

organizations[2] - 39:4, 39:12

orientation[1] - 82:20

otherwise[2] - 18:9, 19:1

Otto's[1] - 102:23

ought[1] - 49:18

outlined[1] - 86:13

outside[5] - 83:6, 102:3, 105:7, 105:11, 105:21

overall[1] - 70:6

overtime[12] - 14:13, 14:17, 14:19, 24:19, 34:24, 35:9, 37:6, 47:11, 47:17, 49:23, 72:21, 73:2

owes[1] - 92:15

own[7] - 61:12, 61:14, 61:18, 62:5, 62:9, 74:21

owner[3] - 35:10, 46:7, 46:9

ownership[1] - 63:21

owning[1] - 61:12

owns[1] - 14:9

## P

p.m[6] - 96:5, 96:8, 99:16, 105:4, 106:3

P.M[1] - 1:4

Page[1] - 2:2

paid[20] - 14:16, 14:19, 32:21, 37:3, 45:12, 49:24, 49:25, 50:18, 50:22, 57:23, 58:15, 58:24, 72:20, 77:7, 79:13, 79:14, 79:15, 79:21, 80:8, 98:24

Panel[1] - 87:13

panel[19] - 3:3, 3:5, 3:19, 4:5, 4:13, 4:17, 48:22, 52:21, 71:11, 71:25, 73:12, 81:6, 82:11, 85:2, 85:3, 89:14, 97:11, 99:15, 99:19

paper[1] - 82:10

paralegal[4] - 15:24, 16:3, 16:4, 16:11

pardon[1] - 87:14

park[1] - 101:22

parking[1] - 5:5

part[20] - 7:14, 8:1, 8:3, 9:8, 10:14, 32:13, 36:18, 37:16, 38:4, 46:1, 50:12, 65:6, 66:4, 67:7, 70:12, 71:6, 75:14, 93:5, 101:13, 104:19

participate[2] - 10:7, 66:16

participation[4] - 11:5, 11:12, 69:2, 71:7

particular[2] - 9:19, 99:10

parties[15] - 3:1, 5:12, 9:3, 9:20, 10:11, 10:24, 11:14, 12:7, 13:23, 14:20, 51:19, 65:13, 87:1, 87:8, 101:2

Pasadena[6] - 14:8, 16:10, 17:7, 17:16, 17:18, 23:25

passing[1] - 100:21

passion[1] - 9:8

past[2] - 59:18, 59:25

pause[3] - 44:11, 44:14, 44:19

pay[5] - 47:11, 56:14, 58:9, 62:15, 79:25

paying[1] - 71:2

payment[2] - 14:10, 14:12

payroll[2] - 55:16, 55:17

pays[3] - 58:11, 58:14, 58:19

people[19] - 4:8, 11:7, 32:20, 36:3, 38:9, 38:12, 55:10, 59:6, 63:19, 64:7, 64:19, 64:20, 72:10, 73:6, 75:14, 79:13, 79:21, 98:22, 103:22

per[1] - 3:9

perceive[1] - 95:2

percent[5] - 6:9, 59:25, 64:7, 64:11, 64:15

perception[1] - 26:24

peremptory[1] - 9:24

perfect[6] - 8:14, 49:20, 51:12, 84:10, 86:15, 96:2

perfectly[1] - 28:13

perhaps[3] - 6:2, 38:22, 52:11

person[8] - 9:10, 9:25, 21:13, 21:18, 81:23, 82:15, 83:4, 105:14

personal[2] - 32:17,

41:21
**personally** [10] - 7:19, 32:15, 33:20, 45:4, 45:14, 46:21, 46:25, 47:6, 47:7, 91:13
**persons** [1] - 7:15
**phone** [5] - 90:3, 90:7, 101:14, 101:15, 104:6
**Pichardo** [1] - 20:18
**pick** [5] - 12:15, 65:22, 76:7, 80:15, 93:23
**picked** [1] - 67:11
**picking** [1] - 12:21
**picture** [1] - 21:13
**piece** [2] - 26:22, 27:2
**pillar** [1] - 3:22
**pipeline** [1] - 98:17
**place** [5] - 18:6, 92:2, 97:2, 100:8, 102:1
**placed** [2] - 35:11, 97:3
**places** [1] - 102:25
**plaintiff** [11] - 10:19, 25:18, 27:9, 28:18, 29:20, 30:19, 31:11, 86:10, 87:19, 97:4, 105:6
**plaintiffs** [43] - 11:18, 11:21, 14:5, 14:10, 14:14, 15:5, 15:19, 25:10, 25:12, 25:14, 25:22, 27:4, 27:6, 27:10, 27:15, 27:19, 28:1, 28:5, 28:13, 29:9, 29:21, 29:25, 30:12, 30:16, 30:23, 31:4, 31:15, 31:19, 31:24, 32:2, 33:5, 34:24, 35:5, 36:2, 37:8, 39:18, 43:17, 44:18, 50:4, 50:15, 50:20, 95:10, 105:10
**PLAINTIFFS** [1] - 1:10
**plaintiffs'** [6] - 14:22, 30:25, 37:24, 52:20, 95:3, 95:17
**plan** [2] - 5:7, 83:14
**planning** [1] - 81:18
**plans** [1] - 105:15
**playing** [1] - 7:9
**pleasure** [2] - 4:22, 71:4

