1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

2

3

4    CASEY NELSON, ET AL        *   4:17-CV-02171
                                *
5    V.                         *   2:24 P.M. to 2:50 P.M.
                                *
6    TEXAS SUGARS, INC., ET     *
     AL                         *   JUNE 17, 2019

7

8    **EXCERPT OF TRIAL - OPENING STATEMENTS**
     **BEFORE THE HONORABLE ALFRED H. BENNETT**
     **AND A JURY**
9    **Volume 1 of 1 Volume**

10   **APPEARANCES**

11   **FOR THE PLAINTIFFS:**
     Mr. Warren A. Berlanga
12   Mr. Kelly E. Cook
     Wyly & Cook, PLLC
13   4101 Washington Avenue
     Houston, Texas 77007
14   713-236-8330

15   **FOR THE DEFENDANTS:**
     Mr. Casey Wallace
16   Mr. William Xander King
     Feldman & Feldman
17   3355 West Alabama Street
     Suite 1220
18   Houston, Texas 77098
     (713) 986-9471

19
     **ALSO IN ATTENDANCE:**
20   Ms. Maria Alvarez
     Ms. Marissa Reyna
21   Mr. Alex Khorshidpanah

22   Court Reporter:
     Laura Wells, RPR, RMR, CRR
23   515 Rusk Street, Suite 8004
     Houston, Texas 77002

24
     Proceedings recorded by mechanical stenography.
25   Transcript produced by computer-assisted transcription.

1

**VOLUME 1**
**(Excerpt of Trial – Opening Statements)**

2                                                            Page

June 17, 2019

3

Opening Statement by Mr. Berlanga...............     3
Opening Statement by Mr. King...................    14
Reporter's Certificate..........................    22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Laura Wells, CRR, RDR*

(Beginning of requested excerpt, as follows:)

THE COURT:  Very well.  Counsel for the plaintiff, are you ready to proceed with your opening statement at this time?

MR. BERLANGA:  Yes, Your Honor.

THE COURT:  You may proceed.  Thank you.

MR. BERLANGA:  Good morning.  I'm Warren, and you met Mr. Cook earlier today.  As you know, this case involves a class of five exotic dancers that worked at the defendant's club called Moments.

And now, you heard the Judge talk about the Fair Labor Standards Act earlier this morning.  That's a federal law requiring employers to pay their employees a minimum wage and overtime.

You are going to help us determine today whether these exotic dancers are more like employees or independent contractors.  Now, the reason we're going to talk about employees and independent contractors is because the law permits tipped employees to be paid only $2.13 an hour so long as that employee makes at least a minimum wage -- that's $7.25 an hour -- with their tips.

However, if that employer does not pay the employee the $2.13 an hour, they may not take credit for the employee's tips in satisfying the employer's minimum wage obligation.  And you are going to hear evidence.  What I

1    say here, as Your Honor pointed out, is not evidence.  You

2    are going to see evidence in this case that there is no

3    dispute that Moments did not pay its dancers $2.13 an

4    hour.  That's not disputed.

02:25:34    5    In fact, Moments didn't pay the dancers anything at

6    all.  Moments actually charged the dancers to work at

7    Moments.  Now, to avoid the law which would require

8    moments to pay their dancers a minimum wage, Moments has

9    misclassified the dancers as independent contractors

02:25:47    10   instead of employees.  So the club has decided not to pay

11   the dancers any wages whatsoever and to treat them more

12   like --

13               MR. KING:  Objection, Your Honor.

14               THE COURT:  Just a moment.

02:25:55    15               MR. KING:  I have to object, Your Honor.

16               THE COURT:  What is your legal objection?

17               MR. KING:  Objection, Your Honor.  Argumentative.

18               THE COURT:  Preface your remarks with what the

19   evidence will show, Counsel.

02:26:03    20               MR. BERLANGA:  Yes, Your Honor.

21   The evidence will show that Moments treated these

22   entertainers, these dancers more like plumbers and

23   electricians than like tipped employees, like waitresses

24   and bartenders.

02:26:15    25   And now, not every employment situation is the same,

*Laura Wells, CRR, RDR*

1   but you have to think about whether someone is an employee

2   or an independent contractor on a spectrum.

3        On one side of the spectrum, you have independent

4   contractors, people like electricians, plumbers,

02:26:27   5   consultants.  These are people that are actually running a

6   business.  They have business cards.  They spend

7   significant money on advertising, and they may have

8   employees.  They perform a specific task for a specified

9   period of time.  They do work for multiple clients, not a

02:26:46   10   single employer.  They risk significant sums of money in

11   order to profit from their business.  And when I call a

12   plumber, whether it's Joe the plumber or somebody the

13   plumbing company sends out, that's not my employee.

14        Now, on the other side of the spectrum we have tipped

02:27:01   15   employees like waitresses and bartenders.  They come to

16   work for the same employer on a regular basis.  That

17   relationship typically lasts for a significant period of

18   time.  The relationship with the employer doesn't last for

19   a specified period of time.  They are not working on a

02:27:14   20   project-by-project basis.  They don't do any advertising.

21   Their employer does that.  Their work is typically central

22   to the employer's business.  In other words, if you don't

23   have waitresses, you don't get the food served that you

24   are selling to the public.  Tipped employees make more

02:27:31   25   money depending on the number of customers in their

employer's business, and that way they are economically
dependent on the employer to earn a living working.  They
aren't like a plumber who has his own business.

Now, at the end of this case, the Court may ask you to
consider several things to help us determine this dispute.
One of the things you may be asked to consider is the
permanency of the relationship.

Now, I touched on this earlier, but plumbers,
electricians, independent contractors, they do a job that
lasts for a period of time on a project-by-project basis,
typically, and that relationship lasts for a definite
period of time.

Now, tipped employees, on the other hand, like
waitresses, they tend to have longer-lasting relationships
with their employer and they come to work for that
employer on a regular and reoccurring basis at one
location.  That relationship isn't for a specific period
of time or on a project-by-project basis.  It's for an
indefinite and long-lasting time.  It's an indefinite
relationship.

Now, in this case you are going to hear evidence that
dancers worked for Moments on a regular and recurring
basis for years.  Some worked much more than that, more
than just a year.  Some worked as long as ten years.

Now, another factor or consideration you may be asked

1  to help us determine the dispute is the special skill or

2  initiative required to perform the job.  Now, typically,

3  the work of an independent contractor is skilled work.  I

4  don't know how to fix a sink.  That's why I call a

02:28:58  5  plumber.  I don't have the expertise to do electrical

6  wiring.  So I call an electrician that has that expertise.

7      The work of tipped employees, on the other hand, isn't

8  particularly skilled work.  It does take some initiative

9  to make better tips, but that's true of all tipped

02:29:12  10  employees.  The more personal and competent you are, the

11  more money you can make.  This is not the kind of skill or

12  initiative that is required of an independent contractor.

13  It is real technical expertise.

14      Now, what you are going to hear in this case is that

02:29:24  15  the only requirement to work at Moments, this is what the

16  evidence will show, is a dancer's physical appearance.

17  Physical appearance and physical appearance alone.

18      Now, I mentioned this earlier; but independent

19  contractors, they run their own business.  And one of the

02:29:39  20  things the Court may ask you to consider is who controls

21  the opportunity for profit and loss.  An independent

22  contractor, they have their own business.  They control

23  their opportunity to make a profit or take a loss, as the

24  case may be.  They keep business records.  They keep

02:29:56  25  financial books keeping track of overhead, revenue, and

1    profit.

