**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CASEY NELSON, ET AL | * | 4:17-CV-02171 |
| | * | |
| V. | * | 8:59 A.M. to 4:09 P.M. |
| | * | |
| TEXAS SUGARS, INC., ET AL | * | JUNE 19, 2019 |

**TRIAL EXCERPT – JURY CHARGE, CLOSING STATEMENTS,**
**AND JURY INSTRUCTIONS**
**BEFORE THE HONORABLE ALFRED H. BENNETT**
**AND A JURY**
**Volume 1 of 1 Volume**

**APPEARANCES**

**FOR THE PLAINTIFFS:**
Mr. Warren A. Berlanga
Mr. Kelly E. Cook
Wyly & Cook, PLLC
4101 Washington Avenue
Houston, Texas 77007
713-236-8330

**FOR THE DEFENDANTS:**
Mr. Casey Wallace
Mr. William Xander King
Feldman & Feldman
3355 West Alabama Street
Suite 1220
Houston, Texas 77098
(713) 986-9471

**ALSO IN ATTENDANCE:**
Ms. Maria Alvarez
Ms. Marissa Reyna
Mr. Alex Khorshidpanah

Court Reporter:
Laura Wells, RPR, RMR, CRR
515 Rusk Street, Suite 8004
Houston, Texas 77002

Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

1

## VOLUME 1
## (Excerpt of Trial – Jury Charge, Closing and Jury
Instructions)

2

Page

3    June 19, 2019

4    Announcements................................... 3
     Hearing on Hours Worked......................... 3
5    Objections to Charge of Court................... 26
     Charge of Court................................ 46
6    Closing Statement by Mr. Cook.................. 58
     Closing Statement by Mr. Wallace.............. 69
7    Rebuttal Closing Statement by Mr. Cook......... 86
     Jury Deliberations............................ 89
8    Review of Exhibits............................ 91
     Jury Note 1................................... 93
9    Reporter's Certificate........................ 97

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Beginning of requested excerpts, as follows:)
 2              (Open court, parties present, no jury.)
 3              THE COURT:  Good morning.  Thank you.  Please
 4      have a seat.  Cause Number 4:17-CV-2171, Casey Nelson, et
 5      al v. Texas Sugars, Inc.
 6          Counsel, please announce your appearances for the
 7      record.
 8              MR. COOK:  Kelly Cook for the plaintiffs.
 9              MR. BERLANGA:  Warren Berlanga for the
10      Plaintiffs.
11              MR. KING:  Will King for the defendant.
12              MR. WALLACE:  Casey Wallace for the defendant,
13      Your Honor.
14              THE COURT:  Very well.  Let the record reflect
15      counsel for the parties are present, the jury is not
16      present in the courtroom.
17          Overnight the Court had requested that the parties
18      provide the Court with additional guidance on the issue as
19      to whether or not plaintiffs have met their burden of just
20      basic evidence of a prima facie case as to the number of
21      hours worked.  Of course, as the plaintiffs have pointed
22      out, that once they were -- they reached that point, the
23      burden shifts to the defense.  But the question that the
24      Court has is have they met their initial burden of
25      evidence.
```

*Laura Wells, CRR, RDR*

          The Court in its memory in listening to the plaintiffs
cannot recall -- and I'm going to give plaintiffs the
opportunity to point this out to the Court -- cannot
recall where any plaintiff testified as to the number of
hours she worked in a given week, in a given month.

          I do recall specifically where they talked about the
shifts that they worked.  That each of the plaintiffs, I
believe, described what the Court now calls the morning
shift, the mid shift, and the night shift.  And then each
plaintiff would testify I would work the mid shift during
the week or I would work the night shift.  I did not hear
a specific number of hours ever mentioned for a specific
week for a specific plaintiff.

          So the question is:  By referring to working a
specific shift, does that raise a just and reasonable
inference as to the amount of hours worked that can now be
used and calculated by the jury to create a damage profile
for each plaintiff?

          The plaintiffs overnight provided the Court with a few
cases.  One of the cases that the Court -- that the
plaintiffs provided to the Court, *Mohammadi*, which is 990
F. Supp -- F. Supp. 2d, 723.  In that case, which the
plaintiffs cite for their position that sufficient
evidence had been provided, even in that case there was,
in the opinion itself, a calculation where it was -- there

1    was a breakdown per week or periods where there were hours

2    worked.

3        The Court cannot recall demonstrative evidence or

4    actual evidence that has been admitted taking away the

09:03:38   5    evidence that the Court has discussed.  There has not been

6    a demonstrative piece of evidence or actually admitted

7    evidence where the plaintiffs wrote down the number of

8    hours per week, per month for any plaintiff.

9        So what I am going to do is I'm going to inquire as to

09:04:00  10    plaintiffs' counsel, and I'm going to go through these

11    individually so that you can point this out to me because,

12    ultimately, the question that the jury would have to

13    answer is, as to the minimum wage claim, what are the

14    number of hours worked times $7.25 that should be

09:04:24  15    calculated for each plaintiff.  And I want to know how

16    this jury is going to get to one side of that equation,

17    number of hours worked, based upon the testimony that I

18    have before this Court.

19        So, Counsel, understanding what I have said -- and if

09:04:44  20    I have misstated something, I won't be offended if you

21    tell me I have done so.  You can point that out to me.

22    But as to Casey Nelson, what evidence is before this jury

23    as to the number of hours worked?  And I believe, Counsel,

24    you also have the transcripts that were -- a rough draft

09:05:04  25    of the transcripts that were provided to you, and the

*Laura Wells, CRR, RDR*

Hearing

```
         1    Court has done a review of that, those transcripts, trying
         2    to look for hours such that the jury's memory as to the
         3    testimony would be -- I would -- assuming it's full and
         4    complete, what is in the transcript as to how they would
09:05:28 5    make this calculation.
         6         So let's start with Casey Nelson.
         7         MR. COOK:  You want me to take it.  Okay.
         8         Your Honor, with regard to Casey Nelson, in the record
         9    at Pages 45, 66, and 89, she establishes the time -- the
09:05:46 10   dates that she worked.  She testified that her dancing
         11   schedule was Tuesdays, Wednesdays, Thursdays, Fridays.
         12        THE COURT:  Hold it.  I'm sorry.  You are going a
         13   little bit too fast.  It was what now?
         14        MR. COOK:  She testified that the dancing
09:05:59 15   schedule was Tuesday through Friday and every other
         16   Saturday and that the average hours in her shift were six
         17   to ten.  Taking the most conservative estimate, we would
         18   multiply by four and a half -- that would cover that every
         19   other Saturday shift -- times six hours in a shift times
09:06:21 20   the minimum wage is $195.75.
         21        THE COURT:  Walk me through that again as to
         22   Casey Nelson.
         23        MR. COOK:  Sure.  As to Casey Nelson, she
         24   testified that she worked --
09:06:36 25        THE COURT:  Hold on.  I want to make sure I -- I
```

*Laura Wells, CRR, RDR*

```
 1   have failed to pull up the transcript.
 2             MR. COOK:  And I will pull mine up as well, Your
 3   Honor.
 4             THE COURT:  What was the page number you referred
 5   me to, Counsel?
 6             MR. COOK:  For example, on page -- so we get the
 7   dates of her employment on Page 45.
 8             THE COURT:  Let me go back.  I went too far.  And
 9   this is a rough draft.  So we may be off on the page
10   numbers.  So let me -- 45?  You said Page 45?  And I --
11             MR. COOK:  And I think the clearest with regard
12   to hours --
13             THE COURT:  Yeah.  I think my page -- I'm looking
14   at the -- let me see which draft this is.  We may have
15   different -- Rough 1, which go to Page 1.
16             MR. COOK:  Yes.  This is the PM session with
17   Judge Bennett presiding.
18             THE COURT:  Okay.
19             MR. COOK:  That's my first page of Rough 1.
20             THE COURT:  Yes.
21             MR. COOK:  On page -- I'm going to jump around.
22   On Page 80 --
23             THE COURT:  Oh, no.  I'm looking at the first
24   line is, "This is the 18th day of June, 2019.  Good
25   morning.  Please have a seat."
```

09:07:42 (line 5)
09:08:08 (line 10)
09:08:35 (line 15)
09:08:46 (line 20)
09:08:55 (line 25)

*Laura Wells, CRR, RDR*

Hearing

|   |   |
|---|---|
| | 1 |

          MR. COOK:  You have the voir dire, which we did

not request.

          THE COURT:  Okay.  Hold on.  Let me go back.

          MR. COOK:  If you do it by timestamp, Your Honor,

09:09:07  my Page 1 is 1:56:36.

          THE COURT:  Okay.  Hold on.  Yes.  Okay.  Now, PM

session, what page?

          MR. COOK:  Page 89, Your Honor, she testifies --

          THE COURT:  89.  Hold on.  Okay.  Page 88, 89 --

09:09:45  yes, sir.

          MR. COOK:  "QUESTION:  And I believe you

testified earlier that when you had a shift at Moments, it

was how long?

     "ANSWER:  Shifts depend on when you show up.  So your

09:09:53  time may vary.

     "QUESTION:  More than six hours?

     "ANSWER:  About six to ten."

          THE COURT:  All right.  So the rough estimate is

the six to ten that you have told me.  All right.

09:10:02          MR. COOK:  I'm looking for the cite with regard

to her schedule.  I apologize, Your Honor.  This is

probably the one that I don't have a note for her on her

-- a page and line for the dates that she worked.  I do

believe that I have it for the others.

09:10:31          MR. BERLANGA:  I can search it.

*Laura Wells, CRR, RDR*

1          MR. COOK:  If you could do that.

2      If you would bear with us just for one moment, Your

3  Honor.  And then on Page 49, Your Honor.

4          THE COURT:  Hold on.  We have hours, six to ten.

09:11:09  5  And on Page 49, you say?

6          MR. COOK:  Yes.  Timestamp 2:58:37, question.

7          THE COURT:  Hold on.  Let me get there.  Page 49.

8  Yes, sir.

9          MR. COOK:  "I want to talk about sort of -- we

09:11:25  10  talked about the actual shifts, the actual hours.  I'm

11  going to talk about what your typical schedule was like.

12  I know it varied.  Typically, what days of the week did

13  you work?

14      "ANSWER:  Normal was five to six days.  I never worked

09:11:36  15  a Sunday.

16      "QUESTION:  So five to six days was as pretty much --"

17      Do I need -- for the record, would you like me to read

18  it?

19          THE COURT:  No.  Just point me to it.

09:11:47  20          MR. COOK:  I certainly don't want it to appear as

21  though I'm suggesting the Court can't read the transcript.

22          THE COURT:  No.  You are guiding me, and I

23  appreciate that.  So I see five or six days.  So now we

24  have days of five to six.

09:12:01  25          MR. COOK:  So we have days.  We have hours.

*Laura Wells, CRR, RDR*

1   Minimum wage is not in controversy.

2            THE COURT:  How many days such that we can

3   calculate hours, a total number of hours?  Where is that

4   testimony?  So if she worked six days and she worked ten

09:12:25   5   hours, 60 hours --

6            MR. COOK:  Right.

7            THE COURT:  -- or if she worked five days,

8   66 hours, is that the total amount that you are going to

9   submit to this jury?  One week?

09:12:37   10            MR. COOK:  Your Honor, this actually gets us into

11   the issue with the charge.  Your Honor, the case law is

12   fairly -- we believe fairly clear that the calculation of

13   the actual number, what amount of money, is done by the

14   Court after the fact.  And one of the reasons for that,

09:12:53   15   which is why this would otherwise be a fairly difficult

16   charge to craft, the statute of limitations varies

17   depending on the jury's finding on willfulness.

18            THE COURT:  Right.  But you are just -- you are

19   just pointing out to the Court now a one-week snapshot.

09:13:08   20   Is that it?

21            MR. COOK:  In order to -- yes.

22            THE COURT:  Okay.

23            MR. COOK:  But I am going to also say that the

24   jury can then take that one week and that what we propose

09:13:18   25   is the jury would say in one week we find -- maybe we find

Hearing

```
 1   30 hours.  Maybe we find 60.  And then the Court, after

 2   hearing the willfulness answer and the statute of

 3   limitations period, gets to the number, the actual number.

 4          THE COURT:  As to the total number of weeks

 5   worked?

 6          MR. COOK:  Exactly.

 7          THE COURT:  Okay.  That's Casey Nelson's

 8   evidence.  Maylene Velasco.

 9          MR. COOK:  On page -- I think this is -- we're

10   begging the Court's indulgence.  Can we take them in the

11   order we did them?  I think it will keep us on the same

12   transcript.  We're going to have to switch transcripts, I

13   believe.

14          THE COURT:  Okay.

15          MR. COOK:  The next witness was Veronica

16   Gonzalez.

17          THE COURT:  Yes.

18          MR. COOK:  If you look at the same rough draft,

19   and I have Page 108.

20          THE COURT:  108.  Hold on.  I'm on 108, and this

21   is Ms. Gonzalez.

22          MR. COOK:  Yes.  Actually, the question is on

23   107.  So we have sort of covered the time period you

24   worked at Moments and then the answer, which is relevant,

25   I worked it was usually either Tuesday through Friday,
```

09:13:35 (line 5)
09:13:52 (line 10)
09:14:05 (line 15)
09:14:18 (line 20)
09:14:39 (line 25)

*Laura Wells, CRR, RDR*

1    12:00 to 7:00, the same schedule, just Saturday every

2    other weekend.  So, again, we have the number of days --

3             THE COURT:  Hold on.  Tuesday through Friday,

4    seven hours every other Saturday.  So 28 hours during the

09:15:19   5    week, basically, plus an additional 14 hours, call it

6    three and a half, for a total of 31 and a half.  Very

7    well.

8             MR. COOK:  With regard to Kristal Garcia, we're

9    going to move to Rough 2, I believe.

09:16:02  10        (Sotto voce discussion between the Court and clerk.)

11             THE COURT:  All right, Counsel.

12             MR. COOK:  All right.  On Page 72, time-stamped

13    10:05.

14             THE COURT:  What page?  I'm sorry.

09:16:37  15             MR. COOK:  Page 72.

16             THE COURT:  Yes.

17             MR. COOK:  "And now I want to talk to you about

18    the typical hours you worked.

19        "ANSWER:  I would work very often.  I would work up to

09:16:52  20    five or six days a week.

21        "QUESTION:  Can you tell the jury what your typical

22    day was?

23        "ANSWER:  I typically -- nearly every day of the week

24    except Monday and maybe towards the end of the week I

09:17:00  25    would work five days instead of six."

*Laura Wells, CRR, RDR*

1     So we have five to six days per week.

2          THE COURT:  Where are the hours?

3          MR. COOK:  On Page 74.

4          THE COURT:  So five to six days.  You said

09:17:20  5  Page 74.  I am on Page 74.

6          MR. COOK:  "QUESTION:  When you were working a

7  regular shift, how many hours would that be typically?

8     "ANSWER:  Based on the amount of money you make, based

9  on the employees you pay, it could be anywhere from eight

09:17:34  10  to ten hours, depending on what you make and your bills,

11  et cetera."

12     And she also testified to working doubles but -- so

13  the jury could conclude more, but there is the minimum.

14          THE COURT:  Very well.  That's Garcia.

09:18:08  15          MR. COOK:  With regard to Ms. Presley Lange.

16          THE COURT:  Ms. Lange.

17          MR. COOK:  Page 106.

18          THE COURT:  The same transcript?

19          MR. COOK:  Yes, Your Honor.  This is why we did

09:18:18  20  them in this order.

21          THE COURT:  106.  Yes, sir.

22          MR. COOK:  "QUESTION:  I want to talk" -- the

23  first question on that page.

24     "ANSWER:  Three to five days, mainly three or four

09:18:43  25  days of the week.  I do double shifts, which is from 12:00

Hearing

 1  to 2:00."

 2          THE COURT:  Okay.  So a minimum of three days.

 3          MR. COOK:  Then we got --

 4          THE COURT:  12 hours.  The same.  I see it.

09:19:04  5      MR. COOK:  Well, I am also going to direct you,

 6  Your Honor, to Page 114.

 7          THE COURT:  114.

 8          MR. COOK:  At timestamp --

 9          THE COURT:  Hold on.

09:19:16  10     MR. COOK:  I apologize to the Court.

11          THE COURT:  114?

12          MR. COOK:  Yes, Your Honor.

13          THE COURT:  I apologize.  This is the disconnect.

14  It's kind of like we are in two different time zones.

09:19:30  15  Okay.  114.

16          MR. COOK:  At timestamp 11:08.  "I want to jump

17  back just a little bit and maybe ask you a question I

18  forgot to ask you on the initial go-around.  Can you give

19  me the average number of hours you worked per day?

09:19:42  20     "Per day sometimes it could be anywhere from eight

21  hours.  We are going into from 12:00 to 2:00."

22      12:00 to 2:00 being the time.

23          MR. KING:  I'm sorry.  I missed the page.

24          MR. COOK:  That would be on Page 114, timestamp

09:19:56  25  11:08.

                                    *Laura Wells, CRR, RDR*

Hearing

1          THE COURT:  Some days working eight hours going

2     into 12.  Okay.  Now she reduces it to eight because she

3     said it was a double.  So let's go --

4          MR. COOK:  Some days she worked doubles.  Some

09:20:15   5     days she didn't.

6          THE COURT:  Right.  That reduces it to 24.

7     24 hours.  Got it.  Next.

8          MR. COOK:  With regard to Maylene Velasco, on

9     Page 129.

09:20:34  10          THE COURT:  Hold on.  Velasco, 129.  The same

11     transcript?

12          MR. COOK:  Yes, Your Honor.  I'm sorry.

13     Page 129.

14          THE COURT:  Yes.  129.  All right.  I am there.

09:21:15  15          MR. COOK:  "QUESTION:  Now, when you started work

16     a Moments, just tell me what kind of shift did you work?

17          "ANSWER:  When I first started at Moments, I would

18     have to be there by 6:30 to start the 7:00 shift and I'd

19     usually stay till close.

09:21:28  20          "QUESTION:  On average, how many days a week do you

21     think you worked?

22          "ANSWER:  I did say more -- more how many days I

23     didn't work in the month.  I didn't work around two out of

24     the month."

09:21:38  25          So from not working two days out of the month, you can

*Laura Wells, CRR, RDR*

1    draw the conclusion that she was working six to seven days

2    a week.

3              THE COURT:  We'll call this seven hours.

4              MR. COOK:  In full disclosure, Your Honor, I'm

09:22:07    5    not going to ask for that many days in a week, in light of

6    the testimony that was elicited.

7              THE COURT:  Okay.  We'll call it 35 hours?

8              MR. COOK:  I'm going to ask for 40, Your Honor.

9    The hours information is on Page 132.  So in terms of the

09:22:28   10    number of days --

11              THE COURT:  I misunderstood you.  So for hours

12    you are going to say seven?

13              MR. COOK:  With regard to the number of the days

14    in the week --

09:22:41   15              THE COURT:  No.  I'm asking hours now.

16              MR. COOK:  I'm going to ask for eight.  And the

17    testimony establishes that it was up to 10 to 11.  I think

18    that the jury may have some questions about her.

19              THE COURT:  Well, she arrives at, let's call it,

09:22:58   20    7:00 and works until 2:00.

21              MR. COOK:  Yes, Your Honor.  On Page 132 she

22    states --

23              THE COURT:  There is something else?

24              MR. COOK:  Yes.

09:23:07   25              THE COURT:  Hold on then.  Yes.  132.

*Laura Wells, CRR, RDR*

Hearing

1    MR. COOK:  On Page 132 she states, "Can you give

2  the jury an idea of the average numbers worked, hours that

3  you would work in a single shift?

4    "If I started at 3:00 p.m. for my mid shift, I would

09:23:34   5  work until 2:00 a.m.  So 10- or 11-hour shifts."

6    However, there was -- I don't have the note on this.

7  But there was some cross that suggested --

8    THE COURT:  She said if I worked a mid shift.

9  That was not her usual time because earlier in the

09:23:48  10  testimony it was that she would usually arrive around 6:30

11  for a 7:00 shift.

12    MR. COOK:  That is correct, Your Honor.

13    THE COURT:  Okay.

14    MR. COOK:  There is some subsequent cross that

09:23:58  15  suggests that she was working eight to six hours, which is

16  why I believe that I'm only going to ask the jury for

17  eight when I do the calculations.

18    THE COURT:  Well, I got -- I have, just on what I

19  have seen, seven.  I mean, that's from 7:00 to 2:00, if

09:24:12  20  I'm not mistaken, based upon the testimony that she said

21  she did work as opposed to if I worked.

22    MR. COOK:  I understand, Your Honor.

23    THE COURT:  Is that correct?  The testimony was

24  that for my 7:00 shift I would arrive at 6:30 and stay

09:24:33  25  until 2:00.  So that's a 7:00 to 2:00 shift.

*Laura Wells, CRR, RDR*

Hearing                                                                    18

1            MR. COOK:  That does add up to seven hours, Your

2     Honor.  Let me look at --

3            THE COURT:  And you said five days?

4            MR. COOK:  That is correct, Your Honor.

09:24:55   5            THE COURT:  I was a political science major, but

6     five times seven is 35.

7            MR. COOK:  I tell people I went into law so I

8     wouldn't have to do math.

9            THE COURT:  Okay.

09:25:05  10            MR. COOK:  Actually, I tell people I went into

11    law because I'm incompetent to do anything else.

12            THE COURT:  Okay.  All right.  That's Velasco.

13            MR. COOK:  That's the last of the plaintiffs.

14            THE COURT:  That's the last one?

09:25:14  15            MR. COOK:  That is, I believe.  We should have

16    five.

17            THE COURT:  Let's see.  Nelson and Gonzalez and

18    Garcia and Lange and Velasco.  All right.  Now, assuming

19    that this is the formula, the next question then becomes

09:25:42  20    does accepting this testimony that you have pointed out to

21    the Court at face value, which has been unsubstantiated by

22    anything else, other than their sworn testimony, am I

23    correct in that?

24            MR. COOK:  You are not correct in that.

09:25:56  25            THE COURT:  Okay.  Tell me where I --

                           *Laura Wells, CRR, RDR*

1          MR. COOK:  I love telling a federal judge that.

2      I asked the corporate representative if various

3  numbers of hours per week were reasonable based on both

4  the testimony -- the hours presented by the declarants and

09:26:12   5  by the plaintiffs.  He said 56 hours a week.

6          THE COURT:  No.  No.  I remember that testimony.

7  And what you asked him was whether or not those were

8  reasonable.  The question was not as to -- for instance,

9  as to plaintiff Casey, she has testified that she worked

09:26:31  10  Tuesday through Friday, a six- to ten-hour shift.  Do you

11  take any exception to that?  That was not the line of

12  questioning.

13      I think your line of questioning in general was as to

14  the total number of, you know, would a 40-hour workweek be

09:26:51  15  reasonable?  Yeah.  50.  60.  It wasn't in regard to any

16  specific plaintiff's testimony.  Am I correct?

17          MR. COOK:  That is correct because the corporate

18  representative had previously testified that he has no

19  knowledge of these particular plaintiffs' hours.

09:27:07  20          THE COURT:  So again, as to their testimony as to

21  their hours of work, their hours worked, it was not

22  substantiated by anything other than their own testimony,

23  correct?

24          MR. COOK:  And I would argue that the testimony

09:27:25  25  of the corporate representative is circumstantial, but no

Hearing

1    direct evidence.  I agree with that, Your Honor.

2              THE COURT:  All right.

3              MR. COOK:  And I would also argue that the fact

4    that they all say similar hours per week is also

09:27:37   5    circumstantial evidence.

6              THE COURT:  Okay.  Anything else you would like

7    to point out to the Court?

8              MR. COOK:  By way of facts or argument?

9              THE COURT:  Facts or argument.

09:28:16  10              MR. COOK:  With regard to argument, Your Honor, I

11   would point out that the cases primarily cited by the

12   defense on the subject of one witness can't get you there

13   are generally in the context of off-the-clock work cases

14   where there is some time sheet that a plaintiff has

09:28:33  15   prepared saying I worked eight hours and comes in after

16   the fact and says no, no, no.  I didn't work eight hours.

17   I actually worked ten.  And that is insufficient.

18       But the Fifth Circuit, this district court -- or not

19   this specific district court, but the Southern District of

09:28:48  20   Texas has said you don't have to produce documentary

21   evidence.  We don't have to produce exact evidence.  We

22   can rely on the plaintiff.  We have met the threshold.

23       The alternative is defendants, like the defendant

24   here, who don't keep records, who have workers who, you

09:29:09  25   know, they go by fake names at the club.  So they don't

1    really know each other.  They are not able to come in and

2    testify about each other.  Then that ends up a situation

3    where, I believe, there is no dispute that these women

4    worked something.  We simply have difficulty pinning it

09:29:29    5    down to an exact number.  And the case law says we don't

6    have to.

7              THE COURT:  Very well.  Thank you, Counselor.

8         Counselor.

9              MR. KING:  Good morning.

09:29:37    10             THE COURT:  Good morning.

11             MR. KING:  The case law on this is relatively

12   sparse; but one thing that I've found is that courts do

13   recognize when testimony, whether it's presented in court

14   through a witness or corroborating witnesses, cannot be

09:29:50    15   conclusory.  And that is what the jury heard during this

16   trial was conclusory testimony about how many shifts might

17   have been worked, generally speaking.

18        In the aggregate, the testimony sounded like this:  I

19   worked a lot of shifts.  And then that was it.  There was

09:30:09    20   no -- there wasn't sufficiently specific testimony to

21   afford the jury with a basis to actually do the math.

22   Saying I simply worked every day, every week for three

23   years is effectively what we had.  A lot of the testimony

24   that has been cited here today was talking about, well,

09:30:29    25   what kind of shifts does Moments have.  That's not the

Hearing

1    same as saying I happened to work the mid shift at least

2    three times a week and that was three times a month in my

3    last year of employment there.  That would be a way to do

4    it.

09:30:45  5         The second issue is that there was a lot of

6    contradictory testimony from the witnesses themselves.

7    For example, in -- I believe this was Ms. Lange's

8    testimony.  This is the second rough draft, Page 114.  And

9    the question was -- and I'll paraphrase -- "Can you give

09:31:12  10   us an average number of hours you worked per day?

11         "Per day sometimes it could be anywhere from eight

12   hours or going into from 12:00 to 2:00.

13         "How many hours did you work on the average week?

14         "On the average weekend, I don't know.  I'm not good

09:31:24  15   at math.  I can't tally it up like that.  It really

16   depended on how much money I made if I was going to keep

17   working or not."

18         If the witness herself has not bothered to tally it up

19   and hasn't expressed how to tally it up to the jury, the

09:31:37  20   jury is going to be at a complete loss as to how to, you

21   know, do the calculation.

22         The second issue is I do have concerns about this

23   entire topic from the perspective that damages -- there is

24   an issue with compensable work time that has been

09:31:55  25   performed within the club.  I didn't hear any testimony

 1   from any of the witnesses that they worked every hour

 2   within the club.  Just because you are at a place does not

 3   mean that it's a compensable hour under from the Fair

 4   Labor Standards Act.

09:32:11  5       Secondarily, I think that there are workweek issues as

 6   well because the workweek is defined as 168, basically,

 7   consecutive hours.  These witnesses testified that, yeah,

 8   maybe -- yeah, some of the times I kind of showed up but

 9   most of the time I showed up every day.

09:32:29 10       Well, most of the time is not a sufficient basis, and

11   that's what these cases really show.  The cases that the

12   plaintiffs pointed out to the Court --

13           THE COURT:  Ms. Edwards, our jury has arrived.

14   Would you tell them that the Court is dealing with legal

09:32:44 15   issues and it will probably -- as a matter of fact, they

16   can go on a coffee break, stretch their legs, until 10:30.

17           CASE MANAGER:  Yes, sir.

18           MR. KING:  Your Honor, may I proceed?

19           THE COURT:  Yes.

09:33:04 20           MR. KING:  The testimony has been

21   unsubstantiated.  That is a critical issue.  I heard what

22   counsel said about the federal nature of a lot of dancers,

23   and I understand that.  But I don't believe that that is

24   entirely true.  I'll give the Court an example.

09:33:19 25       When I was deposing Ms. Nelson, her sister was there.

Hearing

1    Her sister happens to be an entertainer who worked at

2    Moments around the same time.  They know each other.

3        In this case, video was produced of somebody walking

4    into our client's club trying to get testimony from --

09:33:35    5    trying to get a deejay on the record or somebody on the

6    record talking about the rules and regulations, and there

7    are three people talking about the club.

8        So it is not fair or accurate to state that it's

9    impossible to corroborate this evidence.  The way that

09:33:51   10    this testimony could have been presented is:  I want you

11    to look through your calendars.  I want you to look

12    through your cell phones.  I want you to look through your

13    e-mails.  I want extrinsic proof of where you were and

14    what you were doing over those past couple of years.  Talk

09:34:06   15    to your friends, talk to your family, figure it out.

16        Those are the additional things that are needed.  The

17    defendant's position is not that you have to have a

18    written record of it, but they do not produce sufficient

19    evidence to shift the burden back, Your Honor.

09:34:22   20            THE COURT:  Very well.

21            MR. WALLACE:  Your Honor, may I add one thing?

22            THE COURT:  Yes.

23            MR. WALLACE:  There is an issue of just

24    fundamental fairness.  Each one of these plaintiffs

09:34:36   25    answered Interrogatory Number 16.  We had those as

Hearing

1    proposed exhibits.  We didn't enter them because they

2    didn't put on any evidence about their damages because it

3    was contradicted by their interrogatory answers.

4        Interrogatory 16, every single one of these five were

09:34:51    5    asked, quote, "State the amount of damages each plaintiff

6    and opt-in plaintiff is claiming to be owed from

7    defendants and explain in detail the calculation of the

8    damages sought."

9        THE COURT:  Well, the problem, Mr. Wallace, is

09:35:04    10   that that is not before me right now.

11       MR. WALLACE:  No.  I know that, Judge.  I know

12   that.  But the answer, each time, was plaintiff does not

13   know the amount of damages.  Every -- those were sworn

14   answers.

09:35:19    15       Now I agree that's not before the jury, and I agree

16   those answers aren't before you as evidentiary elements to

17   the case.  But we didn't -- we had no -- because they

18   didn't testify about the method and means by which they

19   came up with their damages, we didn't introduce this

09:35:41    20   for -- you know, there was no reason to contradict their

21   testimony because they didn't have any.  And it's just a

22   matter of fundamental fairness when we rely on

23   interrogatory answers that they didn't know how they came

24   up with their damages because they didn't know what they

09:35:56    25   are.

*Laura Wells, CRR, RDR*

Objections to Charge of Court

                    THE COURT:  Well, without going into your

          2    decision to challenge them with interrogatory answers or

          3    not, what I have before me is the evidence.  You made a

          4    directed verdict motion at the close of plaintiffs' case

09:36:07  5    in chief, and that decision -- my decision is triggered on

          6    what evidence is before me and before this jury for

          7    purposes of making that decision.

          8         Very well.  All right.  Thank you, Counsel.  We'll be

          9    back.

09:37:22  10        (Recess from 9:37 a.m. to 11:34 a.m.)

         11         THE COURT:  Thank you.  Please be seated.  We are

         12    back in the courtroom on the record.  My apologies for the

         13    lateness.  What the Court has decided to do on the

         14    directed verdict motion, the motion -- defendant's

11:35:04 15    directed verdict motion is denied.

         16         However, to the extent that additional briefing is

         17    required, the Court will take up the issue post verdict,

         18    if any, from this jury.  So I'm not foreclosing revisiting

         19    the issue.

11:35:23 20         But given the fact that we have a jury in the box,

         21    this is one of those judicial economies to where if I

         22    grant the directed verdict and I am wrong, we're going to

         23    come back and retry this case.  To the extent that we get

         24    a verdict and I am -- I decide either way, at least we

11:35:46 25    have a verdict in place that the court of appeals can look

1     at and either vacate or affirm.  And so I think this is

2     the safer play in how to address the issue.

3          What the Court has done at this point is redrafted,

4     and that's what took so long.  The proposed jury

11:36:07  5     instructions from the parties did not meet the

6     requirements that I determined were necessary.  And so

7     the -- through the first several pages of just the

8     basic -- all this is pattern jury charge, basically.

9          Jury Question Number 1 I think is pretty

11:36:43  10     straightforward.  I don't think anyone would have any

11     objection, but I'll give you a chance to object to that.

12          Jury Question Number 2 is another standard question.

13          Jury Question Number 3 is standard.  The only question

14     here will be the time period, and I'll hear you on that.

11:37:02  15          And then Jury Question Number 4, this is the question

16     that the Court has struggled with.  And so the formula

17     that the Court has determined would be the total number of

18     hours worked times the $7.25.  And so we'll see if, in

19     fact, the jury can come to an answer based on that formula

11:37:23  20     because that's the damage profile that is being sought

21     here.  And the question will be whether or not they will

22     be able to answer that question then.  We'll see.

23          Finally, Jury Question Number 5, that goes to the

24     question of the overtime cause of action.

11:37:46  25          And then, of course, the final instruction is pretty

*Laura Wells, CRR, RDR*

Objections to Charge of Court                                    28

1    straightforward.

2        I know I have just handed this to you.  Any questions,

3    comments, and then we'll start a formal charge conference

4    in a moment.

11:37:59   5        MR. KING:  No questions right now, Your Honor.

6            THE COURT:  All right.

7            MR. COOK:  I don't think I have anything

8    informally.

9            THE COURT:  Okay.  On Question Numbers 4 and 5 --

11:38:37  10        MR. COOK:  Judge, I do have one question

11   informally, Your Honor.

12       (Sotto voce discussion between the Court and Clerk.)

13           THE COURT:  You had a question, Counsel?

14           MR. COOK:  I did, Your Honor.  Just for my

11:39:23  15   purposes, instead of trying to parse it very closely, did

16   the Court make any changes to the pattern jury instruction

17   on employee/independent contractor?  It doesn't appear to

18   be.

19           THE COURT:  Yeah.  I doubt it.

11:39:35  20        MR. COOK:  No.  Okay.

21           THE COURT:  How long do you anticipate this is --

22   I'm going to send a message back to the jury.  How long do

23   you anticipate needing for closing?

24           MR. COOK:  Your Honor, plaintiff would ask for

11:40:18  25   20 minutes in opening close and five minutes in rebuttal.

*Laura Wells, CRR, RDR*

Objections to Charge of Court

```
                 1          THE COURT:  Repeat that.