**PLLC** [1] - 1:11
**plus** [1] - 94:5
**podium** [2] - 88:19, 91:3
**point** [5] - 5:14, 34:4, 38:9, 83:22, 87:24
**pointing** [1] - 13:12
**police** [7] - 73:22, 73:25, 74:1, 74:6, 74:9, 74:17
**poor** [1] - 7:10
**Poorav** [1] - 19:16
**pop** [1] - 85:12
**pops** [1] - 79:4
**pornography** [1] - 9:13
**portion** [3] - 8:18, 10:1, 44:24
**posed** [2] - 6:7, 10:9
**position** [6] - 35:12, 39:2, 39:8, 39:20, 40:11, 40:19
**positions** [2] - 39:5, 39:13
**possible** [6] - 5:8, 8:14, 8:17, 82:14, 84:12, 105:16
**possibly** [1] - 40:1
**potential** [6] - 8:25, 30:9, 38:10, 51:14, 63:4, 86:1
**potentially** [2] - 91:7, 95:1
**potentials** [1] - 89:14
**power** [1] - 32:16
**powerful** [1] - 5:20
**practice** [2] - 88:5, 92:20
**practiced** [1] - 71:16
**practitioner** [1] - 93:8
**pre** [1] - 94:4
**pre-emptories** [1] - 94:4
**precise** [3] - 54:6, 54:16, 54:17
**preconceived** [5] - 46:14, 74:23, 75:18, 75:19
**prefer** [1] - 82:25
**preference** [1] - 43:15

**prejudice** [11] - 24:10, 25:5, 47:19, 48:17, 52:18, 73:11, 73:18, 74:13, 74:18, 74:24, 75:19
**prejudiced** [6] - 73:14, 73:15, 73:22, 74:8, 74:14, 74:17
**prepared** [1] - 13:23
**preponderance** [18] - 11:19, 25:11, 25:13, 25:15, 25:20, 25:25, 26:15, 27:5, 27:10, 30:17, 31:17, 32:1, 50:13, 50:16, 54:9, 59:13, 59:22, 60:25
**presence** [4] - 11:5, 100:21, 105:7, 105:21
**present** [6] - 3:1, 7:12, 19:15, 26:19, 52:15, 84:2
**presentation** [1] - 50:19
**presented** [3] - 33:2, 60:6, 60:23
**presenting** [1] - 71:3
**preserves** [1] - 11:6
**presided** [1] - 7:20
**president** [1] - 17:8
**Presley** [3] - 14:6, 15:14, 15:17
**press** [6] - 11:10, 24:2, 24:4, 24:8, 25:4, 77:25
**pretty** [6] - 5:18, 7:24, 7:25, 59:12, 67:13, 67:18
**prevail** [1] - 25:21
**prevent** [4] - 42:24, 43:3, 43:20, 82:2
**previous** [1] - 9:18
**previously** [4] - 7:19, 47:17, 47:22, 89:25
**pride** [2] - 6:24, 7:2
**prime** [1] - 73:20
**private** [6] - 5:8, 8:16, 13:4, 18:16, 64:8, 64:12
**privately** [1] - 64:3
**privileges** [1] - 97:16
**pro** [2] - 39:4, 39:13
**problem** [10] - 6:11,

32:11, 43:13, 54:14, 55:5, 67:15, 67:17, 72:9, 73:17, 98:18
**proceed** [6] - 10:4, 18:19, 52:23, 71:13, 84:2, 87:11
**Proceedings** [1] - 1:23
**proceedings** [3] - 7:7, 13:22, 106:7
**process** [11] - 8:23, 11:6, 65:6, 66:1, 66:4, 69:17, 81:10, 84:13, 84:18, 87:2
**produced** [1] - 1:24
**produces** [1] - 6:12
**profession** [2] - 32:22, 33:4
**Professional** [2] - 41:9, 41:10
**profit** [1] - 62:17
**promise** [1] - 76:4
**proof** [20] - 11:21, 26:12, 26:15, 26:17, 26:19, 27:19, 28:2, 28:5, 29:9, 29:22, 31:16, 31:25, 50:5, 50:16, 54:9, 54:14, 55:4, 59:13, 59:21, 59:22
**properly** [6] - 32:22, 33:1, 45:12, 49:1, 50:18, 50:22
**Prospective** [8] - 4:6, 85:4, 88:17, 90:15, 91:2, 92:24, 96:8, 99:16
**PROSPECTIVE**
[297] - 4:14, 4:18, 15:1, 15:6, 16:5, 16:22, 17:21, 18:2, 18:7, 18:10, 18:14, 18:18, 18:20, 18:23, 19:2, 19:11, 19:18, 21:5, 21:7, 21:11, 21:15, 21:20, 21:24, 23:16, 23:21, 23:24, 24:3, 24:7, 24:12, 24:15, 24:23, 24:25, 25:7, 25:9, 26:3, 26:7, 27:22, 28:8, 28:11, 28:18, 28:21, 28:25, 29:3, 29:6, 29:13, 29:16, 29:19, 29:23, 30:2, 30:15, 30:22, 31:3, 31:7, 31:10, 31:12, 31:21, 32:4,

Concordance

32:7, 33:16, 33:20,
34:6, 34:9, 34:15,
34:18, 35:14, 35:21,
36:13, 36:25, 37:14,
38:2, 38:6, 38:18,
39:10, 39:24, 40:1,
40:4, 40:7, 40:9,
40:12, 40:16, 40:23,
40:25, 41:4, 41:7,
41:8, 41:10, 41:15,
42:4, 42:6, 42:8,
42:10, 42:15, 42:19,
43:5, 43:7, 43:10,
43:12, 43:16, 43:23,
44:3, 45:7, 45:9,
45:16, 45:18, 45:21,
45:25, 46:8, 46:12,
46:16, 46:19, 46:23,
47:3, 47:5, 47:7,
47:10, 47:15, 47:20,
47:25, 48:3, 48:5,
48:10, 48:14, 48:19,
49:19, 49:21, 50:10,
50:23, 51:1, 51:3,
51:8, 51:22, 53:1,
53:7, 53:21, 53:24,
54:19, 55:6, 55:9,
55:14, 55:18, 55:20,
55:23, 56:1, 56:3,
56:6, 56:9, 56:11,
56:15, 56:20, 56:21,
56:23, 57:2, 57:4,
57:5, 57:9, 57:12,
57:18, 57:21, 57:22,
57:25, 58:2, 58:6,
58:8, 58:11, 58:14,
58:20, 58:22, 58:24,
59:4, 59:24, 60:4,
60:8, 61:2, 61:9,
61:12, 61:15, 61:18,
61:22, 62:3, 62:6,
62:11, 62:13, 62:15,
62:18, 62:21, 62:25,
63:7, 63:18, 63:23,
63:25, 64:16, 64:21,
64:24, 65:2, 65:9,
65:14, 65:18, 65:23,
65:25, 66:5, 66:8,
66:12, 66:14, 66:18,
66:20, 66:25, 67:2,
67:8, 67:11, 67:17,
67:20, 67:22, 67:24,
68:3, 68:7, 68:10,
68:12, 68:15, 68:18,
68:21, 68:24, 69:3,
69:6, 69:9, 69:11,
69:15, 69:18, 69:22,
70:1, 70:3, 70:7,
70:10, 70:15, 70:18,
70:20, 70:23, 72:14,
72:16, 72:20, 73:4,