2         Tipped employees, on the other hand, they are, for the

3    most part, dependent on their employer.  The more

4    customers that come into the business, the more money they

02:30:06    5    can potentially make.  And if it's not that busy, of

6    course, they have the potential to make less money.

7    That's common sense.

8         Now, also, the kind of business the employer is

9    running also makes a difference for the tipped employee.

02:30:17   10    For example, a waiter or waitress at a roadside diner may

11    be the best waiter or waitress in the world but she is

12    probably not going to make as much as a waiter or waitress

13    serving steaks and fancy bottles of wine at a steakhouse

14    downtown.  And so for tipped employees, their opportunity

02:30:32   15    to profit depends in large part on the employer.

16         Now one other thing you may be asked to consider by

17    the Court is the relative investments of employees

18    compared to an employer.  And I think I mentioned this

19    earlier.  Independent contractors risk significant amounts

02:30:47   20    of money.  They have overhead.  They may have payroll,

21    advertising costs, lease agreements for their office

22    space.  They make capital investments in their business.

23         Tipped employees, on the other hand, don't risk that

24    much.  They may have to buy work clothes.  They may have

02:31:01   25    to spend money to look presentable when they come to work.

*Laura Wells, CRR, RDR*

They don't have payroll.  They don't have overhead, lease
agreements.  They don't pay for advertisements.  They
don't make the kinds of significant capital expenditures
that independent contractors make.  And you are going to
hear evidence in this case that a dancer's investment is
limited to clothing and makeup.

Now, another factor to consider or that I think the
Court might ask you to consider is that an independent
contractor is -- excuse me -- how integral the work being
performed is to the employer's business.  Now, if an
independent contractor, like a plumber, goes out to an
office to fix the toilets, that plumber's work isn't
integral to the business that that particular business is
marketing to the public.  The plumber is just there to
perform a specific task and leave.

Now, tipped employees, on the other hand, are usually
a part, an important part, an essential part of the
employer's business, that business that the employer is
marketing to the public.  A restaurant that sells food
doesn't get that food served without a waitress.  A bar
without bartenders really isn't a bar at all.  And what is
an exotic dance club without exotic dancers?  It's just an
overpriced bar.

Now, tipped employees are more likely to be integral
or important to the product that the employer is selling.

1  That is one of the things you may be asked to consider.

2  And the evidence that you are going to hear in this case

3  is that exotic dancers are, in fact, an integral part of

4  Moments' exotic dancing business.  I think that's common

02:32:27  5  sense.

6      Now, one more thing you may be asked to consider is

7  the control exercised by the employer.  Now, independent

8  contractors are usually truly independent.  This is

9  because they are running their own business and they are

02:32:39  10  not economically dependent on an employer.

11      An employer usually exercises some control over tipped

12  employees, on the other hand.  Now, some tipped employees

13  may have more flexibility than others.  Moments is likely

14  going to tell you that dancers have flexible schedules and

02:32:53  15  so that makes them independent contractors.  Moments is

16  going to ignore all the other factors and all the other

17  ways that control the dancers.  More importantly, Moments

18  is probably going to ignore all the other factors I just

19  talked about.

02:33:03  20      But the evidence that you are going to see in this

21  case and that we are going to show you with respect to

22  scheduling is that Moments charged dancers a fee that

23  increased the later they came to work.  You are going to

24  see evidence that Moments texted dancers and waitresses a

02:33:17  25  lot to get their butts to work.  You are going to hear

1  that dancers were required to go on stage at Moments; and

2  if they didn't go on stage, they would have to pay a fee

3  or a fine not to go on stage.  You are going to hear that

4  Moments had other rules that dancers had to follow or they

02:33:31   5  would face the consequences.

6      Now, all the considerations that we just talked about,

7  this is the kind of evidence these -- in fact, this is

8  what you are going to be asked to consider in deciding the

9  independent contractor and employee question in deciding

02:33:46  10  this dispute.  That's why it's important.  You are going

11  to be asked to consider these things and consider whether

12  tipped employees are protected by the FLSA -- the answer

13  is obvious -- or if they are independent contractors

14  running a business for themselves.

02:34:03  15      Now, one thing I just want to touch on briefly is that

16  you may hear Moments suggest that my clients are bad

17  people or bad employees.  I don't know if they are going

18  to do this; but if they do, I want you to know that that's

19  a distraction and that doesn't affect Moments'

02:34:16  20  responsibilities under the FLSA.

21          MR. KING:  Objection, Your Honor.  This is

22  argumentative.

23          THE COURT:  Sustained.

24          MR. BERLANGA:  Now, once you have determined the

02:34:24  25  independent contractor/employee question and have helped

*Laura Wells, CRR, RDR*

02:34:37

1    us determine that, you are going to be asked to decide how

2    many weeks and hours the dancers worked.  You are going to

3    hear from a number of dancers that some worked a lot of

4    shifts.  Some worked less shifts.  You are going to hear

5    that some dancers worked more than 40 hours in a week.

6    You are going to hear that some may have worked less.  You

7    are going to hear that some may have worked up to 50 hours

8    a week or more.

02:34:48

9         Keep in mind, though, what you are going to have to do

10   is determine the average number of hours worked in a week,

11   and you are also going to have to determine the number of

12   weeks worked by each dancer.  That's the average number of

13   hours worked in a week and the number of weeks worked by

14   each dancer.

02:35:02

15        Now, one final thing I want to touch on is that you

16   may have to determine whether Moments violated the FLSA

17   willfully.  Now, the Court may give you instructions on

18   what this means, but the evidence that you are going to

19   hear in this case is that Moments did absolutely no

02:35:16

20   investigation whatsoever.

21             MR. KING:  Objection, Your Honor.  This misstates

22   the law.

23             MR. BERLANGA:  I'm talking about the evidence,

24   Your Honor.

02:35:24

25             THE COURT:  Talk about the evidence that you

*Laura Wells, CRR, RDR*

1    intend to put in front of this jury as opposed to what the

2    Court will instruct them on.

3         MR. BERLANGA:  I intend to offer evidence in this

4    case that Moments did no investigation whatsoever when it

02:35:37    5    treated -- when it decided to treat dancers as independent

6    contractors and not pay them any wages instead of tipped

7    employees.

8         Now, before I wrap this up -- and I'll hand the floor

9    over in a moment -- I want to sincerely thank each of you

02:35:51    10    for being here today.  It may surprise you to learn most

11    people would rather be at the dentist having a root canal

12    than in court with lawyers and a Judge.  And I do want to

13    thank you for being here.

14         I think His Honor touched on this earlier today, but

02:36:06    15    the fact that you are here is really important to the

16    function of our civil courts system.  Without jurors, the

17    system doesn't work.  As His Honor mentioned earlier, the

18    right to a jury trial is in our constitution.  The fact

19    that you are here today tells me that you understand the

02:36:19    20    importance.

21         Again, I want to thank you for being here.  Mr. Cook

22    and I look forward to presenting our case to you today.

23    Thank you.

24         THE COURT:  Does the defense wish to make an

02:36:36    25    opening statement at this time?

1          MR. KING:  Yes, Your Honor.  May it please the

2     Court.

3          THE COURT:  You may.

4          MR. KING:  Counsel.  Good afternoon, ladies and

02:36:50    5     gentlemen of the jury.  My name is Will King.  I'm here

6     with my colleague, Mr. Wallace, who you heard from during

7     jury selection.  We are proud to be here today to

8     represent Moments.  I don't recall if you heard, but our

9     client's face behind the business is a man named Alex

02:37:09    10    Khorshidpanah.