                 2          MR. COOK:  20 minutes to start and five in

                 3   rebuttal.

                 4          THE COURT:  So a total of 25?

11:40:29         5          MR. COOK:  Yes, Your Honor.

                 6          MR. WALLACE:  I think I can do it in 25, Judge.

                 7   I might stretch it to 26.  I'll do my best to do 25.

                 8          THE COURT:  No violence is done at 30 minutes

                 9   apiece.

11:40:44        10          MR. WALLACE:  Thank you.

                11          THE COURT:  Let me go back.

                12          MR. COOK:  I apologize if this is in your

                13   procedures and I omitted it.  Do I need to declare how

                14   much of the 30 I need for rebuttal ahead of time?

11:41:02        15          THE COURT:  Yes.  You'll be timed.  For instance,

                16   if you say 20/10 and you go 20, I'll give you your 20 is

                17   expired and you can even still take two of the ten if you

                18   want but it's a total of 30.

                19          MR. COOK:  Very good.  Thank you, Your Honor.

11:41:24        20          THE COURT:  Okay.  Any additional questions or

                21   comments?

                22          MR. WALLACE:  On the charge itself?

                23          THE COURT:  Yeah.  Informally before -- this is

                24   not the formal.  I will get it on the record but before we

11:41:34        25   do that --
```

*Laura Wells, CRR, RDR*

1        MR. WALLACE:  Informally, Your Honor, just a

2   global -- just a global comment.  And I'm looking at Jury

3   Question Number 1, for example.

4        THE COURT:  Yes.

11:41:48   5        MR. WALLACE:  You say has plaintiff proved that

6   she was an employee.

7        THE COURT:  Oh, plurals.

8        MR. WALLACE:  I think if you do the universal

9   thing throughout, it would be have plaintiffs proved that

11:41:59  10   they were, and that's a consistent issue throughout the

11   charge.

12        THE COURT:  Okay.

13        MR. COOK:  My comment, if I could.  I think given

14   that we're asking about each plaintiff individually,

11:42:09  15   probably the correct fix would be has each plaintiff

16   proved, answer yes or no for each plaintiff.

17        MR. WALLACE:  Well, that's fine.  It is just my

18   only issue is the plurality of it.

19        MR. COOK:  Right.

11:42:25  20        THE COURT:  So has each one.  Yes.  We'll put

21   "each" on Juror Question Numbers 1 and 2 and 4 and 5; is

22   that right?

23        So it will be, for one, has each plaintiff proved that

24   she was an employee.  Number 2, has each plaintiff proved.

11:43:17  25   Three is fine.  Jury Question Number 4, what sum of money

*Laura Wells, CRR, RDR*

Objections to Charge of Court

```
         1  would fairly and reasonably compensate each plaintiff for
         2  the damages, if any, you have found defendant Texas Sugars
         3  caused each plaintiff.  Only calculate sums for the
         4  plaintiffs for whom you have answered.  That's fine.
11:43:41 5  Five, "each" before plaintiff.  Does that work?
         6          MR. COOK:  From the plaintiffs, yes.
         7          MR. WALLACE:  Yes, Your Honor.
         8          THE COURT:  All right.  Ms. Edwards.
         9          CASE MANAGER:  Yes, sir.
11:43:56 10         THE COURT:  Inform the jury -- 30 minutes, an
        11  hour and a half -- that when they are called into the
        12  courtroom, they are going to have an hour and a half of
        13  work.  So would they like to take their lunch now or would
        14  they like to come into the courtroom in approximately
11:44:18 15 15 minutes, meaning that they would be done approximately
        16  1:30, or they can go take a quick lunch now and come back
        17  at 12:30 and get started at that time.  See what their
        18  preference is.
        19         They could either do lunch now and come back at 12:30
11:44:39 20 or they can come into the courtroom at approximately 12:00
        21  and they are not going to be released for lunch until
        22  approximately 1:30.
        23         CASE MANAGER:  Okay.
        24         THE COURT:  Any other comments before we get on
11:44:53 25 the record for the formal charge conference?
```

Objections to Charge of Court

1    MR. COOK:  No, Your Honor.

2    MR. WALLACE:  I can bring it up during the formal

3 charge conference.

4    THE COURT:  Very well.  This is Cause

11:45:09  5 Number 4:17-CV-2171.  The Court at this time has prepared

6 the jury instructions.  It has been provided to the

7 parties.  They are represented by legal counsel here in

8 the courtroom.  The jury is not present in the courtroom.

9    The Court at this time will entertain objections to

11:45:33  10 the charge on behalf of the plaintiff.  Counsel.

11    MR. COOK:  Your Honor, the plaintiffs, with

12 utmost respect, do object to the charge.  In the first

13 instance, the plaintiffs object to the instruction

14 "employee or independent contractor."  The charge as

11:45:49  15 proposed by the Court, in the view of the plaintiff,

16 misstates the controlling case law or rather misstates the

17 controlling law.

18    Specifically, Your Honor, it gives improper weight to

19 control by applying, essentially, a 7th Circuit -- excuse

11:46:07  20 me, a Title VII hybrid control economic realities test.

21 It improperly gives weight to intent, which is not an

22 appropriate factor or certainly not to the level that this

23 charge gives it in an FLSA case.  The plaintiff has

24 previously provided a bench brief containing elaborations,

11:46:30  25 which we would incorporate by reference here.

*Laura Wells, CRR, RDR*

Objections to Charge of Court

1    We would also point out that the plaintiffs have

2 provided a recommended charge, a proposed charge, which is

3 Document Number 47 in the docket.  Plaintiffs would point

4 out that even if the Court were not to give the proposed

11:46:50  5 instructions of the plaintiff that this charge does not

6 contain the *Silk* factors set forth by the United States

7 Supreme Court in determining independent verses --

8 independent contractor versus employee under the Fair

9 Labor Standards Act.

11:47:05  10    The plaintiffs would object to jury question --

11        THE COURT:  Let me deal with your first objection

12 and make sure that I'm clear that in regards to the

13 instruction that you are objecting to under "employee or

14 independent contractor" on Page 10, you are objecting to

11:47:27  15 Factor 6, which is a direct quote from the pattern jury

16 charge; is that correct?

17        MR. COOK:  Yes.  I'm also objecting --

18        THE COURT:  That objection is overruled as to

19 six.  What was the next objection as to that instruction?

11:47:40  20        MR. COOK:  We object to Paragraph 5 that is not

21 one of the *Silk* factors.

22        THE COURT:  That, again, is from the pattern jury

23 charge, and your objection is overruled.

24        MR. COOK:  We object to Section 4, which is not

11:47:58  25 from the *Silk* factors and, we believe, misstates the *Silk*

Objections to Charge of Court

1    factors.

2            THE COURT:  It's from the pattern jury charge.

3    Your objection is overruled.

4            MR. COOK:  We object to Number 3, which

11:48:09   5    improperly examines only the plaintiffs' risk as opposed

6    to the weighing the investments of the parties, as

7    required by *Silk*.

8            THE COURT:  Three, you said?  I'm sorry.

9            MR. COOK:  We're working backwards,

11:48:28  10    unfortunately, Your Honor.  I apologize.

11            THE COURT:  And again, Pattern Jury Charge 11.26,

12    your objection is overruled.

13            MR. COOK:  We object to Element Number 2 or

14    Instruction Number 2 on this page.  Again, it does not

11:48:40  15    comport with the *Silk* factors.

16            THE COURT:  Pattern Jury Charge 11.26, your

17    objection is overruled.

18            MR. COOK:  We object to the language in

19    Section 1, which we believe misstates the importance of

11:48:55  20    control.  Again, it deviates from the case law *Silk*,

21    *Parrish,* and other cases cited by the plaintiffs in their

22    bench brief.

23            THE COURT:  Pattern Jury Charge 11.26, your

24    objection is overruled.

11:49:12  25            MR. COOK:  Your Honor, on the last sentence on

*Laura Wells, CRR, RDR*

Objections to Charge of Court

Page 10, while no single factor determined the outcome,
the extent of the right to control the means and manner of
the worker's performance is the most important factor.
The plaintiff believes that is an incorrect statement of
11:49:28   the law under the case law cited earlier.

THE COURT:  Again, that is straight from the
Pattern Jury Charge 11.26.  Your objection is overruled.

MR. COOK:  Plaintiffs would offer their proposed
jury charge in place of this instruction.

11:49:45   THE COURT:  The Court has received it.  I will
sign it and note it.  It has been rejected.

MR. COOK:  Thank you, Your Honor.  That
included --

(Sotto voce discussion between counsel.)

11:50:12   MR. COOK:  The plaintiff objects to Jury Question
Number 1.  The determining whether a person is an employee
or independent contractor is ultimately a question of law;
and we believe the Court should properly ask special
interrogatories and then make the decision based on those
11:50:27   interrogatories as a legal question.  Therefore, we think
it is improper to ask the jury to decide employee status.

THE COURT:  That is Pattern Jury Charge 11.26,
Question Number 1.  Your objection is overruled.

MR. COOK:  With regard to Jury Question Number 3
11:51:11   and specifically with regard to the instructions, if you

*Laura Wells, CRR, RDR*

1  answered yes to Question Number 3 and setting out the time

2  periods, the plaintiff believes that that calculation is

3  properly done by the Court, based on special

4  interrogatories, and so, therefore, would object to Jury

11:51:28   5  Question Number 3 as part of the entire charge.

6          THE COURT:  That objection is overruled.

7          MR. COOK:  With regard to Jury Question Number 4,

8  the plaintiff objects and believes that the correct method

9  of calculating damages is to be done, one, by the Court

11:51:54  10  and the question that should be asked the jury is the

11  total number of hours -- or excuse me -- the average

12  number of hours worked in a week, to which the Court would

13  then apply the appropriate period of weeks, based on the

14  statute of limitations, and apply the appropriate damage

11:52:07  15  calculation.

16          THE COURT:  That objection is overruled.

17          MR. COOK:  The plaintiff would have the same

18  objections to Jury Question Number 5, that it should be

19  done by the Court applying the statute of limitations and

11:52:20  20  the damage calculation and that the question for the jury

21  should be the number -- the average number of hours worked

22  in a week.

23          THE COURT:  That objection is overruled.

24          MR. COOK:  Your Honor, we object that there is an

11:52:33  25  absence of a question.  We have submitted proposed Jury

Objections to Charge of Court

1    Question Number 3 the how many hours -- excuse me, Your

2    Honor -- proposed Jury Question Number 4, Document

3    Number 47, which would recapture the amount that the

4    dancers were required to pay, which does reduce their wage

11:52:51   5    below the minimum wage.  We believe there is a need for a

6    jury question on that issue.

7              THE COURT:  Objection is overruled.

8              MR. COOK:  I don't think I can object about

9    anything else, Your Honor.

11:53:02   10             THE COURT:  It would be hard to.

11        Very well.  The Court at this time will now entertain

12   objections to the charge on behalf of the defense.

13             MR. WALLACE:  Your Honor, we'll do this as best

14   as we can.  Throughout, both Mr. King and I will have

11:53:23   15   comments, if that's okay.  It will make -- I promise we'll

16   do this quickly.  If we go to Page 6.

17             THE COURT:  Yes.

18             MR. WALLACE:  And this is just one example.  I

19   think it continues throughout.  It begins "plaintiff

11:53:40   20   claims;" and again, I just think we need it to be either

21   each plaintiff or plaintiffs.

22             THE COURT:  We can make that correction.

23             MR. WALLACE:  Thank you.

24             THE COURT:  Each plaintiff claims, yes.

11:53:51   25             MR. WALLACE:  And then in between Number 1 and

*Laura Wells, CRR, RDR*

1   Number 2, I just think the word "and" should be added.

2         THE COURT:  I will confirm that.

3         MR. WALLACE:  Okay.  On Page 7 it would be the

4   same thing whether "and" should be in between the

11:54:11   5   semicolon and the number two.

6       I'm sorry.  I was waiting on you, Judge.

7         THE COURT:  I'm checking on the "and."  Okay.  So

8   continue on with your objection.

9         MR. WALLACE:  Jury Question Number 1.

11:55:07   10         THE COURT:  Yes.

11         MR. WALLACE:  At the end the Court provides "if

12   your answer is no to all plaintiffs, do not answer the

13   next question."  We believe it should read answer no

14   further questions.  The jury foreman shall execute the

11:55:20   15   verdict certificate and return the same to the court

16   officer.

17         THE COURT:  That objection is overruled.  The

18   following questions are predicated.  So if you do not

19   answer Question 1, you do not answer Question 2.  And

11:55:44   20   Question 3 is predicated on a positive answer to two.  So

21   they wouldn't get to those following questions as a

22   result.

23         MR. WALLACE:  Go ahead.  You have got all yours.

24         MR. KING:  Your Honor, the defendant has not

11:56:13   25   submitted a written instruction, but I do believe that a

1    definition of reckless disregard should be included, and I

2    can provide the Court with the proposed language of such

3    an instruction right now.

4         The language would read, in general, to show reckless

5    disregard of the FLSA, an employee must show that the

6    employer had some reason to know that its conduct violated

7    the FLSA beyond mere ignorance of the law.  Mere knowledge

8    of the FLSA and its potential applicability does not

9    suffice nor does conduct that is merely negligent or

10   unreasonable.  An employer who acts without a reasonable

11   basis for believing that it was complying with the FLSA or

12   who fails to seek legal advice regarding its payment

13   practices is merely negligent.  This language is derived

14   from *Pye v. Oil States Energy Services, LLC*, 233 F. Supp

15   3d 541 out of the Western District of Texas, as well as

16   *Zannikos v. Oil Inspections*, 605 F. App. 349, Fifth

17   Circuit 2015.

18         THE COURT:  That proposed instruction is denied.

19   The Court will check to see if there is a definition under

20   the pattern jury charges; and if so, it will include it.

21         MR. KING:  Under Question 4, the defendant would

22   request that the word "workweek" is included within the

23   formula section to read "total number of hours worked per

24   workweek" because that term is defined in the instructions

25   and appears nowhere else in the jury interrogatories.

1   This could create confusion for the jury.

2           THE COURT:  Where is that instruction or

3   definition?  On what page?

4           MR. KING:  Page 7, Your Honor.

11:58:26   5           THE COURT:  Page 7.  All right.  The hours worked

6   is in the following definition, "The phrase 'hours worked'

7   includes all time spent by an employee that was primarily

8   for the benefit of the employee or the employer's

9   business."  So when you say that's not defined, there is a

11:58:54   10   definition for that.

11           MR. KING:  My understanding, Your Honor, is that

12   the phrase "hours worked" is usually translated into

13   compensable time, time actually spent for which a wage is

14   deserved.

11:59:10   15           THE COURT:  I think that's what the definition

16   says.  The phrase -- on Page 7, tell me if I'm missing

17   something, "The phrase 'hours worked' includes all time

18   spent by an employee that was primarily for the benefit of

19   the employer or the employer's business."

11:59:26   20      Am I missing something?

21           MR. KING:  The only addition that we would ask

22   for is that that formula reads total number of hours

23   worked per workweek because that is a distinct unit of

24   measurement of time under the Fair Labor Standards Act.

11:59:48   25           THE COURT:  Okay.  That objection is overruled.

*Laura Wells, CRR, RDR*

1   And I will point out that your proposed jury instruction

2   includes that exact language that you have just objected

3   to.

4        MR. KING:  I understand, Your Honor.  We have the

12:00:03   5   same objection regarding the formula on Question Number 5,

6   all hours worked over 40 in each workweek.

7        THE COURT:  I think we can make that change to

8   say "workweek", "all hours worked over 40 in that

9   workweek."

12:00:28   10        MR. KING:  The second modification that we would

11   request is the language of Question Number 5, "What sum of

12   money would fairly and reasonably compensate plaintiff for

13   overtime damages, if any?"

14        THE COURT:  The Court will make that change.

12:01:19   15        MR. WALLACE:  We don't have anything further,

16   Your Honor.

17        THE COURT:  Very well.

18     (Sotto voce discussion between counsel.)

19        MR. COOK:  Your Honor, I have one more.  I

12:01:55   20   noticed something, if I may.

21        THE COURT:  Yes.

22        MR. COOK:  Extremely minor.  Jury Question

23   Number 5, after listening to the defendants, it occurs to

24   me that the formula should say all hours worked over 40 in

12:02:07   25   a workweek because we are not submitting it based on how

1    many X number of weeks multiplied by.  Since they are

2    getting all the damages, it should be all hours worked

3    over 40 in a workweek, given any workweek.

4              THE COURT:  For that workweek.

12:02:25  5              MR. COOK:  I'm just afraid that there will be

6    confusion and they will award the amount of overtime for

7    one workweek instead of over the history of the

8    employment.

9              THE COURT:  In a workweek?

12:02:41  10              MR. COOK:  In a workweek is what we would ask

11    for.

12              THE COURT:  That's fine.

13              MR. COOK:  I apologize for going out of order on

14    that, Your Honor.

12:02:52  15              THE COURT:  Anything else?

16              MR. COOK:  No, Your Honor.

17              THE COURT:  All right.  Why don't you make those

18    changes and then print out -- how many copies do you guys

19    need?  One?

12:03:11  20              MR. KING:  One would be fine.

21              MR. WALLACE:  I would like two.

22              MR. COOK:  Two, please.

23              THE COURT:  The government printing expense is

24    going up.  Print out two per side.

12:03:22  25              MR. COOK:  We can live with one, Your Honor.

Objections to Charge of Court

```
           1            THE COURT:  Ms. Edwards, let them know we're

           2    making our final revisions.

           3            CASE MANAGER:  Yes, sir.

           4            MR. COOK:  So they've opted for a later lunch?

12:03:35   5            THE COURT:  No.  They want to go.  They want to

           6    go to the food trucks.  On Wednesday they bring food

           7    trucks down to City Hall.  So people walk over to City

           8    Hall and pick out whatever food they want from the trucks.

           9            MR. COOK:  I misunderstood.  So we are going to

12:03:52  10    adjourn?

          11            THE COURT:  No.  As soon as he makes the

          12    corrections and brings them back, we're going to go.

          13            MR. COOK:  They are going to the later lunch is

          14    the way I --

12:04:01  15            THE COURT:  Yes.

          16            MR. COOK:  All right.

          17            THE COURT:  There was one point.  There was an

          18    individual that was a defendant in this case; is that

          19    correct?

12:06:31  20            MR. COOK:  At one time, Your Honor.  The

          21    defendants moved for summary judgment as to that

          22    defendant's employer/employee status -- excuse me --

          23    employer status, and I believe we did not oppose it and

          24    maybe even non-suited.