73:9, 74:25, 75:6,
75:11, 75:21, 76:6,
76:9, 76:15, 76:21,
77:1, 77:4, 77:6,
77:11, 77:14, 77:18,
77:23, 78:1, 78:10,
78:14, 78:22, 78:24,
79:2, 79:4, 79:12,
79:19, 79:23, 80:5,
80:12, 80:19, 80:22,
81:1, 84:9, 84:14,
84:20, 88:21, 88:25,
89:8, 89:15, 90:2,
90:7, 90:9, 90:11,
90:14, 91:5, 91:8,
91:15, 92:3, 92:6,
92:10, 92:12, 92:17,
92:21, 92:23, 96:11,
98:15, 98:19, 98:21
**protecting**[1] - 7:4
**proud**[1] - 6:22
**prove**[9] - 25:11, 25:12,
28:6, 28:20, 28:21,
28:23, 29:10, 29:11,
30:16
**proven**[3] - 11:18, 27:4,
31:17
**provide**[9] - 32:25,
33:13, 34:22, 36:6,
37:17, 37:18, 97:18,
99:1, 104:12
**provided**[3] - 33:11,
83:13, 99:8
**provides**[1] - 37:6
**proving**[1] - 27:9
**publication**[1] - 78:2
**pull**[4] - 7:23, 7:24,
20:14, 88:19
**pulled**[1] - 74:3
**purposing**[1] - 81:17
**put**[5] - 11:4, 25:18,
50:4, 89:20, 97:21

---

## Q

**questioning**[1] - 4:1
**questions**[27] - 10:9,
11:20, 12:1, 12:9,
12:24, 37:7, 38:24,
38:25, 39:17, 48:22,
48:23, 48:25, 49:4,
51:11, 52:11, 59:11,
59:15, 59:23, 67:4,
71:23, 83:12, 84:12,
84:17, 84:18, 103:25,

104:14, 104:24
**quick**[3] - 67:8, 67:13,
93:13
**quickly**[3] - 67:9, 84:12,
105:16
**quietly**[1] - 4:2
**quite** - 56:13
**quote**[1] - 79:9

---

## R

**rainy**[1] - 4:16
**raise**[36] - 10:13, 10:14,
12:13, 13:2, 15:5,
15:21, 16:16, 16:21,
17:19, 23:20, 26:2,
26:5, 27:20, 28:1,
28:4, 28:7, 31:19,
32:3, 33:18, 39:9,
39:15, 39:22, 40:21,
41:14, 42:3, 43:4,
44:15, 44:21, 45:6,
47:2, 49:17, 51:17,
51:21, 57:19, 64:13,
99:20
**raised**[21] - 17:12, 18:2,
27:23, 28:8, 31:22,
33:16, 36:13, 36:14,
36:21, 40:23, 44:6,
53:11, 53:21, 55:23,
57:8, 61:9, 62:1,
63:23, 74:25, 80:10,
86:4
**Raised**[20] - 21:5,
23:21, 24:23, 39:24,
42:4, 45:7, 47:3, 48:3,
51:1, 55:6, 55:18,
57:9, 66:12, 67:22,
69:9, 70:1, 70:15,
70:18, 72:14, 104:15
**raising**[7] - 6:15, 16:17,
23:15, 27:18, 33:15,
36:11, 73:5
**random**[1] - 78:19
**rapid**[1] - 67:8
**rare**[1] - 79:6
**re**[1] - 101:22
**re-park**[1] - 101:22
**reach**[4] - 36:4, 68:23,
94:11, 94:12
**reached**[1] - 99:10
**reaction**[2] - 21:23,
88:4
**read**[12] - 13:24, 23:24,

24:4, 24:8, 25:1, 25:4,
77:9, 77:24, 78:3,
78:4, 78:15, 96:14
**reading**[2] - 76:24,
77:16
**real**[4] - 8:7, 8:8, 38:9,
93:13
**really**[7] - 49:24, 53:12,
54:22, 71:8, 76:1,
79:2, 82:23
**reason**[12] - 5:19, 6:10,
9:25, 10:23, 39:2,
53:12, 54:8, 64:11,
64:14, 74:14, 82:10,
94:19
**reasonable**[1] - 26:10
**reasonably**[1] - 9:3
**reasoning**[1] - 83:7
**rebutting**[1] - 30:24
**Recess**[2] - 86:18,
96:5
**record**[3] - 17:23,
94:19, 106:7
**recorded**[1] - 1:23
**recording**[1] - 12:19
**records**[1] - 62:14
**reddish**[1] - 102:6
**reference**[2] - 5:24,
92:7
**reform**[2] - 39:2, 39:5
**refrigerator**[1] -
103:16
**regard**[3] - 7:14, 75:7,
104:8
**regarding**[5] - 34:23,
35:25, 49:13, 86:1,
88:4
**regards**[3] - 36:22,
75:13, 91:25
**relationship**[1] -
89:25
**released**[1] - 8:22
**religion**[3] - 11:9,
73:17, 74:15
**religious**[1] - 43:14
**remain**[2] - 16:25,
89:14
**remaining**[2] - 10:2,
104:11
**remains**[3] - 17:13,
28:15, 50:15