11         Now, when you first heard during jury selection that

12    this case involves exotic dancers suing a strip club in a

13    federal court over back wages, there were a lot of

14    snickers.  You know, it can be kind of a taboo topic that

02:37:25    15    makes people feel uncomfortable.  That's fine.  I think

16    even Judge Bennett mentioned, you know, well, yeah, maybe

17    there are awkward moments at Moments or something like

18    that.  Our client is used to that.

19         I want to impress upon all of you that this is, in

02:37:38    20    fact, a very serious matter for our client.  And that's

21    why he is going to be sitting here with you and us

22    throughout this entire trial because this is his business.

23    He has had five former exotic dancers sue his club

24    claiming that they should have been paid $7.25 an hour

02:38:01    25    because they should have been classified as employees.

*Laura Wells, CRR, RDR*

1        And as Mr. Berlanga pointed out, you are going to hear

2   a lot of facts; and it's going to be your job to weigh

3   those facts and to make the ultimate decision of are they

4   employees or are they independent contractors.  Because

02:38:21   5   that's what this case really boils down to.

6        In a different way, it's this:  Were these dancers in

7   business for themselves, making money for themselves, or

8   were they in business for the club?  Now, one of the

9   things that Mr. Berlanga did not mention at all during his

02:38:39  10   opening statement is this:  How do exotic dancers make

11   money?  Do they just go to Moments and work for free?  Do

12   they go to Moments and pay just to be there?  Who would do

13   that?  No one.

14        Exotic dancers make money from the customers that walk

02:38:55  15   in the door at Moments, and that can be lucrative.  That's

16   why they are there.  And Moments lets them keep every

17   dollar that they earn.  That's the tradeoff.

18        Mr. Berlanga also mentioned that he doesn't expect

19   that Moments is going to embrace all these different

02:39:25  20   considerations that you'll be asked about.  And these are

21   very important considerations, and I'm going to briefly

22   outline them again for you one more time.

23        The first one is this:  Who controlled the meaningful

24   aspects of the work?  The club or the dancer?  Well, one

02:39:44  25   important thing that you have to look at is this:  What

does the work involve?  Mr. Berlanga did not talk to you

one bit about what exotic dancers actually do.  In fact, I

think it's fair to say that exotic dancers are a lot like

lawyers.  You see one thing on TV, but what we do is

02:40:03  completely different.

What exotic dancers actually do, it's work.  It's a

job.  And it can be hard work.  We're not here to deny

that.  What they do is they sell a service.  It's not just

getting up on a pole and spinning around.  What they do is

02:40:21  they sell entertainment to club patrons, and that means

that they sell their time.  They sell their time

performing on a stage.  They sell their time performing on

the floor for a particular customer.  They spend their

time sometimes just sitting around with some customer and

02:40:38  sharing a drink and that man or woman pays them.  That's

what exotic dancers do.  And so when you are thinking

about, well, who is controlling their work, you have got

to keep in mind what do they do.

And we expect the evidence is going to show that

02:40:58  Moments doesn't actually control the meaningful part of

their work.  Moments doesn't control when they perform,

who they perform for, how they perform, what they wear.

They leave those things up to the dancer.  Who better to

decide than the dancer.  You are not going to hear

02:41:18  testimony, we expect, that anyone at Moments ever said,

*Laura Wells, CRR, RDR*

hey, plaintiff, you need to go dance for that guy right

now.  These dancers are free to perform if they wanted to

or not perform because that's their right.  Those are the

meaningful aspects of the work, and those are the factors

that we ask you to pay attention to throughout this case.

The second factor is this:  How are the plaintiffs

paid?  As I mentioned earlier, if you just listen to

Mr. Berlanga's opening, they weren't paid a dime.  They

just went to Moments and paid somebody else to be there.

That's not true.

Employees get fixed wages.  They get a salary.  They

get a fixed paycheck.  They number up their hours.  Their

money is guaranteed.

Independent contractors, on the other hand, the way

that they get paid is different.  It depends a lot on

their negotiating skills.  We expect the evidence is going

to show that Moments does not interfere with how the

dancers negotiated their prices with their customers.  Why

else be an exotic dancer if not the opportunity to make

money?  If a customer paid somebody $20 for a three-minute

dance, that dancer keeps the money; and if a customer

spends a half an hour with a dancer and pays her $100,

that's her money.

The club makes its money by charging a cover fee, by

selling food and alcohol.  You have two separate

1   businesses.

2       The third factor is this:  How much financial risk or

3   opportunity did these women have?  And the reason why this

4   is important is because, like I mentioned earlier,

02:43:19   5   employees get a fixed rate of pay.  How good a business

6   that they work for, how it performs doesn't typically move

7   their salary up or down.  Their risk is very, very small.

8   They don't bear the financial risk of the entire

9   enterprise.

02:43:38   10       Independent contractors, on the other hand, they do

11   bear the risk of financial loss.  You are going to hear

12   testimony that these dancers lost money on a lot of

13   nights.  They had good nights.  They had bad nights.  That

14   was the risk that they bore and the risk that they

02:43:57   15   accepted.  And along with that risk was this:  They had

16   significant opportunity to make money.  There was no cap.

17       Some of these dancers -- in fact I think you might

18   hear from one soon -- didn't like bearing that risk, the

19   risk of loss.  And so the evidence is going to show that

02:44:21   20   this individual went to Moments and said, hey, I don't

21   want to be an entertainer anymore.  And Moments said,

22   okay.  That's fine.  You can go ahead and become a

23   bartender, and you can get a fixed wage.  No problem.  Now

24   she is suing Moments for that, too.

02:44:43   25       The fourth factor is this:  Who provided the tools,

*Laura Wells, CRR, RDR*

equipment, and other necessaries to actually perform the
work?  An employee has their employer give them, you know,
their shirts and their equipment.  That is paid for by the
employer.  Independent contractors, they are on the hook
for what they think is necessary to actually do their job.

     Now, as you heard Mr. Berlanga say, well, you know,
these dancers, yeah, I guess they have to buy some things
once in a while.  I'll tell you this:  If any of you are
married -- and I know that there is one lady on the
jury -- hair, makeup, shoes, accessories, those things are
expensive.  They add up.  And if your job -- part of your
job is selling your appearance and that is an absolute
part of your job, you are going to come out of pocket for
a lot of that.  Moments didn't pay for that.  It was up to
each dancer how much they invested in their own business.

     The fifth consideration is this:  How did the
plaintiffs offer their services?  Mr. Berlanga says, well,
you know, they didn't advertise.  They didn't put up a
billboard.  That's fine.  But they did -- what these
dancers at Moments do is they get on stage and advertise
their services to the people who go into the club so that
they might get a private dance later on.  That's the
truth.  They offer their services to the public who come
in the doors, and they make those people their customers.

     And finally, the sixth factor -- and it's one that was

not mentioned at all and it is considered -- the labels

that a business applies to a worker does not really

matter, but what does matter is this:  What were the

parties' expectations here?  Did the parties think that

02:46:52  they were in an employee/employer relationship?  Did the

dancers think that they were true freelancers?

And so when you are listening to the testimony, pay

attention to that fact.  Ask yourself:  Do you hear any

testimony from any of these witnesses that we're going to

02:47:10  present to you that they thought they should be paid

minimum wage?

We expect the plaintiffs to get on the stand and tell

you about the house fee, how they were forced to pay it,

how the deejays and everyone else forced them to pay fees,

02:47:33  fines, and penalties, over and over and over again.  And

when you are listening to this testimony, I want you to

ask yourself this:  Why would they continue going back to

work at Moments if they were being financially victimized?