12:06:42  25            THE COURT:  Okay.  I wanted to confirm.
```

*Laura Wells, CRR, RDR*

1          MR. COOK:  Procedurally, I don't recall, but she

2     is out of the case from the plaintiffs' perspective.

3          THE COURT:  That's right.  I wanted to confirm

4     that.  The Court received no evidence.  If she was not out

12:06:53   5     of the case through that method, I was going to, on the

6     Court's motion, grant a directed verdict as to the

7     individual defendant but it seems like there is an

8     agreement that individual is no longer in the case.

9          MR. KING:  I believe it's in your summary

12:07:06   10    judgment order, Your Honor.

11         THE COURT:  Okay.

12         MR. COOK:  I don't recall.

13         THE COURT:  I think in some of the jury charges

14    that were submitted you still had her in there.

12:07:13   15        MR. COOK:  I think we didn't change the caption.

16         THE COURT:  That was in one of the definitions.

17         MR. COOK:  Oh, really?

18         THE COURT:  Yes.

19         MR. COOK:  Oh, my apologies.  That should not

12:07:24   20    have been.  There was no -- as I said, I don't believe we

21    even opposed summary judgment.  I think that was agreed.

22         THE COURT:  I think that threw me for a second.

23       (Recess from 12:07 p.m. to 12:20 p.m.)

24         THE COURT:  Please have a seat.  The corrections

12:20:28   25    that the Court noted during the charge conference have

*Laura Wells, CRR, RDR*

Objections to Charge of Court

1    been included.  Any corrections that have not been made

2    subject to a -- or that were requested as a result of

3    objection are hereby overruled, but I included everything,

4    I believe.

12:21:00    5    Everyone has their copy.  We are ready to proceed.  So

6    on the math, 30 minutes.

7         MR. COOK:  20/10, Your Honor.

8         THE COURT:  20/10.  Do you want a warning on your

9    five -- on your 20?  I'm sorry.

12:21:18   10         MR. COOK:  No.  I'll take it when -- I should be

11   definitely wrapping up at 20.  If I go over a minute or

12   two, as you said, I should be fine.

13         THE COURT:  Okay.  Do you want a warning on your

14   30?

12:21:29   15         MR. WALLACE:  Please, Your Honor.

16         THE COURT:  Where at?

17         MR. WALLACE:  25.

18         THE COURT:  25.  So a five-minute warning.

19    Very well.  Bring them in.  All rise for the jury.

12:21:40   20    (Jury entered courtroom at 12:21 p.m.)

21         THE COURT:  Thank you.  Please be seated.

22    Good afternoon, ladies and gentlemen -- lady and

23   gentlemen of the jury.

24    First of all, I want to apologize for the delay in the

12:22:12   25   proceedings this morning.  Strictly my fault.  Not the

*Laura Wells, CRR, RDR*

1    attorneys.  We were preparing a very lengthy document and

2    we were going through some legal matters that I had to

3    sort through that I started last night and, with the

4    attorneys assistance, I had to work through this morning.

12:22:28    5    We actually started approximately 9:00 this morning and

6    have been working since.  But again, that's on me.  So

7    don't hold the delay this morning against the attorneys.

8        The Court has prepared the jury instructions.  The

9    Court is now going to read the Court's jury instructions

12:22:55    10    to you.  The original will be placed in the jury room,

11    once you retire to begin your deliberations.  So you may

12    take notes as I read this.  However, you will actually

13    have a written copy of what I'm about to read to you.

14        In the United States District Court for the Southern

12:23:13    15    District of Texas, Houston Division, Casey Nelson, et al

16    v. Texas Sugars, et al, Civil Action 4:17-CV-2171.

17        Members of the jury:

18        It is my duty and responsibility to instruct you on

19    the law you are to apply in this case.  The law contained

12:23:31    20    in these instructions is the only law you may follow.  It

21    is your duty to follow what I instruct you the law is,

22    regardless of any opinion that you may have as to what the

23    law ought to be.

24        If I have given you the impression during the trial

12:23:46    25    that I favor either party, you must disregard that

impression.  If I have given you the impression during the

trial that I have an opinion about the facts of this case,

you must disregard that impression.  You are the sole

judges of the facts of this case.  Other than my

instructions to you on the law, you should disregard

anything I may have said or done during the trial in

arriving at your verdict.

You should consider all of the instructions about the

law as a whole and regard each instruction in light of the

others without isolating a particular statement or

paragraph.

The testimony of the witnesses and other exhibits

introduced by the parties constitute the evidence.  The

statements of counsel are not evidence.  They are only

arguments.  It is important for you to distinguish between

the arguments of counsel and the evidence on which those

arguments rest.  What the lawyers say or do is not

evidence.  You may, however, consider their arguments in

light of the evidence that has been admitted and determine

whether the evidence admitted in this trial supports the

arguments.  You must determine the facts from all the

testimony that you have heard and the other evidence

submitted.  You are the judges of the facts, but in

finding those facts, you must apply the law as I instruct

you.

Charge of Court                                                    48

1    You are required by law to decide the case in a fair

2   and impartial, unbiased manner based entirely on the law

3   and on the evidence presented to you in this courtroom.

4   You may not be influenced by passion, prejudice or

12:25:12  5   sympathy you may have for the plaintiffs or defendant in

6   arriving at your verdict.

7    Your decisions will be based on whether a party has

8   met its burden of proof on any given issue.  The burden of

9   proof is the minimum amount of evidence that is required

12:25:27  10  before you can rule in a party's favor.

11   To establish by a preponderance of the evidence means

12  to prove something is more likely so than not so.  If you

13  find that a party has failed to prove any element of its

14  claim by a preponderance of the evidence, then it may not

12:25:42  15  recover on that claim.

16   The evidence you are to consider consists of the

17  testimony of the witnesses, the documents, and other

18  exhibits admitted into evidence and any fair inferences

19  and reasonable conclusions you can draw from the facts and

12:25:57  20  circumstances that have been proven.

21   Generally speaking, there are two types of evidence.

22  One is direct evidence, such as testimony of an

23  eyewitness.  The other is indirect or circumstantial

24  evidence.  Circumstantial evidence is evidence that proves

12:26:10  25  a fact from which you can logically conclude another fact

*Laura Wells, CRR, RDR*

1   exists.  As a general rule, the law makes no distinction
2   between direct and circumstantial evidence but simply
3   requires that you consider both in deciding whether or not
4   the burden of preponderance of the evidence has been met.

12:26:28
5        You alone are to determine the questions of
6   credibility or truthfulness of the witnesses.  In weighing
7   the testimony of the witnesses, you may consider the
8   witness's manner and demeanor on the witness stand, any
9   feelings or interest in the case, or any prejudice or bias
12:26:43
10  about the case that he or she may have, and the
11  consistency or inconsistency of his or her testimony
12  considered in light of the circumstances.  Has the witness
13  been contradicted by other credible evidence?  Has he or
14  she made statements at other times and places contrary to
12:27:01
15  those made here on the witness stand?  You must give the
16  testimony of each witness the credibility that you think
17  it deserves.

18       Even though a witness may be a party to the action and
19  therefore interested in its outcome, the testimony may be
12:27:17
20  accepted if it is not contradicted by direct evidence or
21  by any inference that may be drawn from the evidence, if
22  you believe the testimony.

23       You are not to decide this case by counting the number
24  of witnesses who have testified on the opposing sides.
12:27:30
25  Witness testimony is weighed.  Witnesses are not counted.

Charge of Court

1   The test is not the relative number of witnesses but the

2   relative convincing force of the evidence.  The testimony

3   of a single witness is sufficient to prove any fact, even

4   if a greater number of witnesses testified to the

12:27:47   5   contrary, if after considering all of the other evidence

6   you believe that witness.

7        Impeachment by an inconsistent statement.

8        In determining the weight to give to the testimony of

9   a witness, consider whether there was evidence that at

12:28:01   10   some other time the witness said or did something or

11   failed to say or do something that was different from the

12   testimony given at the trial.

13        A simple mistake by a witness does not necessarily

14   mean that the witness did not tell the truth as he or she

12:28:15   15   remembers it.  People may forget some things or remember

16   other things inaccurately.  If a witness made a

17   misstatement, consider whether that misstatement was an

18   intentional falsehood or simply an innocent mistake.  The

19   significance of that may depend on whether it has to do

12:28:31   20   with an important fact or with only an unimportant detail.

21        Fair Labor Standards Act minimum wage.

22        Each plaintiff claims that defendant Texas Sugars,

23   Inc. d/b/a Moments (Texas Sugars) -- and we'll refer to

24   them from here out as Texas Sugars -- did not pay her the

12:28:49   25   minimum wage required by the Fair Labor Standards Act,

1    also known as the FLSA.

2        Defendant denies each of plaintiffs' claims and

3    contends that each plaintiff was an independent

4    contractor, not an employee of Texas Sugars.

12:29:02    5        It is unlawful for an employer to require an employee

6    covered by the FLSA to work for less than minimum wage.

7        To succeed on her claim, each plaintiff must prove

8    each of the following facts by a preponderance of the

9    evidence:

12:29:18    10        One, plaintiff was an employee of defendant during the

11    relevant period.

12        And two, defendant failed to pay plaintiff the minimum

13    wage required by law.

14        The minimum wage required by the FLSA during the

12:29:30    15    period involved in this case was $7.25 per hour.  In

16    determining whether an employer has paid the minimum wage,

17    it is entitled to a credit for the reasonable costs of

18    furnishing certain noncash items to the plaintiff; such as

19    meals and lodging for the employee's benefit, if the

12:29:48    20    employee voluntarily accepts them.

21        Fair Labor Standards Act, overtime pay.

22        Each plaintiff claims that the defendant Texas Sugars

23    did not pay her the overtime pay required by the Fair

24    Labor Standards Act, the FLSA.

12:30:02    25        Defendant denies each of plaintiff's claims and

Charge of Court

52

1    contends that each plaintiff was an independent

2    contractor, not an employee of Texas Sugars.

3        It is unlawful for an employer to require an employee

4    covered by the FLSA to work more than 40 hours in a

12:30:17  5    workweek without paying overtime.

6        To succeed on her claim, each plaintiff must prove

7    each of the following facts by a preponderance of the

8    evidence.

9        One, plaintiff was an employee of defendant during the

12:30:28  10    relevant period.

11        And two, defendant failed to pay plaintiff the

12    overtime pay required by law.

13        The FLSA requires an employer to pay an employee at

14    least one and one half times the employee's regular rate

12:30:42  15    for time worked over 40 hours in a workweek.  A workweek

16    is a regularly recurring period of seven days or

17    168 hours.  The phrase "hours worked" includes all time

18    spent by an employee that was primarily for the benefit of

19    the employer or the employer's business.  If an employee

12:31:02  20    works more than 40 hours in one workweek, the employer

21    must pay the employee the overtime rate of 1.5 times the

22    regular rate for the time she worked after the first

23    40 hours.  This is commonly known as time and a half pay

24    for overtime work.  To calculate how much overtime pay

12:31:20  25    each plaintiff earned in a particular week, multiply her

*Laura Wells, CRR, RDR*

Charge of Court

regular rate of pay by one and a half times the regular

rate for all hours worked over 40 in that week.

      Records of hours worked.

      The law requires an employer to keep records of how

many hours its employees work and the amount they are

paid.  In this case, each plaintiff claims that defendant

failed to keep and maintain adequate records of her hours

and pay.  Each plaintiff also claims that the defendant's

failure to keep and maintain adequate records has made it

difficult for each plaintiff to prove the exact amount of

her claim.

      If you find that defendant failed to keep adequate

time and pay records for each plaintiff and that each

plaintiff performed work for which she should have been

paid, each plaintiff may recover a reasonable estimation

of the amount of her damages.  But to recover this amount,

each plaintiff must prove by a preponderance of the

evidence a reasonable estimate of the amount and extent of

the work for which she seeks pay.

      Employee or independent contractor.

      It is not always clear whether the law considers

someone an employee and it is not always clear who the law

considers someone's employer.  Some people perform

services for others while remaining self-employed as

independent contractors.

Charge of Court

1       In this case, you must decide whether plaintiff --

2   whether each plaintiff was an employee of defendant or an

3   independent contractor.  You should answer this question

4   in light of the economic realities of the entire

12:33:05   5   relationship between the parties.  There are a number of

6   factors you must consider, based on the evidence in this

7   case.  The factors are, as follows:

8       One, who controls plaintiff's work.  In an

9   employer/employee relationship, the employer has the right

12:33:17   10   to control the employee's work to set the means and manner

11   in which the work is done and to set the hours of work.

12   In contrast, an independent contractor generally must

13   accomplish a certain work assignment within a desired time

14   but the details, means and manner by which a contractor

12:33:36   15   completes the assignment are determined by the independent

16   contractor normally using special skills necessary to

17   perform that kind of work.

18       Two, how plaintiff is paid.  An employer usually pays

19   an employee on a time worked, piece work, or commission

12:33:54   20   basis and an employer usually provides vacation or sick

21   time, insurance, retirement, and other fringe benefits to

22   the employee.  An independent contractor is ordinarily

23   paid an agreed or set amount or according to an agreed

24   formula for a given task or job and no benefits are

12:34:28   25   provided.

Charge of Court                                    55

1      Three, how much risk or opportunity the plaintiff has.

2   An independent contractor is generally one who has the

3   opportunity to make a profit or faces a risk of taking a

4   loss.  But an employee is generally compensated at a

12:34:40   5   predetermined rate, has no risk of loss and has Social

6   Security taxes paid by the employer.

7      Four, who provides plaintiffs' tools, equipment and

8   supplies.  An independent contractor usually provides the

9   tools, equipment and supplies necessary to do the job; but

12:34:56   10   an employee usually does not.

11      Five, how plaintiff offers her services.  Independent

12   contractors generally offer their services to the public

13   or others in a particular industry, have procured the

14   necessary licenses for performing their services, and may

12:35:14   15   have a business name or listing in the phone book.

16   Employees ordinarily work for only one or just a few

17   employers and do not have business names or listings.

18      Six, the intent of plaintiff and defendant.  The

19   parties' intent is always important but the description

12:35:29   20   the parties give to their relationship is not controlling.

21   Substance governs over form.

22      You should consider all the circumstances surrounding

23   the work relationship.  An individual who performs

24   services for pay may be either an employee or an

12:35:45   25   independent contractor but cannot be both at the same

1    time.  While no single factor determines the outcome, the

2    extent of the right to control the means and manner of the

3    worker's performance is the most important factor.

4         Jury Question Number 1.  Has each plaintiff proved

12:36:07  5    that she was an employee of -- I'm sorry.  Has each

6    plaintiff proved that she was an employee of defendant

7    Texas Sugars during the relevant period?  Answer "yes" or

8    "no" for each plaintiff:  Casey Nelson, Maylene Velasco,

9    Kristal Garcia, Veronica Gonzalez and Presley Lange.

12:36:20  10         If you answer "yes" to any one plaintiff, answer the

11   next question (but only answer with respect to those

12   plaintiff(s)).  If your answer is no to all plaintiffs, do

13   not answer the next question.

14         If you find that defendant Texas Sugars violated the

12:36:44  15   FLSA, then you must determine the amount of any damages.

16   You should not conclude from the fact that I'm instructing

17   you on damages that I have any opinion as to whether any

18   of the plaintiffs have proved liability.

19         Jury Question Number 2.  Has each plaintiff proved

12:36:59  20   that she is entitled to recover damages under the FLSA?

21   Only fill in the names of the plaintiffs who you found to

22   be employees under Question Number 1.

23         If your answer is "yes" as to any one plaintiff,

24   answer the next question.  If you answer "no" to all

12:37:17  25   plaintiffs, do not answer the next question.

1    Jury Question Number 3.  Have plaintiffs proved that

2   defendant Texas Sugars either knew its conduct was

3   prohibited by the FLSA or showed reckless disregard for

4   whether its conduct was prohibited by the FLSA?

12:37:35   5    Answer "yes" or "no."

6    If you answer "yes" to Question Number 3, you should

7   award damages for the three-year period from July 14,

8   2014, to July 14, 2017.  If your answer to Question

9   Number 3 is "no," you should only award damages for the

12:37:52  10   two-year period from July 14th, 2015, to July 14, 2017.

11    Jury Question Number 4.  What sum of money would

12   fairly and reasonably compensate each plaintiff for

13   minimum wage damages, if any, you have found defendant

14   Texas Sugars caused each plaintiff?  Only calculate sums

12:38:15  15   for the plaintiffs for whom you have answered "yes" to

16   under both Questions 1 and 2.  Answer in dollars and cents

17   for the following items and no other.

18    Total number of hours worked times $7.25.

19    Jury Question Number 5.  What sum of money would

12:38:40  20   fairly and reasonably compensate each plaintiff for

21   overtime damages, if any, you have found defendant Texas

22   Sugars caused each plaintiff?  Only calculate sums for the

23   plaintiffs for whom you have answered "yes" to under both

24   Questions 1 and 2.  Answer in dollars and cents for the

12:38:51  25   following items and no other.

Closing Statement by Mr. Cook

 1          $7.25 times 1.5 times all hours worked over 40 in a

 2     workweek.

 3          Counsel for the plaintiff, do you wish to make an

 4     opening final argument at this time?

12:39:29    5          MR. COOK:  Yes, Your Honor.

 6          THE COURT:  You may proceed.

 7          MR. COOK:  Can I have the document camera,

 8     please.

 9          Ladies and gentlemen, when I talked to you a little

12:39:47   10     bit about what this case is about, we weren't really able

11     to get into this too much when we first came down here in

12     the morning on Monday.  But this case is about kind of two

13     things.  It's about minimum wage, but what it's really

14     about is the club having its hand in the pocket of the

12:40:06   15     dancers and actually reducing their wage below zero, the

16     base wage that they pay, and actually taking money away

17     from them.

18          We talked about in the beginning there is a spectrum

19     between employees on one side, independent contractors on

12:40:23   20     the other.  And your job is going to be to figure out

21     where on that spectrum do the dancers belong.  A properly

22     paid, tipped employee is permitted to keep all of their

23     tips.  That's why the dancers want to be properly paid

24     tipped employees.

12:40:44   25          An independent contractor is not like the dancers.

*Laura Wells, CRR, RDR*

Closing Statement by Mr. Cook

1       Independent contractors, like plumbers and electricians

2       and IT folks and things like that, have a different

3       economic reality -- you'll see that word.  It's two words

4       right in the charge -- than employees, tipped employees

12:41:05   5   like dancers.

6           You heard several factors.  I'm going to go over them

7       with you and, based on what I believe the evidence was

8       that came in, and I'll show why dancers are more like

9       employees and less like independent contractors.

12:41:26   10      The first factor is who controls the work.  Moments

11      exercised control of the dancers in the following ways:

12          They compelled the dancers to go on stage.  They

13      charged them a fine if they did not.

14          They charged dancers for coming to work late.  The

12:41:43   15  corporate representative admitted that the scale goes up

16      the later people come in.  And they charged dancers for

17      leaving early.

18          They required certain dance attire.  They required

19      certain kinds of shoes.

12:41:54   20      They charge money for tips and deejays and things of

21      that nature.

22          They required the dancers to check in.  Just like a

23      waitress punching a time clock, as soon as they come in,

24      they have to go check in.

12:42:09   25      They required the dancer to be inspected.

Closing Statement by Mr. Cook

1      They supervise the dancers.  If you'll recall,

2   Mr. Khorshidpanah admitted that he was a supervisor of the

3   dancers.  The managers that supervised the dancers

4   actually entered the dressing room to patrol the dressing

12:42:24   5   room.  Mr. Khorshidpanah told us that.

6      That Moments says that they need to know what

7   medications the dancers are taking and they actually

8   patrol for that as well.

9      They required that all the credit card transactions

12:42:37  10   that are done that are supposedly for the benefit of the

11   dancers be done at the bar or by a waitress so that the

12   club can take an additional charge on top of what the

13   dancer would be getting.  Normally the dancer gets $20 and

14   $25 if it's done by a credit card.

12:42:55  15      Moments requires dancers to work.  Remember we talked

16   with Mr. Khorshidpanah about the minimum number of dancers

17   in the club?  Nobody is going to go to the club if there

18   aren't women there.  And so the club has a minimum.  They

19   want eight dancers, or they want 12 dancers, depending on

12:43:13  20   whether or not you believe what Mr. Khorshidpanah said on

21   the stand or what he said earlier.  But they have to have

22   dancers.  So they have to get dancers to come in.

23      The deejays control the music.  Again, a club employee

24   controlling the means and method.  If the deejay plays

12:43:29  25   five-minute long songs, the dancers make less money.  If

Closing Statement by Mr. Cook

1    the deejay plays two-minute songs, the dancers make more

2    money.

3         They are generally very similar to the way waitresses

4    are treated, especially at Moments.  At Moments the

12:43:44   5    waitresses are not paid anything other than their $2.13 an

6    hour and their tips.  The dancers are not paid at all.

7    The dancer gets to keep some of her tips.  The waitress

8    gets to keep all of her tips.  The waitress has to serve

9    patrons that come in, unless they are rude, harassing or

12:44:05  10    drunk or something like that, just like dancers.  And

11    waitresses can refuse to serve patrons, just like a dancer

12    can.

13         With regard to how they are paid, you see the

14    similarity because they are both tipped employees.  The

12:44:20  15    difference is waitresses get a minimum of $2.13 guaranteed

16    up to $7.25 if there are insufficient tips and the dancers

17    don't.

18         Neither of them get any fringe benefits.  There is no

19    health insurance.  There is no retirement benefits.  I

12:44:37  20    recall Mr. Wallace asking that question over and over to

21    the dancers.  That's true of the waitresses as well.

22         Lastly, neither is paid a set amount or fee.  And

23    there is one person we did hear about in this case who is,

24    and that was Bridget the Midget.  I know it's a silly

12:44:59  25    stage name but she, if we recall the testimony from

*Laura Wells, CRR, RDR*

Closing Statement by Mr. Cook

1    Mr. Khorshidpanah, she gets a set fee based on a contract

2    to perform a certain number of days at the club.  That is

3    what an independent contractor looks like in these

4    circumstances.

12:45:15    5        With regard to risk and opportunities, the dancers

6    again are just like the waitresses.  They have the

7    opportunity that somebody is in the club wanting to spend

8    a lot of money and they are going to have a great night

9    and take a lot home in tips.  They have the risk that the

12:45:31   10    club is going to be slow, there is nobody there, not a lot

11    of money changes hands, and they are going to go home with

12    very little.

13        The only difference is the dancers can go home with

14    zero because they aren't paid, and the waitresses have a

12:45:45   15    minimum.  In fact, the dancers have to pay a fee there.

16    So they can actually go home with less than zero.  That's

17    what we're saying shouldn't happen, not evidence that it's

18    okay for that to happen.

19        If paid properly, dancers and entertainers and

12:46:03   20    waitresses would have the same risks.  A good night is a

21    good night.  A bad night is a bad night.  But nobody is

22    going into the hole.

23        With regard to the tools and equipment -- I took this

24    down from the testimony -- the dancers pay for their

12:46:19   25    outfits, their hair, their shoes, and things of that

1    nature.

2        This is on a yearly basis what the club pays for.

3    They pay $36,300 a year in deejays.  They paid, at one

4    point, $7,000 for the lighting system.  I don't know how

12:46:35   5    much they pay to maintain it.  They paid some unknown

6    amount for the sound system.  They pay thousands of

7    dollars a year for their liquor license, between $120,000

8    and $144,000 a year in alcohol, $96,000 a year in rent,

9    $120,000 in payroll, $36,300 a year in bouncers, $36,300 a

12:46:56   10   year in managers, between $100,000 and $200,000 for the

11   general manager, $6,000 in magazine ads when they were

12   running those ads, and $65,000 in security.  The total is

13   about $615,000 a year to run Moments.  So when you are

14   asked who supplies the necessary instrumentality for the

12:47:17   15   work of the dancers, it's overwhelmingly the club.

16       I would also like to point out that the managers, the

17   amount of $100, two shifts, $100, that gets us to the

18   $36,300 over the course of a year, that's for how many

19   managers did we hear about?  Four?  We are supposed to

12:47:41   20   believe that these four managers are splitting $36,300 a

21   year?  I think that shows that, in fact, the real money is

22   being made by the managers because they require tips from

23   the dancers.

24       The club provides the building, the music, the stage,

12:47:54   25   the pole, the furnishings, the decor, the food, the

Closing Statement by Mr. Cook

1   drinks, the waitresses, the cooks, bartenders, janitors,

2   hostesses, managers, bouncers, security, security cameras,

3   parking lot, and registration in Harris County in order to

4   run a sexually-oriented business, a liquor license and

12:48:13   5   other licenses.  The girls provided their hair and makeup

6   and shoes.

7        The services are not offered to the public as a

8   dancer.  They are not going around people's homes or

9   hotels or anywhere offering to dance for whoever is

12:48:25   10   willing to pay for their services.  In fact, they only

11   offer their services to the members of the public that

12   enter Moments, just like the waitresses.  The waitresses

13   serve people that come to Moments.

14        The dancers aren't out soliciting employment as a

12:48:45   15   dancer for limited periods of time to come to a bachelor

16   party or things of that nature.  They go to Moments to

17   work.

18        They don't have their own business where they keep

19   records and have business cards and run advertisements.

12:49:01   20   They go to Moments, whom they are economically dependent.

21        And again, let's go back again to Bridget the Midget.

22   That is what an independent contractor looks like on this

23   test.  She offers her services to different clubs who pay

24   her to appear.

12:49:18   25        Just like a waitress can work at one restaurant and

Closing Statement by Mr. Cook

1  another restaurant in the same time, a dancer can work at

2  one club and another club.  But the question is when the

3  dancer works at the same club for 11 years or 10 years,

4  for four years, is that dancer really in business for

12:49:38  5  themselves or are they an employee of that club?

6        Intent.  Intent is a really interesting question here.

7  I absolutely agree that none of the dancers would ever

8  intend to make $7.25 an hour.  They make more than that.

9  The intent though, the intent was that they would get to

12:50:02  10  keep all of the tips that they earn.  That's what happens

11  when you are an employee who is properly paid under the

12  FLSA.  You get to keep all the tips that you earn.  The

13  intent of the employment relationship was that the dancers

14  would work at one place, would serve their customers,

12:50:21  15  Moments' customers, that they would dance for Moments'

16  customers, and they would receive tips, and they would

17  keep those tips.

18        What happens is they have to pay money to Moments just

19  to get in the door.  It was clearly established and not

12:50:36  20  disputed by Mr. Khorshidpanah.  They then have to tip

21  deejays, tip the bartenders, tip the managers.

22        So when you get to the question of intent, ask not

23  what -- well, did I intend to be an independent

24  contractor?  Did I intend to get -- as opposed to get

12:50:55  25  $7.25 an hour?  That's not the question.  The intent was

Closing Statement by Mr. Cook

1    that they would get to keep all their tips.

2         I want to turn now to looking at the charge with you.

3    And the first thing I want to just highlight on the charge

4    is this instruction on records of hours worked.  Because

12:51:27   5    no records were kept, we are not able to provide the level

6    of detail and exactitude that we would like to.

7    Obviously, I would love to come in here with a time clock

8    and say they clocked in at this time and they clocked out

9    at that time and I can prove it to the minute.  But no

12:51:43   10   records were kept.  No documents.  So I have -- we are

11   unable to do that.

12        Because of that, we have to rely on the dancers'

13   testimony.  If you recall, one of the things that dancers

14   do is they are provided alcohol as part of their

12:51:58   15   socializing with people, and so their memories may not be

16   exact.  We have to live with what we have.

17        With regard to Jury Question Number 1, I believe, as I

18   have explained, we believe that all five plaintiffs have

19   established that they are employees of Moments.

12:52:17   20        If they are employees and you determine that they did

21   any work for which they were not properly paid, then you

22   should answer this question "yes," they have FLSA damages.

23        On the question of willfulness, I submit to you that

24   an owner of a business who closes their eyes, who stops up

12:52:41   25   their ears and does no investigation whatsoever is acting

1    in reckless disregard of whether or not their conduct is

2    prohibited by the FLSA.  They have lawyers.  They have --

3    the Department of Labor is available as a governmental

4    institution that will answer their questions.  But they

12:53:01    5    didn't ask.  They did nothing to find out whether or not

6    they were paying their dancers properly.

7        With regard to the question on damages, I took notes

8    and I want to share with you what I had for -- in terms of

9    the number of hours worked.

12:53:22    10    With regard to Ms. Velasco, I had that she testified

11    to working Tuesday, Wednesday, Thursday and Friday and

12    every other Saturday, which would mean that you could take

13    the number of weeks at issue -- depending on your answer

14    to Jury Question Number 3, there will be a different

12:53:41    15    number of weeks at issue -- multiply by four for one set

16    of weeks and five for one set of weeks or just multiply by

17    4.5 to get an estimate and multiply by $7.25 an hour.

18        So if you were to find that there were 95 weeks in the

19    period -- she testified she started working in June of

12:54:06    20    2013 to 2015 as a dancer.  If you found that that was all