Concordance

remarkable[1] - 7:25
remember[4] - 13:18, 50:12, 77:10, 78:16
remove[1] - 100:6
render[2] - 97:19, 99:24
rent[1] - 72:7
repeat[2] - 20:15, 27:25
rephrase[1] - 89:12
report[2] - 103:24, 104:2
Reporter[1] - 1:21
reporter[3] - 12:17, 20:1, 20:2
REPORTER'S - 106:5
Reporter's[1] - 2:7
represent[3] - 17:6, 74:19, 74:21
representative[2] - 17:8, 20:5
represented[2] - 91:9, 105:12
representing[1] - 74:6
represents[2] - 88:9, 91:17
requested[2] - 3:1, 106:3
require[3] - 11:1, 86:1, 89:20
required[3] - 8:3, 29:11, 31:5
requirements[1] - 37:5
requires[3] - 10:16, 11:11, 26:17
reschedule[1] - 82:7
research[3] - 59:2, 101:13, 101:15
resolve[1] - 5:13
resolved[3] - 5:17, 6:8, 6:20
Resources[1] - 78:11
resources[2] - 56:7, 78:21
respect[4] - 33:21, 82:13, 98:14, 98:25
respond[2] - 12:12, 44:24

response[31] - 10:9, 15:6, 16:5, 16:22, 19:11, 19:18, 23:16, 25:9, 26:3, 26:7, 34:9, 34:15, 35:21, 39:10, 40:16, 41:15, 42:19, 44:3, 46:23, 51:8, 51:22, 55:14, 63:18, 64:16, 69:22, 73:4, 76:6, 80:6, 84:9, 84:14, 84:20
restrooms[3] - 84:3, 98:20
result[21] - 5:13, 6:12, 24:8, 36:4, 42:11, 43:14, 46:6, 46:13, 47:16, 47:21, 48:15, 50:5, 50:8, 65:7, 65:9, 81:22, 81:25, 82:21, 83:14, 83:23, 84:8
resume[3] - 86:16, 105:7, 105:24
resuming[1] - 105:22
return[13] - 5:8, 25:14, 27:12, 27:17, 27:20, 28:3, 28:6, 28:17, 29:12, 31:6, 31:19, 81:16, 104:23
returning[1] - 32:2
revenue[1] - 62:16
rewarding[7] - 65:5, 65:8, 66:16, 69:6, 69:7, 70:5, 70:8
Reyna[2] - 1:19, 16:11
rich[1] - 7:9
rights[3] - 5:21, 11:7, 11:11
Rights[2] - 5:23, 11:8
rise[3] - 4:5, 99:15, 105:3
RMR[2] - 1:21, 106:11
Rohatgi[1] - 19:16
room[14] - 60:14, 85:9, 85:14, 85:15, 96:3, 103:14, 103:15, 103:16, 103:20, 103:21, 105:2
Rosenthal[1] - 71:19
roughly[1] - 77:10
row[5] - 69:8, 69:24, 70:14, 70:17
RPR[1] - 1:21
rulings[1] - 100:1

run[2] - 8:14, 55:9
running[2] - 37:25, 62:9
runs[2] - 17:15, 43:20
Rusk[1] - 1:22

**S**

safe[2] - 6:23, 97:22
salad[1] - 102:25
salads[1] - 102:2
sandwich[3] - 102:18, 102:24, 103:8
sandwiches[4] - 102:1, 102:2, 102:18
save[1] - 93:9
saw[1] - 43:25
scale[2] - 25:16, 59:13
scales[12] - 25:17, 25:19, 25:23, 27:15, 28:14, 29:22, 30:18, 30:20, 30:24, 31:16, 54:10, 54:15
scenario[2] - 44:12, 60:19
scheduled[2] - 82:20, 82:21
school[9] - 43:13, 53:12, 57:16, 58:9, 58:16, 58:25, 59:1, 82:19, 98:1
scratch[1] - 56:18
seat[10] - 10:3, 19:5, 32:8, 82:12, 85:17, 96:12, 96:16, 96:22, 97:2, 99:17
seated[6] - 4:12, 10:18, 85:9, 97:5, 97:8, 100:3
Seated.................
............... [1] - 2:6
second[4] - 9:22, 69:24, 70:14
security[5] - 100:15, 100:18, 101:24, 101:25, 102:4
see[53] - 3:21, 3:25, 4:3, 8:7, 14:23, 15:21, 15:22, 16:17, 16:23, 19:12, 19:13, 21:12, 26:4, 26:8, 26:19, 27:23, 31:22, 32:5, 34:16, 35:22, 36:14,

39:15, 42:20, 44:4, 44:15, 44:21, 46:24, 51:23, 53:22, 53:25, 54:3, 55:21, 58:23, 59:11, 61:8, 62:1, 63:19, 63:22, 64:19, 67:17, 69:23, 87:17, 87:22, 87:23, 88:5, 90:3, 90:23, 93:16, 97:1, 100:15, 100:19, 102:20, 106:2
seek[3] - 39:6, 39:8, 39:13
seeking[1] - 39:3
seem[1] - 55:2
select[5] - 8:19, 8:21, 81:14, 83:19, 93:15
selected[14] - 8:22, 10:1, 19:22, 67:9, 81:13, 81:15, 83:20, 83:21, 89:4, 94:5, 96:15, 96:23, 100:25, 104:7
selecting[1] - 7:15
selection[2] - 8:23, 11:6
self[2] - 45:18, 45:19
self-employed[2] - 45:18, 45:19
sell[1] - 91:25
selling[1] - 91:18
sells[3] - 92:1, 92:2, 102:1
send[2] - 83:19, 85:20
sending[1] - 82:18
sense[4] - 6:14, 6:17, 74:11, 74:12
separately[3] - 75:2, 75:23, 77:19
serve[2] - 7:3, 89:5
served[6] - 26:10, 64:24, 65:18, 66:23, 67:24, 69:25
serves[1] - 92:4
service[13] - 4:23, 5:1, 7:24, 82:1, 97:11, 97:14, 97:18, 97:19, 97:20, 98:8, 99:3, 99:9
services[1] - 73:8
serving[2] - 13:20, 64:22
set[5] - 9:5, 9:10, 34:4,