Why would they do that?

02:47:52  The truth of the matter is this:  That an exotic dance

club like Moments, money is what greases the wheels.  If a

dancer wants better service from a waitress so that maybe

she can funnel more money and more customers to her,

she'll tip the waitress.  Moments doesn't make her do

02:48:14  that.  It's because she wants to enhance her business.

1   You are going to hear evidence that if a dancer wants

2   a particular kind of song played, well, maybe she will tip

3   the deejay and maybe that deejay will listen to her and

4   play her song.  Because that's what the dancers do is they

02:48:31   5   use the facility to sell their services.

6   If you want to have a good analogy for what exotic

7   dancers are really like, it's like paying to have a stall

8   in an antique store.  The only rules that might apply are:

9   Don't break the law.  Don't sell illegal goods out of your

02:48:52   10   stall.  Otherwise, what you sell, knock yourself out.  Go

11   for it.  Show up when you want.

12   And that's what the evidence is going to show.  These

13   women did not have schedules.  They did not have a boss

14   luring over them, telling them what to do, because they

02:49:06   15   were not true employees.

16         THE COURT:  Two minutes, Counselor.

17         MR. KING:  Thank you, Your Honor.

18   There is no one fact in this case that you are going

19   to hear that determines the outcome.  There is no smoking

02:49:26   20   gun here.  This is a balancing test.  And you have to

21   weigh this evidence and you have to determine where on the

22   spectrum do these women fall.

23   Were they in business for themselves making money for

24   themselves, keeping the money that they earned, deciding

02:49:48   25   when and where and how to perform; or were they

*Laura Wells, CRR, RDR*

1 economically dependent employees, like the guy working at

2 Best Buy?  Ask yourself like that.  Do they look like an

3 employer/employee or independent contractor, based on this

4 Court's instructions to you?

02:50:12 5  We know that your time is valuable.  My client

6 appreciates your time, appreciates your thoroughness, and

7 will appreciate your attentiveness to the testimony that

8 you are going to hear today; and we ask that you not focus

9 on the fact that this is a strip club.  Look at it as a

02:50:34 10 business, because that's what it is.  This is a business

11 dispute.  We trust that you'll come to the right

12 conclusion.  Thank you.

13  THE COURT:  Plaintiffs call your first witness.

14  *(End of requested excerpt at 2:50 p.m.)*

15 *Date: August 12, 2019*

16    ***COURT REPORTER'S CERTIFICATE***

17 *I, Laura Wells, certify that the foregoing is a*

18 *correct transcript from the record of proceedings in the*

19 *above-entitled matter.*

20

21    */s/ Laura Wells*

22   *Laura Wells, CRR, RMR*

23

24

25

*Laura Wells, CRR, RDR*

Concordance

| $ | 8 | apply [1] - 20:25 | [1] - 2:3 |
|---|---|---|---|
| $100 [1] - 17:15 | 8 [1] - 22:7 | appreciate [1] - 21:24 | Best [1] - 21:18 |
| $2.13 [3] - 3:19, 3:23, 4:3 | 8004 [1] - 1:23 | appreciates [2] - 21:23 | best [1] - 8:8 |
| $20 [1] - 17:13 | **9** | argumentative [2] - 4:16, 11:18 | better [3] - 7:8, 16:16, 20:14 |
| $7.25 [2] - 3:21, 14:17 | 986-9471 [1] - 1:18 | aspects [2] - 15:17, 16:22 | billboard [1] - 19:11 |
| **/** | **A** | assisted [1] - 1:25 | bit [1] - 15:20 |
| /s [1] - 22:13 | above-entitled [1] - 22:11 | ATTENDANCE [1] - 1:19 | boils [1] - 14:23 |
| **1** | absolute [1] - 19:4 | attention [2] - 16:23, 19:25 | books [1] - 7:24 |
| 1 [3] - 1:9, 2:1 | absolutely [1] - 12:14 | attentiveness [1] - 21:24 | bore [1] - 18:6 |
| 1220 [1] - 1:17 | accepted [1] - 18:6 | August [1] - 22:7 | boss [1] - 21:5 |
| 13 [1] - 2:4 | accessories [1] - 19:2 | Avenue [1] - 1:13 | bottles [1] - 8:10 |
| 17 [2] - 1:6, 2:2 | Act [1] - 3:12 | average [2] - 12:5, 12:7 | break [1] - 21:1 |
| **2** | add [1] - 19:3 | avoid [1] - 4:7 | briefly [2] - 11:11, 15:14 |
| 2019 [3] - 1:6, 2:2, 22:7 | advertise [2] - 19:10, 19:12 | awkward [1] - 14:10 | business [31] - 5:5, 5:10, 5:21, 5:25, 6:2, 7:18, 7:21, 7:23, 8:2, 8:5, 8:19, 9:7, 9:10, 9:15, 10:1, 10:6, 11:10, 14:2, 14:15, 14:25, 15:1, 17:22, 19:7, 19:19, 20:17, 21:15, 22:2 |
| 22 [1] - 2:4 | advertisements [1] - 8:24 | **B** | |
| 2:24 [1] - 1:5 | advertising [3] - 5:6, 5:19, 8:18 | bad [3] - 11:12, 11:13, 18:5 | |
| 2:50 [2] - 1:5, 22:6 | affect [1] - 11:15 | balancing [1] - 21:12 | |
| **3** | afternoon [1] - 13:22 | bar [3] - 9:17, 9:18, 9:20 | |
| 3 [1] - 2:3 | agreements [2] - 8:18, 8:23 | bartender [1] - 18:14 | businesses [1] - 17:18 |
| 3355 [1] - 1:17 | ahead [1] - 18:14 | bartenders [3] - 4:23, 5:14, 9:18 | busy [1] - 8:3 |
| **4** | AL [2] - 1:4, 1:6 | based [1] - 21:20 | butts [1] - 10:21 |
| 40 [1] - 12:1 | Alabama [1] - 1:17 | basis [6] - 5:15, 5:19, 6:9, 6:15, 6:17, 6:22 | buy [2] - 8:21, 18:24 |
| 4101 [1] - 1:13 | alcohol [1] - 17:17 | bear [2] - 17:25, 18:3 | Buy [1] - 21:18 |
| 4:17-CV-02171 [1] - 1:4 | Alex [2] - 1:21, 14:2 | bearing [1] - 18:10 | **C** |
| **5** | ALFRED [1] - 1:8 | become [1] - 18:14 | canal [1] - 13:6 |
| 50 [1] - 12:3 | alone [1] - 7:16 | BEFORE [1] - 1:8 | cap [1] - 18:8 |
| 515 [1] - 1:23 | ALSO [1] - 1:19 | Beginning [1] - 3:1 | capital [2] - 8:19, 8:25 |
| **7** | Alvarez [1] - 1:20 | behind [1] - 14:2 | cards [1] - 5:5 |
| 713 [1] - 1:18 | amounts [1] - 8:16 | BENNETT [1] - 1:8 | case [16] - 3:8, 4:2, 6:3, 6:20, 7:13, 7:22, 9:2, 9:24, 10:17, 12:14, 12:24, 13:15, 14:5, 14:23, 16:23, 21:10 |
| 713-236-8330 [1] - 1:14 | analogy [1] - 20:23 | Bennett [1] - 14:9 | |
| 77002 [1] - 1:23 | AND [1] - 1:8 | BERLANGA [6] - 3:5, 3:7, 4:19, 11:20, 12:18, 12:23 | |
| 77007 [1] - 1:13 | answer [1] - 11:8 | Berlanga [7] - 1:11, 14:19, 15:2, 15:11, 15:19, 18:23, 19:9 | CASEY [1] - 1:4 |
| 77098 [1] - 1:18 | antique [1] - 20:25 | | Casey [1] - 1:15 |
| | appearance [4] - 7:15, 7:16, 19:4 | Berlanga's [1] - 17:1 | central [1] - 5:20 |
| | APPEARANCES [1] - 1:10 | Berlanga.............. | CERTIFICATE [1] - 22:8 |
| | applies [1] - 19:19 | | Certificate............. ............ [1] - 2:4 |
| | | | certify [1] - 22:9 |
| | | | charged [2] - 4:6, 10:18 |