21    compensable, you would take 95 weeks, multiply by four and

22    a half, multiply by $7.25 in order to get the total number

23    of hours worked.  She indicates -- or excuse me -- to get

24    the total number of hours per week.  To get the total

12:54:30    25    number of hours worked, you would then multiply by what

Closing Statement by Mr. Cook

1    she testified the amount of work that she did in each

2    shift.

3        And Ms. Nelson testified that her average shifts were

4    between six and ten hours.  It's up to you to decide

12:54:42    5    whether or not you think the average is six, ten, or

6    somewhere in between.  But what you should do is calculate

7    the total number of weeks, multiply by the number of hours

8    in the shift -- so the number of days in a week that each

9    dancer says they worked and the number of hours in each

12:54:59   10    shift on each day, multiplied by the total number of

11    weeks.

12        It's kind of mathy.  I know it is a -- I'm sure they

13    will give you a calculator to do the math.

14        With regard to Ms. Nelson, she worked four days a week

12:55:12   15    and every other Saturday for six to ten hours a day.

16        Ms. Gonzalez testified that she worked four days a

17    week and every other weekend for seven hours a day.

18        Ms. Garcia testified to working five or six days a

19    week.  We would ask you to consider five.  It's up to you

12:55:33   20    if you want to do six.  And that she worked between eight

21    and ten hours or 12 hours, if they were doubles.  You can

22    determine where in that range is appropriate.

23        Presley Lange testified that she worked between three

24    and five days a week, some were doubles, for eight hours

12:55:48   25    each shift.

Closing Statement by Mr. Wallace

1      And Maylene Velasco testified that she worked a bunch,

2  that she would only take two or three nights off in a

3  month.  I think that we would be comfortable understanding

4  that she probably did miss more time than she is

5  remembering today.  And so we are only going to ask you to

6  consider five days a week for her.  She testified that she

7  would work as many as ten -- excuse me -- as many as seven

8  hours a shift.  And so we would consider seven hours a

9  shift for her.

10      Bringing you back to what I started with, this is not

11  a case where dancers are claiming they are owed $7.25 an

12  hour and that is what they want.  They want the

13  protections of the FLSA.  They want to be treated like

14  tipped employees because they are much more like

15  waitresses and much less like Bridget the Midget, who is

16  an independent contractor.

17      I look forward to hearing from you guys.  Thank you

18  very much.

19          THE COURT:  Does the defense wish to make a

20  closing argument at this time?

21          MR. WALLACE:  Yes, Your Honor.

22          THE COURT:  You may proceed, sir.

23          MR. WALLACE:  Members of the jury, on behalf of

24  Mr. Khorshidpanah and Texas Sugars, I want to thank you

25  for spending the last three days here in the courthouse

Closing Statement by Mr. Wallace

1    with us and listening to the evidence, some of which has

2    been repetitive and you have heard much of the same

3    testimony over and over again.  You have been patient.

4    You have been attentive and you have been listening and I

12:57:36   5    want to thank you for that.

6        I do want to talk to you about the evidence that has

7    been presented in the case, and I do want to talk to you

8    some about the instructions that the Judge has given you

9    and that you will receive on paper when you go back into

12:57:48   10   the jury deliberation room.

11       I'll start out by telling you that there are five

12   plaintiffs in this case.  And all five of them came up

13   here and testified.  And all five of them are asking for a

14   whole lot of money.  They have a vested interest in the

12:58:07   15   outcome of this case.

16       There is a defendant in this room, Texas Sugars, Inc.,

17   that has a vested interest, also.  It wants to maintain

18   that it does not treat its -- that its entertainers are

19   not employees and that they are not liable under the Fair

12:58:33   20   Labor Standards Act.

21       As the Judge has told you in his instructions, an

22   individual who performs services for pay may be either an

23   employee or an independent contractor but cannot be both

24   at the same time.

12:58:49   25       This is not a spectrum, as you were told by opposing

Closing Statement by Mr. Wallace

1    counsel.  It's either you're an employee or you're not an

2    employee.  The Fair Labor Standards Act covers employees.

3        Okay.  So you have five plaintiffs that came up and

4    told you one story.  You had Texas Sugars that told you

12:59:07  5    the other.  And both cannot be true.  They are either an

6    employee or they are not.

7        So who are you to believe?  Well, we contend that you

8    can believe the three independent witnesses that came up

9    here who are neither plaintiffs nor defendants, who are

12:59:26  10    entertainers at Moments, who came up here and told you

11    exactly what really goes on in that club as far as the

12    relationship is, and that they are independent contractors

13    that have every intent to be independent contractors and

14    are not going to work there and we submit nor would any

12:59:43  15    other dancer ever work at any club classified as an

16    employee, given a schedule, told to come in and work for

17    $7.25 an hour, much less $2.13 an hour.

18        Much has been made about, well, they would get $2.13

19    an hour plus their tips.  Well, the evidence that was

01:00:03  20    presented by both the plaintiffs' witnesses and our

21    witnesses was they get fees for dancing, $20 a song.

22    That's not a tip, ladies and gentlemen.  A man who comes

23    and mows your lawn and knocks on your door and says, I'd

24    like to mow your lawn, and I'll do it for $20.  You say,

01:00:22  25    Okay.  Deal.

*Laura Wells, CRR, RDR*

Closing Statement by Mr. Wallace

1      After it's done, he knocks on your door and says,

2  Where is my tip?  No.  He says, Where is my $20, the fee

3  we pre-negotiated for my services of mowing the lawn.

4  It's just like dancing.

01:00:33    5      So it's not a tip.  They don't get paid $7.25 an hour

6  and then get to hold on to the fees.  Those fees become

7  the property of the house.  That's the employment

8  relationship.

9      Just like a waitress, when she works $2.13 an hour,

01:00:49   10  she doesn't get to keep the money that the patrons pay for

11  their liquor or their beer or their wine.  If she gets a

12  tip on top of that, she gets to keep it.  Much like a

13  dancer.  It's a tip on top of the $20 per song that she

14  gets to keep.  But don't confuse these dance fees as tips.

01:01:09   15      So the question really for you all is:  How do you

16  determine who an employee is?  And you'll find that in the

17  Judge's instructions to you as set out on Pages 9 and 10

18  of your jury instructions.  And there are -- you will see

19  on Pages 9 and 10 the five -- excuse me -- the six factors

01:01:41   20  that are set out by Judge Bennett.

21      And I'll ask you to recall, when I cross-examined the

22  witnesses that came to this stand, both the plaintiffs and

23  our witnesses that we brought to the stand, I'll ask you

24  to remember that I asked each one of them or I tried to

01:02:01   25  ask each one of them, I want to ask you about six

Closing Statement by Mr. Wallace

1  individual topics.  Do you remember that?  That's these

2  six topics because we wanted to prove to you that they are

3  not employees.

4      So let's go to the first topic.  In an

01:02:16  5  employer/employee relationship, the employer has the right

6  to control the employee's work, to set the means and

7  manner in which the work is done and to set the hours of

8  work.

9      In contrast, as Judge Bennett's instructions provide,

01:02:30  10  an independent contractor generally must accomplish a

11  certain work assignment within a desired time but the

12  details, means and manner by which the contractor

13  completes that assignment are determined by the

14  independent contractor normally using special skills

01:02:44  15  necessary to perform that kind of work.

16      We know what the evidence is.  The dancers came when

17  they wanted to work on the days they wanted to work and

18  didn't work when they didn't want to work.  They danced

19  the way they wanted to dance.  They danced for the

01:02:57  20  customers they wanted to dance for.  They danced when,

21  where and how they wanted to perform.

22      But you don't need to believe me because argument of

23  counsel, as Judge Bennett rightfully said, is not

24  evidence.  Let's see what the evidence does say.  Let's

01:03:13  25  take Ms. Gonzalez's testimony, one of the plaintiffs.

Closing Statement by Mr. Wallace

1     "QUESTION:  Moments didn't tell you when to dance?

2     "ANSWER:  Right.

3     "QUESTION:  If you did not want to dance for a

4  particular customer, you did not have to?

01:03:25   5     "ANSWER:  Correct.

6     "QUESTION:  You could easily refuse to dance for

7  someone or anyone, correct?

8     "ANSWER:  Right.

9     "QUESTION:  No one at Moments ever provided a written

01:03:33  10  schedule to you, correct?

11     "ANSWER:  No.

12     "QUESTION:  If you don't want to dance, you can simply

13  stay at home, right?

14     "ANSWER:  Right."

01:03:43  15     The dancers control their work.  They control when

16  they work, how they work, how much they charge, who they

17  charge it to, and the amount of money they make in a given

18  evening.  Once they make their money, they go home.  If

19  they want to work a double, they can work a double, what

01:04:01  20  they call a double.  All right.

21     Number two, how is the plaintiff paid?  An employer

22  usually pays an employee on a time worked, piece work, or

23  commission basis, and an employer usually provides

24  vacation or sick time, insurance, retirement and other

01:04:16  25  fringe benefits.  An independent contractor is ordinarily

Closing Statement by Mr. Wallace

1   paid an agreed or set amount or according to an agreed

2   formula for a given task or job and no benefits are

3   provided.

4        We know what the evidence in this case shows.

01:04:28   5        No.  Go back, please.

6        And that is that they were paid on an agreed or set

7   amount of $20 or, according to an agreed formula, $20 per

8   song, for a given task or job, meaning a lap dance.

9   That's how they are paid.  But don't believe me.  Let's

01:04:49   10  see what Ms. Gonzalez says.

11       "QUESTION:  I want to switch to my second topic, and

12  that's how you are paid as an entertainer.  Moments does

13  not pay you for the time worked, correct?

14       "ANSWER:  They don't.

01:05:00   15       "QUESTION:  No piece work?

16       "ANSWER:  No.

17       "QUESTION:  Not on a commission basis?

18       "ANSWER:  No.

19       "QUESTION:  Not correct or they don't pay you on a

01:05:08   20  commission basis?

21       "ANSWER:  They don't.

22       "QUESTION:  They provide you no vacation time or sick

23  time, correct?

24       "ANSWER:  Correct."

01:05:15   25       Go back to the instruction.  That's what an employer

*Laura Wells, CRR, RDR*

Closing Statement by Mr. Wallace

1    does.  He provides sick time, vacation time, pays them on

2    a commission basis or for piece work.  That didn't happen

3    in this case.  They are paid on the set rate they

4    negotiate with their customers.

01:05:42    5        Keep going to the next slide, please.

6            "QUESTION:  They provide you with no insurance,

7    retirement or other fringe benefits.  You are paid on an

8    agreed set amount for dancing between you and your

9    customer, correct?

01:05:54   10        "ANSWER:  Right.

11           "QUESTION:  And that's usually $20 a song, right?

12           "ANSWER:  Yes."

13           Let's go to the next one.  The third topic that is

14   outlined by Judge Bennett on Pages 9 and 10 of the jury

01:06:04   15   charge you are going to get provides that an independent

16   contractor is generally one who has the opportunity to

17   make a profit or faces a risk of taking a loss; but an

18   employee is generally compensated at a predetermined rate,

19   has no risk of loss, and has social security taxes paid by

01:06:18   20   the employer.

21           You all remember what the testimony was.  I don't need

22   to go over it with you.  The dancers have all the risk.

23   If they come in and just sit there and don't do anything,

24   they are not going to make any money.  If they go in there

01:06:33   25   and they entertain the customers, they are going to make a

*Laura Wells, CRR, RDR*

Closing Statement by Mr. Wallace

1    lot of money at twenty minute -- $20, excuse me, for two

2    and a half to three minutes of work because that's the

3    length of the song.  That was the testimony from the

4    witness stand.

01:06:44    5        Some of them spend -- one witness testified, I spent

6    an hour back in the VIP room.  I danced the whole time.

7    Three-minute songs times 20 songs.  Is that how it works?

8    Anyway, she makes $400 for being back there.

9        But let's see what Ms. Gonzalez testified about.

01:07:03    10        "QUESTION:  The third topic, do you have an

11    opportunity to make money?

12        "ANSWER:  Yes.

13        "QUESTION:  Sometimes you have an opportunity to make

14    a lot of money?

01:07:16    15        "ANSWER:  Yes.

16        "QUESTION:  Do you have a risk of taking a financial

17    loss?

18        "ANSWER:  Yes."

19        The risk is all on the entertainer and the opportunity

01:07:32    20    to make a substantial sum of money is all on the

21    entertainer.  If she wants to come to work, she can come

22    to work.  If she doesn't want to come to work, she doesn't

23    have to come to work.

24        Let's go to the next page.

01:07:46    25        "QUESTION:  Do you get compensated, paid money, at a

*Laura Wells, CRR, RDR*

Closing Statement by Mr. Wallace

1    preexisting rate on a nightly basis, a weekly basis, or a

2    monthly basis?"

3         And she answered, "Yes.  I mean, I get paid from the

4    customers, not from the bar or from the club."

01:08:00    5         I asked her, "But it's not a preexisting rate."  Those

6    words being used directly in the jury charge that Judge

7    Bennett has read to you and will give to you, they are not

8    paid on a preexisting rate.

9         And Moments, I asked, does not pay your social

01:08:12   10    security?

11         And her answer was, no, they don't pay our social

12    security.

13         Again, that directly comes out of the jury charge.

14    Directly.  That defines an independent contractor.

01:08:24   15         All right.  Let's go to the next factor.  An

16    independent contractor usually provides the tools,

17    equipment and supplies necessary to do the job but an

18    employee does not.  Let's not listen to my statement.

19    Let's listen to what Ms. Gonzalez said.

01:08:43   20         "QUESTION:  The next subject I want to go to, and it's

21    the fourth subject, is who provides your tools, equipment

22    and supplies?

23         "ANSWER:  I do.

24         "QUESTION:  You provide one hundred percent of them?

01:08:57   25         "ANSWER:  Right.

*Laura Wells, CRR, RDR*

Closing Statement by Mr. Wallace

1    "QUESTION:  No one at Moments provides you with the

2    tools, equipment and supplies necessary to do your job,

3    correct?"

4        Her answer was, "Right."

01:09:07    5    That's the fifth indicia of why she is an independent

6    contractor -- fourth indicia.  Pardon me.

7        The fifth test or the fifth instruction that you have

8    on Page 10 of Judge Bennett's instructions is how did

9    plaintiff offer her services.  Independent contractors

01:09:29   10    generally offer their services to the public.  Remember, I

11    asked the dancers, Do you provide your services to the

12    public or do you provide it to the bouncers, the managers,

13    the deejays and people associated with Moments?  Every one

14    of them said I offer it to the public, the public that

01:09:44   15    walked through that door.

16        Let's go to the -- let's see what some of the

17    testimony is.

18        "QUESTION:  The fifth topic I want to talk to you

19    about is how you -- how and to whom you offer your

01:09:59   20    services -- are you with me?

21        "ANSWER:  Yes.

22        "QUESTION:  -- as an entertainer.

23        "ANSWER:  I am.

24        "QUESTION:  You offer your services to the general

01:10:07   25    public when they come into the bar, don't you?"

Closing Statement by Mr. Wallace

1       And her answer was, "Right."

2       And the next page.

3       "QUESTION:  And when you have danced at other clubs,

4   it's the same way.  You are offering services to the

01:10:21   5   customers and to the general public when they come in the

6   front door, right?

7       "ANSWER:  Right.

8       "QUESTION:  You do not offer dancing services to the

9   bar backs or hostesses or security guards?

01:10:31   10      "ANSWER:  Right.

11      "QUESTION:  You are offering it to the general public,

12   correct?

13      "ANSWER:  Right."

14      That's the fifth test outlined in Judge Bennett's

01:10:40   15   instructions to you.

16      And finally, let's go to the sixth indicia that Judge

17   Bennett has instructed you to examine and that is the

18   party's intent is always important but the description the

19   parties give to their relationship is not controlling.

01:10:53   20   Substance governs over form.

21      Well, what was the intent of those dancers when they

22   walked in the front door?  They intended to be independent

23   contract dancers.  They intended to be in there to make

24   $20 a song or $30 a song or whatever they charged, to get

01:11:12   25   those fees from their customers when they danced for them.

Closing Statement by Mr. Wallace

1      They did not intend to be a $2.13 an hour employee

2  with a schedule and a uniform and all the other things

3  that come with being an employee.  We have all been

4  employees.  You report to work when you are told.  You

01:11:32  5  work your shift.  You do what you are told to do while you

6  are there, and you get a paycheck at the end of the day.

7      That's not what these dancers intended to do at all,

8  and that's not what Moments intended to do at all.  It was

9  a contract with them to be independent contractors.  What

01:11:50  10  is the testimony?

11      "QUESTION:  Last but not least, on the six topics that

12  I wanted to talk to you about was your intent and if you

13  know the intent of the club.  So let's talk about your

14  intent.  When you went there" -- and this is the testimony

01:12:04  15  of Ms. Gonzalez.  If you'll recall, she started out as a

16  hostess/waitress and moved to be a dancer -- "when you

17  went there, you would as a dancer" -- and I said, "Well,

18  strike that.  When you first started working there, you

19  intended to work as an employee, correct?

01:12:23  20      "ANSWER:  Yes.

21      "QUESTION:  As a door hostess and as a waitress?

22      "ANSWER:  Right.

23      "QUESTION:  And it was later your voluntary decision

24  and intent to move to an independent contractor dancer at

01:12:34  25  Moments, correct?

1    "ANSWER:  Right."

2        She wanted to make more money, and she wanted to

3    perform as an independent contractor and have all the say

4    in the world over her schedule, over her routine, what

01:12:49  5    days do they come in, what times do they come in, does it

6    fit with their childcare needs that they can come in later

7    or come in earlier, what is it that helps them out?  They

8    are not -- they are not employees.

9        Members of the jury, on Page 11 of the jury

01:13:08 10    instructions that Judge Bennett is going to give you, he

11    asks:  Has each plaintiff proved that she was an employee

12    of defendant Texas Sugars during the relevant time period?

13        The answer, I submit, that you should put on this form

14    are five big fat nos.  If you put those five nos on there,

01:13:33 15    your job is done, and you can go home.  There is nothing

16    for you to consider about damages.  There is nothing for

17    you to consider about anything else.  They have not proven

18    their case.  They are not employees as a matter of law.

19    And if you look at Judge Bennett's instructions, I think

01:13:54 20    you can conclusively come across that, no, they weren't

21    employees.

22        But Judge Bennett has given you instructions about

23    damages, and so I have got to address it.  Okay.  On

24    Page 8 of the instructions -- again, these instructions --

01:14:11 25    Judge Bennett says that the plaintiffs must have evidence

Closing Statement by Mr. Wallace

1    of a reasonable estimate of the amount and extent of the

2    work for which she seeks pay.

3         Did you all hear a reasonable amount of hours that any

4    plaintiff worked?  Or did you just hear, Oh, well, you

01:14:30    5    know, I worked doubles and I went in on Tuesdays and

6    Wednesdays and Thursdays and sometimes on Saturdays?

7         Did you ever hear, you know, gosh, I didn't keep

8    records either and neither did Texas Sugars, but I

9    estimate over this three-year period or this two-year

01:14:47   10    period that I worked 1,500 hours.  And I would say a

11    thousand of them were regular time and 500 of them was

12    overtime.

13         You do the math, jury.  You figure that out.  $7.25

14    times a thousand and $10.86 times 500.  Sure, you could do

01:15:01   15    that, if you had any evidence at all as to how much time

16    they actually worked, but you don't have anything.  You

17    have been left completely in the dark to guess for each

18    plaintiff and all plaintiffs how much time they worked.

19         Can any of you independently recall how many hours

01:15:25   20    Maylene Velasco, the last plaintiff, worked?  I mean, at

21    one time she said, Oh, well, I worked every single day.  I

22    worked every day.  Maybe I took a couple of days off a

23    month.  Never worked at any other club.  Only worked at

24    Moments.

01:15:44   25         Well, on cross-examination she had to admit, well, no,

Closing Statement by Mr. Wallace

1    she worked for Glamour Girls.  Why did she have to admit

2    that?  Because we showed she got arrested for prostitution

3    while at Glamour Girls at the same time she said she was

4    working at Moments.  She spent days in jail.  She couldn't

01:16:00   5    have been at Moments if she was in jail.  But she said she

6    worked every day.  Maybe took two days off a month.

7    Maybe.

8        Who works every day?  I don't want you to hold up your

9    hands because it's not a test for you all.  I don't work

01:16:13   10   every day.  Do you know anybody that works every day?

11   It's not legal, and you don't have anything to base

12   damages upon.  Nothing.

13       I submit you find no liability.  If you put no on all

14   that, you don't even have to get to that question.  But if

01:16:31   15   you found that a dancer or you felt they were employees,

16   how on earth can you say how much they should have been

17   paid when you don't know how much they worked?  It would

18   be pulling it out of thin air and guessing it, and I

19   submit to you that the plaintiffs have wholly failed to

01:16:46   20   provide you with the necessary evidence that you need to

21   even come to the damage calculation if you were to do so.

22       You have heard evidence that they had to wear 3-inch

23   heels.  Some of their witnesses said you had to have

24   6-inch heels.  Our witness said, I dance in flats.  They

01:17:12   25   don't control the way I do my dancing.

Closing Statement by Mr. Wallace

1       Those three independent witnesses that came up here

2   and told you the truth, told you the truth because they

3   were under oath and had an obligation to tell you the

4   truth.  They didn't hide who they were.  They didn't hide

01:17:25   5   what they were, and they didn't try to stretch out this I

6   work every day kind of stuff.  They were forthright with

7   you, and I hope you give them a lot of credibility.

8       I will tell you on behalf of Mr. Khorshidpanah here

9   that he really appreciates the time and effort that you

01:17:42   10   all have put into this.  It's been a long three days.  You

11   have heard a lot of evidence.  I'm going to ask you to use

12   your common sense, and Mr. Khorshidpanah is going to ask

13   you to use your common sense.

14       What is really going on here?  You have got five

01:17:55   15   people who are disgruntled and unhappy and want to make

16   one last stab at a cash grab.  It shouldn't fly.  It

17   shouldn't work.

18       Respectfully, we ask that you return a verdict that is

19   on Page 11 of 18.  No, no, no, no, and no.  They are not

01:18:26   20   employees.  Whether or not that's -- you might

21   individually think that's fair or right -- individually

22   think it's wrong or right, remember that each of you swore

23   that you would apply the law as the Judge gave it to you,

24   and the Judge has given you the six factors to consider.

01:18:47   25   You have got the evidence that meets those six factors

*Laura Wells, CRR, RDR*

Rebuttal Closing Statement by Mr. Cook

1    that they are not employees.

2        Thank you so much for your time and consideration.  I

3    look forward to your verdict.

4            THE COURT:  Does the plaintiff wish to offer a

01:19:10   5    rebuttal argument?

6            MR. COOK:  Very much so, Your Honor.

7            THE COURT:  You may proceed.

8            MR. COOK:  Ladies and gentlemen, if the question

9    that was posed to you was are dancers independent

01:19:26  10    contractors with regard to the patrons who enter Moments,

11    you would find, yes, they are independent contractors.  If

12    you look at those factors and the way that the defendant

13    has presented them to you, it is asking about how they are

14    treated by their patrons.  Just like a waitress.  When a

01:19:51  15    waitress comes to your table, you don't -- you don't have

16    an ongoing relationship with them.  They are serving you

17    individually, just like the lawnmower example that

18    Mr. Wallace used.

19        When you look at it through the lens of what is the

01:20:11  20    relationship between the club and the dancer, those

21    relationships change.  The only reason the dancers don't

22    have the pay that one of the factors is, is because it's

23    being illegally denied them.  They are supposed to receive

24    it, and they are not.

01:20:34  25        We talked about the dancers are not controlled because

01:20:51

1    they are not -- they don't have a schedule.  Well, the

2    dancers said that they did.  They had to work regular

3    schedules.  They weren't on paper.  That's not how the

4    club runs.  It was verbally.  Get in here.  We need you.

5    They worked regular schedules.  And if they didn't work on

6    a Monday or a Tuesday, they wouldn't be allowed to work a

7    Friday or Saturday, the more lucrative days.  The club

8    exercised control over their schedules to a limited

9    extent, to be fair.

01:21:04

10       The reason I say it's a spectrum is not because you

11   can be a little bit independent contractor and a little

12   bit employee.  Mr. Wallace is absolutely right about that.

13   They are either one or the other.  The spectrum that I am

14   talking about is you could look an awful lot like one, in

01:21:19

15   which case you probably are, and look an awful lot like

16   the other, in which case you probably are, or somewhere in

17   the middle.  You ladies and gentlemen will decide.

18       My point with the spectrum is that if you view it that

19   way, the dancers and waitresses and totally truly tipped

01:21:34

20   employees are here and dancers are here and Bridget the

21   Midget is here and your plumber is over here.  So where do

22   you draw that line?  Wherever you draw that line, I submit

23   that the dancer is on the employee side of it because they

24   are dependent on the club.

01:21:48

25       The club provides everything that is necessary, except

Rebuttal Closing Statement by Mr. Cook

1    the clothes on their back.  The club provides the patrons.

2    The club controls the music, the decor.  The club controls

3    their opportunity to make money based on who they get in

4    the door.

01:22:10    5    Let's talk about the credibility of the witnesses and

6    a little bit about what makes a person an employee or an

7    independent contractor.  I think one of the most shocking

8    things -- I have never heard of anybody when they are sued

9    and an independent contractor is summoned as a witness

01:22:28    10    that that person hires them a lawyer to protect them, not

11    to protect the club.  The club has lawyers, able lawyers.

12    But the club hired a lawyer to go and represent their

13    independent contractor, who is not their employee, when we

14    took the independent contractor's deposition, the

01:22:51    15    independent contractor.

16    That, in my mind, shows a level of control and also

17    shows a reason why the testimony you heard from the two or

18    three declarants that had -- that were summoned by the

19    defendant may have been different than that summoned by

01:23:12    20    the plaintiff.  They had ongoing relationships.  This is

21    their boss.  They could -- Moments can say, you know what,

22    don't come back.  We didn't like the way you testified.

23    Don't come back.  And these girls do make money.

24    Again, this is not a case about $7.25 an hour.  This

01:23:29    25    is a case about getting the club's hand out of the

*Laura Wells, CRR, RDR*

Jury Deliberation

1     dancer's pocket.

2         Thank you for your attention.

3         THE COURT:  Lady and gentlemen of the jury, it is

4     now your duty to deliberate and to consult with one

01:23:57   5     another in an effort to reach a verdict.  Each of you must

6     decide the case for yourself, but only after impartial

7     consideration of the evidence with your fellow jurors.

8         During your deliberations, do not hesitate to

9     re-examine your own opinions and change your mind if you

01:24:12  10     are convinced that you were wrong, but do not give up on

11     your honest beliefs because the other jurors think

12     differently or just to finish the case.

13         Remember, at all times, you are the judges of the

14     facts.  You have been allowed to take notes during this

01:24:28  15     trial.  Any notes that you took during this trial are only

16     aids to memory.  If your memory differs from your notes,

17     you should rely on your memory and not on the notes.  The

18     notes are not evidence.

19         If you did not take notes, rely on your independent

01:24:44  20     recollection of the evidence and do not be unduly

21     influenced by the notes of other jurors.  Notes are not

22     entitled to greater weight than the recollection or

23     impression of each juror about the testimony.

24         When you go into the jury room to deliberate, you may

01:25:00  25     take with you a copy of this charge, the exhibits that

Jury Deliberation

1   have been admitted into evidence, and your notes.  You

2   must select a jury foreperson to guide you in your

3   deliberations and to speak for you here in the courtroom.

4        Your verdict must be unanimous.  After you have

01:25:15   5   reached a unanimous verdict, your jury foreperson must

6   fill out the answer to the written questions on the

7   verdict form and sign and date it.

8        After you have concluded your service and I have

9   discharged the jury, you are not required to talk with

01:25:30   10   anyone about the case.

11        If you need to communicate with me during your

12   deliberations, the jury foreperson should write the

13   inquiry and give it to the court security officer.  After

14   consulting with the attorneys, I will respond either in

01:25:44   15   writing or by meeting with you in the courtroom.  Keep in

16   mind, however, that you must never disclose to anyone, not

17   even to me, your numerical division on any question.

18        It's now approximately 1:25, and I understand that you

19   are going to take your lunch break now.  After you have

01:26:07   20   returned from lunch, you will return to the jury room and

21   begin your deliberations.  At this time, you may --

22        Oh, one final point.  The schedule is your own.  We

23   have been going to 5:00 each day.  If you in your

24   estimation determine that you want to go longer than 5:00

01:26:28   25   today because you think you are close and you can reach a

*Laura Wells, CRR, RDR*

1    verdict and you want to stay extra time, that's fine.  I

2    and the lawyers will stay here and await your verdict.

3    But I do ask that you work at least until 5:00.  If you

4    return tomorrow in the morning, I ask that you return no

01:26:48    5    later than 9:00 a.m.  If you want to return earlier than

6    9:00 a.m., before you leave, so indicate; and we will make

7    arrangements to have the jury room open before 9:00 a.m.

8        At this time, you may step down and return to the jury

9    room to begin your break and/or deliberations.

01:27:07    10        All rise for the jury.

11        (Jury exited courtroom at 1:27 p.m.)

12        THE COURT:  Counsel, as I was reading it, I

13    determined a couple of typos.  I was writing those in.  So

14    we're going to make those corrections before we send it

01:27:37    15    back, but they were just typos.  They were not substantial

16    changes.  You probably caught me as I was stopping and

17    making some of those corrections.

18        Counsel, your final task.  I need the admitted copy of

19    Plaintiffs' Exhibit Numbers 4 and 5 and the admitted

01:28:02    20    exhibit of Plaintiffs' Exhibit Number 12, which I already

21    have up here.  So I need Plaintiffs' Exhibit Numbers 4

22    and 5.

23        MR. COOK:  Your Honor, Plaintiffs' Exhibit

24    Number 4 is four loose sheets.  They are not, by nature,

01:28:17    25    stapled.

Jury Deliberation