53:3, 82:5

sets [1] - 84:3

setting [1] - 36:7

settle [1] - 6:3

seven [2] - 85:25, 93:14

Seventh [1] - 11:4

Several [12] - 28:8, 33:16, 36:13, 43:5, 49:19, 53:21, 55:23, 57:21, 61:9, 64:21, 73:9, 74:25

several [3] - 38:24, 89:9, 101:21

Shaking [1] - 104:25

shape [1] - 45:5

sharing [3] - 65:16, 66:10, 66:22

sheet [1] - 76:10

sheets [1] - 64:18

shirt [1] - 100:9

shirts [1] - 100:7

shocked [4] - 38:12, 38:15, 38:19, 80:1

shop [12] - 80:16, 80:18, 88:10, 91:14, 91:20, 91:24, 92:7, 92:16, 102:18, 102:25, 103:8

short [3] - 8:1, 52:19, 73:16

show [1] - 103:15

SHRM [4] - 25:1, 78:2, 78:9

side [25] - 3:9, 3:21, 3:25, 7:12, 25:16, 25:18, 30:20, 30:25, 31:14, 31:23, 33:7, 33:21, 36:9, 44:6, 44:8, 52:19, 53:4, 55:22, 61:25, 63:15, 66:11, 84:4, 88:11

sides [7] - 34:2, 42:14, 53:3, 60:6, 61:8, 66:17, 66:18

sidewalk [1] - 102:10

similar [3] - 34:14, 47:14, 76:25

similarly [1] - 35:20

similarly-held [1] - 35:20

simple [2] - 5:18, 6:7

simply [4] - 26:18, 31:5,

33:21, 52:16

single [2] - 62:6, 62:8

sit [4] - 12:3, 21:17, 21:22, 97:1

sits [1] - 11:10

sitters [2] - 89:23, 90:3

sitting [5] - 12:17, 13:6, 13:10, 13:16, 35:2

six [6] - 62:19, 85:24, 93:14, 93:20, 94:2, 94:4

sixteen [1] - 93:18

skin [2] - 73:17, 74:15

slightly [4] - 25:19, 28:15, 59:14, 59:19

slots [1] - 95:20

smart [2] - 101:14, 101:15

so-and-so [1] - 73:15

Society [1] - 78:10

soft [2] - 12:16, 12:19

solely [3] - 10:18, 10:21

solemnly [1] - 99:22

someone [23] - 10:23, 32:22, 33:5, 33:22, 33:23, 37:2, 37:4, 39:21, 40:20, 45:4, 45:14, 46:22, 46:25, 49:2, 68:14, 72:2, 80:15, 90:25, 91:17, 91:18, 96:3, 100:21, 101:4

sometimes [3] - 3:21, 49:2, 51:11

somewhere [1] - 82:25

son [3] - 60:13, 60:15

Sonic [1] - 103:10

soon [4] - 8:16, 53:16, 85:12, 102:4

sorry [10] - 17:20, 27:14, 28:12, 36:18, 57:11, 76:22, 80:14, 85:23, 86:21, 95:9

sort [3] - 62:23, 63:13, 67:5

sound [2] - 8:6, 15:20

sounded [1] - 21:10

sounds [1] - 94:16

soups [1] - 102:2

Southern [3] - 4:20, 14:1, 99:11

SOUTHERN [1] - 1:1

SPEAKER [1] - 32:11

speaking [1] - 64:12

special [1] - 50:7

specific [2] - 52:12, 55:10

specifically [3] - 21:19, 49:8, 75:12

speech [1] - 11:9

speed [1] - 73:24

speeding [1] - 74:5

spilled [1] - 60:14

spoken [1] - 70:16

spot [1] - 49:3

spouse [2] - 44:25, 100:24

stack [1] - 82:10

staff [2] - 19:14, 99:12

stake [1] - 26:17

stalking [1] - 67:3

stand [14] - 4:2, 12:3, 12:16, 12:20, 19:14, 19:25, 22:23, 41:6, 43:18, 60:20, 65:21, 83:6, 85:2, 99:20

standard [2] - 26:12, 27:9

Standards [7] - 14:11, 23:12, 23:14, 23:19, 37:6, 37:10, 79:1

standing [3] - 16:25, 83:5, 83:6

standpoint [1] - 95:4

start [7] - 18:4, 20:17, 50:13, 87:23, 93:25, 101:15, 104:10

state [2] - 19:9, 91:4

statement [1] - 26:23

statements [2] - 3:16, 62:16

states [1] - 56:12

States [3] - 4:20, 5:22, 14:1

STATES [1] - 1:1

stay [2] - 67:18, 68:8

staying [2] - 67:15, 71:2

stead [1] - 7:25

stenography [1] - 1:23

step [5] - 84:15, 97:18, 97:24, 105:1, 105:11

still [5] - 38:19, 59:20, 75:9, 80:9, 80:12

stomachs [1] - 104:21

stop [1] - 20:20

stores [1] - 103:11

strangers [1] - 89:21

straw [2] - 7:23, 7:24

Street [2] - 1:16, 1:22

street [5] - 102:5, 102:7, 102:11, 103:6

stricken [3] - 87:18, 93:15, 94:19

strictures [1] - 73:3

strike [3] - 9:25, 94:14, 95:11

strikes [9] - 93:16, 93:24, 94:1, 94:2, 94:3, 94:4, 95:14, 95:21, 95:24

strip [3] - 91:9, 91:21, 92:8

stripping [1] - 44:16

strong [4] - 9:1, 9:14, 39:2, 39:7

strongly [1] - 9:9

struck [4] - 87:9, 87:14, 94:9, 94:21

students [2] - 13:14, 13:20

study [1] - 6:6

stuff [2] - 72:21, 78:17

styled [1] - 23:7

subject [21] - 9:2, 9:17, 9:19, 9:20, 32:20, 35:25, 36:5, 36:7, 36:20, 37:5, 38:23, 41:17, 41:19, 42:12, 43:2, 49:14, 51:19, 52:12, 73:2, 76:13, 101:16