Concordance

charging [1] - 17:16
civil [1] - 13:10
claiming [1] - 14:17
class [1] - 3:9
classified [1] - 14:18
client [3] - 14:11, 14:13, 21:22
client's [1] - 14:2
clients [2] - 5:8, 11:12
clothes [1] - 8:21
clothing [1] - 9:2
club [12] - 3:10, 4:10, 9:19, 14:5, 14:16, 15:1, 15:17, 16:3, 17:16, 19:13, 20:13, 22:1
colleague [1] - 13:24
common [2] - 8:4, 10:1
company [1] - 5:12
compared [1] - 8:15
competent [1] - 7:9
completely [1] - 15:23
computer [1] - 1:25
computer-assisted [1] - 1:25
conclusion [1] - 22:4
consequences [1] - 11:1
consider [11] - 6:4, 6:5, 7:19, 8:13, 9:4, 9:5, 9:23, 10:3, 11:4, 11:7
consideration [2] - 6:24, 19:8
considerations [3] - 11:2, 15:12, 15:14
considered [1] - 19:18
constitution [1] - 13:12
consultants [1] - 5:4
continue [1] - 20:9
contractor [9] - 5:1, 7:2, 7:11, 7:21, 9:5, 9:8, 11:5, 11:9, 21:20
contractor/
    employee [1] - 11:21
contractors [15] - 3:17, 3:18, 4:9, 5:3, 6:8, 7:18, 8:16, 9:1, 10:5, 10:12, 13:1, 14:22,

7:7, 18:2, 18:21
control [6] - 7:21, 10:4, 10:8, 10:14, 16:13, 16:14
controlled [1] - 15:16
controlling [1] - 16:10
controls [1] - 7:19
Cook [4] - 1:12, 1:12, 3:8, 13:14
correct [1] - 22:10
costs [1] - 8:18
Counsel [1] - 4:18
counsel [2] - 3:2, 13:22
Counselor [1] - 21:8
course [1] - 8:3
COURT [12] - 1:1, 3:2, 3:6, 4:14, 4:17, 11:19, 12:20, 13:17, 13:21, 21:8, 22:5, 22:8
Court [8] - 1:22, 6:3, 7:19, 8:14, 9:4, 12:12, 12:22, 13:20
court [2] - 13:7, 14:6
Court's [1] - 21:21
courts [1] - 13:10
cover [1] - 17:16
credit [1] - 3:23
CRR [2] - 1:22, 22:14
customer [4] - 16:6, 16:7, 17:13, 17:14
customers [6] - 5:24, 8:2, 15:7, 17:11, 19:16, 20:15

**D**

dance [5] - 9:19, 16:19, 17:13, 19:14, 20:12
dancer [10] - 12:7, 12:9, 15:17, 16:16, 16:17, 17:12, 17:14, 19:7, 20:14, 20:18
dancer's [2] - 7:15, 9:2
dancers [40] - 3:9, 3:16, 4:3, 4:5, 4:6, 4:8, 4:9, 4:11, 4:21, 6:21, 9:19, 9:25, 10:11, 10:14, 10:18, 10:20, 10:22, 10:25, 11:23, 11:24, 12:1, 12:25, 14:5, 14:16, 14:24, 15:3, 15:7, 15:20, 15:21,

15:24, 16:9, 16:20, 17:10, 18:4, 18:9, 18:24, 19:12, 19:23, 20:21, 20:24
dancing [1] - 10:1
Date [1] - 22:7
decide [2] - 11:22, 16:17
decided [2] - 4:10, 12:25
deciding [3] - 11:4, 11:5, 21:16
decision [1] - 14:21
deejay [2] - 20:20
deejays [1] - 20:6
defendant's [1] - 3:10
DEFENDANTS [1] - 1:15
defense [1] - 13:17
definite [1] - 6:10
dentist [1] - 13:6
deny [1] - 15:25
dependent [4] - 6:1, 8:1, 10:7, 21:18
determine [8] - 3:15, 6:4, 6:25, 11:22, 12:5, 12:6, 12:11, 21:13
determined [1] - 11:20
determines [1] - 21:11
difference [1] - 8:6
different [4] - 14:24, 15:12, 15:23, 17:8
dime [1] - 17:1
diner [1] - 8:7
dispute [5] - 4:2, 6:4, 6:25, 11:6, 22:3
disputed [1] - 4:4
distraction [1] - 11:15
DISTRICT [2] - 1:1, 1:2
DIVISION [1] - 1:2
dollar [1] - 15:9
door [1] - 15:8
doors [1] - 19:16
down [2] - 14:23, 17:24
downtown [1] - 8:11
drink [1] - 16:8
during [3] - 13:24, 14:4,

15:2

**E**

earn [2] - 6:1, 15:10
earned [1] - 21:16
economically [3] - 5:25, 10:7, 21:17
electrical [1] - 7:4
electrician [1] - 7:5
electricians [3] - 4:22, 5:3, 6:8
embrace [1] - 15:12
employee [7] - 3:20, 3:22, 4:25, 5:12, 8:6, 11:5, 18:19
employee's [1] - 3:23
employee/
    employer [1] - 19:22
employees [29] - 3:13, 3:16, 3:18, 3:19, 4:10, 4:22, 5:7, 5:14, 5:23, 6:12, 7:6, 7:9, 7:25, 8:11, 8:14, 8:20, 9:13, 9:21, 10:9, 11:8, 11:13, 13:2, 14:18, 14:22, 17:4, 17:22, 21:7, 21:18
employer [19] - 3:22, 5:9, 5:15, 5:17, 5:20, 6:1, 6:14, 6:15, 8:1, 8:5, 8:12, 8:15, 9:15, 9:22, 10:4, 10:7, 10:8, 18:19, 18:20
employer's [5] - 3:24, 5:21, 5:25, 9:7, 9:15
employer/
    employee [1] - 21:20
employers [1] - 3:13
employment [1] - 4:24
end [1] - 6:3
End [1] - 22:6
enhance [1] - 20:17
enterprise [1] - 18:1
entertainer [1] - 18:13
entertainers [1] - 4:21
entertainment [1] - 16:3
entire [2] - 14:15, 17:25

Concordance

entitled [1] - 22:11
equipment [2] - 18:18, 18:20
essential [1] - 9:14
ET [2] - 1:4, 1:6
evidence [22] - 3:25, 4:1, 4:2, 4:18, 4:20, 6:20, 7:15, 9:1, 9:24, 10:16, 10:20, 11:3, 12:13, 12:18, 12:20, 12:23, 16:12, 17:9, 18:11, 20:18, 21:4, 21:13
example [1] - 8:7
Excerpt [1] - 2:1
EXCERPT [1] - 1:7
excerpt [2] - 3:1, 22:6
excuse [1] - 9:6
exercised [1] - 10:4
exercises [1] - 10:8
exotic [17] - 3:9, 3:16, 9:19, 9:25, 10:1, 14:5, 14:16, 15:3, 15:7, 15:20, 15:21, 15:24, 16:9, 17:12, 20:12, 20:23
expect [5] - 15:11, 16:12, 16:18, 17:9, 20:4
expectations [1] - 19:21
expenditures [1] - 8:25
expensive [1] - 19:3
expertise [3] - 7:4, 7:5, 7:12