```
              1          THE COURT:  I have a staple and a paperclip.
              2   Which do you prefer?
              3          MR. COOK:  Either one.  May I approach?
              4          THE COURT:  You may.  It is up to you.
01:28:27      5          MR. COOK:  Let's do paperclip because they were
              6   -- they were kept separate in that way.
              7          THE COURT:  Counsel, if you'll approach.
              8          MR. WALLACE:  Yes, sir.
              9          THE COURT:  This is Plaintiffs' Exhibit Number 12
01:28:39     10   that will go back -- I'm sorry -- Defendant's Exhibit
             11   Number 12 that will go back to the jury.  That is
             12   Plaintiffs' Exhibit Numbers 4 and 5 that will go back to
             13   the jury.
             14          MR. COOK:  Plaintiffs have no additional
01:28:53     15   objection to Defendant's Exhibit Number 12.
             16          THE COURT:  Well, I just wanted to make sure.
             17          MR. COOK:  It is what it appears to be.
             18          THE COURT:  It is what it appears to be?
             19          MR. COOK:  Yeah.
01:28:59     20          THE COURT:  Okay.
             21          MR. WALLACE:  And these are Exhibits 4 and 5 that
             22   were submitted by the plaintiffs.
             23          THE COURT:  Very well.  Thank you.  Thank you,
             24   Counsel.
01:29:07     25          Anything else from the plaintiffs before we recess as
```

Jury Deliberation

       1    we await word from our jury?

       2           MR. COOK:  Your Honor, Mr. Berlanga is going to

       3    remain.  May I be excused?

       4           THE COURT:  You may be.  You are excused.

01:29:21   5           MR. COOK:  Thank you.

       6           THE COURT:  Anything else from the defense as we

       7    await word from our jury?

       8           MR. WALLACE:  No, Your Honor.

       9           THE COURT:  We are in recess until such time as

01:29:28  10    we hear from our jury.  I understand that they were going

      11    to take their lunch break.  I will have Ms. Edwards to

      12    come back in and tell you about their return so that you

      13    can also take your lunch break, but I understand they were

      14    just going to walk over to the food trucks in front of

01:29:44  15    City Hall.  We are in recess.

      16           (Recess from 1:29 p.m. to 3:52 p.m.)

      17           (Jury knocked with a note to the Court at 4:04 p.m.)

      18           THE COURT:  Thank you.  Please be seated.  We are

      19    back on the record in Cause Number 4:17-CV-2171, Casey

04:04:42  20    Nelson, et al v. Texas Sugars, Inc., et al.

      21         Counsel for the parties are present here in the

      22    courtroom.  The jury is not present in the courtroom.  The

      23    Court has received two questions from the jury.

      24         Question 1:  Can we have a written transcript of

04:05:02  25    witness testimonies?

                              *Laura Wells, CRR, RDR*

1       The Court intends to respond to that question with:

2   If members of the jury have a dispute about specific

3   testimony, please identify that testimony and the Court

4   will attempt to locate it and provide it to you.  It will

04:05:20    5   take some time to locate and transcribe the requested

6   testimony.  You will not be provided with a full

7   transcript to reread just for the purpose of rereading

8   testimony.

9       Any objection to that response?

04:05:35    10          MR. BERLANGA:  No objection from the plaintiffs,

11  Your Honor.

12          MR. KING:  No objection from the defendant, Your

13  Honor.

14          THE COURT:  Very well.

04:05:44    15      The second question:  Can we get clarification on

16  Number 6, the intent of plaintiff?

17      The Court intends to respond to Question Number 2, as

18  follows:  You have been provided all instructions on the

19  law and required definitions.  Please read the

04:06:08    20  instructions with your best understanding.

21      Any objection to that response?

22          MR. BERLANGA:  Your Honor, plaintiffs would

23  object only to the extent that I think the jury should be

24  informed that the intent -- subjective intent of the

04:06:22    25  parties is only relevant to the extent that it mirrors the

*Laura Wells, CRR, RDR*

1    economic realities of the situation.  And I believe that's

2    the statement from the Fifth Circuit in *Parrish* and cited

3    in our -- in both parties' briefs extensively.

4            MR. KING:  Defendant does not have an objection

04:06:38   5    to what the Court intends to do.

6            THE COURT:  Do you have any submission to a jury

7    with the proposed definition of "intent" under the pattern

8    jury charge as you have so explained to the Court?

9            MR. BERLANGA:  I do not, Your Honor.  As I

04:06:55   10   represented to the Court in its earlier question about the

11   pattern jury charge, whether it's been submitted to any

12   jury, I was unable to locate any case submitting an

13   independent contractor question to a jury in the Southern

14   District of Texas.  So I don't have one, one way or the

04:07:11   15   other.  I just haven't been able to find one.

16           THE COURT:  Very well.  So as to Pattern Jury

17   Charge 11.26, you could not find a case in which that

18   question had been submitted to a jury?

19           MR. BERLANGA:  I looked, Your Honor.  I could not

04:07:32   20   find one in the Southern District of Texas.

21           THE COURT:  Okay.  Did you find it anywhere else

22   in the Fifth Circuit?

23           MR. BERLANGA:  I didn't have occasion to look

24   because I think the Court requested just the Southern

04:07:42   25   District.

1          MR. KING:  I believe -- I believe defendant cited

2    a case out of the Southern District of Texas where that

3    question 11.26 was referenced, but the docket entry for

4    the case was sealed.

04:08:00   5          THE COURT:  Very well.  I believe that right now

6    my response is appropriate to ask them to go back and

7    reread or to -- that they have been provided with

8    instructions and to please read the instructions with

9    their best understanding.  If it turns out that there is

04:08:17   10   continuing confusion, we'll revisit possibly an additional

11   explanation.

12         MR. BERLANGA:  Yes, Your Honor.  And just

13   procedurally, I just wanted to make clear for the record

14   that we're not removing our objection to submission of the

04:08:35   15   intent element in the first place.

16         THE COURT:  That's been submitted and ruled upon.

17         MR. BERLANGA:  Thank you, Your Honor.

18         MR. KING:  Your Honor, the case that I was

19   thinking about, the independent contractor question was

04:08:46   20   not submitted to the jury.  However, it was considered in

21   the district court's analysis.  And that is the *Gate Guard*

22   case.

23         THE COURT:  Very well.  So just to be clear, in

24   regards to the Court's proposed response to Jury Question

04:09:00   25   Number 2, the defense has no objection.

*Laura Wells, CRR, RDR*

1     And you object to the response on the ground that you

2    believe that a different response should be submitted, and

3    you have outlined that; is that correct?

4          MR. BERLANGA:  Correct, Your Honor.

04:09:13    5          THE COURT:  Very well.  Thank you, Counsel.

6          THE CLERK:  All rise.

7      (Recess from 4:09 p.m. to 4:53 p.m.)

8      (End of requested excerpt.)

9    *Date: August 12, 2019*

10              ***COURT REPORTER'S CERTIFICATE***

11      *I, Laura Wells, certify that the foregoing is a*

12    *correct transcript from the record of proceedings in the*

13    *above-entitled matter.*

14

15              */s/ Laura Wells*

16          *Laura Wells, CRR, RMR*

17

18

19

20

21

22

23

24

25

**$**

$10.86 [1] - 83:14
$100 [2] - 63:17
$100,000 [1] - 63:10
$120,000 [2] - 63:7, 63:9
$144,000 [1] - 63:8
$195.75 [1] - 6:20
$2.13 [6] - 61:5, 61:15, 71:17, 71:18, 72:9, 81:1
$20 [10] - 60:13, 71:21, 71:24, 72:2, 72:13, 75:7, 76:11, 77:1, 80:24
$200,000 [1] - 63:10
$25 [1] - 60:14
$30 [1] - 80:24
$36,300 [5] - 63:3, 63:9, 63:18, 63:20
$400 [1] - 77:8
$6,000 [1] - 63:11
$615,000 [1] - 63:13
$65,000 [1] - 63:12
$7,000 [1] - 63:4
$7.25 [15] - 5:13, 27:18, 51:15, 57:18, 58:1, 61:16, 65:8, 65:25, 67:17, 67:22, 69:11, 71:17, 72:5, 83:13, 88:24
$96,000 [1] - 63:8

**'**

'hours [2] - 40:6, 40:17

**/**

/s [1] - 97:15

**1**

1 [22] - 1:9, 2:1, 7:15, 7:19, 8:5, 27:9, 30:3, 30:20, 34:18, 35:15, 35:23, 37:25, 38:9, 38:19, 56:4, 56:22, 57:16, 57:24, 66:17, 93:24
1,500 [1] - 83:10

1.......................
....... [1] - 2:8
1.5 [2] - 52:21, 58:1
10 [9] - 16:17, 17:5, 33:13, 34:25, 65:3, 72:17, 72:19, 76:14, 79:8
106 [2] - 13:17, 13:21
107 [1] - 11:23
108 [3] - 11:19, 11:20
10:05 [1] - 12:13
10:30 [1] - 23:16
11 [4] - 16:17, 65:3, 82:9, 85:19
11-hour [1] - 17:5
11.26 [7] - 34:10, 34:15, 34:22, 35:6, 35:22, 95:17, 96:3
114 [6] - 14:6, 14:7, 14:11, 14:15, 14:24, 22:8
11:08 [2] - 14:16, 14:25
11:34 [1] - 26:10
12 [9] - 14:4, 15:2, 60:19, 68:21, 91:20, 92:9, 92:11, 92:15, 97:9
1220 [1] - 1:17
129 [4] - 15:9, 15:10, 15:13, 15:14
12:00 [6] - 12:1, 13:25, 14:21, 14:22, 22:12, 31:19
12:07 [1] - 44:23
12:20 [1] - 44:23
12:21 [1] - 45:20
12:30 [2] - 31:16, 31:18
132 [4] - 16:9, 16:21, 16:25, 17:1
14 [4] - 12:5, 57:7, 57:8, 57:10
14th [1] - 57:10
15 [1] - 31:14
16 [2] - 24:25, 25:4
168 [2] - 23:6, 52:17
18 [1] - 85:19
18th [1] - 7:24
19 [2] - 1:6, 2:3
1:25 [1] - 90:18

1:27 [1] - 91:11
1:29 [1] - 93:16
1:30 [2] - 31:15, 31:21
1:56:36 [1] - 8:5

**2**

2 [13] - 12:9, 27:12, 30:20, 30:22, 34:12, 34:13, 38:1, 38:19, 56:19, 57:16, 57:24, 94:17, 96:25
20 [7] - 28:25, 29:2, 29:16, 45:9, 45:11, 77:7
20/10 [3] - 29:16, 45:7, 45:8
2013 [1] - 67:20
2014 [1] - 57:8
2015 [3] - 39:17, 57:10, 67:20
2017 [2] - 57:8, 57:10
2019 [4] - 1:6, 2:3, 7:24, 97:9
233 [1] - 39:14
24 [2] - 15:6, 15:7
25 [5] - 29:4, 29:6, 29:7, 45:17, 45:18
26 [2] - 2:5, 29:7
28 [1] - 12:4
2:00 [9] - 14:1, 14:21, 14:22, 16:20, 17:5, 17:19, 17:25, 22:12
2:58:37 [1] - 9:6

**3**

3 [13] - 2:4, 2:4, 27:13, 34:3, 35:24, 36:1, 36:5, 37:1, 38:20, 57:1, 57:6, 57:9, 67:14
3-inch [1] - 84:22
30 [7] - 11:1, 29:8, 29:14, 29:18, 31:9, 45:6, 45:14
31 [1] - 12:6
3355 [1] - 1:17
349 [1] - 39:16
35 [2] - 16:7, 18:6
3:00 [1] - 17:4
3:52 [1] - 93:16

3d [1] - 39:15

**4**

4 [14] - 27:15, 28:9, 30:20, 30:23, 33:23, 36:7, 37:2, 39:21, 57:11, 91:19, 91:21, 91:24, 92:12, 92:21
4.5 [1] - 67:17
40 [11] - 16:8, 41:6, 41:8, 41:24, 42:3, 52:4, 52:15, 52:20, 52:23, 53:2, 58:1
40-hour [1] - 19:14
4101 [1] - 1:13
45 [4] - 6:8, 7:7, 7:10
46 [1] - 2:5
47 [2] - 33:2, 37:3
49 [3] - 9:3, 9:5, 9:7
4:04 [1] - 93:17
4:09 [2] - 1:4, 97:7
4:17-CV-02171 [1] - 1:3
4:17-CV-2171 [4] - 3:3, 32:4, 46:16, 93:19
4:53 [1] - 97:7

**5**

5 [13] - 27:23, 28:9, 30:20, 33:19, 36:18, 41:5, 41:11, 41:23, 57:19, 91:19, 91:22, 92:12, 92:21
50 [1] - 19:15
500 [2] - 83:11, 83:14
515 [1] - 1:23
541 [1] - 39:15
56 [1] - 19:5
58 [1] - 2:6
5:00 [3] - 90:23, 90:24, 91:3

**6**

6 [3] - 33:14, 37:16, 94:16
6-inch [1] - 84:24
60 [3] - 10:5, 11:1, 19:15
605 [1] - 39:16
66 [2] - 6:8, 10:8

Concordance

69 [1] - 2:6
6:30 [3] - 15:18, 17:10, 17:24

**7**

7 [4] - 38:3, 40:4, 40:5, 40:16
713 [1] - 1:18
713-236-8330 [1] - 1:14
72 [2] - 12:12, 12:15
723 [1] - 4:21
74 [3] - 13:3, 13:5
77002 [1] - 1:23
77007 [1] - 1:13
77098 [1] - 1:18
7:00 [7] - 12:1, 15:18, 16:20, 17:11, 17:19, 17:24, 17:25
7th [1] - 32:18

**8**

8 [1] - 82:24
80 [1] - 7:22
8004 [1] - 1:23
86 [1] - 2:7
88 [1] - 8:9
89 [5] - 2:7, 6:8, 8:8, 8:9
8:59 [1] - 1:4

**9**

9 [3] - 72:17, 72:19, 76:14
91 [1] - 2:8
93 [1] - 2:8
95 [2] - 67:18, 67:21
97 [1] - 2:9
986-9471 [1] - 1:18
990 [1] - 4:20
9:00 [4] - 46:5, 91:5, 91:6, 91:7
9:37 [1] - 26:10

**A**

a.m [6] - 17:5, 26:10, 91:5, 91:6, 91:7
A.M [1] - 1:4

able [6] - 21:1, 27:22, 58:10, 66:5, 88:11, 95:15
above-entitled [1] - 97:13
absence [1] - 36:25
absolutely [2] - 65:7, 87:12
accepted [1] - 49:20
accepting [1] - 18:20
accepts [1] - 51:20
accomplish [2] - 54:13, 73:10
according [3] - 54:23, 75:1, 75:7
accurate [1] - 24:8
Act [9] - 23:4, 33:8, 40:24, 50:21, 50:25, 51:21, 51:24, 70:20, 71:2
acting [1] - 66:25
action [2] - 27:24, 49:18
Action [1] - 46:16
acts [1] - 39:10
actual [5] - 5:3, 9:10, 10:13, 11:3
add [2] - 18:1, 24:21
added [1] - 38:1
addition [1] - 40:21
additional [8] - 3:17, 12:5, 24:16, 26:16, 29:20, 60:12, 92:14, 96:10
address [2] - 27:2, 82:23
adequate [3] - 53:7, 53:9, 53:12
adjourn [1] - 43:10
admit [2] - 83:25, 84:1
admitted [10] - 5:3, 5:5, 47:19, 47:20, 48:18, 59:15, 60:2, 90:1, 91:18, 91:19
ads [2] - 63:11, 63:12
advertisements [1] - 64:19
advice [1] - 39:12
affirm [1] - 27:1
afford [1] - 21:21

afraid [1] - 42:5
afternoon [1] - 45:22
aggregate [1] - 21:18
agree [4] - 20:1, 25:15, 65:7
agreed [8] - 44:21, 54:23, 75:1, 75:6, 75:7, 76:8
agreement [1] - 44:8
ahead [2] - 29:14, 38:23
aids [1] - 89:16
air [1] - 84:18
AL [2] - 1:3, 1:6
al [5] - 3:4, 46:15, 46:16, 93:20
Alabama [1] - 1:17
alcohol [2] - 63:8, 66:14
Alex [1] - 1:21
ALFRED [1] - 1:8
allowed [2] - 87:6, 89:14
alone [1] - 49:5
ALSO [1] - 1:19
alternative [1] - 20:23
Alvarez [1] - 1:20
amount [26] - 4:15, 10:8, 10:13, 13:8, 25:5, 25:13, 37:3, 42:6, 48:9, 53:5, 53:10, 53:16, 53:18, 54:23, 56:15, 61:22, 63:6, 63:17, 68:1, 74:17, 75:1, 75:7, 76:8, 83:1, 83:3
analysis [1] - 96:21
AND [2] - 1:7, 1:8
announce [1] - 3:5
Announcements...
..........................
..... [1] - 2:4
ANSWER [34] - 8:14, 8:17, 9:14, 12:19, 12:23, 13:8, 13:24, 15:17, 15:22, 74:2, 74:5, 74:8, 74:11, 74:14, 75:14, 75:16, 75:18, 75:21, 75:24, 76:10, 76:12, 77:12, 77:15, 77:18, 78:23, 78:25, 79:21, 79:23,

80:7, 80:10, 80:13, 81:20, 81:22, 82:1
answer [37] - 5:12, 11:2, 11:24, 25:12, 27:19, 27:22, 30:15, 38:12, 38:13, 38:19, 38:20, 54:3, 56:7, 56:10, 56:11, 56:12, 56:13, 56:23, 56:24, 56:25, 57:5, 57:6, 57:8, 57:16, 57:24, 66:22, 67:4, 67:13, 78:11, 79:4, 80:1, 82:13, 90:6
answered [6] - 24:25, 31:3, 36:1, 57:15, 57:23, 78:3
answers [5] - 25:3, 25:14, 25:16, 25:23, 26:2
anticipate [2] - 28:21, 28:23
anyway [1] - 77:8
apiece [1] - 29:9
apologies [2] - 26:12, 44:19
apologize [7] - 8:21, 14:10, 14:13, 29:12, 34:9, 42:13, 45:24
App [1] - 39:16
appeals [1] - 26:25
appear [3] - 9:20, 28:17, 64:24
appearances [1] - 3:5
APPEARANCES [1] - 1:10
applicability [1] - 39:8
apply [5] - 36:13, 36:14, 46:19, 47:24, 85:23
applying [2] - 32:18, 36:19
appreciate [1] - 9:23
appreciates [1] - 85:9
approach [2] - 92:3, 92:7
appropriate [5] - 32:21, 36:13, 36:14, 68:22, 96:6
argue [2] - 19:24, 20:3
argument [7] - 20:8, 20:9, 20:10, 58:4, 69:20, 73:22, 86:5

Concordance

arguments [5] - 47:15, 47:16, 47:17, 47:18, 47:21
arrangements [1] - 91:7
arrested [1] - 84:2
arrive [2] - 17:10, 17:24
arrived [1] - 23:13
arrives [1] - 16:19
arriving [2] - 47:7, 48:6
assignment [4] - 54:13, 54:15, 73:11, 73:13
assistance [1] - 46:4
assisted [1] - 1:25
associated [1] - 79:13
assuming [2] - 6:2, 18:18
attempt [1] - 94:4
ATTENDANCE [1] - 1:19
attention [1] - 89:2
attentive [1] - 70:4
attire [1] - 59:18
attorneys [4] - 46:1, 46:4, 46:7, 90:14
August [1] - 97:9
available [1] - 67:3
Avenue [1] - 1:13
average [11] - 6:16, 14:19, 15:20, 17:2, 22:10, 22:13, 22:14, 36:11, 36:21, 68:3, 68:5
await [3] - 91:2, 93:1, 93:7
award [3] - 42:6, 57:7, 57:9
awful [2] - 87:14, 87:15

**B**

bachelor [1] - 64:15
backs [1] - 80:9
backwards [1] - 34:8
bad [2] - 62:21
bar [4] - 60:11, 78:4, 79:25, 80:9
bartenders [2] - 64:1,

65:21
base [2] - 58:16, 84:11
based [16] - 5:16, 13:8, 17:20, 19:3, 27:19, 35:18, 36:3, 36:13, 41:25, 48:2, 48:7, 54:6, 59:7, 62:1, 88:3
basic [2] - 3:19, 27:8
basis [12] - 21:21, 23:10, 39:11, 54:20, 63:2, 74:23, 75:17, 75:20, 76:2, 78:1, 78:2
bear [1] - 9:2
become - 72:6
becomes [1] - 18:19
beer [1] - 72:11
BEFORE [1] - 1:8
begging [1] - 11:10
begin [3] - 46:11, 90:21, 91:9
Beginning [1] - 3:1
beginning [1] - 58:18
begins [1] - 37:19
behalf [4] - 32:9, 37:12, 69:23, 85:8
beliefs [1] - 89:11
believes [3] - 35:3, 36:2, 36:8
belong [1] - 58:21
below [2] - 37:5, 58:15
bench [2] - 32:23, 34:21
benefit [5] - 40:8, 40:18, 51:19, 52:18, 60:10
benefits [7] - 54:21, 54:24, 61:18, 61:19, 74:25, 75:2, 76:7
Bennett [9] - 7:17, 72:20, 73:23, 76:14, 78:7, 80:17, 82:10, 82:22, 82:25
BENNETT [1] - 1:8
Bennett's [4] - 73:9, 79:8, 80:14, 82:19
Berlanga [3] - 1:11, 3:8, 93:2
BERLANGA [10] - 3:8, 8:25, 94:10, 94:22, 95:9, 95:19, 95:23, 96:12, 96:17, 97:4

best [4] - 29:7, 37:13, 94:20, 96:9
between [18] - 12:10, 28:12, 35:13, 37:25, 38:4, 41:18, 47:15, 49:2, 54:5, 58:19, 63:7, 63:10, 68:4, 68:6, 68:20, 68:23, 76:8, 86:20
beyond [1] - 39:7
bias [1] - 49:9
big [1] - 82:14
bills [1] - 13:10
bit [6] - 6:13, 14:17, 58:10, 87:11, 87:12, 88:6
book [1] - 55:15
boss [1] - 88:21
bothered [1] - 22:18
bouncers [3] - 63:9, 64:2, 79:12
box [1] - 26:20
break [5] - 23:16, 90:19, 91:9, 93:11, 93:13
breakdown [1] - 4:25
Bridget [4] - 61:24, 64:21, 69:15, 87:20
brief [2] - 32:23, 34:21
briefing [1] - 26:16
briefs [1] - 95:3
bring [3] - 32:1, 43:6, 45:19
bringing [1] - 69:10
brings [1] - 43:12
brought [1] - 72:23
building [1] - 63:24
bunch [1] - 69:1
burden [7] - 3:18, 3:22, 3:23, 24:19, 48:8, 49:4
business [10] - 40:9, 40:19, 52:19, 55:15, 55:17, 64:4, 64:18, 64:19, 65:4, 66:24

**C**

calculate [6] - 10:3, 31:2, 52:24, 57:14, 57:22, 68:6
calculated [2] - 4:16,

5:14
calculating [1] - 36:9
calculation [9] - 4:24, 6:4, 10:12, 22:21, 25:7, 36:2, 36:15, 36:20, 84:21
calculations [1] - 17:17
calculator [1] - 68:13
calendars [1] - 24:11
camera [1] - 58:7
cameras [1] - 64:2
cannot [7] - 4:1, 4:2, 5:2, 21:14, 55:25, 70:23, 71:5
caption [1] - 44:15
card [2] - 60:9, 60:14
cards [1] - 64:19
case [52] - 3:19, 4:21, 4:23, 10:11, 21:5, 21:11, 24:3, 25:17, 26:4, 26:23, 32:15, 32:22, 34:19, 35:4, 43:18, 44:2, 44:5, 44:8, 46:19, 47:2, 47:4, 48:1, 49:9, 49:10, 49:23, 51:15, 53:6, 54:1, 54:7, 58:10, 58:12, 61:23, 69:11, 70:7, 70:12, 70:15, 75:4, 76:3, 82:18, 87:15, 87:16, 88:24, 88:25, 89:6, 89:12, 90:10, 95:12, 95:17, 96:2, 96:4, 96:18, 96:22
CASE [4] - 23:17, 31:8, 31:22, 43:3
cases [7] - 4:19, 20:11, 20:13, 23:11, 34:20
CASEY [1] - 1:3
Casey [13] - 1:15, 3:3, 3:11, 5:21, 6:5, 6:7, 6:22, 6:23, 11:7, 19:9, 46:15, 56:8, 93:19
cash [1] - 85:16
caught [1] - 91:16
caused [3] - 31:1, 57:14, 57:22
cell [1] - 24:12
cents [2] - 57:16, 57:24
certain [6] - 51:18, 54:13, 59:18, 59:19,

Concordance

62:2, 73:11

**certainly** [2] - 9:20, 32:21

**CERTIFICATE** [1] - 97:10

**certificate** [1] - 38:15

**Certificate.............

............** [1] - 2:9

**certify** [1] - 97:11

**cetera** [1] - 13:11

**challenge** [1] - 26:2

**chance** [1] - 27:11

**change** [5] - 41:7, 41:14, 44:15, 86:21, 89:9

**changes** [4] - 28:16, 42:18, 62:11, 91:16

**charge** [35] - 10:11, 10:16, 27:8, 28:3, 29:22, 30:10, 31:24, 32:2, 32:9, 32:11, 32:13, 32:22, 33:1, 33:4, 33:15, 33:22, 34:1, 35:8, 36:5, 37:12, 44:25, 59:4, 59:20, 60:12, 66:2, 66:3, 74:16, 74:17, 76:15, 78:6, 78:13, 89:25, 95:8, 95:11

**CHARGE** [1] - 1:7

**Charge** [9] - 2:1, 2:5, 2:5, 34:10, 34:15, 34:22, 35:6, 35:22, 95:17

**charged** [4] - 59:12, 59:14, 59:16, 80:24

**charges** [2] - 39:20, 44:13

**check** [3] - 39:19, 59:22, 59:24

**checking** [1] - 38:7

**chief** [1] - 26:5

**childcare** [1] - 82:6

**Circuit** [5] - 20:18, 32:18, 39:17, 95:2, 95:22

**circumstances** [4] - 48:20, 49:12, 55:22, 62:4

**circumstantial** [5] - 19:25, 20:5, 48:23, 48:24, 49:2

**cite** [1] - 4:22, 8:20

**cited** [6] - 20:11, 21:24, 34:20, 35:4, 95:2, 96:1

**City** [3] - 43:7, 93:15

**Civil** [1] - 46:16

**claim** [6] - 5:12, 48:14, 48:15, 51:7, 52:6, 53:11

**claiming** [2] - 25:6, 69:11

**claims** [8] - 37:20, 37:24, 50:22, 51:2, 51:22, 51:25, 53:6, 53:8

**clarification** [1] - 94:15

**classified** [1] - 71:15

**clear** [6] - 10:12, 33:11, 53:21, 53:22, 96:13, 96:23

**clearest** [1] - 7:11

**clearly** [1] - 65:19

**Clerk** [1] - 28:12

**clerk** [1] - 12:10

**CLERK** [1] - 97:6

**client's** [1] - 24:4

**clock** [3] - 20:13, 59:23, 66:7

**clocked** [2] - 66:8

**close** [4] - 15:19, 26:4, 28:25, 90:25

**closely** [1] - 28:15

**closes** [1] - 66:24

**closing** [2] - 28:23, 69:20

**Closing** [4] - 2:1, 2:6, 2:6, 2:7

**CLOSING** [1] - 1:7

**clothes** [1] - 88:1

**club** [37] - 20:25, 22:25, 23:2, 24:4, 24:7, 58:14, 60:12, 60:17, 60:18, 60:23, 62:2, 62:7, 62:10, 63:2, 63:15, 63:24, 65:2, 65:3, 65:5, 71:11, 71:15, 78:4, 81:13, 83:23, 86:20, 87:4, 87:7, 87:24, 87:25, 88:1, 88:2, 88:11, 88:12

**club's** [1] - 88:25

**clubs** [2] - 64:23, 80:3

**coffee** [1] - 23:16

**comfortable** [1] - 69:3

**coming** [1] - 59:14

**comment** [2] - 30:2, 30:12

**comments** [4] - 28:3, 29:21, 31:23, 37:15

**commission** [5] - 54:19, 74:23, 75:17, 75:20, 76:2

**common** [2] - 85:12, 85:13

**commonly** [1] - 52:23

**communicate** [1] - 90:11

**compelled** [1] - 59:12

**compensable** [4] - 22:24, 23:3, 40:13, 67:21

**compensate** [4] - 30:24, 41:12, 57:12, 57:20

**compensated** [3] - 55:4, 76:18, 77:25

**complete** [2] - 6:3, 22:20

**completely** [1] - 83:17

**completes** [2] - 54:15, 73:13

**complying** [1] - 39:11

**comport** [1] - 34:14

**computer** [1] - 1:25

**computer-assisted** [1] - 1:25

**concerns** [1] - 22:22

**conclude** [3] - 13:13, 48:25, 56:16

**concluded** [1] - 90:8

**conclusion** [1] - 16:1

**conclusions** [1] - 48:19

**conclusively** [1] - 82:20

**conclusory** [2] - 21:15, 21:16

**conduct** [5] - 39:6, 39:9, 57:2, 57:4, 67:1

**conference** [4] - 28:3, 31:24, 32:2, 44:25

**confirm** [3] - 38:2, 43:25, 44:3

**confuse** [1] - 72:14

**confusion** [3] - 40:1, 42:6, 96:10

**consecutive** [1] - 23:7

**conservative** [1] - 6:17

**consider** [15] - 47:8, 47:18, 48:16, 49:3, 49:7, 50:9, 50:17, 54:6, 55:22, 68:19, 69:6, 69:8, 82:16, 82:17, 85:24

**consideration** [2] - 86:2, 89:7

**considered** [2] - 49:12, 96:20

**considering** [1] - 50:5

**considers** [2] - 53:21, 53:23

**consistency** [1] - 49:11

**consistent** [1] - 30:10

**consists** [1] - 48:16

**constitute** [1] - 47:13

**consult** [1] - 89:4

**consulting** [1] - 90:14

**contain** [1] - 33:5

**contained** [1] - 46:19

**containing** [1] - 32:23

**contend** [1] - 71:7

**contends** [2] - 51:3, 52:1

**context** [1] - 20:13

**continue** [1] - 38:8

**continues** [1] - 37:19

**continuing** [1] - 96:10

**contract** [3] - 62:1, 80:23, 81:9

**contractor** [39] - 28:17, 32:13, 33:7, 33:13, 35:16, 51:4, 52:2, 53:20, 54:3, 54:12, 54:14, 54:16, 54:22, 55:2, 55:8, 55:25, 58:25, 62:3, 64:22, 65:24, 69:16, 70:23, 73:10, 73:12, 73:14, 74:25, 76:16, 78:14, 78:16, 79:6, 81:24,

82:3, 87:11, 88:7, 88:9, 88:13, 88:15, 95:13, 96:19