submitted [1] - 99:25

sued [3] - 14:11, 47:17, 91:18

sufficient [2] - 82:10, 83:1

SUGARS [1] - 1:5

Sugars [8] - 4:24, 14:3,

Concordance

14:9, 16:10, 17:6,
17:10, 17:15, 23:8

suing [3] - 32:23, 33:6,
47:11

suit [1] - 48:12

Suite [2] - 1:16, 1:22

summary [1] - 13:23

summer [5] - 13:13,
13:15, 13:21, 81:20,
82:18

summons [2] - 11:15,
98:4

surprised [1] - 80:1

surrounding [1] - 52:7

Susie [1] - 22:3

swear [1] - 99:22

switch [1] - 105:12

swore [1] - 34:12

Sworn...................
.............. [1] - 2:6

synagogue [2] - 41:21,
42:22

system [5] - 5:19,
11:13, 71:7, 72:17,
103:9

**T**

table [3] - 10:19, 85:18,
95:3

taint [1] - 101:8

talker [1] - 12:19

talkers [1] - 12:16

taste [1] - 69:16

tax [1] - 98:24

taxes [1] - 62:15

teacher [4] - 21:20,
40:6, 41:12, 58:19

teachers [7] - 57:14,
57:15, 57:16, 57:20,
58:10, 58:23

Teachers [1] - 41:7

teachers' [2] - 40:2,
40:3

team [3] - 16:15, 16:20,
55:9

temple [2] - 41:20,
42:22

ten [1] - 86:16

ten-minute [1] - 86:16

tend [1] - 104:7

tender [1] - 81:5

tending [1] - 6:15

term [2] - 10:6, 91:24

terms [2] - 73:11, 73:14

testify [3] - 12:4, 43:18,
100:20

testimony [1] - 26:23

TEXAS [2] - 1:1, 1:5

Texas [17] - 1:12, 1:17,
1:22, 4:20, 4:24, 10:5,
14:2, 14:3, 14:8, 14:9,
16:9, 17:6, 17:7, 17:9,
17:15, 23:8, 99:12

text [1] - 5:22

THE [272] - 1:7, 1:10,
1:14, 3:3, 3:5, 3:10,
3:12, 3:15, 3:18, 3:24,
4:2, 4:5, 4:8, 4:10,
4:12, 4:15, 4:19, 15:4,
15:7, 15:10, 15:16,
15:19, 16:1, 16:4,
16:6, 16:13, 16:23,
16:25, 17:11, 17:23,
18:3, 18:8, 18:11,
18:15, 18:19, 18:21,
18:24, 19:3, 19:12,
19:17, 19:19, 20:14,
20:20, 20:24, 21:3,
21:6, 21:9, 21:14,
21:17, 21:22, 21:25,
22:4, 22:8, 22:12,
22:16, 22:20, 22:24,
23:1, 23:5, 23:17,
23:22, 24:1, 24:4,
24:8, 24:13, 24:17,
24:24, 25:3, 25:8,
25:10, 26:4, 26:8,
27:23, 28:9, 28:13,
28:20, 28:23, 29:1,
29:4, 29:8, 29:14,
29:18, 29:20, 29:24,
30:7, 30:16, 30:23,
31:4, 31:9, 31:11,
31:13, 31:22, 32:5,
32:8, 32:12, 33:17,
33:25, 34:7, 34:10,
34:16, 34:20, 35:16,
35:22, 36:14, 36:18,
37:4, 37:15, 38:4,
38:8, 38:20, 39:11,
39:25, 40:3, 40:5,
40:8, 40:10, 40:13,
40:17, 40:24, 41:3,
41:6, 41:11, 41:16,
42:5, 42:7, 42:9,
42:11, 42:16, 42:20,
43:6, 43:8, 43:11,
43:14, 43:17, 43:24,
44:4, 45:8, 45:11,
45:17, 45:19, 45:23,
46:6, 46:9, 46:13,
46:17, 46:20, 46:24,
47:4, 47:6, 47:8,
47:13, 47:16, 47:21,
48:1, 48:4, 48:8,
48:12, 48:15, 48:20,
49:20, 50:2, 50:12,
50:25, 51:2, 51:5,
51:9, 51:23, 52:23,
55:8, 58:13, 60:1,
60:10, 60:13, 61:5,
63:2, 63:9, 64:2,
65:21, 65:24, 68:4,
71:9, 71:13, 75:4,
75:24, 77:20, 78:6,
81:4, 81:8, 84:10,
84:17, 84:21, 85:5,
86:6, 86:9, 86:12,
86:15, 86:19, 87:10,
87:15, 87:17, 87:22,
88:8, 88:12, 88:18,
88:23, 89:4, 89:11,
89:16, 90:6, 90:8,
90:10, 90:12, 90:16,
90:19, 90:22, 91:3,
91:6, 91:11, 91:17,
92:4, 92:7, 92:11,
92:14, 92:18, 92:22,
92:25, 93:3, 93:5,
93:8, 93:11, 93:12,
93:20, 93:22, 93:25,
94:3, 94:8, 94:10,
94:14, 94:18, 94:22,
94:24, 95:2, 95:6,
95:8, 95:10, 95:13,
95:20, 95:24, 96:2,
96:6, 96:9, 96:12,
96:22, 97:1, 97:7,
97:10, 98:16, 98:20,
98:22, 99:7, 99:17,
100:3, 104:2, 104:16,
104:19, 105:1, 105:5,
105:14, 105:18,
105:20, 105:24, 106:2