**F**

face [2] - 11:1, 14:2
facility [1] - 20:22
fact [11] - 4:5, 9:25, 11:3, 13:8, 13:12, 14:13, 15:20, 18:9, 19:25, 21:10, 22:1
factor [6] - 6:24, 9:4, 16:24, 17:19, 18:17, 19:17
factors [3] - 10:13, 10:15, 16:22
facts [2] - 14:20, 14:21
Fair [1] - 3:11

fair [1] - 15:21
fall [1] - 21:14
fancy [1] - 8:10
federal [2] - 3:12, 14:6
fee [4] - 10:18, 10:23, 17:16, 20:5
fees [1] - 20:6
Feldman [2] - 1:16
fifth [1] - 19:8
final [1] - 12:10
finally [1] - 19:17
financial [4] - 7:23, 17:19, 17:25, 18:3
financially [1] - 20:10
fine [4] - 10:24, 14:8, 18:14, 19:11
fines [1] - 20:7
first [3] - 14:4, 15:16, 22:5
five [2] - 3:9, 14:16
fix [2] - 7:3, 9:8
fixed [4] - 17:4, 17:5, 17:22, 18:15
flexibility [1] - 10:10
flexible [1] - 10:11
floor [2] - 13:3, 16:6
FLSA [2] - 11:8, 12:11
focus [1] - 21:25
follow [1] - 10:25
follows [1] - 3:1
food [4] - 5:22, 9:16, 9:17, 17:17
FOR [2] - 1:11, 1:15
forced [2] - 20:5, 20:6
foregoing [1] - 22:9
former [1] - 14:16
forward [1] - 13:15
fourth [1] - 18:17
free [2] - 15:4, 16:20
freelancers [1] - 19:23
front [1] - 12:21
function [1] - 13:9
funnel [1] - 20:15

**G**

gentlemen [1] - 13:23

goods [1] - 21:1
greases [1] - 20:13
guaranteed [1] - 17:6
guess [1] - 18:24
gun [1] - 21:12
guy [2] - 16:19, 21:18

**H**

hair [1] - 19:2
half [1] - 17:14
hand [9] - 6:12, 7:6, 7:25, 8:20, 9:13, 10:9, 13:3, 17:7, 18:2
hard [1] - 15:25
hear [20] - 3:25, 6:20, 7:13, 9:1, 9:24, 10:21, 10:24, 11:12, 11:24, 11:25, 12:2, 12:14, 14:19, 16:17, 18:3, 18:9, 19:25, 20:18, 21:11, 21:25
heard [5] - 3:11, 13:24, 14:1, 14:4, 18:23
help [3] - 3:15, 6:4, 6:25
helped [1] - 11:21
Honor [11] - 3:5, 4:1, 4:13, 4:16, 4:19, 11:17, 12:16, 12:19, 13:8, 13:19, 21:9
HONORABLE [1] - 1:8
hook [1] - 18:21
hour [6] - 3:19, 3:21, 3:23, 4:3, 14:17, 17:14
hours [6] - 11:23, 12:1, 12:3, 12:5, 12:8, 17:5
house [1] - 20:5
HOUSTON [1] - 1:2
Houston [3] - 1:13, 1:18, 1:23

**I**

ignore [2] - 10:13, 10:15
illegal [1] - 21:1
importance [1] - 13:13
important [7] - 9:14, 9:22, 11:6, 13:9, 15:13, 15:18, 17:21
importantly [1] - 10:14

impress [1] - 14:12
IN [1] - 1:19
INC [1] - 1:6
increased [1] - 10:19
indefinite [2] - 6:18
independent [26] - 3:16, 3:18, 4:9, 5:1, 5:2, 6:8, 7:2, 7:11, 7:17, 7:20, 8:16, 8:25, 9:5, 9:7, 10:4, 10:5, 10:12, 11:5, 11:9, 11:21, 12:25, 14:22, 17:7, 18:2, 18:21, 21:20
individual [1] - 18:12
initiative [3] - 7:1, 7:7, 7:11
instead [2] - 4:10, 13:1
instruct [1] - 12:22
instructions [1] - 12:12, 21:21
integral [4] - 9:6, 9:9, 9:21, 9:25
intend [2] - 12:21, 12:23
interfere [1] - 17:10
invested [1] - 19:7
investigation [2] - 12:15, 12:24
investment [1] - 9:2
investments [2] - 8:14, 8:19
involve [1] - 15:19
involved [1] - 14:5
involves [1] - 3:9

**J**

job [8] - 6:8, 7:1, 14:20, 15:25, 18:22, 19:3, 19:4, 19:5
Joe [1] - 5:11
Judge [2] - 13:11, 14:9
judge [1] - 3:11
judges [1] - 13:7
June [1] - 2:2
JUNE [1] - 1:6
jurors [1] - 13:10
JURY [1] - 1:8
jury [6] - 12:21, 13:12,

Concordance

**K**

keep [5] - 7:23, 12:4, 15:9, 16:10
keeping [2] - 7:24, 21:16
Kelly [1] - 1:12
Khorshidpanah [2] - 1:21, 14:3
kind [4] - 7:10, 8:5, 11:3, 20:19
KING [7] - 4:13, 4:16, 11:17, 12:16, 13:19, 13:22, 21:9
King [2] - 1:16, 13:23
King .................. [1] - 2:4
knock [1] - 21:2

**L**

labels [1] - 19:18
Labor [1] - 3:11
ladies [1] - 13:22
lady [1] - 19:1
large [1] - 8:12
last [1] - 5:17
lasting [2] - 6:13, 6:18
lasts [3] - 5:16, 6:9, 6:10
Laura [4] - 1:22, 22:9, 22:13, 22:14
law [5] - 3:12, 3:18, 4:7, 12:17, 21:1
lawyers [2] - 13:7, 15:22
learn [1] - 13:5
lease [2] - 8:18, 8:23
least [1] - 3:20
leave [2] - 9:12, 16:16
legal [1] - 4:14
less [3] - 8:4, 11:25, 12:2
likely [2] - 9:21, 10:10
limited [1] - 9:2
listen [2] - 16:25, 20:20
listening [2] - 19:24, 20:8

13:23, 13:25, 14:4, 19:2

living [1] - 6:1
location [1] - 6:16
long-lasting [1] - 6:18
longer-lasting [1] - 6:13
look [5] - 8:22, 13:15, 15:18, 21:19, 22:1
loss [4] - 7:20, 7:22, 18:3, 18:11
lost [1] - 18:4
lucrative [1] - 15:8
luring [1] - 21:6