**contractor's** [1] - 88:14

**contractors** [11] - 53:25, 55:12, 58:19, 59:1, 59:9, 71:12, 71:13, 79:9, 81:9, 86:10, 86:11

**contradict** [1] - 25:20

**contradicted** [3] - 25:3, 49:13, 49:20

**contradictory** [1] - 22:6

**contrary** [2] - 49:14, 50:5

**contrast** [2] - 54:12, 73:9

**control** [14] - 32:18, 32:19, 34:19, 35:1, 54:10, 56:2, 59:11, 60:23, 73:6, 74:15, 84:25, 87:8, 88:16

**controlled** [1] - 86:25

**controlling** [5] - 32:15, 32:16, 55:20, 60:24, 80:19

**controls** [4] - 54:8, 59:10, 88:2

**controversy** [1] - 10:1

**convinced** [1] - 89:10

**convincing** [1] - 50:2

**COOK** [136] - 3:7, 6:6, 6:14, 6:23, 7:2, 7:6, 7:11, 7:16, 7:19, 7:21, 8:1, 8:4, 8:8, 8:11, 8:20, 9:1, 9:6, 9:9, 9:20, 9:25, 10:6, 10:10, 10:21, 10:23, 11:6, 11:9, 11:15, 11:18, 11:22, 12:8, 12:12, 12:15, 12:17, 13:3, 13:6, 13:15, 13:17, 13:19, 13:22, 14:3, 14:5, 14:8, 14:10, 14:12, 14:16, 14:24, 15:4, 15:8, 15:12, 15:15, 16:4, 16:8, 16:13, 16:16, 16:21, 16:24, 17:1, 17:12, 17:14, 17:22, 18:1, 18:4, 18:7, 18:10, 18:13, 18:15, 18:24, 19:1, 19:17,

19:24, 20:3, 20:8, 20:10, 28:7, 28:10, 28:14, 28:20, 28:24, 29:2, 29:5, 29:12, 29:19, 30:8, 30:12, 30:18, 31:5, 31:25, 32:10, 33:16, 33:19, 33:23, 34:3, 34:8, 34:12, 34:17, 34:24, 35:7, 35:11, 35:14, 35:24, 36:7, 36:17, 36:24, 37:8, 41:19, 41:22, 42:5, 42:10, 42:13, 42:16, 42:22, 42:25, 43:4, 43:9, 43:13, 43:16, 43:20, 44:1, 44:12, 44:15, 44:17, 44:19, 45:7, 45:10, 58:5, 58:7, 86:6, 86:8, 91:23, 92:3, 92:5, 92:14, 92:17, 92:19, 93:2, 93:5

**Cook** [3] - 1:12, 1:12, 3:7

**Cook.........** [1] - 2:7

**Cook...................** [1] - 2:6

**cooks** [1] - 64:1

**copies** [1] - 42:18

**copy** [4] - 45:5, 46:13, 89:25, 91:18

**corporate** [4] - 19:2, 19:17, 19:25, 59:15

**correct** [27] - 17:12, 17:23, 18:4, 18:23, 18:24, 19:16, 19:17, 19:23, 30:14, 33:15, 36:8, 43:19, 74:5, 74:7, 74:10, 75:13, 75:19, 75:23, 75:24, 76:9, 79:3, 80:12, 81:19, 81:25, 97:3, 97:4, 97:12

**correction** [1] - 37:22

**corrections** [5] - 43:12, 44:24, 45:1, 91:14, 91:17

**corroborate** [1] - 24:9

**corroborating** [1] - 21:14

**costs** [1] - 51:17

**Counsel** [9] - 3:5, 5:18, 5:22, 7:5, 12:11, 26:8, 28:13, 92:24, 97:5

**counsel** [16] - 3:14, 5:9, 23:22, 32:6, 32:9, 35:13, 41:18, 47:14, 47:16, 58:3, 71:1, 73:23, 91:12, 91:18, 92:7, 93:21

**Counselor** [1] - 21:7

**counselor** [1] - 21:8

**counted** [1] - 49:25

**counting** [1] - 49:23

**County** [1] - 64:3

**couple** [3] - 24:14, 83:22, 91:13

**course** [3] - 3:20, 27:25, 63:18

**COURT** [185] - 1:1, 3:2, 3:13, 6:12, 6:21, 6:25, 7:4, 7:8, 7:13, 7:18, 7:20, 7:23, 8:3, 8:6, 8:9, 8:18, 9:4, 9:7, 9:19, 9:22, 10:2, 10:7, 10:18, 10:22, 11:4, 11:7, 11:14, 11:17, 11:20, 12:3, 12:11, 12:14, 12:16, 13:2, 13:4, 13:14, 13:16, 13:18, 13:21, 14:2, 14:4, 14:7, 14:9, 14:11, 14:13, 15:1, 15:6, 15:10, 15:14, 16:3, 16:7, 16:11, 16:15, 16:19, 16:23, 16:25, 17:8, 17:13, 17:18, 17:23, 18:3, 18:5, 18:9, 18:12, 18:14, 18:17, 18:25, 19:6, 19:20, 20:2, 20:6, 20:9, 21:7, 21:10, 23:13, 23:19, 24:20, 24:22, 25:9, 26:1, 26:11, 28:6, 28:9, 28:13, 28:19, 28:21, 29:1, 29:4, 29:8, 29:11, 29:15, 29:20, 29:23, 30:4, 30:7, 30:11, 30:19, 31:7, 31:9, 31:23, 32:3, 33:10, 33:17, 33:21, 34:1, 34:7, 34:10, 34:15, 34:22, 35:5, 35:9, 35:22, 36:6, 36:16, 36:23, 37:7, 37:10, 37:17, 37:22, 37:24, 38:2, 38:7, 38:10, 38:17, 39:18, 40:2, 40:5, 40:15, 40:25, 41:7,

41:14, 41:17, 41:21, 42:4, 42:9, 42:12, 42:15, 42:17, 42:23, 43:1, 43:5, 43:11, 43:15, 43:17, 43:25, 44:3, 44:11, 44:13, 44:16, 44:18, 44:22, 44:24, 45:8, 45:13, 45:16, 45:18, 45:21, 58:6, 69:19, 69:22, 86:4, 86:7, 89:3, 91:12, 92:1, 92:4, 92:7, 92:9, 92:16, 92:18, 92:20, 92:23, 93:4, 93:6, 93:9, 93:18, 94:14, 95:6, 95:16, 95:21, 96:5, 96:16, 96:23, 97:5, 97:10

**court** [6] - 20:18, 20:19, 21:13, 26:25, 38:15, 90:13

**Court** [62] - 1:22, 3:16, 3:17, 3:23, 3:25, 4:2, 4:7, 4:18, 4:19, 4:20, 5:2, 5:4, 5:17, 5:25, 9:21, 10:14, 10:19, 11:1, 12:10, 14:10, 18:21, 20:7, 23:12, 23:14, 23:24, 26:13, 26:17, 27:3, 27:16, 27:17, 28:12, 28:16, 32:4, 32:8, 32:14, 33:3, 33:6, 35:9, 35:17, 36:3, 36:9, 36:12, 36:19, 37:11, 38:11, 39:2, 39:19, 41:14, 44:4, 44:25, 46:8, 46:9, 46:14, 93:17, 93:23, 94:1, 94:3, 94:17, 95:5, 95:8, 95:10, 95:24

**court's** [1] - 96:21

**Court's** [4] - 11:10, 44:6, 46:9, 96:24

**Court.................** [1] - 2:5

**Court....................** ........... [1] - 2:5

**courthouse** [1] - 69:25

**courtroom** [14] - 3:15, 26:12, 31:11, 31:13, 31:19, 32:7, 45:20, 48:3, 90:3, 90:15, 91:11, 93:22

**courts** [1] - 21:12

**cover** [1] - 6:18

covered [3] - 11:23, 51:6, 52:4
covers [1] - 71:2
craft [1] - 10:16
create [2] - 4:16, 40:1
credibility [4] - 49:6, 49:16, 85:7, 88:5
credible [1] - 49:13
credit [3] - 51:17, 60:9, 60:14
critical [1] - 23:21
cross [4] - 17:7, 17:14, 72:21, 83:25
cross-examination [1] - 83:25
cross-examined [1] - 72:21
CRR [2] - 1:22, 97:16
customer [2] - 74:4, 76:9
customers [9] - 65:14, 65:15, 65:16, 73:20, 76:4, 76:25, 78:4, 80:5, 80:25

**D**

d/b/a [1] - 50:23
damage [5] - 4:16, 27:20, 36:14, 36:20, 84:21
damages [24] - 22:23, 25:2, 25:5, 25:8, 25:13, 25:19, 25:24, 30:25, 36:9, 41:13, 42:2, 53:16, 56:15, 56:17, 56:20, 57:7, 57:9, 57:13, 57:21, 66:22, 67:7, 82:16, 82:23, 84:12
dance [12] - 59:18, 64:9, 65:15, 72:14, 73:19, 73:20, 74:1, 74:3, 74:6, 74:12, 75:8, 84:24
danced [6] - 73:18, 73:19, 73:20, 77:6, 80:3, 80:25
dancer [20] - 59:25, 60:13, 61:7, 61:11, 64:8, 64:15, 65:1, 65:3, 65:4, 67:20, 68:9, 71:15, 72:13,

81:16, 81:17, 81:24, 84:15, 86:20, 87:23
dancer's [1] - 89:1
dancers [56] - 23:22, 37:4, 58:15, 58:21, 58:23, 58:25, 59:5, 59:8, 59:11, 59:12, 59:14, 59:16, 59:22, 60:1, 60:3, 60:7, 60:11, 60:15, 60:16, 60:19, 60:22, 60:25, 61:1, 61:6, 61:10, 61:16, 61:21, 62:5, 62:13, 62:15, 62:19, 62:24, 63:15, 63:23, 64:14, 65:7, 65:13, 66:13, 67:6, 69:11, 73:16, 74:15, 76:22, 79:11, 80:21, 80:23, 81:7, 86:9, 86:21, 86:25, 87:2, 87:19, 87:20
dancers' [1] - 66:12
dancing [7] - 6:10, 6:14, 71:21, 72:4, 76:8, 80:8, 84:25
dark [1] - 83:17
Date [1] - 97:9
date [1] - 90:7
dates [3] - 6:9, 7:7, 8:23
days [45] - 9:12, 9:14, 9:16, 9:23, 9:24, 9:25, 10:2, 10:4, 10:7, 12:2, 12:20, 12:22, 12:25, 13:1, 13:4, 13:24, 13:25, 14:2, 15:1, 15:4, 15:5, 15:20, 15:22, 15:25, 16:1, 16:5, 16:10, 16:13, 18:3, 52:16, 62:2, 68:8, 68:14, 68:16, 68:18, 68:24, 69:6, 69:25, 73:17, 82:5, 83:22, 84:4, 84:6, 85:10, 87:7
deal [2] - 33:10, 71:25
dealing [1] - 23:14
decide [8] - 26:24, 35:20, 48:1, 49:23, 54:1, 68:4, 87:17, 89:6
decided [1] - 26:13
deciding [1] - 49:3
decision [6] - 26:2, 26:5, 26:7, 35:18, 81:23

decisions [1] - 48:7
declarants [2] - 19:4, 88:18
declare [1] - 29:13
decor [2] - 63:25, 88:2
deejay [3] - 24:5, 60:24, 61:1
deejays [5] - 59:20, 60:23, 63:3, 65:21, 79:13
defendant [33] - 3:10, 3:11, 20:23, 31:1, 38:24, 39:21, 43:18, 44:7, 48:5, 50:22, 51:2, 51:10, 51:12, 51:22, 51:25, 52:9, 52:11, 53:6, 53:12, 54:2, 55:18, 56:6, 56:14, 57:2, 57:13, 57:21, 70:16, 82:12, 86:12, 88:19, 94:12, 95:4, 96:1
defendant's [4] - 24:17, 26:14, 43:22, 53:8
Defendant's [2] - 92:10, 92:15
defendants [5] - 20:23, 25:7, 41:23, 43:21, 71:9
DEFENDANTS [1] - 1:15
defense [6] - 3:22, 20:12, 37:12, 69:19, 93:6, 96:25
defined [3] - 23:6, 39:24, 40:9
defines [1] - 78:14
definitely [1] - 45:11
definition [7] - 39:1, 39:19, 40:3, 40:6, 40:10, 40:15, 95:7
definitions [2] - 44:16, 94:19
delay [2] - 45:24, 46:7
deliberate [2] - 89:4, 89:24
deliberation [1] - 70:10
deliberations [6] - 46:11, 89:8, 90:3, 90:12, 90:21, 91:9
Deliberations........

.................... [1] - 2:7
demeanor [1] - 49:8
demonstrative [2] - 5:2, 5:5
denied [3] - 26:15, 39:18, 86:23
denies [2] - 51:2, 51:25
Department [1] - 67:3
depended [1] - 22:16
dependent [2] - 64:20, 87:24
deposing [1] - 23:25
deposition [1] - 88:14
derived [1] - 39:13
described [1] - 4:7
description [2] - 55:19, 80:18
deserved [1] - 40:14
deserves [1] - 49:17
desired [2] - 54:13, 73:11
detail [3] - 25:7, 50:20, 66:6
details [2] - 54:14, 73:12
determine [8] - 47:19, 47:21, 49:5, 56:15, 66:20, 68:22, 72:16, 90:24
determined [6] - 27:6, 27:17, 34:25, 54:15, 73:13, 91:13
determines [1] - 56:1
determining [4] - 33:6, 35:15, 50:8, 51:16
deviates [1] - 34:19
difference [2] - 61:15, 62:13
different [8] - 7:15, 14:14, 50:11, 59:2, 64:23, 67:14, 88:19, 97:2
differently [1] - 89:12
differs [1] - 89:16
difficult [2] - 10:15, 53:10
difficulty [1] - 21:4
dire [1] - 8:1

direct [6] - 14:5, 20:1, 33:14, 48:22, 49:2, 49:20

directed [5] - 26:4, 26:14, 26:15, 26:22, 44:6

directly [3] - 78:6, 78:13, 78:14

discharged [1] - 90:9

disclose [1] - 90:16

disclosure [1] - 16:4

disconnect [1] - 14:13

discussed [1] - 5:4

discussion [4] - 12:10, 28:12, 35:13, 41:18

disgruntled [1] - 85:15

dispute [2] - 21:3, 94:2

disputed [1] - 65:20

disregard [7] - 39:1, 39:5, 46:25, 47:3, 47:5, 57:3, 67:1

distinct [1] - 40:23

distinction [1] - 49:1

distinguish [1] - 47:15

district [3] - 20:18, 20:19, 96:21

DISTRICT [2] - 1:1, 1:1

District [8] - 20:19, 39:15, 46:14, 46:15, 95:14, 95:20, 95:25, 96:2

Division [1] - 46:15

DIVISION [1] - 1:2

division [1] - 90:17

docket [2] - 33:2, 96:3

document [2] - 46:1, 58:7

Document [2] - 33:2, 37:2

documentary [1] - 20:20

documents [2] - 48:17, 66:10

dollars [3] - 57:16, 57:24, 63:7

done [17] - 5:20, 5:25, 10:13, 27:3, 29:8, 31:14, 36:3, 36:9, 36:19, 47:6, 54:11,
60:10, 60:11, 60:14, 72:1, 73:7, 82:15

door [8] - 65:19, 71:23, 72:1, 79:15, 80:6, 80:22, 81:21, 88:4

double [5] - 13:25, 15:3, 74:19, 74:20

doubles [5] - 13:12, 15:4, 68:21, 68:24, 83:5

doubt [1] - 28:19

down [6] - 5:6, 21:5, 43:7, 58:11, 62:24, 91:8

draft [5] - 5:23, 7:9, 7:14, 11:18, 22:8

draw [4] - 16:1, 48:19, 87:22

drawn [1] - 49:21

dressing [1] - 60:4

drinks [1] - 64:1

drunk [1] - 61:10

during [17] - 4:9, 12:4, 21:15, 32:1, 44:25, 46:24, 47:1, 47:6, 51:10, 51:14, 52:9, 56:7, 82:12, 89:8, 89:14, 89:15, 90:11

duty [3] - 46:18, 46:21, 89:4

## E

e-mails [1] - 24:13

early [1] - 59:17

earn [2] - 65:10, 65:12

earned [1] - 52:25

ears [1] - 66:25

earth [1] - 84:16

easily [1] - 74:6

economic [4] - 32:19, 54:4, 59:3, 95:1

economically [1] - 64:20

economies [1] - 26:21

Edwards [4] - 23:13, 31:7, 43:1, 93:11

effectively [1] - 21:23

effort [2] - 85:9, 89:5

eight [13] - 13:9, 14:20, 15:1, 15:2, 16:16,
17:15, 17:17, 20:15, 20:16, 22:11, 60:19, 68:20, 68:24

either [15] - 11:25, 26:24, 27:1, 31:18, 37:20, 46:25, 55:24, 57:2, 70:22, 71:1, 71:5, 83:8, 87:13, 90:14, 92:3

elaborations [1] - 32:23

electricians [1] - 59:1

element [2] - 48:13, 96:15

Element [1] - 34:12

elements [1] - 25:16

elicited [1] - 16:6

employed [1] - 53:24

employee [53] - 30:6, 30:22, 32:13, 33:7, 33:12, 35:15, 35:20, 39:5, 40:7, 40:8, 40:18, 51:4, 51:5, 51:10, 51:20, 52:2, 52:3, 52:9, 52:13, 52:18, 52:19, 52:21, 53:20, 53:22, 54:2, 54:19, 54:22, 55:4, 55:10, 55:24, 56:5, 56:6, 58:22, 60:23, 65:5, 65:11, 70:23, 71:1, 71:2, 71:6, 71:16, 72:16, 74:22, 76:18, 78:18, 81:1, 81:3, 81:19, 82:11, 87:12, 87:23, 88:6, 88:13

employee's [4] - 51:19, 52:14, 54:10, 73:6

employee/ independent [1] - 28:17

employees [24] - 13:9, 53:5, 55:16, 56:22, 58:19, 58:24, 59:4, 59:9, 61:14, 66:19, 66:20, 69:14, 70:19, 71:2, 73:3, 81:4, 82:8, 82:18, 82:21, 84:15, 85:20, 86:1, 87:20

employer [21] - 39:6, 39:10, 40:19, 43:23, 51:5, 51:16, 52:3, 52:13, 52:19, 52:20,
53:4, 53:23, 54:9, 54:18, 54:20, 55:6, 73:5, 74:21, 74:23, 75:25, 76:20

employer's [3] - 40:8, 40:19, 52:19

employer/ employee [3] - 43:22, 54:9, 73:5

employers [1] - 55:17

employment [6] - 7:7, 22:3, 42:8, 64:14, 65:13, 72:7

End [1] - 97:8

end [3] - 12:24, 38:11, 81:6

ends [1] - 21:2

Energy [1] - 39:14

enter [3] - 25:1, 64:12, 86:10

entered [2] - 45:20, 60:4

entertain [3] - 32:8, 37:11, 76:25

entertainer [5] - 24:1, 75:12, 77:19, 77:21, 79:22

entertainers [3] - 62:19, 70:18, 71:10

entire [3] - 22:23, 36:5, 54:4

entirely [2] - 23:24, 48:2

entitled [4] - 51:17, 56:20, 89:22, 97:13

entry [1] - 96:3

equation [1] - 5:15

equipment [6] - 55:7, 55:9, 62:23, 78:17, 78:21, 79:2

especially [1] - 61:4

essentially [1] - 32:18

establish [1] - 48:11

established [2] - 65:19, 66:19

establishes [2] - 6:8, 16:17

estimate [6] - 6:17, 8:18, 53:18, 67:17, 83:1, 83:9

estimation [2] - 53:15, 90:24

Concordance                                                                    105

et [6] - 3:3, 13:11, 46:15, 46:16, 93:20

ET [2] - 1:3, 1:5

evening [1] - 74:18

evidence [69] - 3:19, 3:24, 4:23, 5:2, 5:3, 5:4, 5:5, 5:6, 5:21, 11:8, 20:1, 20:5, 20:21, 24:9, 24:19, 25:2, 26:3, 26:6, 44:4, 47:13, 47:14, 47:16, 47:18, 47:19, 47:20, 47:22, 48:3, 48:9, 48:11, 48:14, 48:16, 48:18, 48:21, 48:22, 48:24, 49:2, 49:4, 49:13, 49:20, 49:21, 50:2, 50:5, 50:9, 51:9, 52:8, 53:18, 54:6, 59:7, 62:17, 70:1, 70:6, 71:19, 73:16, 73:24, 75:4, 82:25, 83:15, 84:20, 84:22, 85:11, 85:25, 89:7, 89:18, 89:20, 90:1

evidentiary [1] - 25:16

exact [5] - 20:21, 21:5, 41:2, 53:10, 66:16

exactitude [1] - 66:6

exactly [2] - 11:6, 71:11

examination [1] - 83:25

examine [2] - 80:17, 89:9

examined [1] - 72:21

examines [1] - 34:4

example [6] - 7:6, 22:7, 23:24, 30:3, 37:18, 86:17

except [2] - 12:24, 87:25

exception [1] - 19:11

EXCERPT [1] - 1:7

excerpt [2] - 2:1, 97:8

excerpts [1] - 3:1

excuse [8] - 32:18, 36:11, 37:1, 43:22, 67:23, 69:7, 72:19, 77:1

excused [2] - 93:3, 93:4

execute [1] - 38:14

exercised [2] - 59:11,

87:8

Exhibit [8] - 91:19, 91:20, 91:21, 91:23, 92:9, 92:10, 92:12, 92:15

exhibit [1] - 91:20

exhibits [4] - 25:1, 47:12, 48:18, 89:25

Exhibits [1] - 92:21

Exhibits................. ............. [1] - 2:8

exists [1] - 49:1

exited [1] - 91:11

expense [1] - 42:23

expired [1] - 29:17

explain [1] - 25:7

explained [2] - 66:18, 95:8

explanation [1] - 96:11

explanation [1] - 22:19

extensively [1] - 95:3

extent [9] - 26:16, 26:23, 35:1, 53:18, 56:2, 83:1, 87:9, 94:23, 94:25

extra [1] - 91:1

extremely [1] - 41:22

extrinsic [1] - 24:13

eyes [1] - 66:24

eyewitness [1] - 48:23

**F**

face [1] - 18:21

faces [2] - 55:3, 76:17

facie [1] - 3:19

fact [14] - 10:14, 20:3, 20:16, 23:15, 26:20, 27:19, 48:25, 50:3, 50:20, 56:16, 62:15, 63:21, 64:10

factor [8] - 32:21, 33:25, 34:25, 35:2, 56:1, 56:3, 59:10, 78:15

Factor [1] - 33:14

factors [12] - 33:5, 33:20, 33:24, 34:14, 54:6, 54:7, 59:6, 72:19, 85:24, 85:25, 86:12, 86:22

facts [11] - 20:8, 20:9, 47:2, 47:4, 47:21, 47:23, 47:24, 48:19, 51:8, 52:7, 89:14

failed [8] - 7:1, 48:13, 50:11, 51:12, 52:11, 53:7, 53:12, 84:19

fails [1] - 39:12

failure [1] - 53:9

fair [5] - 24:8, 48:1, 48:18, 85:21, 87:9

Fair [9] - 23:3, 33:7, 40:24, 50:21, 50:25, 51:21, 51:23, 70:19, 71:2

fairly [7] - 10:12, 10:15, 30:24, 41:12, 57:12, 57:20

fairness [2] - 24:24, 25:22

fake [1] - 20:25

falsehood [1] - 50:18

family [1] - 24:15

far [2] - 7:8, 71:11

fast [1] - 6:13

fat [1] - 82:14

fault [1] - 45:25

favor [2] - 46:25, 48:10

federal [2] - 19:1, 23:22

fee [4] - 61:22, 62:1, 62:15, 72:2

feelings [1] - 49:9

fees [5] - 71:21, 72:6, 72:14, 80:25

Feldman [2] - 1:16

fellow [1] - 89:7

felt [1] - 84:15

few [2] - 4:18, 55:16

fifth [5] - 79:5, 79:7, 79:18, 80:14

Fifth [4] - 20:18, 39:16, 95:2, 95:22

figure [3] - 24:15, 58:20, 83:13

fill [2] - 56:21, 90:6

final [5] - 27:25, 43:2, 58:4, 90:22, 91:18

finally [2] - 27:23, 80:16

financial [1] - 77:16

fine [8] - 30:16, 30:23, 31:3, 42:12, 42:20, 45:12, 59:13, 91:1

finish [1] - 89:12

first [15] - 7:19, 7:23, 13:23, 15:17, 27:7, 32:11, 33:10, 45:24, 52:22, 58:11, 59:10, 66:3, 73:4, 81:18, 96:15

fit [1] - 82:6

five [35] - 9:14, 9:16, 9:23, 9:24, 10:7, 12:20, 12:25, 13:1, 13:4, 13:24, 18:3, 18:6, 18:16, 25:4, 28:25, 29:2, 31:3, 45:9, 45:18, 55:11, 60:25, 66:18, 67:16, 68:18, 68:19, 68:24, 69:6, 70:11, 70:12, 70:13, 71:3, 72:19, 82:14, 85:14

five-minute [2] - 45:18, 60:25

fix [1] - 30:14

flats [1] - 84:24

FLSA [19] - 32:22, 39:5, 39:7, 39:8, 39:11, 51:1, 51:6, 51:14, 51:24, 52:4, 52:13, 56:15, 56:20, 57:3, 57:4, 65:12, 66:22, 67:2, 69:13

fly [1] - 85:16

folks [1] - 59:2

follow [2] - 46:20, 46:21

following [8] - 38:18, 38:21, 40:6, 51:8, 52:7, 57:17, 57:25, 59:11

follows [3] - 3:1, 54:7, 94:18

food [5] - 43:6, 43:8, 63:25, 93:14

FOR [2] - 1:11, 1:15

force [1] - 50:2

foreclosing [1] - 26:18

foregoing [1] - 97:11

foreman [1] - 38:14

foreperson [3] - 90:2, 90:5, 90:12

forget [1] - 50:15

Concordance

forgot [1] - 14:18
form [4] - 55:21, 80:20, 82:13, 90:7
formal [4] - 28:3, 29:24, 31:24, 32:1
formula [10] - 18:19, 27:16, 27:19, 39:23, 40:22, 41:5, 41:24, 54:24, 75:2, 75:7
forth [1] - 33:5
forthright [1] - 85:6
forward [2] - 69:17, 86:3
four [11] - 6:18, 13:24, 55:7, 63:19, 63:20, 65:4, 67:15, 67:21, 68:14, 68:16, 91:24
fourth [2] - 78:21, 79:6
Friday [6] - 6:15, 11:25, 12:3, 19:10, 67:11, 87:7
Fridays [1] - 6:11
friends [1] - 24:15
fringe [4] - 54:21, 61:18, 74:25, 76:7
front [3] - 80:6, 80:22, 93:14
full [3] - 6:2, 16:4, 94:6
fundamental [2] - 24:24, 25:22
furnishing [1] - 51:18
furnishings [1] - 63:25

G

Garcia [5] - 12:8, 13:14, 18:18, 56:9, 68:18
Gate [1] - 96:21
general [7] - 19:13, 39:4, 49:1, 63:11, 79:24, 80:5, 80:11
generally [12] - 20:13, 21:17, 48:21, 54:12, 55:2, 55:4, 55:12, 61:3, 73:10, 76:16, 76:18, 79:10
gentlemen [7] - 45:22, 45:23, 58:9, 71:22, 86:8, 87:17, 89:3
Girls [2] - 84:1, 84:3
girls [2] - 64:5, 88:23

given [17] - 4:4, 26:20, 30:12, 42:3, 46:24, 47:1, 48:8, 50:12, 54:24, 70:8, 71:16, 74:17, 75:2, 75:8, 82:22, 85:24
Glamour [2] - 84:1, 84:3
global [2] - 30:2
go-around [1] - 14:18
Gonzalez [9] - 11:16, 11:21, 18:17, 56:9, 68:16, 75:10, 77:9, 78:19, 81:15
Gonzalez's [1] - 73:25
gosh [1] - 83:7
government [1] - 42:23
governmental [1] - 67:3
governs [2] - 55:21, 80:20
grab [1] - 85:16
grant [2] - 26:22, 44:6
great [1] - 62:8
greater [2] - 50:4, 89:22
ground [1] - 97:1
guaranteed [1] - 61:15
Guard [1] - 96:21
guards [1] - 80:9
guess [1] - 83:17
guessing [1] - 84:18
guidance [1] - 3:17
guide [1] - 90:2
guiding [1] - 9:22
guys [2] - 42:18, 69:17

H

hair [2] - 62:25, 64:5
half [10] - 6:18, 12:6, 31:10, 31:11, 52:14, 52:23, 53:1, 67:22, 77:2
Hall [3] - 43:7, 43:8, 93:15
hand [2] - 58:14, 88:25
handed [1] - 28:2
hands [2] - 62:11, 84:9

harassing [1] - 61:9
hard [1] - 37:10
Harris [1] - 64:3
health [1] - 61:19
hear [9] - 4:10, 22:25, 27:14, 61:23, 63:19, 83:3, 83:4, 83:7, 93:10
heard [9] - 21:15, 23:21, 47:22, 59:6, 70:2, 84:22, 85:11, 88:8, 88:17
Hearing [1] - 2:4
hearing [2] - 11:2, 69:17
heels [2] - 84:23, 84:24
helps [1] - 82:7
hereby [1] - 45:3
herself [1] - 22:18
hesitate [1] - 89:8
hide [2] - 85:4
highlight [1] - 66:3
hired [1] - 88:12
hires [1] - 88:10
history [1] - 42:7
hold [15] - 6:12, 6:25, 8:3, 8:6, 8:9, 9:4, 9:7, 11:20, 12:3, 14:9, 15:10, 16:25, 46:7, 72:6, 84:8
hole [1] - 62:22
home [7] - 62:9, 62:11, 62:13, 62:16, 74:13, 74:18, 82:15
homes [1] - 64:8
honest [1] - 89:11
Honor [72] - 3:12, 6:7, 7:3, 8:4, 8:8, 8:21, 9:3, 10:10, 10:11, 13:19, 14:6, 14:12, 15:12, 16:4, 16:8, 16:21, 17:12, 17:22, 18:2, 18:4, 20:1, 20:10, 23:18, 24:19, 24:21, 28:5, 28:11, 28:14, 28:24, 29:5, 29:19, 30:1, 31:6, 31:25, 32:10, 32:17, 34:9, 34:24, 35:11, 36:24, 37:2, 37:9, 37:13, 38:24, 40:4, 40:11, 41:4, 41:16, 41:19, 42:14, 42:16, 42:25,

43:20, 44:10, 45:7, 45:15, 58:5, 69:21, 86:6, 91:23, 93:2, 93:8, 94:11, 94:13, 94:22, 95:9, 95:19, 96:12, 96:17, 96:18, 97:4
HONORABLE [1] - 1:8
hope [1] - 85:7
hostess [1] - 81:21
hostess/waitress [1] - 81:16
hostesses [2] - 64:2, 80:9
hotels [1] - 64:9
hour [19] - 19:10, 23:1, 23:3, 31:10, 31:11, 51:15, 61:6, 65:8, 65:25, 67:17, 69:12, 71:17, 71:19, 72:5, 72:9, 77:6, 81:1, 88:24
hours [101] - 3:20, 4:4, 4:11, 4:15, 4:25, 5:7, 5:13, 5:16, 5:22, 6:1, 6:16, 6:19, 7:12, 8:16, 9:4, 9:10, 9:25, 10:3, 10:5, 10:8, 11:1, 12:4, 12:5, 12:18, 13:2, 13:7, 13:10, 14:4, 14:19, 14:21, 15:1, 15:7, 16:3, 16:7, 16:9, 16:11, 16:15, 17:2, 17:15, 18:1, 19:3, 19:4, 19:5, 19:19, 19:21, 20:4, 20:15, 20:16, 22:10, 22:12, 22:13, 23:7, 27:18, 36:11, 36:12, 36:21, 37:1, 39:23, 40:5, 40:12, 40:22, 41:6, 41:8, 41:24, 42:2, 52:4, 52:15, 52:17, 52:20, 52:23, 53:2, 53:3, 53:5, 53:7, 54:11, 57:18, 58:1, 66:4, 67:9, 67:23, 67:24, 67:25, 68:4, 68:7, 68:9, 68:15, 68:17, 68:21, 68:24, 69:8, 73:7, 83:3, 83:10, 83:19