themselves [5] -
19:15, 61:7, 81:24,
82:16, 86:22

therefore [1] - 49:23

thinking [1] - 49:6

thinks [2] - 73:24, 74:1

three [10] - 65:3, 68:15,
68:21, 68:22, 85:24,
86:21, 93:13, 93:16,
95:14, 95:24

three-day [1] - 68:22

Thursday [5] - 7:17,
52:1, 81:11, 81:17,
101:1

ticket [2] - 73:25, 74:4

tiered [1] - 44:23

tip [6] - 25:16, 25:19,
25:23, 27:15, 30:20,
31:16

tipped [1] - 59:14

tipping [1] - 54:15

Title [1] - 57:23

today [13] - 4:23, 5:1,
5:11, 7:15, 11:5,
11:15, 17:8, 21:17,
59:3, 81:12, 81:16,
104:13, 105:10

Todd [2] - 20:12, 22:10

tomorrow [2] - 81:17,
90:4

took [3] - 34:11, 82:4,
88:13

topics [1] - 71:24

topless [9] - 74:19,
74:20, 74:21, 74:22,
74:24, 75:8, 75:19,
77:3, 91:21

Torres [1] - 22:23

total [1] - 93:16

toward [1] - 46:4

towards [7] - 49:22,
51:14, 75:8, 77:7,
88:19, 101:25, 102:13

Tracey [1] - 22:14

trade [1] - 40:18

transcript [1] - 106:7

Transcript [1] - 1:24

transcription [1] - 1:24

traveling [1] - 74:2

treat [1] - 50:7

treated [3] - 98:12,
98:13, 98:25

Treebeards [1] -
102:24

Tremaine [1] - 22:15

TRIAL [1] - 1:7

trial [25] - 5:21, 5:25,
7:21, 8:1, 8:13, 8:18,
10:1, 10:4, 10:7, 11:2,

Concordance

*13:19, 26:16, 26:19, 26:20, 27:3, 51:25, 52:1, 53:9, 60:6, 67:9, 68:22, 71:17, 81:11, 83:22, 104:10*

*Trial* [1] - 2:1

*trials* [3] - 6:1, 8:2, 8:5

*tried* [1] - 71:18

*trigger* [2] - 21:18, 49:17

*triggered* [1] - 51:17

*trouble* [1] - 72:1

*true* [3] - 27:11, 99:23, 101:7

*truly* [2] - 82:24, 83:4

*truth* [2] - 5:20, 10:6

*truthful* [3] - 10:8, 10:12

*try* [6] - 4:15, 5:14, 48:23, 81:3, 82:14, 85:19

*trying* [3] - 12:21, 52:16, 91:19

*Tuesday* [3] - 81:17, 89:5, 89:9

*Tuesdays* [1] - 89:3

*tunnel* [3] - 102:15, 102:21, 103:9

*turn* [1] - 23:6

*turning* [4] - 35:24, 42:21, 44:16, 46:25

*TV* [1] - 8:6

*two* [19] - 7:21, 10:5, 36:19, 42:2, 50:12, 57:5, 67:14, 84:3, 85:6, 85:24, 86:21, 87:6, 89:7, 93:13, 95:21, 102:9, 102:12, 105:9

*type* [5] - 43:19, 48:12, 80:18, 91:20, 101:2

*typically* [4] - 3:17, 72:12, 89:10, 89:19

## U

*ultimately* [2] - 8:10, 35:4

*unable* [4] - 5:13, 81:23, 82:16, 86:4

*unattended* [7] - 81:21, 81:25, 82:15, 82:16, 89:17, 95:1

*unbiased* [2] - 6:11, 7:13

*unclear* [1] - 29:14

*uncomfortable* [1] - 17:16

*under* [7] - 5:16, 8:3, 14:11, 14:15, 14:17, 29:11, 100:1

*underpaid* [1] - 48:7

*underpinning* [1] - 37:18

*understood* [7] - 37:1, 37:2, 91:13, 91:23, 92:9, 92:19, 105:16

*unemployment* [1] - 46:2

*UNIDENTIFIED* [1] - 32:11

*unified* [1] - 65:3

*uniform* [1] - 6:22

*union* [3] - 39:20, 40:1, 40:18

*unique* [1] - 7:8

*UNITED* [1] - 1:1

*United* [3] - 4:19, 5:22, 14:1

*university* [1] - 82:20

*unknown* [1] - 10:22

*unless* [4] - 21:12, 84:2, 84:24, 85:8

*unlike* [1] - 8:5

*unusual* [3] - 82:8, 82:24, 83:5

*up* [36] - 4:2, 8:21, 12:10, 12:15, 13:5, 26:23, 26:25, 46:3, 47:11, 52:11, 53:3, 55:11, 58:13, 65:21, 65:22, 67:9, 71:5, 74:1, 76:3, 78:3, 79:4, 82:6, 83:6, 83:11, 86:1, 88:1, 88:19, 89:1, 90:24, 91:3, 96:23, 97:18, 97:25, 102:22, 104:10, 105:12*

*uphold* [1] - 32:14

*upset* [1] - 91:7

## V

*vaguely* [1] - 62:25

*various* [1] - 98:1

*veer* [1] - 103:8

*Velasco* [3] - 14:5, 15:14, 15:18

*verdict* [19] - 25:14, 27:13, 27:17, 27:20, 28:3, 28:6, 28:17, 28:24, 29:12, 30:5, 31:1, 31:6, 31:7, 31:10, 31:19, 32:2, 35:11, 68:23, 99:23