**M**

makeup [2] - 9:3, 9:16
man [2] - 14:2, 16:8
Maria [1] - 1:20
Marissa [1] - 1:20
marketing [2] - 9:10, 9:16
married [2] - 19:1
matter [5] - 14:13, 19:20, 20:12, 22:11
meaningful [3] - 15:16, 16:13, 16:22
means [2] - 12:13, 16:3
mechanical [1] - 1:24
mention [1] - 15:2
mentioned [8] - 7:17, 8:15, 13:11, 14:9, 15:11, 16:25, 17:21, 19:18
met [1] - 3:8
might [4] - 9:4, 18:9, 19:14, 20:25
mind [2] - 12:4, 16:11
minimum [5] - 3:13, 3:20, 3:24, 4:8, 20:3
minute [1] - 17:13
minutes [1] - 21:8
misclassified [1] - 4:9
misstates [1] - 12:16
moment [2] - 4:14, 13:4
Moments [39] - 3:10, 4:3, 4:5, 4:6, 4:7, 4:8, 4:20, 6:21, 7:14, 10:10, 10:14, 10:18, 10:20, 10:22, 10:25,

11:12, 12:11, 12:14, 12:24, 14:1, 14:10, 15:4, 15:5, 15:8, 15:9, 15:11, 16:13, 16:14, 16:18, 17:2, 17:10, 18:12, 18:13, 18:16, 19:6, 19:12, 20:10, 20:13, 20:16
moments [3] - 4:8, 10:12, 14:10
Moments' [2] - 10:1, 11:15
money [21] - 5:6, 5:9, 5:24, 7:10, 8:2, 8:4, 8:17, 8:22, 14:25, 15:3, 15:7, 17:6, 17:12, 17:15, 17:16, 18:4, 18:8, 20:13, 20:15, 21:15, 21:16
morning [2] - 3:7, 3:12
most [2] - 8:1, 13:5
move [1] - 17:23
MR [13] - 3:5, 3:7, 4:13, 4:16, 4:19, 11:17, 11:20, 12:16, 12:18, 12:23, 13:19, 13:22, 21:9
multiple [1] - 5:8

**N**

name [1] - 13:23
named [1] - 14:2
necessaries [1] - 18:18
necessary [1] - 18:22
need [1] - 16:19
negotiated [1] - 17:11
negotiating [1] - 17:9
NELSON [1] - 1:4
nights [1] - 18:5
number [7] - 5:24, 11:24, 12:5, 12:6, 12:7, 12:8, 17:5

**O**

objection [4] - 4:13, 4:15, 11:17, 12:16
Objection [1] - 4:16
obligation [1] - 3:24
obvious [1] - 11:9

OF [2] - 1:2, 1:7
offer [3] - 12:23, 19:9, 19:15
office [2] - 8:18, 9:8
once [2] - 11:20, 18:25
one [20] - 5:2, 6:5, 6:15, 7:18, 8:13, 9:23, 10:3, 11:11, 12:10, 15:1, 15:6, 15:15, 15:16, 15:17, 15:20, 15:22, 18:10, 19:1, 19:17, 21:10
Opening [3] - 2:1, 2:3, 2:4
OPENING [1] - 1:7
opening [4] - 3:3, 3:18, 15:2, 17:1
opportunity [6] - 7:20, 7:22, 8:11, 17:12, 17:20, 18:8
opposed [1] - 12:21
order [1] - 5:10
otherwise [1] - 21:2
outcome [1] - 21:11
outline [1] - 15:14
overhead [3] - 7:24, 8:17, 8:23
overpriced [1] - 9:20
overtime [5] - 3:14
own [5] - 6:2, 7:18, 7:21, 10:6, 19:7

**P**

p.m [1] - 22:6
P.M [2] - 1:5
Page [1] - 2:2
paid [9] - 3:19, 14:17, 16:25, 17:1, 17:2, 17:8, 17:13, 18:20, 20:2
part [9] - 8:1, 8:12, 9:14, 9:25, 16:13, 19:3, 19:5
particular [3] - 9:10, 16:6, 20:19
particularly [1] - 7:7
parties [1] - 19:21
parties' [1] - 19:21
patrons [1] - 16:3
pay [16] - 3:13, 3:22, 4:3,

Concordance

4:5, 4:8, 4:10, 8:24, 10:23, 13:1, 15:5, 16:23, 17:22, 19:6, 19:24, 20:5, 20:6
**paycheck** [1] - 17:5
**paying** [1] - 20:24
**payroll** [2] - 8:17, 8:23
**pays** [2] - 16:8, 17:14
**penalties** [1] - 20:7
**people** [7] - 5:3, 5:4, 11:13, 13:6, 14:8, 19:13, 19:16
**perform** [10] - 5:7, 7:1, 9:11, 16:14, 16:15, 16:20, 16:21, 18:18, 21:17
**performed** [1] - 9:6
**performing** [2] - 16:5
**performs** [1] - 17:23
**period** [6] - 5:8, 5:16, 5:18, 6:9, 6:11, 6:16
**permanency** [1] - 6:6
**permits** [1] - 3:19
**personal** [1] - 7:9
**physical** [3] - 7:15, 7:16
**plaintiff** [2] - 3:3, 16:19
**plaintiffs** [4] - 16:24, 19:9, 20:4, 22:5
**PLAINTIFFS** [1] - 1:11
**play** [1] - 20:21
**played** [1] - 20:19
**PLLC** [1] - 1:12
**plumber** [6] - 5:11, 6:2, 7:4, 9:8, 9:11
**plumber's** [1] - 9:9
**plumbers** [3] - 4:21, 5:3, 6:7
**plumbing** [1] - 5:12
**pocket** [1] - 19:5
**pointed** [2] - 4:1, 14:19
**pole** [1] - 16:2
**potential** [1] - 8:4
**preface** [1] - 4:17
**present** [1] - 20:2
**presentable** [1] - 8:22
**presenting** [1] - 13:15
**prices** [1] - 17:11

**private** [1] - 19:14
**problem** [1] - 18:15
**proceed** [2] - 3:3, 3:6
**proceedings** [1] - 22:10
**Proceedings** [1] - 1:24
**produced** [1] - 1:25
**product** [1] - 9:22
**profit** [5] - 5:10, 7:20, 7:22, 7:24, 8:12
**project** [6] - 5:19, 6:9, 6:17
**project-by-project** [3] - 5:19, 6:9, 6:17
**protected** [1] - 11:8
**proud** [1] - 13:25
**provided** [1] - 18:17
**public** [4] - 5:23, 9:11, 9:16, 19:15
**put** [2] - 12:21, 19:10

## R

**rate** [1] - 17:22
**rather** [1] - 13:6
**ready** [1] - 3:3
**real** [1] - 7:12
**really** [5] - 9:18, 13:9, 14:23, 19:19, 20:24
**reason** [2] - 3:17, 17:20
**record** [1] - 22:10
**recorded** [1] - 1:24
**records** [1] - 7:23
**recurring** [1] - 6:21
**regular** [3] - 5:15, 6:15, 6:21
**relationship** [7] - 5:16, 5:17, 6:6, 6:10, 6:16, 6:19, 19:22
**relationships** [1] - 6:13
**relative** [1] - 8:14
**remarks** [1] - 4:17
**reoccurring** [1] - 6:15
**Reporter** [1] - 1:22
**REPORTER'S** [1] - 22:8

**Reporter's** [1] - 2:4
**represent** [1] - 14:1
**requested** [2] - 3:1, 22:6
**require** [1] - 4:7
**required** [3] - 7:1, 7:11, 10:22
**requirement** [1] - 7:14
**requiring** [1] - 3:13
**respect** [1] - 10:17
**responsibilities** [1] - 11:16
**restaurant** [1] - 9:16
**revenue** [1] - 7:24
**Reyna** [1] - 1:20
**risk** [12] - 5:9, 8:16, 8:20, 17:19, 17:24, 17:25, 18:3, 18:6, 18:7, 18:10
**RMR** [2] - 1:22, 22:14
**roadside** [1] - 8:7
**root** [1] - 13:6
**RPR** [1] - 1:22
**rules** [2] - 10:25, 20:25
**run** [1] - 7:18
**running** [4] - 5:4, 8:6, 10:6, 11:9
**Rusk** [1] - 1:23