Hours [1] - 2:4
house [1] - 72:7
HOUSTON [1] - 1:2
Houston [4] - 1:13,

1:18, 1:23, 46:15
hundred [1] - 78:24
hybrid [1] - 32:19

**I**

idea [1] - 17:2
identify [1] - 94:3
ignorance [1] - 39:7
illegally [1] - 86:23
impartial [2] - 48:2, 89:6
impeachment [1] - 50:7
importance [1] - 34:18
important [6] - 35:2, 47:15, 50:20, 55:19, 56:3, 80:18
impossible [1] - 24:9
impression [5] - 46:24, 47:1, 47:3, 89:23
improper [2] - 32:17, 35:20
improperly [2] - 32:20, 34:4
IN [1] - 1:19
inaccurately [1] - 50:16
Inc [4] - 3:4, 50:23, 70:16, 93:20
INC [1] - 1:5
include [1] - 39:20
included [5] - 35:12, 39:1, 39:22, 45:1, 45:3
includes [4] - 40:7, 40:17, 41:2, 52:17
incompetent [1] - 18:11
inconsistency [1] - 49:11
inconsistent [1] - 50:7
incorporate [1] - 32:24
incorrect [1] - 35:3
independent [53] - 32:13, 33:6, 33:7, 33:13, 35:16, 51:3, 52:1, 53:20, 53:25, 54:3, 54:12, 54:15, 54:22, 55:2, 55:8, 55:11, 55:25, 58:19, 58:25, 59:1, 59:9,

62:3, 64:22, 65:23, 69:16, 70:23, 71:8, 71:12, 71:13, 73:10, 73:14, 74:25, 76:15, 78:14, 78:16, 79:5, 79:9, 80:22, 81:9, 81:24, 82:3, 85:1, 86:9, 86:11, 87:11, 88:7, 88:9, 88:13, 88:14, 88:15, 89:19, 95:13, 96:19
independently [1] - 83:19
indicate [1] - 91:6
indicates [1] - 67:23
indicia [3] - 79:5, 79:6, 80:16
indirect [1] - 48:23
individual [6] - 43:18, 44:7, 44:8, 55:23, 70:22, 73:1
individually [5] - 5:10, 30:13, 85:21, 86:17
indulgence [1] - 11:10
industry [1] - 55:13
inference [2] - 4:15, 49:21
inferences [1] - 48:18
influenced [2] - 48:4, 89:21
inform [1] - 31:9
informally [4] - 28:8, 28:11, 29:23, 30:1
information [1] - 16:9
informed [1] - 94:24
initial [2] - 3:23, 14:18
innocent [1] - 50:18
inquire [1] - 5:8
inquiry [1] - 90:13
inspected [1] - 59:25
Inspections [1] - 39:16
instance [3] - 19:8, 29:15, 32:12
instead [3] - 12:25, 28:15, 42:7
institution [1] - 67:4
instruct [3] - 46:18, 46:21, 47:24
instructed [1] - 80:17
instructing [1] - 56:16

Instruction [1] - 34:13
instruction [15] - 27:25, 28:16, 32:12, 33:12, 33:18, 35:8, 38:25, 39:3, 39:18, 40:2, 41:1, 47:9, 66:4, 75:25, 79:7
instructions [26] - 27:5, 32:5, 33:4, 35:25, 39:24, 46:8, 46:9, 46:20, 47:5, 47:8, 70:8, 70:21, 72:17, 72:18, 73:9, 79:8, 80:15, 82:10, 82:19, 82:22, 82:24, 94:18, 94:20, 96:8
Instructions [1] - 2:2
INSTRUCTIONS [1] - 1:7
instrumentality [1] - 63:14
insufficient [2] - 20:17, 61:16
insurance [4] - 54:21, 61:19, 74:24, 76:6
intend [4] - 65:8, 65:23, 65:24, 81:1
intended [5] - 80:22, 80:23, 81:7, 81:8, 81:19
intends [3] - 94:1, 94:17, 95:5
intent [22] - 32:20, 55:18, 55:19, 65:6, 65:9, 65:13, 65:22, 65:25, 71:13, 80:18, 80:21, 81:12, 81:13, 81:14, 81:24, 94:16, 94:24, 95:7, 96:15
intentional [1] - 50:18
interest [3] - 49:9, 70:14, 70:17
interested [1] - 49:19
interesting [1] - 65:6
interrogatories [4] - 35:18, 35:19, 36:4, 39:25
Interrogatory [1] - 24:25
interrogatory [4] - 25:3, 25:4, 25:23, 26:2
introduce [1] - 25:19
introduced [1] - 47:13

investigation [1] - 66:25
investments [1] - 34:5
involved [1] - 51:15
isolating [1] - 47:10
issue [16] - 3:17, 10:11, 22:5, 22:22, 22:24, 23:21, 24:23, 26:17, 26:19, 27:2, 30:10, 30:17, 37:6, 48:8, 67:13, 67:15
issues [2] - 23:5, 23:15
IT [1] - 59:2
items [3] - 51:18, 57:17, 57:25
itself [2] - 4:24, 29:22

**J**

jail [2] - 84:4, 84:5
janitors [1] - 64:1
job [8] - 54:24, 55:9, 58:20, 75:2, 75:8, 78:17, 79:2, 82:15
Judge [21] - 7:17, 25:11, 28:10, 29:6, 38:6, 70:8, 70:21, 72:20, 73:9, 73:23, 76:14, 78:6, 79:8, 80:14, 80:16, 82:10, 82:19, 82:22, 82:25, 85:23, 85:24
judge [1] - 19:1
Judge's [1] - 72:17
judges [3] - 47:4, 47:23, 89:13
judgment [3] - 43:21, 44:10, 44:21
judicial [1] - 26:21
July [4] - 57:7, 57:8, 57:10
jump [2] - 7:21, 14:16
JUNE [1] - 1:6
June [3] - 2:3, 7:24, 67:19
Juror [1] - 30:20
juror [1] - 89:23
jurors [3] - 89:7, 89:11, 89:21
jury [87] - 3:14, 4:16, 5:11, 5:15, 5:21, 10:9,

Concordance

10:24, 10:25, 12:21, 13:13, 16:18, 17:2, 17:16, 21:15, 21:21, 22:19, 22:20, 23:13, 25:15, 26:6, 26:18, 26:20, 27:4, 27:8, 27:19, 28:16, 28:22, 31:9, 32:5, 32:7, 33:9, 33:14, 33:21, 34:1, 35:8, 35:20, 36:10, 36:20, 37:6, 38:14, 39:20, 39:25, 40:1, 41:1, 44:13, 45:19, 45:23, 46:8, 46:9, 46:10, 46:17, 57:11, 69:23, 70:10, 72:18, 76:14, 78:6, 78:13, 82:9, 83:13, 89:3, 89:24, 90:2, 90:5, 90:9, 90:12, 90:20, 91:7, 91:8, 91:10, 92:11, 92:13, 93:1, 93:7, 93:10, 93:22, 93:23, 94:2, 94:23, 95:6, 95:8, 95:11, 95:12, 95:13, 95:18, 96:20

Jury [36] - 2:1, 2:7, 2:8, 27:9, 27:12, 27:13, 27:15, 27:23, 30:2, 30:23, 34:10, 34:15, 34:22, 35:6, 35:14, 35:22, 35:24, 36:4, 36:7, 36:18, 36:25, 37:2, 38:9, 41:22, 45:20, 56:4, 56:19, 57:1, 57:19, 66:17, 67:14, 91:11, 93:17, 95:16, 96:24

JURY [3] - 1:7, 1:7, 1:8

jury's [2] - 6:1, 10:17

**K**

keep [21] - 11:11, 20:24, 22:16, 53:4, 53:7, 53:9, 53:12, 58:22, 61:7, 61:8, 64:18, 65:10, 65:12, 65:17, 66:1, 72:10, 72:12, 72:14, 76:5, 83:7, 90:15

Kelly [2] - 1:12, 3:7

kept [3] - 66:5, 66:10, 92:6

Khorshidpanah [10] - 1:21, 60:2, 60:5, 60:16, 60:20, 62:1,

65:20, 69:24, 85:8, 85:12

kind [9] - 14:14, 15:16, 21:25, 23:8, 54:17, 58:12, 68:12, 73:15, 85:6

kinds [1] - 59:19

KING [20] - 3:10, 14:23, 21:9, 21:11, 23:18, 23:20, 28:5, 38:24, 39:21, 40:4, 40:11, 40:21, 41:4, 41:10, 42:20, 44:9, 94:12, 95:4, 96:1, 96:18

King [3] - 1:16, 3:10, 37:14

knocked [1] - 93:17

knocks [2] - 71:23, 72:1

knowledge [2] - 19:19, 39:7

known [2] - 51:1, 52:23

Kristal [2] - 12:8, 56:9

**L**

Labor [10] - 23:4, 33:8, 40:24, 50:21, 50:25, 51:21, 51:24, 67:3, 70:20, 71:2

ladies [5] - 45:22, 58:9, 71:22, 86:8, 87:17

lady [2] - 45:22, 89:3

Lange [5] - 13:15, 13:16, 18:18, 56:9, 68:23

Lange's [1] - 22:7

language [6] - 34:17, 39:2, 39:4, 39:13, 41:2, 41:11

lap [1] - 75:8

last [9] - 18:13, 18:14, 22:3, 34:24, 46:3, 69:25, 81:11, 83:20, 85:16

lastly [1] - 61:22

late [1] - 59:14

lateness [1] - 26:13

Laura [4] - 1:22, 97:11, 97:15, 97:16

law [30] - 10:11, 18:7, 18:11, 21:5, 21:11, 32:15, 32:16, 34:19, 35:4, 39:7, 46:19,

46:20, 46:21, 46:23, 47:5, 47:9, 47:24, 48:1, 48:2, 49:1, 51:13, 52:12, 53:4, 53:21, 53:22, 82:18, 85:23, 94:19

lawful [1] - 35:17

lawn [3] - 71:23, 71:24, 72:3

lawnmower [1] - 86:17

lawyer [2] - 88:10, 88:12

lawyers [5] - 47:17, 67:2, 88:11, 91:2

least [5] - 22:1, 26:24, 52:14, 81:11, 91:3

leave [1] - 91:6

leaving [1] - 59:17

left [1] - 83:17

legal [6] - 23:14, 32:6, 35:19, 39:12, 46:2, 84:11

legs [1] - 23:16

length [1] - 77:3

lengthy [1] - 46:1

lens [1] - 86:19

less [6] - 51:6, 59:9, 60:25, 62:16, 69:15, 71:17

level [3] - 32:21, 66:5, 88:16

liability [2] - 56:18, 84:13

liable [1] - 70:19

license [2] - 63:7, 64:4

licenses [2] - 55:14, 64:5

light [5] - 16:5, 47:9, 47:19, 49:12, 54:4

lighting [1] - 63:4

likely [1] - 48:12

limitations [4] - 10:16, 11:3, 36:14, 36:19

limited [2] - 64:15, 87:8

line [6] - 7:24, 8:23, 19:11, 19:13, 87:22

liquor [3] - 63:7, 64:4, 72:11

listen [2] - 78:18, 78:19

listening [4] - 3:25, 41:23, 70:1, 70:4

listing [1] - 55:15

listings [1] - 55:17

live [2] - 42:25, 66:16

LLC [1] - 39:14

locate [3] - 94:4, 94:5, 95:12

lodging [1] - 51:19

logically [1] - 48:25

look [15] - 6:1, 11:18, 18:2, 24:11, 24:12, 26:25, 69:17, 82:19, 86:3, 86:12, 86:19, 87:14, 87:15, 95:23

looked [1] - 95:19

looking [5] - 7:13, 7:23, 8:20, 30:2, 66:2

looks [2] - 62:3, 64:22

loose [1] - 91:24

loss [6] - 22:20, 55:4, 55:5, 76:17, 76:19, 77:17

love [2] - 19:1, 66:7

lucrative [1] - 87:7

lunch [10] - 31:12, 31:15, 31:18, 31:20, 43:4, 43:13, 90:19, 90:20, 93:11, 93:13

**M**

magazine [1] - 63:11

mails [1] - 24:13

maintain [4] - 53:7, 53:9, 63:5, 70:17

major [1] - 18:5

makeup [1] - 64:5

man [1] - 71:22

manager [1] - 63:11

MANAGER [4] - 23:17, 31:8, 31:22, 43:3

managers [9] - 60:3, 63:10, 63:16, 63:19, 63:20, 63:22, 64:2, 65:21, 79:12

manner [8] - 35:1, 48:2, 49:8, 54:10, 54:14, 56:2, 73:7, 73:12

Maria [1] - 1:20

Marissa [1] - 1:20

Concordance

math [6] - 18:8, 21:21, 22:15, 45:6, 68:13, 83:13

mathy [1] - 68:12

matter [4] - 23:15, 25:22, 82:18, 97:13

matters [1] - 46:2

Maylene [5] - 11:8, 15:8, 56:8, 69:1, 83:20

meals [1] - 51:19

mean [6] - 17:19, 23:3, 50:14, 67:12, 78:3, 83:20

meaning [2] - 31:14, 75:8

means [9] - 25:18, 35:1, 48:11, 54:10, 54:14, 56:2, 60:24, 73:6, 73:12

measurement [1] - 40:24

mechanical [1] - 1:24

medications [1] - 60:7

meet [1] - 27:5

meeting [1] - 90:15

meets [1] - 85:25

members [5] - 46:17, 64:11, 69:23, 82:9, 94:2

memories [1] - 66:15

memory [5] - 3:25, 6:1, 89:16, 89:17

mentioned [1] - 4:11

mere [2] - 39:7

merely [2] - 39:9, 39:13

message [1] - 28:22

met [5] - 3:18, 3:23, 20:22, 48:8, 49:4

method [4] - 25:18, 36:8, 44:5, 60:24

mid [5] - 4:8, 4:9, 17:4, 17:8, 22:1

middle [1] - 87:17

Midget [4] - 61:24, 64:21, 69:15, 87:21

might [3] - 21:16, 29:7, 85:20

mind [3] - 88:16, 89:9, 90:16

mine [1] - 7:2

minimum [19] - 5:12, 6:20, 10:1, 13:13, 14:2, 37:5, 48:9, 50:21, 50:25, 51:6, 51:12, 51:14, 51:16, 57:13, 58:13, 60:16, 60:18, 61:15, 62:15

minor [1] - 41:22

minute [7] - 45:11, 45:18, 60:25, 61:1, 66:9, 77:1, 77:7

minutes [8] - 28:25, 29:2, 29:8, 31:9, 31:14, 45:6, 77:2

mirrors [1] - 94:25

miss [1] - 69:4

missed [1] - 14:23

missing [2] - 40:16, 40:20

misstated [1] - 5:19

misstatement [2] - 50:17

misstates [4] - 32:15, 33:24, 34:18

mistake [2] - 50:13, 50:18

mistaken [1] - 17:20

misunderstood [2] - 16:11, 43:9

modification [1] - 41:10

Mohammadi [1] - 4:20

moment [2] - 9:2, 28:4

moments [1] - 75:12

Moments [32] - 8:12, 11:24, 15:16, 15:17, 21:25, 24:2, 50:23, 59:10, 60:6, 60:15, 61:4, 63:13, 64:12, 64:13, 64:16, 64:20, 65:18, 66:19, 71:10, 74:1, 74:9, 78:9, 79:1, 79:13, 81:8, 81:25, 83:24, 84:4, 84:5, 86:10, 88:21

Moments' [2] - 65:15

Monday [3] - 12:24, 58:12, 87:6

money [28] - 10:13, 13:8, 22:16, 30:24, 41:12, 57:11, 57:19, 58:16, 59:20, 60:25,

61:2, 62:8, 62:11, 63:21, 65:18, 70:14, 72:10, 74:17, 74:18, 76:24, 77:1, 77:11, 77:14, 77:20, 77:25, 82:2, 88:3, 88:23

month [9] - 4:4, 5:7, 15:23, 15:24, 15:25, 22:2, 69:3, 83:23, 84:6

monthly [1] - 78:2

morning [11] - 3:2, 4:7, 7:25, 21:9, 21:10, 45:25, 46:4, 46:5, 46:7, 58:12, 91:4

most [6] - 6:17, 23:9, 23:10, 35:2, 56:3, 88:7

motion [5] - 26:4, 26:14, 26:15, 44:6

move [2] - 12:9, 81:24

moved [2] - 43:21, 81:16

mow [1] - 71:24

mowing [1] - 72:3

mows [1] - 71:23

MR [195] - 3:7, 3:8, 3:10, 3:11, 6:6, 6:14, 6:23, 7:2, 7:6, 7:11, 7:16, 7:19, 7:21, 8:1, 8:4, 8:8, 8:11, 8:20, 8:25, 9:1, 9:6, 9:9, 9:20, 9:25, 10:6, 10:10, 10:21, 10:23, 11:6, 11:9, 11:15, 11:18, 11:22, 12:8, 12:12, 12:15, 12:17, 13:3, 13:6, 13:15, 13:17, 13:19, 13:22, 14:3, 14:5, 14:8, 14:10, 14:12, 14:16, 14:23, 14:24, 15:4, 15:8, 15:12, 15:15, 16:4, 16:8, 16:13, 16:16, 16:21, 16:24, 17:1, 17:12, 17:14, 17:22, 18:1, 18:4, 18:7, 18:10, 18:13, 18:15, 18:24, 19:1, 19:17, 19:24, 20:3, 20:8, 20:10, 21:9, 21:11, 23:18, 23:20, 24:21, 24:23, 25:11, 28:5, 28:7, 28:10, 28:14, 28:20, 28:24, 29:2, 29:5, 29:6, 29:10, 29:12, 29:19, 29:22, 30:1, 30:5, 30:8, 30:12, 30:16, 30:18,

31:5, 31:6, 31:25, 32:1, 32:10, 33:16, 33:19, 33:23, 34:3, 34:8, 34:12, 34:17, 34:24, 35:7, 35:11, 35:14, 35:24, 36:7, 36:17, 36:24, 37:8, 37:13, 37:18, 37:23, 37:25, 38:3, 38:9, 38:11, 38:23, 38:24, 39:21, 40:4, 40:11, 40:21, 41:4, 41:10, 41:15, 41:19, 41:22, 42:5, 42:10, 42:13, 42:16, 42:20, 42:21, 42:22, 42:25, 43:4, 43:9, 43:13, 43:16, 43:20, 44:1, 44:9, 44:12, 44:15, 44:17, 44:19, 45:7, 45:10, 45:15, 45:17, 48:5, 58:7, 69:21, 69:23, 86:6, 86:8, 91:23, 92:3, 92:5, 92:8, 92:14, 92:17, 92:19, 92:21, 93:2, 93:5, 93:8, 94:10, 94:12, 94:22, 95:4, 95:9, 95:19, 95:23, 96:1, 96:12, 96:17, 96:18, 97:4

multiple [1] - 52:25

multiplied [2] - 42:1, 68:10

multiply [8] - 6:18, 67:15, 67:16, 67:17, 67:21, 67:22, 67:25, 68:7

music [3] - 60:23, 63:24, 88:2

must [21] - 39:5, 46:25, 47:3, 47:21, 47:24, 49:15, 51:7, 52:6, 52:21, 53:17, 54:1, 54:6, 54:12, 56:15, 73:10, 82:25, 89:5, 90:2, 90:4, 90:5, 90:16

## N

name [2] - 55:15, 61:25

names [3] - 20:25, 55:17, 56:21

nature [5] - 23:22, 59:21, 63:1, 64:16, 91:24

nearly [1] - 12:23

necessarily [1] - 50:13
necessary [10] - 27:6,
54:16, 55:9, 55:14,
63:14, 73:15, 78:17,
79:2, 84:20, 87:25
need [14] - 9:17, 29:13,
29:14, 37:5, 37:20,
42:19, 60:6, 73:22,
76:21, 84:20, 87:4,
90:11, 91:18, 91:21
needed [1] - 24:16
needing [1] - 28:23
needs [1] - 82:6
negligent [2] - 39:9,
39:13
negotiate [1] - 76:4
negotiated [1] - 72:3
NELSON [1] - 1:3
Nelson [13] - 3:3, 5:21,
6:5, 6:7, 6:22, 6:23,
18:17, 23:25, 46:15,
56:8, 68:3, 68:14,
93:20
Nelson's [1] - 11:7
never [4] - 9:14, 83:23,
88:8, 90:16
next [15] - 11:15, 15:7,
18:19, 33:18, 38:13,
56:11, 56:13, 56:24,
56:25, 76:5, 76:13,
77:24, 78:15, 78:20,
80:2
night [8] - 4:8, 4:10,
46:3, 62:8, 62:20,
62:21
nightly [1] - 78:1
nights [1] - 69:2
nobody [3] - 60:17,
62:10, 62:21
non [1] - 43:24
non-suited [1] - 43:24
noncash [1] - 51:18
none [1] - 65:7
normal [1] - 9:14
normally [3] - 54:16,
60:13, 73:14
nos [2] - 82:14
note [4] - 8:22, 17:6,
35:10, 93:17
Note [1] - 2:8

noted [1] - 44:25
notes [11] - 46:12, 67:7,
89:14, 89:15, 89:16,
89:17, 89:18, 89:19,
89:21, 90:1
nothing [4] - 67:5,
82:15, 82:16, 84:12
noticed [1] - 41:20
nowhere [1] - 39:25
Number [50] - 3:3,
24:25, 27:9, 27:12,
27:13, 27:15, 27:23,
30:3, 30:23, 32:4,
33:2, 34:3, 34:12,
34:13, 35:15, 35:23,
35:24, 36:1, 36:5,
36:7, 36:18, 37:1,
37:2, 37:3, 37:25,
38:1, 38:9, 41:5,
41:11, 41:23, 56:4,
56:19, 56:22, 57:1,
57:6, 57:8, 57:11,
57:19, 66:17, 67:14,
74:21, 91:20, 91:24,
92:9, 92:11, 92:15,
93:19, 94:16, 94:17,
96:25
number [48] - 3:19, 4:3,
4:11, 5:6, 5:13, 5:16,
5:22, 7:4, 10:3, 10:13,
11:3, 11:4, 12:2,
14:19, 16:10, 16:13,
19:14, 21:5, 22:10,
27:17, 30:22, 36:11,
36:12, 36:21, 38:5,
39:23, 40:22, 42:1,
49:23, 50:1, 50:4,
54:5, 57:18, 60:16,
62:2, 67:9, 67:13,
67:15, 67:22, 67:24,
67:25, 68:7, 68:8,
68:9, 68:10
numbers [3] - 7:10,
17:2, 19:3
Numbers [5] - 28:9,
30:20, 91:19, 91:21,
92:12
numerical [1] - 90:17

**O**

oath [1] - 85:3
object [14] - 27:11,
32:11, 32:12, 33:9,
33:19, 33:23, 34:3,
34:12, 34:17, 36:4,

36:24, 37:8, 94:23,
97:1
objected [1] - 41:2
objecting [3] - 33:12,
33:13, 33:16
objection [28] - 27:11,
33:10, 33:17, 33:18,
33:22, 34:2, 34:11,
34:16, 34:23, 35:6,
35:23, 36:6, 36:16,
36:23, 37:7, 38:8,
38:17, 40:25, 41:5,
45:3, 92:15, 94:9,
94:10, 94:12, 94:21,
95:4, 96:14, 96:25
objections [3] - 32:8,
36:18, 37:12
Objections [1] - 2:5
objects [2] - 35:14, 36:8
obligation [1] - 85:3
obviously [1] - 66:7
occasion [1] - 95:23
occurs [1] - 41:23
OF [1] - 1:1
off-the-clock [1] -
20:13
offended [1] - 5:19
offer [10] - 35:7, 55:12,
64:11, 79:9, 79:10,
79:14, 79:19, 79:24,
80:8, 86:4
offered [1] - 64:7
offering [3] - 64:9, 80:4,
80:11
offers [2] - 55:11, 64:23
officer [2] - 38:16, 90:13
often [1] - 12:19
Oil [2] - 39:14, 39:16
omitted [1] - 29:13
once [3] - 3:21, 46:11,
74:18
one [74] - 4:19, 5:15,
8:22, 9:2, 10:9, 10:14,
10:19, 10:24, 10:25,
18:14, 20:12, 21:12,
24:21, 24:24, 25:4,
26:21, 28:10, 30:19,
30:21, 33:20, 36:9,
37:18, 41:19, 42:7,
42:19, 42:20, 42:25,
43:17, 43:20, 44:16,
48:22, 51:10, 52:9,

52:14, 52:20, 53:1,
54:8, 55:2, 55:16,
56:10, 56:23, 58:19,
61:23, 63:3, 64:25,
65:2, 65:14, 66:13,
67:15, 67:16, 71:4,
72:24, 72:25, 73:25,
74:9, 76:13, 76:16,
77:5, 78:24, 79:1,
79:13, 83:21, 85:16,
86:22, 87:13, 87:14,
88:7, 89:4, 90:22,
92:3, 95:14, 95:15
one-week [1] - 10:19
ongoing [2] - 86:16,
88:20
open [1] - 91:7
opening [2] - 28:25,
58:4
opinion [4] - 4:24,
46:22, 47:2, 56:17
opinions [1] - 89:9
opportunities [1] -
62:5
opportunity [9] - 4:2,
55:1, 55:3, 62:7,
76:16, 77:11, 77:13,
77:19, 88:3
oppose [1] - 43:23
opposed [4] - 17:21,
34:4, 44:21, 65:24
opposing [2] - 49:24,
70:25
opt [1] - 25:6
opt-in [1] - 25:6
opted [1] - 43:4
order [7] - 10:21, 11:11,
13:20, 42:13, 44:10,
64:3, 67:22
ordinarily [3] - 54:22,
55:16, 74:25
oriented [1] - 64:4
original [1] - 46:10
otherwise [1] - 10:15
ought [1] - 46:23
outcome [4] - 34:25,
49:19, 56:1, 70:15
outfits [1] - 62:25
outlined [3] - 76:14,
80:14, 97:3
overnight [2] - 3:16,
4:18

Concordance

overruled [15] - 33:17, 33:22, 34:2, 34:11, 34:16, 34:23, 35:6, 35:23, 36:6, 36:16, 36:23, 37:7, 38:17, 40:25, 45:3

overtime [12] - 27:24, 41:13, 42:6, 51:21, 51:23, 52:5, 52:12, 52:21, 52:24, 57:21, 83:12

overwhelmingly [1] - 63:15

owed [2] - 25:6, 69:11

own [4] - 19:22, 64:18, 89:9, 90:22

owner [1] - 66:24

**P**

P.M [1] - 1:4

p.m [10] - 17:4, 44:23, 45:20, 91:11, 93:16, 93:17, 97:7

page [16] - 7:4, 7:6, 7:9, 7:13, 7:19, 7:21, 8:7, 8:23, 11:9, 12:14, 13:23, 14:23, 34:13, 40:3, 77:24, 80:2

Page [38] - 2:2, 6:8, 7:7, 7:10, 7:15, 7:22, 8:5, 8:8, 8:9, 9:3, 9:5, 9:7, 11:19, 12:12, 12:15, 13:3, 13:5, 13:17, 14:6, 14:24, 15:9, 15:13, 16:9, 16:21, 17:1, 22:8, 33:13, 34:25, 37:16, 38:3, 40:4, 40:5, 40:16, 79:8, 82:9, 82:24, 85:19

pages [1] - 27:7

Pages [3] - 72:17, 72:19, 76:14

paid [31] - 51:16, 53:6, 53:15, 54:18, 54:23, 55:6, 58:22, 58:23, 61:5, 61:6, 61:13, 61:22, 62:14, 62:19, 63:3, 63:5, 65:11, 66:21, 72:5, 74:21, 75:1, 75:6, 75:9, 75:12, 76:3, 76:7, 76:19, 77:25, 78:3, 78:8, 84:17

paper [2] - 70:9, 87:3

paperclip [2] - 92:1, 92:5

paragraph [1] - 47:11

Paragraph [1] - 33:19

paraphrase [1] - 22:9

pardon [1] - 79:6

parking [1] - 64:3

Parrish [2] - 34:20, 95:2

parse [1] - 28:15

part [2] - 36:5, 66:14

particular [5] - 19:19, 47:10, 52:25, 55:13, 74:4

parties [11] - 3:14, 3:16, 27:5, 32:6, 34:5, 47:13, 54:5, 55:20, 80:19, 93:21, 94:25

parties' [2] - 55:19, 95:3

party [5] - 46:25, 48:7, 48:13, 49:18, 64:16

party's [2] - 48:10, 80:18

passion [1] - 48:4

past [1] - 24:14

patient [1] - 70:3

patrol [2] - 60:4, 60:8

patrons [6] - 61:9, 61:11, 72:10, 86:10, 86:14, 88:1

Pattern [4] - 34:10, 35:6, 35:22, 95:16

pattern [10] - 27:8, 28:16, 33:14, 33:21, 34:1, 34:15, 34:22, 39:20, 95:7, 95:11

pay [35] - 13:9, 37:4, 50:24, 51:12, 51:21, 51:23, 52:11, 52:12, 52:13, 52:21, 52:23, 52:24, 53:1, 53:8, 53:13, 53:19, 55:24, 58:16, 62:15, 62:24, 63:3, 63:5, 63:6, 64:10, 64:23, 65:18, 70:22, 72:10, 75:13, 75:19, 78:9, 78:11, 83:2, 86:22

paycheck [1] - 81:6

paying [2] - 52:5, 67:6

payment [1] - 39:12

payroll [1] - 63:9

pays [4] - 54:18, 63:2, 74:22, 76:1

people [11] - 18:7, 18:10, 24:7, 43:7, 50:15, 53:23, 59:16, 64:13, 66:15, 79:13, 85:15

people's [1] - 64:8

per [17] - 4:25, 5:7, 13:1, 14:19, 14:20, 19:3, 20:4, 22:10, 22:11, 39:23, 40:23, 42:24, 51:15, 67:24, 72:13, 75:7

percent [1] - 78:24

perform [6] - 53:23, 54:17, 62:2, 73:15, 73:21, 82:3

performance [2] - 35:2, 56:3

performed [2] - 22:25, 53:14

performing [1] - 55:14

performs [2] - 55:23, 70:22

period [15] - 11:3, 11:23, 27:14, 36:13, 51:11, 51:15, 52:10, 52:16, 56:7, 57:7, 57:10, 67:19, 82:12, 83:9, 83:10

periods [3] - 4:25, 36:2, 64:15

permitted [1] - 58:22

person [4] - 35:15, 61:23, 88:6, 88:10

perspective [2] - 22:23, 44:2

phone [1] - 55:15

phones [1] - 24:12

phrase [5] - 40:6, 40:12, 40:16, 40:17, 52:17

pick [1] - 43:8

piece [5] - 5:5, 54:19, 74:22, 75:15, 76:2

piece-work [1] - 54:19

pinning [1] - 21:4

place [5] - 23:2, 26:25, 35:8, 65:14, 96:15

placed [1] - 46:10

places [1] - 49:14

plaintiff [80] - 4:3, 4:9, 4:12, 4:17, 5:7, 5:14, 19:9, 20:14, 20:22, 25:5, 25:6, 25:12, 28:24, 30:5, 30:13, 30:14, 30:15, 30:21, 30:23, 30:25, 31:1, 31:3, 32:9, 32:14, 32:22, 33:4, 35:3, 35:14, 36:2, 36:8, 36:17, 37:19, 37:21, 37:24, 41:12, 50:22, 51:3, 51:7, 51:10, 51:12, 51:18, 51:22, 52:1, 52:6, 52:9, 52:11, 52:25, 53:6, 53:8, 53:10, 53:13, 53:14, 53:15, 53:17, 54:1, 54:2, 54:18, 55:1, 55:11, 55:18, 56:4, 56:6, 56:8, 56:10, 56:19, 56:23, 57:12, 57:14, 57:20, 57:22, 58:3, 74:21, 79:9, 82:11, 83:4, 83:18, 83:20, 86:4, 88:20, 94:16

plaintiff's [3] - 19:16, 51:25, 54:8

plaintiff(s)) [1] - 56:12

PLAINTIFFS [1] - 1:11

plaintiffs [48] - 3:7, 3:18, 3:20, 3:25, 4:1, 4:6, 4:18, 4:20, 4:22, 5:6, 18:13, 19:5, 23:12, 24:24, 30:9, 31:2, 31:5, 32:10, 32:12, 32:25, 33:2, 33:9, 34:20, 35:7, 37:21, 38:12, 48:5, 56:12, 56:18, 56:21, 56:25, 57:1, 57:15, 57:23, 66:18, 70:12, 71:3, 71:9, 72:22, 73:25, 82:25, 83:18, 84:19, 92:14, 92:22, 92:25, 94:10, 94:22

Plaintiffs [1] - 3:9

Plaintiffs' [6] - 91:19, 91:20, 91:21, 91:23, 92:9, 92:12

plaintiffs' [8] - 5:9, 19:19, 26:4, 34:4, 44:2, 51:2, 55:7, 71:20

play [1] - 27:2

plays [2] - 60:24, 61:1

Concordance

PLLC [1] - 1:12
plumber [1] - 87:21
plumbers [1] - 59:1
plurality [1] - 30:17
plurals [1] - 30:7
plus [2] - 12:5, 71:19
PM [2] - 7:16, 8:6
pocket [2] - 58:14, 89:1
point [16] - 3:21, 4:2, 5:10, 5:20, 9:19, 20:7, 20:11, 27:3, 32:25, 33:2, 41:1, 43:17, 63:4, 63:16, 87:18, 90:22
pointed [3] - 3:20, 18:20, 23:12
pointing [1] - 10:19
pole [1] - 63:25
political [1] - 18:5
posed [1] - 86:9
position [2] - 4:22, 24:17
positive [1] - 38:20
possibly [1] - 96:10
post [1] - 26:17
potential [1] - 39:8
practices [1] - 39:13
pre [1] - 72:3
pre-negotiated [1] - 72:3
predetermined [2] - 55:5, 76:18
predicated [2] - 38:18, 38:20
preexisting [3] - 78:1, 78:5, 78:8
prefer [1] - 92:2
preference [1] - 31:17
prejudice [2] - 48:4, 49:9
prepared [3] - 20:15, 32:4, 46:8
preparing [1] - 46:1
preponderance [6] - 48:11, 48:14, 49:4, 51:8, 52:7, 53:17
present [5] - 3:14, 3:15, 32:7, 93:21, 93:22

presented [7] - 19:4, 21:13, 24:10, 48:3, 70:7, 71:20, 86:13
presiding [1] - 7:17
Presley [3] - 13:15, 56:9, 68:23
pretty [3] - 9:16, 27:9, 27:25
previously [2] - 19:18, 32:23
prima [1] - 3:19
primarily [4] - 20:11, 40:7, 40:18, 52:18
print [2] - 42:18, 42:24