*Veronica* [3] - 14:6, 15:15, 15:18

*version* [1] - 7:12

*versions* [1] - 8:9

*versus* [3] - 7:10, 44:10, 44:13

*view* [2] - 9:20, 101:8

*views* [2] - 9:14, 32:17

*Villareal* [1] - 21:2

*violence* [1] - 67:2

*visiting* [1] - 6:16

*voice* [1] - 12:15

*VOIR* [1] - 1:7

*voir* [6] - 8:18, 10:5, 52:21, 71:10

*Voir* [4] - 2:1, 2:3, 2:4, 2:5

*VOLUME* [3] - 1:8, 2:1

*volunteering* [1] - 49:5

*voting* [1] - 97:24

*vs* [1] - 23:8

## W

*wage* [23] - 14:16, 14:19, 32:24, 37:3, 44:25, 45:1, 45:2, 45:5, 45:9, 45:14, 46:22, 47:1, 56:14, 72:11, 72:20, 73:2, 77:8, 79:11, 79:13, 79:24, 80:4, 80:6, 80:8

*wages* [14] - 14:10, 14:13, 24:19, 33:6, 34:24, 35:9, 37:6, 43:2, 45:13, 47:17, 48:17, 49:23

*wages/overtime* [1] - 47:23

*wait* [5] - 82:7, 84:1, 100:5, 101:19, 104:22

*waiting* [3] - 82:5, 82:10, 85:8

*walk* [20] - 7:6, 10:20, 15:7, 16:13, 38:9, 60:14, 85:10, 101:24, 101:25, 102:3, 102:4, 102:6, 102:7, 102:9, 102:13, 102:21, 103:4

*walked* [2] - 17:12, 74:8

*walking* [4] - 30:12, 53:2, 100:14, 101:21

*Wallace* [3] - 1:14, 16:9, 71:14

*WALLACE* [80] - 3:8, 3:11, 3:14, 3:19, 4:1, 4:4, 16:8, 16:24, 17:5, 20:11, 36:16, 65:20, 71:12, 71:14, 72:15, 72:18, 72:22, 73:5, 73:10, 75:1, 75:5, 75:10, 75:16, 75:22, 75:25, 76:7, 76:10, 76:16, 76:22, 77:2, 77:5, 77:9, 77:12, 77:15, 77:19, 77:21, 77:24, 78:5, 78:8, 78:12, 78:20, 78:23, 78:25, 79:3, 79:7, 79:18, 79:20, 80:3, 80:11, 80:14, 80:21, 80:23, 81:2, 81:5, 86:3, 86:14, 87:5, 87:12, 87:21, 88:7, 88:10, 88:15, 90:17, 91:1, 93:1, 93:4, 93:7, 93:10, 93:19, 93:21, 94:7, 94:9, 94:12, 95:9, 95:12, 95:18, 95:23, 97:9, 105:23, 106:1*

*Wallace.................
......* [1] - 2:5

*Warren* [3] - 1:10, 15:2, 53:10

*Washington* [2] - 1:12, 98:1

*watch* [2] - 7:7, 13:19

*water* [1] - 103:17

*ways* [5] - 8:25, 10:6, 46:2, 102:9, 102:12

*wear* [2] - 100:11, 100:17

*wedding* [1] - 82:23

*Wednesday* [4] - 81:17, 82:23, 89:6, 89:10

*Wednesdays* [1] -

Concordance

*89:3*

*week* [2] - 82:6, 82:22

*weeks* [1] - 7:18

*weigh* [2] - 60:7, 60:9

*weight* [3] - 25:18, 26:21, 28:16

*welcome* [3] - 4:19, 4:22, 58:22

*welders* [1] - 72:5

*wells* [1] - 20:1

*Wells* [4] - 1:21, 106:6, 106:10, 106:11

*West* [1] - 1:16

*whatsoever* [3] - 9:25, 30:1, 64:11

*wheel* [1] - 73:23

*white* [1] - 29:17

*whole* [4] - 35:15, 66:1, 68:2, 83:10

*wife* [3] - 53:13, 54:1, 89:2

*William* [1] - 1:15

*willing* [3] - 27:12, 27:16, 97:24

*win* [4] - 29:10, 30:3, 30:4, 30:19

*winning* [1] - 29:24

*wins* [3] - 29:20, 29:21, 29:22

*wish* [2] - 52:20, 71:10

*wishes* [1] - 99:13

*witness* [6] - 12:3, 20:22, 21:1, 22:2, 26:24, 60:19

*witness's* [2] - 26:22, 26:25

*witnesses* [6] - 10:11, 12:2, 20:5, 100:13, 100:16, 105:9

*women* [4] - 6:21, 7:2, 32:16, 85:15

*wonderful* [1] - 97:15

*wondering* [1] - 68:13

*Woodlands* [1] - 89:1

*words* [2] - 37:23, 44:17

*workers* [2] - 14:15, 14:17

*works* [3] - 39:21, 40:20, 89:2

*world* [2] - 6:23, 7:6

*wow* [3] - 80:2, 80:6, 80:8

*wrangle* [1] - 84:16

*wrapped* [1] - 67:9

*Wyly* [2] - 1:11, 15:3

*WYLY* [3] - 90:18, 90:20, 96:1

## X

*Xander* [1] - 1:15

*XXXXXXXXXXX XXXNumber* [1] - 91:5

*XXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXX* [1] - 96:19

*XXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXX* [1] - 96:21

*XXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX* [1] - 96:20

## Y

*year* [1] - 53:14

*years* [4] - 77:11, 78:15, 78:19, 79:5

*yell* [2] - 76:4

*young* [3] - 6:21, 7:2, 71:18

*yourself* [3] - 45:20, 61:16, 98:3

*yourselves* [3] - 6:19, 97:13, 101:11