## S

**salary** [2] - 17:4, 17:24
**satisfying** [1] - 3:24
**schedules** [2] - 10:11, 21:5
**scheduling** [1] - 10:18
**second** [1] - 16:24
**see** [4] - 4:2, 10:16, 10:20, 15:22
**selection** [2] - 13:25, 14:4
**sell** [8] - 16:1, 16:3, 16:4, 16:5, 20:22, 21:1, 21:2
**selling** [4] - 5:23, 9:22, 17:17, 19:4
**sells** [1] - 9:16
**sends** [1] - 5:12
**sense** [2] - 8:4, 10:2
**separate** [1] - 17:17

**serious** [1] - 14:13
**served** [2] - 5:22, 9:17
**service** [2] - 16:1, 20:14
**services** [4] - 19:9, 19:13, 19:15, 20:22
**serving** [1] - 8:10
**several** [1] - 6:4
**sharing** [1] - 16:8
**shifts** [2] - 11:25
**shirts** [1] - 18:20
**shoes** [1] - 19:2
**show** [9] - 4:18, 4:20, 7:15, 10:17, 16:12, 17:10, 18:11, 21:3, 21:4
**side** [2] - 5:2, 5:13
**significant** [6] - 5:6, 5:9, 5:16, 8:16, 8:25, 18:7
**sincerely** [1] - 13:4
**single** [1] - 5:9
**sink** [1] - 7:3
**sitting** [2] - 14:14, 16:7
**situation** [1] - 4:24
**sixth** [1] - 19:17
**skill** [2] - 6:25, 7:10
**skilled** [1] - 7:2, 7:7
**skills** [1] - 17:9
**small** [1] - 17:24
**smoking** [1] - 21:11
**snickers** [1] - 14:7
**someone** [1] - 4:25
**sometimes** [1] - 16:7
**song** [2] - 20:19, 20:21
**soon** [1] - 18:10
**SOUTHERN** [1] - 1:2
**space** [1] - 8:19
**special** [1] - 6:25
**specific** [3] - 5:7, 6:16, 9:11
**specified** [2] - 5:7, 5:18
**spectrum** [4] - 5:1, 5:2, 5:13, 21:14
**spend** [3] - 5:5, 8:22, 16:6
**spends** [1] - 17:14
**spinning** [1] - 16:2

stage [5] - 10:22, 10:23, 10:24, 16:5, 19:12
stall [2] - 20:24, 21:2
stand [1] - 20:4
Standards [1] - 3:12
Statement [2] - 2:3, 2:4
statement [3] - 3:4, 13:18, 15:3
STATEMENTS [1] - 1:7
Statements [1] - 2:1
STATES [1] - 1:1
steakhouse [1] - 8:10
steaks [1] - 8:10
stenography [1] - 1:24
store [1] - 20:25
Street [2] - 1:17, 1:23
strip [2] - 14:5, 22:1
sue [1] - 14:16
SUGARS [1] - 1:6
suggest [1] - 11:12
suing [2] - 14:5, 18:15
Suite [2] - 1:17, 1:23
sums [1] - 5:9
surprise [1] - 13:5
sustained [1] - 11:19
system [2] - 13:10

**T**

taboo [1] - 14:7
task [2] - 5:7, 9:12
technical [1] - 7:12
ten [1] - 6:23
tend [1] - 6:13
test [1] - 21:12
testimony [6] - 16:18, 18:4, 19:24, 20:1, 20:8, 21:24
TEXAS [2] - 1:2, 1:6
Texas [3] - 1:13, 1:18, 1:23
texted [1] - 10:20
THE [13] - 1:8, 1:11, 1:15, 3:2, 3:6, 4:14, 4:17, 11:19, 12:20, 13:17, 13:21, 21:8,

22:5
themselves [5] - 11:10, 14:25, 21:15, 21:16
thinking [1] - 16:9
third [1] - 17:19
thoroughness [1] - 21:23
three [1] - 17:13
three-minute [1] - 17:13
throughout [2] - 14:15, 16:23
tip [2] - 20:16, 20:19
tipped [17] - 3:19, 4:22, 5:13, 5:23, 6:12, 7:6, 7:8, 7:25, 8:6, 8:11, 8:20, 9:13, 9:21, 10:8, 10:9, 11:8, 13:1
tips [3] - 3:21, 3:24, 7:8
today [7] - 3:8, 3:15, 13:5, 13:13, 13:15, 13:25, 21:25
toilets [1] - 9:9
tools [1] - 18:17
topic [1] - 14:7
touch [2] - 11:11, 12:10
touched [2] - 6:7, 13:8
track [1] - 7:24
tradeoff [1] - 15:10
transcript [1] - 22:10
Transcript [1] - 1:25
transcription [1] - 1:25
treat [2] - 4:11, 12:25
treated [2] - 4:20, 12:25
Trial [1] - 2:1
trial [2] - 13:12, 14:15
TRIAL [1] - 1:7
true [4] - 7:8, 17:3, 19:23, 21:7
truly [1] - 10:5
trust [1] - 22:3
truth [2] - 19:15, 20:12
TV [1] - 15:22
two [2] - 17:17, 21:8
type [1] - 8:24
typically [5] - 5:16, 5:20, 6:10, 7:1, 17:23

**U**

ultimate [1] - 14:21
uncomfortable [1] - 14:8
UNITED [1] - 1:1
up [10] - 12:3, 13:3, 16:2, 16:16, 17:5, 17:24, 19:3, 19:6, 19:10, 21:3

**V**

valuable [1] - 21:22
victimized [1] - 20:10
violated [1] - 12:11
Volume [2] - 1:9
VOLUME [1] - 2:1

**W**

wage [7] - 3:13, 3:20, 3:24, 4:8, 17:4, 18:15, 20:3
wages [3] - 4:11, 13:1, 14:6
waiter [3] - 8:7, 8:8, 8:9
waitress [6] - 8:7, 8:8, 8:9, 9:17, 20:14, 20:16
waitresses [5] - 4:22, 5:14, 5:22, 6:13, 10:20
walk [1] - 15:7
Wallace [2] - 1:15, 13:24
wants [3] - 20:14, 20:17, 20:18
Warren [2] - 1:11, 3:7
Washington [1] - 1:13
ways [1] - 10:14
wear [1] - 16:15
week [4] - 12:1, 12:3, 12:5, 12:8
weeks [3] - 11:23, 12:7, 12:8
weigh [2] - 14:20, 21:13
Wells [4] - 1:22, 22:9, 22:13, 22:14
West [1] - 1:17
whatsoever [3] - 4:11, 12:15, 12:24
wheels [1] - 20:13

willfully [1] - 12:12
William [1] - 1:16
wine [1] - 8:10
wiring [1] - 7:5
wish [1] - 13:17
witness [1] - 22:5
witnesses [1] - 20:1
woman [1] - 16:8
women [3] - 17:20, 21:5, 21:14
words [1] - 5:21
worker [1] - 19:19
world [1] - 8:8
wrap [1] - 13:3
Wyly [1] - 1:12

**X**

Xander [1] - 1:16

**Y**

years [2] - 6:22, 6:23
yourself [4] - 19:25, 20:9, 21:2, 21:19