printing [1] - 42:23
problem [1] - 25:9
procedurally [1] - 96:13
Procedurally [1] - 44:1
procedures [1] - 29:13
proceed [5] - 23:18, 45:5, 58:6, 69:22, 86:7
Proceedings [1] - 1:24
proceedings [2] - 45:25, 97:12
procured [1] - 55:13
produce [3] - 20:20, 20:21, 24:18
produced [2] - 1:25, 24:3
profile [2] - 4:16, 27:20
profit [2] - 55:3, 76:17
prohibited [3] - 57:3, 57:4, 67:2
promise [1] - 37:15
proof [3] - 24:13, 48:8, 48:9
properly [8] - 35:17, 36:3, 58:21, 58:23, 62:19, 65:11, 66:21, 67:6
property [1] - 72:7
propose [1] - 10:24
proposed [13] - 25:1, 27:4, 32:14, 33:1, 33:3, 35:7, 36:25, 37:2, 39:2, 39:18, 41:1, 95:7, 96:24

prostitution [1] - 84:2
protect [2] - 88:10, 88:11
protections [1] - 69:13
prove [9] - 48:12, 48:13, 50:3, 51:7, 52:6, 53:10, 53:17, 66:9, 73:2
proved [11] - 30:5, 30:9, 30:15, 30:22, 30:23, 56:4, 56:6, 56:18, 56:19, 57:1, 82:11
proven [2] - 48:20, 82:17
proves [1] - 48:24
provide [11] - 3:17, 39:2, 66:5, 73:9, 75:22, 76:6, 78:24, 79:11, 79:12, 84:20, 94:4
provided [15] - 4:18, 4:20, 4:23, 5:24, 32:5, 32:23, 33:1, 54:25, 64:5, 66:14, 74:9, 75:3, 94:6, 94:18, 96:7
provides [13] - 38:11, 54:20, 55:7, 55:8, 63:24, 74:23, 76:1, 76:15, 78:16, 78:21, 79:1, 87:25, 88:1
public [10] - 55:12, 64:7, 64:11, 79:10, 79:12, 79:14, 79:25, 80:5, 80:11
pull [2] - 7:1, 7:2
pulling [1] - 84:18
punching [1] - 59:23
purpose [1] - 94:7
purposes [2] - 26:7, 28:15
put [6] - 25:2, 30:19, 82:13, 82:14, 84:13, 85:10
Pye [1] - 39:14

**Q**

QUESTION [35] - 8:16, 9:16, 12:21, 13:6, 13:22, 15:15, 15:20, 74:1, 74:3, 74:6, 74:9, 74:12, 75:11, 75:15, 75:17, 75:19, 75:22, 76:6,

76:11, 77:10, 77:13, 77:16, 77:25, 78:20, 78:24, 79:1, 79:18, 79:22, 79:24, 80:3, 80:8, 80:11, 81:11, 81:21, 81:23
questioning [2] - 19:12, 19:13
Questions [2] - 57:16, 57:24
questions [11] - 16:18, 28:2, 28:5, 29:20, 38:14, 38:18, 38:21, 49:5, 67:4, 90:6, 93:23
quick [1] - 31:15
quickly [1] - 37:16
quote [2] - 25:5, 33:14

**R**

raise [1] - 4:14
range [1] - 68:22
rate [11] - 52:14, 52:21, 52:22, 53:1, 53:2, 55:5, 76:3, 76:18, 78:1, 78:5, 78:8
rather [1] - 32:15
re [1] - 89:9
re-examine [1] - 89:9
reach [2] - 89:5, 90:25
reached [2] - 3:21, 90:5
read [11] - 9:17, 9:21, 38:13, 39:4, 39:23, 46:9, 46:12, 46:13, 78:7, 94:19, 96:8
reading [1] - 91:12
reads [1] - 40:22
ready [1] - 45:5
real [1] - 63:21
realities [3] - 32:19, 54:4, 95:1
reality [1] - 59:3
really [12] - 21:1, 22:15, 23:11, 44:17, 58:10, 58:13, 65:4, 65:6, 71:11, 72:15, 85:9, 85:14
reason [5] - 25:20, 39:6, 86:21, 87:10, 88:17
reasonable [11] - 4:14, 19:3, 19:8, 19:15, 39:10, 48:19, 51:17,

53:15, 53:18, 83:1, 83:3

reasonably [4] - 30:24, 41:12, 57:12, 57:20

reasons [1] - 10:14

Rebuttal [1] - 2:7

rebuttal [4] - 28:25, 29:3, 29:14, 86:5

recapture [1] - 37:3

receive [3] - 65:16, 70:9, 86:23

received [3] - 35:9, 44:4, 93:23

recess [3] - 92:25, 93:9, 93:15

Recess [4] - 26:10, 44:23, 93:16, 97:7

reckless [4] - 39:1, 39:4, 57:3, 67:1

recognize [1] - 21:13

recollection [2] - 89:20, 89:22

recommended [1] - 33:1

record [12] - 3:6, 3:13, 9:17, 24:5, 24:6, 24:18, 26:12, 29:24, 31:24, 93:19, 96:13, 97:12

recorded [1] - 1:24

records [12] - 6:8, 20:24, 53:3, 53:4, 53:7, 53:9, 53:13, 64:19, 66:4, 66:5, 66:10, 83:8

recover [4] - 48:15, 53:15, 53:16, 56:20

recurring [1] - 52:16

redrafted [1] - 27:3

reduce [1] - 37:4

reduces [2] - 15:2, 15:6

reducing [1] - 58:15

refer [1] - 50:23

reference [1] - 32:24

referenced [1] - 96:3

referred [1] - 7:4

referring [1] - 4:13

reflect [1] - 3:13

refuse [2] - 61:11, 74:6

regard [21] - 6:7, 7:11,

8:20, 12:8, 13:15, 15:8, 16:13, 19:15, 20:10, 35:24, 35:25, 36:7, 47:9, 61:13, 62:5, 62:23, 66:17, 67:7, 67:10, 68:14, 86:10

regarding [2] - 39:12, 41:5

regardless [1] - 46:22

regards [2] - 33:11, 96:24

registration [1] - 64:3

regular [8] - 13:7, 52:14, 52:22, 53:1, 83:11, 87:2, 87:5

regularly [1] - 52:16

regulations [1] - 24:6

rejected [1] - 35:10

relationship [11] - 54:5, 54:9, 55:20, 55:23, 65:13, 71:12, 72:8, 73:5, 80:19, 86:16, 86:20

relationships [2] - 86:21, 88:20

relative [2] - 50:1, 50:2

relatively [1] - 21:11

released [1] - 31:20

relevant [6] - 11:24, 51:11, 52:10, 56:7, 82:12, 94:25

rely [5] - 20:22, 25:22, 66:12, 89:17, 89:19

remain [1] - 93:3

remaining [1] - 53:24

remember [9] - 19:6, 50:15, 60:15, 72:24, 73:1, 76:21, 79:10, 85:22, 89:13

remembering [1] - 69:5

remembers [1] - 50:15

removing [1] - 96:14

rent [1] - 63:8

repeat [1] - 29:1

repetitive [1] - 70:2

report [1] - 81:4

Reporter [1] - 1:22

REPORTER'S [1] -

97:10

Reporter's [1] - 2:9

represent [1] - 88:12

representative [4] - 19:2, 19:18, 19:25, 59:15

represented [2] - 32:6, 95:10

request [3] - 8:2, 39:22, 41:11

requested [6] - 3:1, 3:16, 45:2, 94:5, 95:24, 97:8

require [3] - 51:5, 52:3, 63:22

required [17] - 26:17, 34:6, 37:4, 48:1, 48:9, 50:25, 51:13, 51:14, 51:23, 52:12, 59:18, 59:22, 59:25, 60:9, 90:9, 94:19

requirements [1] - 27:6

requires [4] - 49:3, 52:13, 53:4, 60:15

reread [2] - 94:7, 96:7

rereading [1] - 94:7

respect [2] - 32:11, 56:11

respectfully [1] - 85:18

respond [3] - 90:14, 94:1, 94:17

response [6] - 94:9, 94:21, 96:6, 96:24, 97:1, 97:2

responsibility [1] - 46:18

rest [1] - 47:17

restaurant [2] - 64:25, 65:1

result [2] - 38:22, 45:2

retire [1] - 46:11

retirement [4] - 54:21, 61:19, 74:24, 76:7

retry [1] - 26:23

return [8] - 38:15, 85:18, 90:20, 91:4, 91:5, 91:8, 93:12

returned [1] - 90:20

review [1] - 5:25

Review [1] - 2:8

revisions [1] - 43:2

revisit [1] - 96:10

revisiting [1] - 26:18

Reyna [1] - 1:20

rightfully [1] - 73:23

rise [3] - 45:19, 91:10, 97:6

risk [11] - 34:4, 55:1, 55:3, 55:5, 62:5, 62:9, 76:17, 76:19, 76:22, 77:16, 77:19

risks [1] - 62:20

RMR [2] - 1:22, 97:16

room [10] - 46:10, 60:4, 60:5, 70:10, 70:16, 77:6, 89:24, 90:20, 91:7, 91:9

rough [5] - 5:23, 7:9, 8:18, 11:18, 22:8

Rough [3] - 7:15, 7:19, 12:9

routine [1] - 82:4

RPR [1] - 1:22

rude [1] - 61:9

rule [2] - 48:10, 49:1

ruled [1] - 96:16

rules [1] - 24:6

run [3] - 63:13, 64:4, 64:19

running [1] - 63:12

runs [1] - 87:4

Rusk [1] - 1:23

**S**

safer [1] - 27:2

Saturday [7] - 6:16, 6:19, 12:1, 12:4, 67:12, 68:15, 87:7

Saturdays [1] - 83:6

scale [1] - 59:15

schedule [11] - 6:10, 6:15, 8:21, 9:11, 12:1, 71:16, 74:10, 81:2, 82:4, 87:1, 90:22

schedules [3] - 87:3, 87:5, 87:8

science [1] - 18:5

sealed [1] - 96:4

Concordance

search [1] - 8:25
seat [3] - 3:3, 7:25, 44:24
seated [3] - 26:11, 45:21, 93:18
second [7] - 22:5, 22:8, 22:22, 41:10, 44:22, 75:11, 94:15
secondarily [1] - 23:5
section [1] - 39:23
Section [2] - 33:23, 34:18
security [8] - 63:12, 64:2, 76:19, 78:10, 78:12, 80:9, 90:13
Security [1] - 55:6
see [15] - 7:14, 9:23, 14:4, 18:17, 27:18, 27:22, 31:16, 39:19, 59:3, 61:13, 72:18, 73:24, 75:10, 77:9, 79:16
seek [1] - 39:12
seeks [2] - 53:19, 83:2
select [1] - 90:2
self [1] - 53:24
self-employed [1] - 53:24
semicolon [1] - 38:5
send [2] - 28:22, 91:14
sense [2] - 85:12, 85:13
sentence [1] - 34:24
separate [1] - 92:6
serve [4] - 61:8, 61:11, 64:13, 65:14
service [1] - 90:8
services [18] - 53:24, 55:11, 55:12, 55:14, 55:24, 64:7, 64:10, 64:11, 64:23, 70:22, 72:3, 79:9, 79:10, 79:11, 79:20, 79:24, 80:4, 80:8
Services [1] - 39:14
serving [1] - 86:16
session [2] - 7:16, 8:7
set [16] - 33:5, 54:10, 54:11, 54:23, 61:22, 62:1, 67:15, 67:16, 72:17, 72:20, 73:6, 73:7, 75:1, 75:6, 76:3,

76:8
setting [1] - 36:1
seven [11] - 12:4, 16:1, 16:3, 16:12, 17:19, 18:1, 18:6, 52:16, 68:17, 69:7, 69:8
several [2] - 27:7, 59:6
sexually [1] - 64:4
sexually-oriented [1] - 64:4
shall [1] - 38:14
share [1] - 67:8
sheet [1] - 20:14
sheets [1] - 91:24
shift [29] - 4:8, 4:9, 4:10, 4:14, 6:16, 6:19, 8:12, 13:7, 15:16, 15:18, 17:3, 17:4, 17:8, 17:11, 17:24, 17:25, 19:10, 22:1, 24:19, 68:2, 68:8, 68:10, 68:25, 69:8, 69:9, 81:5
shifts [11] - 3:22, 4:6, 8:14, 9:10, 13:25, 17:5, 21:16, 21:19, 21:25, 63:17, 68:3
shocking [1] - 88:7
shoes [3] - 59:19, 62:25, 64:6
show [5] - 8:14, 23:11, 39:4, 39:5, 59:8
showed [4] - 23:8, 23:9, 57:3, 84:2
shows [4] - 63:21, 75:4, 88:16, 88:17
sick [4] - 54:20, 74:24, 75:22, 76:1
side [4] - 5:15, 42:24, 58:19, 87:23
sides [1] - 49:24
sign [2] - 35:10, 90:7
significance [1] - 50:19
Silk [7] - 33:5, 33:20, 33:24, 34:6, 34:14, 34:19
silly [1] - 61:24
similar [2] - 20:4, 61:3
similarity [1] - 61:14
simple [1] - 50:13
simply [5] - 21:4, 21:22,

49:2, 50:18, 74:12
single [6] - 17:3, 25:4, 34:25, 50:3, 56:1, 83:21
sister [2] - 23:25, 24:1
sit [1] - 76:23
situation [2] - 21:2, 95:1
six [31] - 6:16, 6:19, 8:16, 8:17, 8:19, 9:4, 9:14, 9:16, 9:23, 9:24, 10:4, 12:20, 12:25, 13:1, 13:4, 16:1, 17:15, 19:10, 33:18, 55:18, 68:4, 68:5, 68:15, 68:18, 68:20, 72:19, 72:25, 73:2, 81:11, 85:24, 85:25
sixth [1] - 80:16
skills [2] - 54:16, 73:14
slide [1] - 76:5
slow [1] - 62:10
snapshot [1] - 10:19
Social [1] - 55:5
social [3] - 76:19, 78:9, 78:11
socializing [1] - 66:15
sole [1] - 47:3
soliciting [1] - 64:14
someone [2] - 53:22, 74:7
sometimes [4] - 14:20, 22:11, 77:13, 83:6
somewhere [2] - 68:6, 87:16
song [7] - 71:21, 72:13, 75:8, 76:11, 77:3, 80:24
songs [4] - 60:25, 61:1, 77:7
soon [2] - 43:11, 59:23
sorry [9] - 6:12, 12:14, 14:23, 15:12, 34:7, 38:6, 45:9, 56:5, 92:10
sort [3] - 9:9, 11:23, 46:3
Sotto [4] - 12:10, 28:12, 35:13, 41:18
sought [2] - 25:8, 27:20
sound [1] - 63:6
sounded [1] - 21:18

Southern [6] - 20:19, 46:14, 95:13, 95:20, 95:24, 96:2
SOUTHERN [1] - 1:1
sparse [1] - 21:12
speaking [2] - 21:17, 48:21
special [4] - 35:18, 36:3, 54:16, 73:14
specific [8] - 4:11, 4:12, 4:14, 19:16, 20:19, 21:20, 94:2
specifically [3] - 4:5, 32:17, 35:25
spectrum [6] - 58:18, 58:21, 70:25, 87:10, 87:13, 87:18
spend [2] - 62:7, 77:5
spending [1] - 69:25
spent [6] - 40:7, 40:13, 40:18, 52:18, 77:5, 84:4
splitting [1] - 63:20
stab [1] - 85:16
stage [3] - 59:12, 61:25, 63:24
stamped [1] - 12:12
stand [6] - 49:8, 49:15, 60:21, 72:22, 72:23, 77:4
standard [2] - 27:12, 27:13
Standards [9] - 23:4, 33:8, 40:24, 50:21, 50:25, 51:21, 51:24, 70:20, 71:2
staple [1] - 92:1
stapled [1] - 91:25
start [6] - 6:5, 15:18, 28:3, 29:2, 31:16, 70:11
started [9] - 15:15, 15:17, 17:4, 46:3, 46:5, 67:19, 69:10, 81:15, 81:18
state [1] - 24:8
State [1] - 25:5
Statement [3] - 2:6, 2:6, 2:7
statement [5] - 35:3, 47:10, 50:7, 78:18,

95:2

STATEMENTS [1] - 1:7

statements [2] - 47:14, 49:14

States [3] - 33:5, 39:14, 46:14

states [2] - 16:22, 17:1

STATES [1] - 1:1

status [3] - 35:21, 43:22, 43:23

statute [4] - 10:16, 11:2, 36:14, 36:19

stay [5] - 15:19, 17:24, 74:13, 91:1, 91:2

stenography [1] - 1:24

step [1] - 91:8

still [2] - 29:17, 44:14

stopping [1] - 91:16

stops [1] - 66:24

story [1] - 71:4

straight [1] - 35:5

straightforward [2] - 27:10, 28:1

Street [2] - 1:17, 1:23

stretch [3] - 23:16, 29:7, 85:5

strictly [1] - 45:25

strike [1] - 81:18

struggled [1] - 27:16

stuff [1] - 85:6

subject [4] - 20:12, 45:2, 78:20, 78:21

subjective [1] - 94:24

submission [2] - 95:6, 96:14

submit [7] - 10:9, 66:23, 71:14, 82:13, 84:13, 84:19, 87:22

submitted [10] - 36:25, 38:25, 44:14, 47:23, 92:22, 95:11, 95:18, 96:16, 96:20, 97:2

submitting [2] - 41:25, 95:12

subsequent [1] - 17:14

substance [2] - 55:21, 80:20

substantial [2] - 77:20, 91:15

substantiated [1] - 19:22

succeed [2] - 51:7, 52:6

sued [1] - 88:8

suffice [1] - 39:9

sufficient [4] - 4:22, 23:10, 24:18, 50:3

sufficiently [1] - 21:20

Sugars [20] - 3:4, 31:1, 46:16, 50:22, 50:23, 50:24, 51:4, 51:22, 52:2, 56:7, 56:14, 57:2, 57:14, 57:22, 69:24, 70:16, 71:4, 82:12, 83:8, 93:20

SUGARS [1] - 1:5

suggested [1] - 17:7

suggesting [1] - 9:21

suggests [1] - 17:15

Suite [2] - 1:17, 1:23

suited [1] - 43:24

sum [5] - 30:24, 41:11, 57:11, 57:19, 77:20

summary [3] - 43:21, 44:9, 44:21

summoned [3] - 88:9, 88:18, 88:19

sums [3] - 31:2, 57:14, 57:22

Sunday [1] - 9:15

supervise [1] - 60:1

supervised [1] - 60:3

supervisor [1] - 60:2

Supp [2] - 4:21, 39:14

Supp.2d [1] - 4:21

supplies [6] - 55:8, 55:9, 63:14, 78:17, 78:22, 79:2

supports [1] - 47:20

supposed [2] - 63:19, 86:23

supposedly [1] - 60:10

Supreme [1] - 33:6

surrounding [1] - 55:22

switch [2] - 11:12, 75:11

swore [1] - 85:22

sworn [2] - 18:22, 25:13

sympathy [1] - 48:5

system [2] - 63:4, 63:6

---

## T

table [1] - 86:15

tally [3] - 22:15, 22:18, 22:19

task [4] - 54:24, 75:2, 75:8, 91:18

taxes [2] - 55:6, 76:19

ten [14] - 6:17, 8:17, 8:19, 9:4, 10:4, 13:10, 19:10, 20:17, 29:17, 68:4, 68:5, 68:15, 68:21, 69:7

ten-hour [1] - 19:10

term [1] - 39:24

terms [2] - 16:9, 67:8

test [6] - 32:19, 50:1, 64:23, 79:7, 80:14, 84:9

testified [24] - 4:3, 6:9, 6:14, 6:24, 8:12, 13:12, 19:9, 19:18, 23:7, 49:24, 50:4, 67:10, 67:19, 68:1, 68:3, 68:16, 68:18, 68:23, 69:1, 69:6, 70:13, 77:5, 77:9, 88:22

testifies [1] - 8:8

testify [3] - 4:9, 21:2, 25:18

testimonies [1] - 93:25

testimony [57] - 5:16, 6:2, 10:4, 16:6, 16:17, 17:10, 17:20, 17:23, 18:20, 18:22, 19:4, 19:6, 19:16, 19:20, 19:22, 19:24, 21:13, 21:16, 21:18, 21:20, 21:23, 22:6, 22:8, 22:25, 23:20, 24:4, 24:10, 25:21, 47:12, 47:22, 48:17, 48:22, 49:7, 49:11, 49:16, 49:19, 49:22, 49:25, 50:2, 50:8, 50:12, 61:25, 62:24, 66:13, 70:3, 73:25, 76:21, 77:3, 79:17, 81:10,

81:14, 88:17, 89:23, 94:3, 94:6, 94:8

TEXAS [2] - 1:1, 1:5

Texas [29] - 1:13, 1:18, 1:23, 3:4, 20:20, 31:1, 39:15, 46:15, 46:16, 50:22, 50:23, 50:24, 51:4, 51:22, 52:2, 56:7, 56:14, 57:2, 57:14, 57:21, 69:24, 70:16, 71:4, 82:12, 83:8, 93:20, 95:14, 95:20, 96:2

THE [187] - 1:8, 1:11, 1:15, 3:2, 3:13, 6:12, 6:21, 6:25, 7:4, 7:8, 7:13, 7:18, 7:20, 7:23, 8:3, 8:6, 8:9, 8:18, 9:4, 9:7, 9:19, 9:22, 10:2, 10:7, 10:18, 10:22, 11:4, 11:7, 11:14, 11:17, 11:20, 12:3, 12:11, 12:14, 12:16, 13:2, 13:4, 13:14, 13:16, 13:18, 13:21, 14:2, 14:4, 14:7, 14:9, 14:11, 14:13, 15:1, 15:6, 15:10, 15:14, 16:3, 16:7, 16:11, 16:15, 16:19, 16:23, 16:25, 17:8, 17:13, 17:18, 17:23, 18:3, 18:5, 18:9, 18:12, 18:14, 18:17, 18:25, 19:6, 19:20, 20:2, 20:6, 20:9, 21:7, 21:10, 23:13, 23:19, 24:20, 24:22, 25:9, 26:1, 26:11, 28:6, 28:9, 28:13, 28:19, 28:21, 29:1, 29:4, 29:8, 29:11, 29:15, 29:20, 29:23, 30:4, 30:7, 30:11, 30:19, 31:7, 31:9, 31:23, 32:3, 33:10, 33:17, 33:21, 34:1, 34:7, 34:10, 34:15, 34:22, 35:5, 35:9, 35:22, 36:6, 36:16, 36:23, 37:7, 37:10, 37:17, 37:22, 37:24, 38:2, 38:7, 38:10, 38:17, 39:18, 40:2, 40:5, 40:15, 40:25, 41:7, 41:14, 41:17, 41:21, 42:4, 42:9, 42:12, 42:15, 42:17, 42:23, 43:1, 43:5, 43:11, 43:15, 43:17, 43:25,

Concordance

44:3, 44:11, 44:13, 44:16, 44:18, 44:22, 44:24, 45:8, 45:13, 45:16, 45:18, 45:21, 58:6, 69:19, 69:22, 86:4, 86:7, 89:3, 91:12, 92:1, 92:4, 92:7, 92:9, 92:16, 92:18, 92:20, 92:23, 93:4, 93:6, 93:9, 93:18, 94:14, 95:6, 95:16, 95:21, 96:5, 96:16, 96:23, 97:5, 97:6

themselves [2] - 22:6, 65:5

therefore [3] - 35:19, 36:4, 49:19

they've [1] - 43:4

thin [1] - 84:18

thinking [1] - 96:19

third [2] - 76:13, 77:10

thousand [2] - 83:11, 83:14

thousands [1] - 63:6

three [22] - 12:6, 13:24, 14:2, 21:22, 22:2, 24:7, 30:23, 34:7, 55:1, 57:7, 68:23, 69:2, 69:25, 71:8, 77:2, 77:7, 83:9, 85:1, 85:10, 88:18

three-minute [1] - 77:7

three-year [2] - 57:7, 83:9

threshold [1] - 20:22

threw [1] - 44:22

throughout [4] - 30:9, 30:10, 37:14, 37:19

Thursday [1] - 67:11

Thursdays [2] - 6:10, 83:6

time-stamped [1] - 12:12

timed [1] - 29:15

timestamp [5] - 8:4, 9:6, 14:8, 14:16, 14:24

tip [8] - 65:20, 65:21, 71:22, 72:2, 72:5, 72:12, 72:13

tipped [6] - 58:22, 58:24, 59:4, 61:14,

69:14, 87:19

tips [15] - 58:23, 59:20, 61:6, 61:7, 61:8, 61:16, 62:9, 63:22, 65:10, 65:12, 65:16, 65:17, 66:1, 71:19, 72:14

Title [1] - 32:19

today [3] - 21:24, 69:5, 90:25

tomorrow [1] - 91:4

took [7] - 27:4, 62:23, 67:7, 83:22, 84:6, 88:14, 89:15

tools [1] - 55:7, 55:9, 62:23, 78:16, 78:21, 79:2

top [3] - 60:12, 72:12, 72:13

topic [6] - 22:23, 73:4, 75:11, 76:13, 77:10, 79:18

topics [3] - 73:1, 73:2, 81:11

total [18] - 10:3, 10:8, 11:4, 12:6, 19:14, 27:17, 29:4, 29:18, 36:11, 39:23, 40:22, 57:18, 63:12, 67:22, 67:24, 68:7, 68:10

totally [1] - 87:19

towards [1] - 12:24

transactions [1] - 60:9

transcribe [1] - 94:5

transcript [9] - 6:3, 7:1, 9:21, 11:12, 13:18, 15:11, 93:24, 94:7, 97:12

Transcript [1] - 1:25

transcription [1] - 1:25

transcripts [4] - 5:23, 5:24, 5:25, 11:12

translated [1] - 40:12

treat [1] - 70:18

treated [3] - 61:4, 69:13, 86:14

TRIAL [1] - 1:7

trial [8] - 21:16, 46:24, 47:2, 47:6, 47:20, 50:12, 89:15

Trial [1] - 2:1

tried [1] - 72:24

triggered [1] - 26:5

trucks [4] - 43:6, 43:7, 43:8, 93:14

true [3] - 23:24, 61:21, 71:5

truly [1] - 87:19

truth [4] - 50:14, 85:2, 85:4

truthfulness [1] - 49:6

try [1] - 85:5

trying [4] - 5:25, 24:4, 24:5, 28:15

Tuesday [6] - 6:15, 11:25, 12:3, 19:10, 67:11, 87:6

Tuesdays [2] - 6:10, 83:5

turn [1] - 66:2

turns [1] - 96:9

twenty [1] - 77:1

two [26] - 14:14, 15:23, 15:25, 29:17, 38:5, 38:20, 42:21, 42:22, 42:24, 45:12, 48:21, 51:12, 52:11, 54:18, 57:9, 58:12, 59:3, 61:1, 63:17, 69:2, 74:21, 77:1, 83:9, 84:6, 88:17, 93:23

two-minute [1] - 61:1

two-year [2] - 57:9, 83:9

types [1] - 48:21

typical [3] - 9:11, 12:18, 12:21

typically [3] - 9:12, 12:23, 13:7

typos [2] - 91:13, 91:15

U

ultimately [2] - 5:11, 35:16

unable [2] - 66:11, 95:12

unanimous [2] - 90:4, 90:5

unbiased [1] - 48:2

under [15] - 23:3, 33:7, 33:12, 35:4, 39:19,

39:21, 40:24, 56:20, 56:22, 57:16, 57:23, 65:11, 70:19, 85:3, 95:7

unduly [1] - 89:20

unfortunately [1] - 34:9

unhappy [1] - 85:15

uniform [1] - 81:2

unimportant [1] - 50:20

unit [1] - 40:23

United [2] - 33:5, 46:14

UNITED [1] - 1:1

universal [1] - 30:8

unknown [1] - 63:5

unlawful [2] - 51:5, 52:3

unless [1] - 61:9

unreasonable [1] - 39:10

unsubstantiated [2] - 18:21, 23:21

up [32] - 7:1, 7:2, 8:14, 12:19, 16:17, 18:1, 21:2, 22:15, 22:18, 22:19, 23:8, 23:9, 25:19, 25:24, 26:17, 32:1, 42:24, 45:11, 59:15, 61:16, 66:24, 68:4, 68:19, 70:12, 71:3, 71:8, 71:10, 84:8, 85:1, 89:10, 91:21, 92:4

usual [1] - 17:9

utmost [1] - 32:11

V

vacate [1] - 27:1

vacation [4] - 54:20, 74:24, 75:22, 76:1

value [1] - 18:21

varied [1] - 9:12

varies [1] - 10:16

various [1] - 19:2

vary [1] - 8:15

Velasco [9] - 11:8, 15:8, 15:10, 18:12, 18:18, 56:8, 67:10, 69:1, 83:20

verbally [1] - 87:4

117

Concordance

verdict [19] - 26:4, 26:14, 26:15, 26:17, 26:22, 26:24, 26:25, 38:15, 44:6, 47:7, 48:6, 85:18, 86:3, 89:5, 90:4, 90:5, 90:7, 91:1, 91:2

Veronica [2] - 11:15, 56:9

verses [1] - 33:6

versus [1] - 33:7

vested [2] - 70:14, 70:17

video [1] - 24:3

view [2] - 32:14, 87:18

VII [1] - 32:19

violated [2] - 39:6, 56:14

violence [1] - 29:8

VIP [1] - 77:6

voce [4] - 12:10, 28:12, 35:13, 41:18

voir [1] - 8:1

Volume [2] - 1:9

VOLUME [1] - 2:1

voluntarily [1] - 51:20

voluntary [1] - 81:23

**W**

wage [16] - 5:12, 6:20, 10:1, 37:4, 37:5, 40:13, 50:21, 50:25, 51:6, 51:13, 51:14, 51:16, 57:13, 58:13, 58:15, 58:16

waiting [1] - 38:6

waitress [9] - 59:23, 60:11, 61:7, 61:8, 64:25, 72:9, 81:21, 86:14, 86:15

waitresses [13] - 61:3, 61:5, 61:11, 61:15, 61:21, 62:6, 62:14, 62:20, 64:1, 64:12, 69:15, 87:19

walk [3] - 6:21, 43:7, 93:14

walked [2] - 79:15, 80:22

walking [1] - 24:3

Wallace [6] - 1:15,

3:11, 25:9, 61:20, 86:18, 87:12

WALLACE [29] - 3:11, 24:21, 24:23, 25:11, 29:6, 29:10, 29:22, 30:1, 30:5, 30:16, 31:6, 32:1, 37:13, 37:18, 37:23, 37:25, 38:3, 38:9, 38:11, 38:23, 41:15, 42:21, 45:15, 45:17, 69:21, 69:23, 92:8, 92:21, 93:8

Wallace............... [1] - 2:6

wants [2] - 70:17, 77:21

warning [3] - 45:8, 45:13, 45:18

Warren [2] - 1:11, 3:8

Washington [1] - 1:13

ways [1] - 59:11

wear [1] - 84:22

Wednesday [2] - 43:6, 67:11

Wednesdays [2] - 6:10, 83:6

week [37] - 4:4, 4:10, 4:12, 4:25, 5:7, 9:12, 10:9, 10:19, 10:24, 10:25, 12:5, 12:20, 12:23, 12:24, 13:1, 13:25, 15:20, 16:2, 16:5, 16:14, 19:3, 19:5, 20:4, 21:22, 22:2, 22:13, 36:12, 36:22, 52:25, 53:2, 67:24, 68:8, 68:14, 68:17, 68:19, 68:24, 69:6

weekend [3] - 12:2, 22:14, 68:17

weekly [1] - 78:1

weeks [11] - 11:4, 36:13, 42:1, 67:13, 67:15, 67:16, 67:18, 67:21, 68:7, 68:11

weighed [1] - 49:25

weighing [2] - 34:5, 49:6

weight [4] - 32:17, 32:20, 50:8, 89:22

Wells [4] - 1:22, 97:11, 97:15, 97:16

West [1] - 1:17

Western [1] - 39:15

whatsoever [1] - 66:25

whole [3] - 47:9, 70:14, 77:6

wholly [1] - 84:19

willfulness [3] - 10:17, 11:2, 66:23

William [1] - 1:16

willing [1] - 64:10

wine [1] - 72:11

wish [3] - 58:3, 69:19, 86:4

witness [22] - 11:15, 20:12, 21:14, 22:18, 49:8, 49:12, 49:15, 49:16, 49:18, 49:25, 50:3, 50:6, 50:9, 50:10, 50:13, 50:14, 50:16, 77:4, 77:5, 84:24, 88:9, 93:25

witness's [1] - 49:8

witnesses [20] - 21:14, 22:6, 23:1, 23:7, 47:12, 48:17, 49:6, 49:7, 49:24, 49:25, 50:1, 50:4, 71:8, 71:20, 71:21, 72:22, 72:23, 84:23, 85:1, 88:5

women [2] - 21:3, 60:18

word [5] - 38:1, 39:22, 59:3, 93:1, 93:7

words [2] - 59:3, 78:6

worked' [2] - 40:6, 40:17

Worked.................
....... [1] - 2:4

worker's [2] - 35:2, 56:3

workers [1] - 20:24

works [7] - 16:20, 52:20, 65:3, 72:9, 77:7, 84:8, 84:10

workweek [21] - 19:14, 23:5, 23:6, 39:22, 39:24, 40:23, 41:6, 41:8, 41:9, 41:25, 42:3, 42:4, 42:7, 42:9, 42:10, 52:5, 52:15, 52:20, 58:2

world [1] - 82:4

wrapping [1] - 45:11

write [1] - 90:12

writing [2] - 90:15, 91:13

written [6] - 24:18, 38:25, 46:13, 74:9, 90:6, 93:24

wrote [1] - 5:6

Wyly [1] - 1:12

**X**

Xander [1] - 1:16

**Y**

year [14] - 22:3, 57:7, 57:9, 63:3, 63:7, 63:8, 63:9, 63:10, 63:13, 63:18, 63:21, 83:9

yearly [1] - 63:2

years [5] - 21:23, 24:14, 65:3, 65:4

yourself [1] - 89:6

**Z**

Zannikos [1] - 39:16

zero [3] - 58:15, 62:14, 62:16

zones [1] - 14:14